EXHIBIT 1

# LIBERTY & FREEDOM
## LEGAL GROUP
### Empowering YOUR Voice through Civil Rights Advocacy

July 2, 2024

**VIA EMAIL: IHOQUEST@SCHOOLS.NYC.GOV**
Impartial Hearing Office
New York City Department of Education
131 Livingston Street, Room 201
Brooklyn, NY 11201

### <u>DUE PROCESS COMPLAINT - SCHOOL YEAR 2024-2025</u>

| | |
|---|---|
| Student: | |
| NYC ID#: | |
| DOB: | |
| Parent(s)/Guardian(s): | Martine Thomas and Scott Thomas |
| Home Address: | |
| School: | International Academy for the Brain ("iBRAIN") |

To Whom It May Concern:

The Liberty and Freedom Legal Group, Ltd. ("Counsel"), represents the above-named student ("Student" or " ▇▇▇ and their parent(s)/guardian(s) ("Parents") (collectively "Clients"), in matters pertaining to the classification, program, placement, and implementation of special education and related services for the Student for the 2024-2025 extended school year ("24-25 ESY").

The New York City Department of Education ("DOE") has procedurally and substantively denied the Student a Free Appropriate Public Education ("FAPE") as mandated by federal law, for the 2024-2025 extended school year. Accordingly, we write to request an impartial hearing pursuant to Section 1415 of the Individuals with Disabilities Education Act, 20 U.S.C. §1400, et seq. ("IDEA"), Article 89 of the New York State Education Law, and Part 200.5 of the Regulations of the New York State Commissioner of Education.

Please note, as per 34 CFR §300.510(a)(1), consistent with 20 U.S.C. §1415(f)(1)(B)(i), within fifteen (15) days of receiving notice of the parent's Due Process Complaint ("DPC") and prior to initiation of an impartial due process hearing under 34 CFR §300.511, the DOE must convene a meeting with the parent and the relevant members of the IEP Team who have specific knowledge of the facts identified in the complaint. The Parent requests an immediate resolution meeting. In the event, the district fails to hold the resolution meeting within 15 days of receipt of the parent's due process complaint notice or fails to participate in the resolution meeting, the Parent is requesting the IHO to begin the impartial hearing timeline immediately as per 34 CFR 300.510[b][5]; 8 NYCRR 200.5[j][2][vi][b]. The Parent also requests that the Impartial Hearing Office expedite this complaint by scheduling a pre-hearing conference immediately to address

**Address:**
300 East 95th Street
Suite 130
New York, NY 10128

**Phone:**
646-850-5035

the ongoing violations of state and federal law as outlined below. Our Client requests that any Impartial Hearing be open to the public as per 34 CFR §300.512(c).

## **PENDENCY**

Our Clients request an interim order of pendency pursuant to federal and state special education law. Specifically, the federal IDEA and New York Education Law both contain "stay-put" provisions which give the child the right to remain in his or her current educational placement at DOE expense during the pendency of any administrative or judicial proceedings. 20 U.S.C. §1415(j); N.Y. Educ. Law 4404(4). Thus, the law allows the student to remain in his or her "last-agreed-upon placement" until the impartial hearing process (including all appeals) is complete, unless the parent and the DOE otherwise agree in writing.

As per 20 U.S.C. §1415(j), the Student's pendency entitlements are automatic and are required to be implemented by the DOE as a matter of law without the necessity of any application, motion, or other showing by Student's counsel, until there is a final order.

The DOE was put on notice through the Ten-Day Notice filed by the Parent (see Exhibit A) the Parent is asserting their "stay-put" rights. While not required, attached is a Pendency Form based on the DOE's previous forms outlining the basis for pendency and the pendency program (see Exhibit B). The legal basis for pendency for this Student is attached as Exhibit C. The DOE has not responded to the Parent's Ten-Day Notice nor have they made any indication they will begin implementing the Student's Pendency Placement.

Due to the DOE's history of failing to automatically implement Student's pendency in previous school years, we respectfully request an immediate pendency hearing so an Interim Order on Pendency can be issued by the Impartial Hearing Officer ("IHO"). Without the implementation and honoring of the statutory entitlement of pendency, the Student will suffer from the lack of funding for the services and program at iBRAIN. We are providing a Draft Interim Order on Pendency (See Exhibit D), which includes:

- Funding for the cost of tuition, and supplemental services, where applicable, to be paid directly to the International Academy for the Brain ("iBRAIN") pursuant to the enrollment agreement between the Parent-Petitioner(s) and iBRAIN (see Exhibit E) as outlined in Petitioner's Due Process Complaint; and
- Funding for transportation services, as well as all services necessary to said transportation, to be paid directly to the transportation provider, in installments, pursuant to the transportation contract between the Parent-Petitioner and the transportation company (see Exhibit F) as outlined in Petitioner's Due Process Complaint.

## **DISPUTED ISSUES**

This due process complaint includes three sections: (I) a description of the Student's educational needs and abilities; (II) an enumeration of the ways by which the DOE failed to meet

its obligation to provide the Student with a free and appropriate public education (FAPE); and,
(III) a proposal for how this failure may be remedied.

**I.** ▆▆▆▆ <u>**Educational Needs and Abilities**</u>

▆▆▆▆ suffers from a brain-based disorder resulting in severe impairments in the
following areas: cognition, language, memory, attention, reasoning, abstract thinking, judgment,
problem solving, sensory, perceptual and motor abilities, psychosocial behavior, physical
functions, information processing and speech. ▆▆▆▆ is diagnosed with Dandy-Walker
Syndrome, a brain-based disability where the cerebellum does not develop normally, which
affects his gross motor function, limiting, inter alia, his ability to ambulate. These impairments
adversely affect ▆▆▆▆ educational performance.

▆▆▆▆ has intensive management needs, requiring a significant degree of individualized
attention and intervention throughout the school day. Due to the severe nature of his brain injury,
▆▆▆▆ is non-verbal and non-ambulatory, and he requires assistance with all activities of daily
living.

Accordingly, ▆▆▆▆ requires a small, highly-structured classroom offering an educational
program delivered via a 1:1 direct instruction and small-group instruction model, with a full-time
1:1 paraprofessional during the school day and while in transit to and from school to assist with
all school activities and activities of daily living. ▆▆▆▆ requires a modified environment
reducing visual and sound distractions. He requires a two-person transfer to and from his
wheelchair or other repositioning. Furthermore, he requires academic and therapy periods, and
transportation to and from school. In addition, periodic breaks, additional processing time for
tasks, and purposeful repetition of tasks during therapy sessions and educational instruction are
required to accommodate ▆▆▆▆ significant needs in order for ▆▆▆▆ to receive educational
benefits and make progress.

▆▆▆▆ requires an extensive regimen of related services, delivered in 60-minute sessions,
including occupational therapy (OT), physical therapy (PT), speech and language therapy (SLT),
assistive technology (AT), alternative and augmentative communication ("AAC") device, and
music therapy (MT) in order to benefit from special education instruction. Because of the
intensive level of services that ▆▆▆▆ requires, it is necessary for ▆▆▆▆ to attend a program
which operates on an extended school day.

▆▆▆▆ also requires an extended school day in order to accommodate the intensive level
of care required to prepare him for the school day upon arrival, and to prepare him for dismissal
at the end of the day.

**1.** <u>**Educational History**</u>

As will be further demonstrated during the impartial hearing, the DOE failed to offer this
Student an appropriate educational program throughout his entire history with the DOE.

First, there were significant Procedural Violations of IDEA for all of the IEPs the DOE created for this Student which (a) impeded the Student's right to a FAPE; (b) significantly impeded the Parents' opportunity to participate in the decision-making process regarding the provision of a free appropriate public education to the Student; and (c) caused a deprivation of educational benefits.

These Procedural Violations include, but are not not limited to a Failure to: (1) Provide Procedural Safeguards Notice, (2) Conduct evaluation or reevaluation (At least every 3 years), (3) Provide parent with mandated notices, such as, Meeting Notices, PWNs, IEPs, Evaluations, (4) Provide parent with information on how to request an IEE at public expense, (5) Provide proper meeting notices/PWN, (6) Acknowledge/listen to/accommodate parent's concerns at the IEP meeting, (7) Provide appropriate PWN for each change or refusal or change proposed, (8) Place student in the least restrictive environment (LRE), (9) Develop an IEP for each school year at issue, (10) Include appropriate present levels of performance, (11) Identifying student's needs, (12) Include goals to match each of the student's needs that are objectively written with a baseline of performance (Objective means of measuring progress on a regular basis), (13) Include a section on parent's concerns, or failure to include parent's concerns and failure to inform parent about this option, (14) Include or address assistive technology (AT) needs, (15) Include or identify all student's management needs, (16) Clearly identify all services provided including Location, Frequency, Duration, (17) Explain whether student is to be educated with non-disabled peers, and when, (18) IEP meeting notice and meeting failed to include mandated members of the CSE team and therefore failure to convene a properly composed CSE team without the Student's Special Education Teacher, Related Service Providers, Parent Member, among others, (19) Failure to follow proper procedures in developing an IEP, (20) Critical decisions made outside of IEP team, (21) Critical decisions pre-determined, (22) timely or actually conduct an annual CSE review and develop an IEP, and (23) timely or actually provide an appropriate school location notice.

In addition, there are many Substantive Violations of IDEA for each of the years the DOE actually developed an IEP for Isaiah, including, but not limited to: (1) the Student's disability and unique needs from that disability are not identified in the IEP, (2) there were no current or appropriate evaluations done prior to the development of each IEP, (3) an IEE should have been done, (4) the IEP doesn't fully explain each service student will receive and whether the teachers and providers are trained in that service, (5) the IEP does not provide training for (a) assistive technology, (b) two-person transfers, (c) seizures and other medical needs of the student, (6) Some of the goals are repetitive or are missing for a specific service, i.e., no PT Goal(s), (7) the IEPs do not reflect meaningful progress nor does the level of progress correctly reflect the student's potential, (8) there are not appropriate accommodations on the IEP, (9) it is not clear how classwork, testing, etc. are modified for this Student, (10) the student is not educated alongside non-disabled peers, and (11) the parent's concerns are not included nor addressed.

▮▮▮▮ began attending iBRAIN in September 2022. ▮▮▮▮ Parent has reenrolled him at iBRAIN for the 24/25 ESY. At iBRAIN, ▮▮▮▮ continues to receive an appropriate educational program that addresses all of ▮▮▮▮ health and educational needs. Since ▮▮▮▮ enrollment at iBRAIN, he has received all of his related services and academic instruction, as well as

additional support and special transportation, at iBRAIN. ███ currently attends a 8:1:1 class and receives the following services on an individual basis.

> OT: 4 times per week for 60 minutes; PT: 5 times per week for 60 minutes;
> SLT: 5 times per week for 60 minutes; MT: 4 times per week for 60 minutes; and
> AT: once per week for 60 minutes

At iBRAIN, ███ also utilizes an AT device and receives assistance from a 1:1 paraprofessional. Furthermore, he also receives special transportation services, which includes: a lift bus/wheelchair ramp, air conditioning, and limited travel time of 60 minutes.

<u>2023-2024 School Year</u>

The DOE's CSE convened for the 2023-2024 school year on April 26, 2023, to develop an IEP for ███ for the 23/24 ESY. Parents and ███ teachers and service providers at iBRAIN attended and participated in the IEP meeting. During the IEP meeting, the CSE agreed with iBRAIN's recommendations that ███ receive related services in the same frequency and duration (60 minutes). The CSE also agreed with the class size recommendation of 8:1:1 for ███ as well as with the recommendation for a 1:1 paraprofessional.

However, despite Parents and all ███ therapists' stressing very clearly that, in order to have ███ receive educational benefits and make progress, ███ requires instruction via 1:1 direct and small group instruction, from specialists who have experience and training in educating students with brain injuries, rather than a placement in a District 75 public school. Parents also disagreed with the failure to recommend an extended school day for ███

Parents also disagreed with the DOE's recommended classification of Multiple Disabilities for ███ rather than the classification of Traumatic Brain Injury ("TBI").

Additionally, Parents disagreed with DOE's failure to recommend music therapy. While Parents were informed that music was part of the curriculum in District 75, the music would not be provided by a licensed music therapist. Parents and ███ providers at iBRAIN expressed their disagreement with this lack of a recommendation for MT. The CSE provided no explanation to change ███ status quo of receiving Music Therapy. The CSE did not bring a licensed Music Therapist to the IEP meeting to validate its determination to eliminate Music Therapy from ███ educational program.

Due to these failures, ███ Parents decided to re-enroll ███ in iBRAIN for the 2023-2024 extended school year.

5

<u>2024/2025 School Year</u>

CSE sent a notice to the Parents on March 20, 2024, with the intent to hold an IEP meeting on April 3, 2024. Due to the school's spring recess, the DOE rescheduled the IEP meeting to April 11, 2024. On April 10, 2024, the Parent cancelled the meeting due to a death in the family. The CSE team rescheduled the meeting for June 5, 2024 ("June 2024 IEP"). The Parents were unable to attend this meeting, however, the CSE team unilaterally decided to hold the IEP meeting without the Parents over the objections of the Parents' representative. This is a procedural violation that has completely denied the Parents the opportunity to meaningfully participate in the development of their child's IEP and is a per se denial of FAPE.

Considering ▇▇▇ intensive management needs, the most recent New York DOE IEP fails to effectively address/cater to his special needs. The CSE recommended a District 75 public school. ▇▇▇ Parents strongly disagree due to concerns of regressing, and additional injury and neglect, in such a placement where DOE will be unable to provide the 1:1 instruction and attention that ▇▇▇ requires.

Parents disagree with DOE's failure to recommend music therapy. While Parents were informed that music was part of the curriculum in District 75, the music would not be provided by a licensed music therapist. As ▇▇▇ has shown progress with the music therapy, he is being provided at iBRAIN, Parents were especially disappointed with DOE's failure to recommend music therapy for ▇▇▇ The Parents also disagree with the DOE's failure to recommend appropriate transportation services, including air-conditioning and limited travel time.

## 2. **Enrollment at iBRAIN**

Due to DOE's failure to develop appropriate IEPs, failure to implement its IEPs, and failure to recommend an appropriate school location for ▇▇▇ Parent unilaterally enrolled ▇▇▇ at iBRAIN, a placement they deemed would enable him to make progress.

At iBRAIN, ▇▇▇ receives 60-minute services as part of an extended school day in a 12-month program. He attends an 8:1:1 classroom and receives OT, PT, SLT, MT, a 1:1 paraprofessional, AT devices, AAC devices, AT services, trained school personnel, and comprehensive transportation accommodations. Through iBRAIN, ▇▇▇ is finally receiving a program that is meeting his needs.

The equities fully support the Parents, as they have always cooperated with DOE in its attempt to develop appropriate programs for and have made themselves available for evaluations and assessments.

As of this Due Process Complaint, ███ Parent has not received a prior written notice ("PWN") or a School Location Letter ("SLL") for the 2024/2025 extended school year. This is a violation of FAPE as ███ Parents have no place to send their child for the 2024/2025 school year.

Due to these failures, the Parent decided to re-enroll ███ at iBRAIN for the 2024/2025 ESY.

## II.    DOE FAILED TO PROVIDE A FAPE

Our clients contend that the DOE failed to provide ███ with a FAPE because it failed to convene an IEP meeting to assess what program should be created to meet ███ needs during the 2024/2025 extended school year. This request is based on, but not limited to, the following factors, which have procedurally and substantively denied a FAPE:

1. **DOE FAILED TO CONVENE AN APPROPRIATE IEP MEETING FOR THE 2024/2025 SY**

   a.  DOE failed to convene an appropriate IEP meeting for the 2024/2025 school year, a clear denial of FAPE.
   b.  As stated above, the CSE team decided to exclude the Parents from the IEP meeting in June 2024.
   c.  This failure is an unequivocal denial of FAPE, denying Parent of both the opportunity for meaningful participation in the IEP development process, as well as the opportunity to determine what would ensure Student's progress under the DOE's purview.

2. **DOE FAILED TO OFFER AN APPROPRIATE SCHOOL LOCATION FOR THE 2024/2025 ESY**

   a.  DOE failed to provide Parent with a PWN and/or a SLL. This is a per se denial of FAPE. By its failure to timely recommend a school location, DOE denied Parent of the right to obtain sufficient information about a proposed school location to determine whether that school would be appropriate for Student.
   b.  DOE's June 2024 IEP recommendation that ███ attend a District 75 school is completely inappropriate to meet his needs. A District 75 school does not contain a direct instructional model, which ███ requires to acquire an educational benefit.
   c.  The CSE failed to recommend an extended school day. A District 75 school does not have an extended school day, such that it can implement his recommended IEP mandates of 60-minute sessions up to five times per week.
   d.  ███ cannot be appropriately grouped in a D75 school.

i. This placement will not provide ███ with appropriate peer models, and classmates with similar needs and abilities, as is his entitlement under the law.

ii. Thise is no evidence that ███ will attend a class with peers having similar social, emotional, physical, academic, and management needs and abilities.

3. **DOE FAILED TO RECOMMEND OR PROVIDE APPROPRIATE RELATED SERVICES FOR 2024/2025 ESY**

   a. DOE failed to recommend music therapy, provided by a licensed music therapist, as a related service.

   b. Student benefits from music therapy as a related service. DOE's failure to recommend music therapy, based not on Student's needs but rather on DOE's inability to provide the service, denied Student a FAPE.

   c. ███ requires an independent neuropsychological evaluation in order to determine his educational needs and potential in light of his diagnoses, and to recommend appropriate educational services and interventions.

4. **DOE FAILED TO EVALUATE STUDENT IN ALL AREAS OF SUSPECTED NEED**

   a. DOE failed to provide sufficient evaluative data in order to prepare any recommendations for Student.

   b. DOE failed to thoroughly assess Student in all areas of his suspected disability by failing to conduct evaluations.

   c. DOE failed to conduct a neuropsychological evaluation of Student. The DOE did not conduct any evaluations to accurately assess Student.

   d. Student requires an independent neuropsychological evaluation to determine his true diagnoses, and which would accurately reflect his needs and abilities.

   e. DOE failed to conduct an AT evaluation to determine what device Student specifically needs to progress.

   f. Parent hereby restates her disagreement with the DOE's failure to evaluate and request an Independent Educational Evaluation ("IEE") to take the form of funding for an independent psychological assessment, educational needs assessment, an AT evaluation, and a neuropsychological evaluation to be conducted by a qualified provider of Parent's choosing at a reasonable market rate.

5. **DOE DENIED PARENTS MEANINGFUL PARTICIPATION IN THE EDUCATION PROCESS**

   a. DOE's failure to provide timely evaluations, and IEP meeting denied a FAPE during the 2024/2025 ESY.

**6. DOE FAILED TO RECOMMEND APPROPRIATE SPECIAL EDUCATION TRANSPORTATION SERVICES AND ACCOMMODATIONS**

    a.   DOE failed to recommend limited travel time for ▆▆▆

    b.   DOE failed to recommend an air conditioned bus for ▆▆▆

**7. DOE PREDETERMINED THE OUTCOME OF THE JUNE 2024 IEP**

    a.   DOE engaged in predetermination at the June 2024 IEP. It was clear that regardless of what ▆▆▆ needs were that DOE was going to recommend a District 75 public school.

    b.   The DOE failed to consider alternative placement options at the IEP meeting.

### iBRAIN is Appropriate for Student

At iBRAIN, Student continues to receive special education programming, supported by appropriate related services that address his highly intensive management needs, that provide educational benefits to Student and allow him to make meaningful progress. He attends a small 8:1:1 class with peers who function on a similar level and who are working on similar communication and therapeutic goals.

### Equitable Considerations Favor a Full Award of Tuition and Related Services

Parents have always made Student available for evaluations and/or observations by the DOE. Furthermore, Parent were willing to participate in an IEP meeting, but did not have the opportunity to do so. The DOE unilaterally rescheduled the April 3, 2024, CSE meeting that Parents were willing to attend. The Parents did postpone the April 11, 2024, IEP due to an unforeseen death in the family. The DOE then waited approximately two (2) months to try and reschedule the CSE meeting. When the Parents expressed that they were unable to attend, the CSE team chose to unilaterally hold the IEP meeting without the Parents present. The Parents expressed that they were willing to investigate DOE's proposed public-school location, but have not received a recommendation, to date. Accordingly, any analysis of equitable considerations supports a full award of tuition and related services, including special transportation, for Student at iBRAIN.

### CONCLUSION

In light of the above, the district has failed to offer ▆▆▆ a FAPE for the 2024/2025 ESY. Furthermore, ▆▆▆ placement at iBRAIN is appropriate to address his academic, physical, and social/emotional needs, and is reasonably calculated to confer educational benefits

upon him. Additionally, there are no equitable considerations which would bar reimbursement as, at all relevant times, █████ family have attempted to cooperate in the CSE review and placement process.

Thus, the Parents hereby reserve the right to raise any other procedural or substantive issues that may come to their attention during the pendency of the litigation of this matter, including, but not limited to:

1) challenging the qualifications of any of the district's proposed supervisors, teachers, paraprofessionals, and/or any other service provider who might have been assigned to work with █████

2) challenging the appropriateness of the district's recommended placement by claiming that it cannot or will not maintain an appropriate student-to-staff ratio for the entirety of the school day;

3) challenging the appropriateness of the district's recommended placement by claiming that it will not or cannot provide █████ with all of the related services he needs to make meaningful progress;

4) challenging the appropriateness of the district's recommended placement by claiming that it will not or cannot provide █████ with all of the required transportation services needed to ensure his health and safety;

5) challenging the appropriateness of the district's recommended placement by claiming that it will not adequately address █████ needs regarding his assistive devices, including, but not limited to, AT devices, AAC devices, ambulatory devices, wheelchair accessible locations, etc.

## III. PROPOSED RESOLUTION

In an effort to avoid prolonged litigation of this matter, Parents propose the terms of settlement discussed below:

a) An interim order of pendency maintaining iBRAIN as Student's pendency placement;
b) An order declaring that DOE denied Student a FAPE during the 24/25 ESY;
c) A determination that iBRAIN is an appropriate placement for Student for the 24/25 ESY;
d) An order declaring that equitable considerations favor full funding by the DOE for Student's placement at iBRAIN for the 24/25 ESY;

e) An order for payment by DOE directly to iBRAIN for the cost of Tuition and Supplemental Tuition for the 24/25 ESY pursuant to the terms of the Enrollment Agreement between Parent and iBRAIN;

f) An order for direct payment/prospective funding of special education transportation services pursuant to the terms of Transportation Services Agreement between Parent and Sisters Travel and Transportation Services, LLC, for the 24/25 ESY;

g) An IEP meeting to be convened for Student to address his developmental needs;

h) An order compelling the DOE to re-evaluate Student and provide Assistive Technology Services and Devices and AAC to assist Student with communications; and,

i) An order directing DOE to fund independent educational evaluations as a psychological, neuropsychological, and educational needs assessment of Student.

Should this matter proceed to litigation and Parent is a prevailing party on any substantial issue, then we will additionally seek an award of attorneys' fees and the recovery of all related fees and disbursements as permitted by relevant statute.

Thank you in advance for your time and attention to this matter.

Very truly yours,

/s/: Edward Lent
Edward Lent, Esq.
Liberty and Freedom Legal Group, Ltd.
Attorneys for Parents

cc:     Martine Thomas and Scott Thomas (Martinenscottthomas@gmail.com)

**LIBERTY & FREEDOM**
**L E G A L   G R O U P**
Empowering YOUR Voice through Civil Rights Advocacy

June 14, 2024

**Sent Via Electronic Mail: (10daynoticecse6@schools.nyc.gov)**
New York City Department of Education Committee on Special Education 6
5619 Flatlands Avenue Brooklyn,
New York 11234

New York City Department of Education Committee on Special Education 8
1 Livingston Street, 4th Floor
Brooklyn, New York 11201

**TEN DAY NOTICE**

Student:            ███████████
NYC ID#:            ███████████
DOB:                ███████████
Parent(s)/Guardian(s):      Martine Thomas and Scott Thomas
Home Address:       █████████████████████████

To Whom It May Concern:

  The Liberty and Freedom Legal Group, Ltd. ("Counsel"), represents the above-named student ("Student" or "███████" and their parent(s)/guardian(s) ("Parents") (collectively "Clients"), in matters pertaining to the classification, program, placement, and implementation of special education and related services for the Student.

  Pursuant to 20 U.S.C. §1412 (a)(10)(C)(iii) and 34 C.F.R. §300.148 (d)(1)), and on behalf of our Clients, we are providing the New York City Department of Education, the Student's local educational agency ("DOE"), ten (10) business days' notice of the Parents' intent to remove Student from the DOE's recommend school placement because of the DOE's failure to offer or provide the Student with a Free Appropriate Public Education ("FAPE") for the 2024-2025 extended school year. Parents intend to place the Student at the International Academy for the Brain, d/b/a iBRAIN, Ltd. ("iBRAIN"), for the 2024-2025 extended school year. iBRAIN is located at 213 48th Street, Brooklyn, NY 11220, and is a specialized educational program designed to educate students, like the Student, who suffer from a brain injury or brain-based disorder.

  Also, no school location letter for the 2024-2025 ESY has been issued. If DOE recommends the same District 75 public school as last year, please note the Parents have previously rejected that location because it was not appropriate for the Student.

  Parents are requesting the DOE to maintain this status quo during the pending impartial hearing process and any appeals, through the "stay-put" provision pursuant to 20 U.S.C. §1415 (j) and have included the DOE Pendency Form already pre-populated with this Ten-Day Notice Exhibit A. In order to maintain the Student in their pendency program, please be prepared to fully implement this pendency placement at the start of the extended school year.

**Address:**

300 East 95th Street
Suite 130
New York, NY 10128

**Phone:**

646-850-5035

A - 1

This notice is sent in addition to the Parents having expressed their concerns, disagreements, and rejection of the Committee on Special Education's ("CSE") recommendations at the most recent Individualized Education Program ("IEP") meeting.  The Parent continues to request Independent Education Evaluations (IEEs) of the Student; to be conducted at public expense, in order to appropriately assess the Student in all areas related to their suspected disabilities, including, but not limited to neuropsychological, physical therapy, occupational therapy, speech-language therapy, special education and assistive technology assessments due to the lack of proper assessments conducted by the DOE prior to the development of the most recent IEP meeting.

The Student is a child who suffers from a brain-based injury and the Student's educational needs are multifaceted and complex, and the DOE's recommended program and placement will not appropriately address their educational needs for the 2024-2025 extended school year.

Based on the Parents' review of the proposed recommended program and placement for the Student, the proposed IEP to be implemented during the 2024-2025 extended school year is not designed to enable the Student to receive appropriate educational benefits or receive appropriate related services. The proposed District 75 public school placement recommendations cannot be implemented, as proposed in the IEP, during the regular school day. Parents are also concerned about the appropriateness of the recommended placement for reasons including, but not limited to, class size ratio, class functional and academic grouping, staffing, accessibility, availability of adequate resources, and the lack of individualized attention and support. Further, the Parents are concerned the physical structure and facility of the proposed school location is not appropriate to address the Student's individual needs.

Our Clients remain willing and ready to entertain an appropriate public or approved non-public school placement that can provide the required intensive academic and related services program the Student requires. Accordingly, the Parents request the CSE reconvene for this purpose once the IEEs have been completed in order to develop an appropriate IEP. At this time, however, the Parents have no choice other than to re-enroll the Student in iBRAIN, which is an appropriate placement for the Student and is the last agreed- upon placement between the Parents and the DOE.
Very truly yours,

/s:/ Edward Lent
Edward Lent, Esq.
Liberty and Freedom Legal Group, Ltd.
Attorneys for Parents

cc:    Martine Thomas and Scott Thomas
       Martinenscottthomas@gmail.com

# <u>Pendency Implementation Form</u>

*Please complete the form above the bold line. The DOE will review all submissions prior to implementation.*

| Student Name | OSIS Number | DPC Number |
|---|---|---|
| ██████ ████ | ██████ | |

1. The basis for pendency is:    Unappealed FOFD IHO Case No. 242728, 8/2/2023

2. The pendency program consists of the following:

| Tuition | | |
|---|---|---|
| **School Name** | **10- or 12-Month Program** | **Other Notes** |
| International Academy for the Brain (iBRAIN) | 12-month program | Direct payment of Full Tuition to iBRAIN as per the terms of the enrollment contract between iBRAIN and parent |

| Services | | | | |
|---|---|---|---|---|
| **Service or Item** | **Ratio and Frequency** | **10- or 12-Month Program** | **DOE or Private Provider** | **Private Provider Name and Rate** |
| Special Transportation services | Daily; Round-trip for all school days | 12-month | Private | Direct payment to Sisters Travel and Transportation Services, LLC as per the terms of the transportation agreement with the parent |
| | | | | |

Form submitted by: Peter Albert, July 2, 2024, Parents' Counsel

---

For DOE use only:

The above program should be implemented as pendency

Pendency starts on: July 2, 2024
The date the DPC was filed: July 2, 2024

_____        _____
DOE Reviewer            Date

B - 1

<u>FINDINGS OF FACT AND DECISION</u>

Case No.                        242728

Student's Name:            ██████████

Date of Birth:               ██████████

District:                        15

Hearing Requested by:    Martine Thomas and Scott
                              Thomas ("Parents")

Record Close Date:        July 25, 2023

Hearing Officer:           Natasha Pierre, Esq.

C - 1

On November 22, 2022, the parents, Martine Thomas and Scott Thomas (the "Parents")

of ████████ (the "Student") filed a due process complaint ("DPC") under the Individuals

with Disabilities Education Act (the "IDEA") [20 U.S.C. section 1415(f)] and Section 4404(1) of

the New York State Education Law against the New York City Department of Education (the

"District"). I was appointed as the impartial hearing officer ("IHO") on January 13, 2023.

Hearings went forward on February 9, 2023, March 1, 2023, April 19, 2023, and April 21, 2023.

At the merits hearing, the District was represented by Anthony M. Ameche, Esq.  The Parents

were represented by John Henry Olthoff, Esq. and Zack Zylstra, Esq. of Brain Injury Rights

Group, Ltd.

The District did not submit documentary evidence and did not present witness testimony.

The Parent submitted a documentary evidence package and presented affidavit testimony

from two witnesses: Tiffany Semm; Director of Special Education, iBrain and Martine Thomas;

the Parent.  All witnesses were available for cross-examination.

The Parents submitted a closing brief. The District did not submit a closing brief.

Although only portions of the evidence are referenced herein, the testimony and

documents were reviewed in full.

## BACKGROUND AND POSITIONS OF THE PARTIES

████████ is a sixteen-year-old male student. This proceeding pertains to the

Parents' claim for tuition payment/reimbursement for the 2022/2023 school year.

The Student is diagnosed with Dandy-Walker Syndrome, a brain-based disability where

the cerebellum does not develop normally, which significantly impacts his gross motor function.

The Student has severe impairments in many areas including cognition, sensory processing,

physical functioning and speech. The Student is non-verbal and non-ambulatory.

The Student relocated to the City of New York in April 2022.  Prior to that, the Student

was living in Jonesboro, Georgia where he received an Individualized Educational Program

(IEP) classifying him with moderate intellectual disability and a speech and language

impairment. The Parent maintains that the Georgia IEP was inadequate to meet the Student's

needs; that despite the Student's brain disorder resulting in severe impairments, the Georgia IEP

recommended limited occupational therapy, physical therapy and speech therapy services and did not recommend a 12-month extended school year. The Georgia IEP was used as a basis for a comparable service plan in New York City, as well as the school location recommendation of 75K21, Brooklyn Occupational Training Center ("721"), a District 75 public school.

The Parents maintain that the 721 placement was unable to meet the Student's educational and health management needs; that while the Student was provided an iPad for school work, he was never assigned homework on the device and the use of the device was not integrated into his educational program; that due to the inadequate facilities and insufficient related services, the Student did not make even minimal progress. As a result of their disagreement with the District's placement/program, the Parents filed the DPC, and unilaterally placed the Student at iBrain ("Private School) for the 2022/2023 school year . The Parents maintain that the District failed to provide the Student with a free and appropriate public education ("FAPE") for the 2021/2022 and 2022/2023 school years.

The Parents maintain that the District failed to provide an appropriate placement uniquely tailored to meet the Student's needs for the 2021/2022 and 2022/2023 school years. The Parents maintain that the District failed to evaluate the Student in all areas of suspected disability. The Parents maintain that the District failed to create an IEP for the 2022/2023 extended school year. The Parents maintain that the District failed to mandate an appropriate public-school location for the 2021/2022 school year. The Parents seek a finding that the District failed to provide the Student with a FAPE for the 2021/2022 and 2022/2023 school years and an order directing the District to fund/reimburse the cost of tuition, related services and transportation for the unilateral placement at the Private School for the 2022/2023 school year.

The District asserted that it offered the Student a FAPE and that the Private School is an inappropriate placement for the Student (Tr. 10).

## FINDINGS OF FACT AND DECISION

The IDEA provides that children with disabilities are entitled to a Free Appropriate Public Education ("FAPE") (20 U.S.C. § 1400 [d][1][A]. A FAPE consists of specialized

C - 3

education and related services designed to meet a student's unique needs, provided in conformity

with a comprehensive written Individualized Education Program ("IEP") (34 C.F.R. § 300.13). A

school district has offered a student a FAPE when (a) the board of education complies with the

procedural requirements set forth in the IDEA; and (b) the IEP is developed through the IDEA's

procedures and is reasonably calculated to enable the student to receive educational benefits <u>Bd.

of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 206-07 (1982). In

order to meet its substantive FAPE obligations, a district must offer a student an IEP that is

"reasonably calculated to enable a child to make progress appropriate in light of the child's

circumstances" <u>Endrew F. v. Douglas County Sch. Dist. RE-1</u>, No 15-827, 2017 WL 1066206,

137 S.Ct. 988, 69 IDELR 174 (U.S. Mar 22, 2017). School districts are required to provide the

services set forth in a student's IEP.

      Decisions of impartial hearing officers must be on substantive grounds based on a

determination of whether the student received a FAPE, 8 NYCRR § 200.5(j)(4)(i),  except as

follows:

> In matters alleging a procedural violation, an impartial hearing
> officer may find that a student did not receive a free appropriate
> public education only if the procedural inadequacies impeded the
> student's right to a free appropriate public education, significantly
> impeded the parent's opportunity to participate in the decision-
> making process regarding the provision of a free appropriate public
> education to the parent's child, or caused a deprivation of
> educational benefits. Nothing in this paragraph shall be construed
> to preclude an impartial hearing officer from ordering a school
> district to comply with procedural requirements under this Part and
> Part 201 of this Title 8 NYCRR § 200.5(j)(4)(ii).

      School districts have the burden of proof, including the burden of persuasion and burden

of production, in IDEA due process hearings, except that a parent or person in parental

relationship-seeking tuition reimbursement for a unilateral parental placement has the burden of

persuasion and burden of production on the appropriateness of such placement ( NYS Educ. Law

§ 4404(1)(c)).

      A board of education may be required to pay for educational services obtained for a child

by the child's parent, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parent were appropriate, and equitable considerations support the parent's claim. (School Committee of the Town of Burlington v. Department of Education, Massachusetts, 471 U.S. 359 [1985]; Florence County School District Four et al. v. Carter by Carter, 510 U.S. 7 [1993]; see also Frank G. and Dianne G. v. Bd. of Educ. of Hyde Park,459 F.3d 356 [2d Cir. 2006], cert denied, Board of Educ. of Hyde Park Cent. School Dist. v. Frank G.,2007 WL 2982269 [Oct. 15, 2007].

 In this matter, the District did not establish that it provided the Student with a FAPE for the 2021/2022 and 2022/2023 school years. The Supreme Court has found that "[a] reviewing court may fairly expect those authorities [school district staff] to be able to offer a cogent and responsive explanation for their decisions that shows the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances." Endrew F. v. Douglas County School District, 137 S. Ct. at 1002 (2017). The District did not present any witness testimony or submit any documentary evidence in an attempt to meet its burden of proving that it offered the Student a FAPE. In addition, it is clear from the record that the District failed to recommend an appropriate program and placement for the 2021/2022 and 2022/2023 school years. I, therefore, find that the District failed to provide the Student with FAPE for the 2021/2022 and 2022/2023 school years. The Parents have, therefore, met the first of the three Burlington/Carter criteria for tuition reimbursement.

 The Parents have the burden of proving that the unilateral placement was appropriate. In order to meet this burden, the Parents must establish, by a preponderance of the evidence, that the unilateral placement provided "educational instruction specifically designed to meet the unique needs of the student" (Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 [2d . Cir. 2007]. However, the private school placement "need not meet the IDEA definition of a free and appropriate public education" or "state education standards or requirements" (Frank G. v. Bd. of Educ., 459 F.3d 356, 364 [2d. Cr. 2006].  The private placement need not provide certified special education teachers or an IEP. Parental placements are not subject to the same mainstreaming requirements as a school district placement.  The private school placement must

be reasonably calculated to enable the child to receive educational benefits, and must be likely to produce progress, not regression.

The standard to apply is whether "[the] unilateral private placement ... provides educational instruction specifically designed to meet the unique needs of a handicapped child" Gagliardo, 489 F.3d at 115):

> No one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits. Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs. To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction. Gagliardo. 489 F.3d at 112 (quoting Frank G , 459 F.3d at 364-65).

The District did not raise any specific challenges to the Private School placement Moreover, the testimony and documentary evidence overwhelmingly support the Parents' contention that a 12-month placement is appropriate for the Student and the Private school was appropriate and provided the Student with educational instruction that was specifically designed to meet the Student's unique special education needs, supported by such services that were necessary to permit him to benefit from instruction.

The Parents have therefore met the second of the three Burlington/Carter criteria for tuition reimbursement.

The determination of whether or not equitable factors support a parent's claim for tuition reimbursement hinges, in large part, on whether or not the parent cooperated with the CSE. The District did not raise any issues that would limit or preclude tuition reimbursement. In fact, it did not oppose tuition reimbursement on equitable grounds. Moreover, the testimony and

C - 6

Findings of Fact and Decision                                                        7
Case No. 242728
_____

documentary evidence make clear that the Parents cooperated with the CSE and provided the District with appropriate and timely written notice.

       Based on the foregoing, I find that equitable factors support the Parents' claim for tuition funding for 2022/2023 school year.  The Parents have therefore met the third of the three Burlington/Carter criteria for tuition reimbursement. Having met all three of the Burlington/Carter criteria, the Parents are entitled to reimbursement for the cost of the Student's 2022/2023 Private School placement.

        The Parents have requested that the District directly pay the cost of tuition and related services and transportation for the Student at the Private School for the 2022/2023 school year.

       Direct and prospective funding are appropriate remedies in due process proceedings seeking payment for unilateral placements (*See Connors v. Mills*, 34 F.Supp.2d 795 at 805-806, 132 Ed. Law Rep. 767 (N.D.N.Y., 1998), *Mr. & Mrs. A. ex rel. D.A. v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403 (S.D.N.Y. 2011). The Parents do not have the financial resources to pay for the entire cost of the Private School tuition (Parent Ex. H)  The District did not oppose the request for direct funding.  The request that any outstanding payments be made directly to the Private School is,  granted.

## **ORDER**

       **IT IS HEREBY ORDERED** that the New York City Department of Education is shall directly  fund the cost of the Student's tuition and related services at the Private School for the 2022/2023 school year, by issuing direct payment to the school within thirty (30) days of the submission of an affidavit setting forth the balance due, and it is further

       **ORDERED** that the New York City Department of Education is directed to fund the costs of transporting the Student to and from the Private School during the 2022/2023 school year.

August 2, 2023

*Natasha Pierre*
_____
Natasha Pierre
Impartial Hearing Officer

Findings of Fact and Decision                                              8
Case No. 242728

District Exhibit:
None

Parent Exhibit

| PARENT EXHIBIT | DATE | DESCRIPTION | NUMBER OF PAGES |
|---|---|---|---|
| A | 11/02/2022 | Due Process Complaint – IH # 242728 2022-23 School Year | 7 |
| B | 03/12/2021 | Clayton County, Georgia IEP | 46 |
| C | 04/11/2022 | School Location Letter | 3 |
| D | 08/25/2022 | iBRAIN Enrollment Contract | 7 |
| E | 08/25/2022 | Ten Day Notice | 2 |
| F | 10/03/2022 | Transportation Agreement | 5 |
| G | 02/22/2023 | iBRAIN IEP | 44 |
| H | 03/01/2023 | Affidavit of Martine Thomas | 2 |
| I | 03/01/2023 | Affidavit of Tiffany Semm | 4 |

C - 8

Findings of Fact and Decision                                                                 9
Case No. 242728

### *NOTICE OF RIGHT TO APPEAL*

*Within 40 days of the date of this decision, the parent and/or the Public School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.*

*If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.*

*An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.*

**L.V. v. NYC Department of Education, 03 Civ. 9917 (SDNY)**

Parents of children with Individualized Education Programs who received or who may receive an order at the conclusion of an impartial hearing should read the attached notice about possible disclosure of information and documents about their children as part of a federal court litigation.

Translations in Spanish, Arabic, Bengali, Chinese, French, Haitian Creole, Korean, Russian, and Urdu are available on the DOE webpage at https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings

**Notice of Potential Disclosure of Student Education Records**

**Please read this notice carefully**. This is a message about possible disclosure of documents or data that might contain information about your child, if your child has been classified as a student with a disability and has been or may be the subject of a final Impartial Hearing Order.

**I.      Nature of the Lawsuit**

This lawsuit challenged the failure of the Department of Education ("DOE") of the City of New York to timely implement orders issued by impartial hearing officers in connection with impartial hearings held pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* and N.Y. Education Law § 4401, *et seq.* In 2007, the parties entered into a Stipulation of Settlement (the "Stipulation") in which the DOE agreed to timely implement these orders.

In January 2021, the Court granted plaintiffs' motion for the appointment of a special master. On April 14, 2021, the Court entered an Order appointing David Irwin of Thru-Ed as the Special Master.  On May 14, 2021, the Court entered an Order detailing the duties and authority of the Special Master which include, among other things, the authority to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders a. Pursuant to this Order, the Special Master may have access to education records of students, upon DOE's compliance with the Family Education Rights and Privacy Act (20 U.S.C. § 1232g; 34 C.F.R. Part 99) ("FERPA").

C - 10

## II.    Data Ordered to Be Disclosed

In order for the Special Master to perform his duties, the Court has directed the DOE to provide the Special Master (and employees and consultants at Thru-Ed) with access to records containing confidential student record information, including, but not limited to, documents submitted in the impartial hearing process, impartial hearing orders, data about compliance, and students' special education documents, such as individualized education programs, evaluations, authorizations, invoices, etc. The Special Master is required to keep any student documents and information confidential. No student-specific information will be shared with plaintiffs' counsel unless the student's parent specifically consents. If there is any student-specific information in the Special Master's reports to the Court, that information would not be made public.

The Special Master will use this information only for his work to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders.  The disclosure of this information <u>does not</u> affect any of your rights as a parent to seek special education services for your child.

## IV.    Objections to Disclosure

If you agree to the disclosure of this information to the Special Master, you do not need to do anything more.

If you do not want your child's information shared with the Special Master, you must object to this disclosure by submitting an objection to DOE's attorney, addressed to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York  NY  10007

or via email at LVObjection@law.nyc.gov.  Please reference the *LV v. DOE* lawsuit (Case No. 03-9917) when writing.  An Objection Form accompanies this Notice, though no written objection will be rejected if it is not submitted on this form.  If you object, no records containing you and your child's personally identifiable information or other FERPA-protected information will be provided to the Special Master, although nominal and incidental disclosure of your child's name may occur.  **Any objections must be received by December 3, 2021 or for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order**.

**If you would like more information about this notice, please contact the attorneys for plaintiffs**, **Rebecca Shore, of Advocates for Children of New York, Inc. at 646-532-6078.**

C - 11

**OBJECTION TO DISCLOSURE OF RECORDS**
**LV v. DOE, 03 Civ. 9917 (SDNY)**

If you agree to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, you do not need to complete this form.

If you object to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, please compete and return this form to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York, NY  10007

or via email at LVObjection@law.nyc.gov

Child's name: _____

Name: _____

Address: _____

Impartial Hearing Order Case # (if known): _____

Date of Order (if known): _____

> If you object to the release of your confidential information, please check the line below:
>
> _____    I do not agree to have my confidential records disclosed to the Special Master in *L.V. v. DOE*.

_____                _____
Date                                                    Please sign here

C - 12

If you object to the release of information, your objection must be received by December 3, 2021 or, for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order.

    *    *    *    If you do not notify the DOE of your objections to the documents being released, you child's information will be provided to the Special Master appointed in *LV v. DOE*, 99 Civ. 9917 (SDNY) and/or consultants and employees of Thru-Ed.  The information will remain confidential and the disclosure of this information will not affect any of your rights to seek special education services for your child.

C - 13

| |
|---|
| للاطلاع على هذا المستند باللغة العربية، قُم بزيارة الموقع الإلكتروني https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| YgÄsÄ̀ǺÄ̀ Ä̀Ǻ náʹl á, https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings náʹɓ̧ |
| 若要以中文查看，請上網到 https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Pour consulter ce texte en français, allez sur https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Pou wè tèks sa a an kreyòl ayisyen, ale sou https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| 본 문서를 한국어로 보시려면 다음 웹사이트를 이용하십시오: https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Для просмотра документа на русском языке посетите https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Para ver este contenido en español, visite https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| اس کو اردو میں دیکھنے کے لیے https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings پر جائں |

C - 14

NEW YORK CITY OFFICE OF ADMINISTRATIVE
TRIALS AND HEARINGS (OATH)
SPECIAL EDUCATION HEARINGS DIVISION
------------------------------------------------------------------X
In the Matter of the Due Process Complaint of
Martine Thomas and Scott Thomas
("Parent"), as Parent/Guardian of A.T.
("Student"), and Individually;

                          Petitioners,                              **ORDER OF PENDENCY**

        -against-
                                                                    **IHO Case No.**

 **THE NEW YORK CITY DEPARTMENT
 OF EDUCATION,**                                                    **IHO**

                          Respondent.
------------------------------------------------------------------X

      This Order addresses a Student with disabilities whose Parent challenges the Individualized

Educational Program ("IEP") and placement proposed for the 2024-2025 extended school year by

Respondent The New York City Department of Education ("DOE"). Through this Order, the Parent

seeks to enforce the Student's pendency rights under § 1415(j) of the Individuals with Disabilities

Education Act ("IDEA") and Section 4404(4) of the New York State Education Law, which entitle

the Student to remain in his/her current educational placement, at public expense, during the

pendency of their administrative and/or judicial proceeding.

      Under IDEA, the pendency inquiry identifies the Student's then-current educational

program/placement. *Mackey v. Bd. of Educ., Arlington C.S.D.*, 386 F.3d 158 (2d Cir. 2004),

*supplemented*, 112 F. App'x 89 (2d Cir. 2004). Although not defined by statute, the phrase "then

current educational placement" has been found to mean the last agreed-upon placement at the

moment when the due process proceeding is commenced. *Murphy v. Arlington C.S.D.*, 86 F. Supp.

2d 354 (S.D.N.Y. 2000), *aff'd,* 297 F.3d 195 (2d Cir. 2002).

      The Student's "last agreed upon placement" is at the International Academy for the Brain

("iBRAIN"). This placement is based upon the Unappealed FOFD IHO Case No. 242728,

8/2/2023, which found that: 1) DOE denied Student a FAPE; 2) iBRAIN was appropriate for

Student; and, 3) equitable considerations supported a full award of direct payment of tuition and

related services, including special transportation, for Student at iBRAIN.

Unless otherwise excluded, Pendency includes all costs of special education and related services, including transportation. Under the IDEA, "related services" include transportation, and under N.Y. Educ. Law, "special education" includes transportation. When a student receives special education services, an order on pendency– without transportation—would render the award meaningless.

For the preceding reasons, it is hereby ORDERED that effective July 2, 2024, and during the pendency of all Due Process Proceedings relative to IHO Case No.          the 2024-2025 Extended School Year, and all administrative and judicial proceedings thereafter, the DOE shall fund the Student's placement at iBRAIN. This placement includes the following:

- Funding for the cost of Full Tuition to be paid directly to the International Academy for the Brain ("iBRAIN") pursuant to the enrollment agreement between the Parent-Petitioner and iBRAIN (see Exhibit E in Petitioners Due Process Complaint) as outlined in Petitioner's Due Process Complaint; and
- Funding for transportation services, as well as all services necessary to said transportation, to be paid directly to the transportation provider pursuant to the transportation contract between the Parent-Petitioner and the transportation company (see Exhibit F in Petitioners Due Process Complaint) as outlined in Petitioner's Due Process Complaint; and

Dated:_____        So Ordered: _____
                                                        IHO



Phone - 646-315-1548
Email - info@iBrainNYC.org
Web - www.iBrainNYC.org

## ANNUAL ENROLLMENT CONTRACT

**This is a contract ("Enrollment Contract" or "Agreement") between Martine Thomas & Scott Thomas ("Parent(s)/Guardian(s)") and The International Academy for the Brain, dba iBRAIN Ltd ("iBrain") for the enrollment of ▮▮▮▮▮▮▮▮ ("Student") for the 2024 - 2025 school year ("School Year"). The parties hereby agree to the following terms:**

### Enrollment Period

1. *i*Brain offers enrollment to Student for the extended school year ("School Year"), starting on July 2, 2024, and ending on June 27, 2025, subject to the terms and conditions set forth below.

### Academic Program, Related and Other Services

2. Parent(s)/Guardian(s) attests they have reviewed the curriculum program for *i*Brain's educational and related services programs and certain related materials.

3. Parent(s)/Guardian(s) understands the academic and related service programs for Student for the School Year will be provided as follows:

   a. *i*Brain will provide the academic and related service programming as outlined in: (i) Student's most recent Individualized Education Program ("IEP") issued by the Student's local school district; or (ii) recommend an academic program that will be outlined in Student's *i*Brain IEP if the local school district's IEP has not been updated or if *i*Brain and Parent(s)/Guardian(s) disagree with the proposed academic program recommendation in Student's IEP issued by the local school district for the academic year. Where *i*Brain recommends changes to the Student's recent IEP, *i*Brain assumes all responsibility to defend against all challenges to the appropriateness of the changes it makes to Student's academic programming as reflected on the most recent IEP.

### Tuition, Deposit and Related Service Fees

4. **Deposit:** Parent(s) agrees to pay an initial, non-refundable deposit of $100 ("Deposit") made payable to "International Academy for the Brain" for the 2024-2025 school year. The Deposit will be applied against the Full Tuition as outlined in Sections 7 and will be due the first day of school.

5. **Base Tuition Fees:** Base Tuition Fee for the *i*Brain program is **$213,000** for the School Year starting on July 2, 2024 and ending on June 27, 2025. The Base Tuition includes the cost of an individual paraprofessional, and school nurse as well as the academic programming outlined in Section 3.

6. **Supplemental Tuition Fees:** The Base Tuition cost does not include the cost of related services, transportation paraprofessional, any individual nursing services or assistive technology devices and

Document Ref: IQHGF-BU6XU-FEGUH-CK7LC

equipment. Supplemental Tuition includes the cost of the Student's related services programming such as physical therapy, occupational therapy, speech-language therapy, vision education services, assistive technology services, music therapy, hearing education services and parent counseling and training as outlined in Section 3. The total Supplementary Tuition Fees for the 2024-2025 school year is **$101,826.60.**

7. **Full Tuition:** Full Tuition for the 2024-2025 academic year is inclusive of Base Tuition Fees as described in Section 5 and Supplemental Tuition Fees as described in Section 6. The Full Tuition is **$314,826.60** shall be paid in three installments with the first payment of **$53,647.58** due by July 2, 2024, the second installment payment of **$100,236.27** due by September 5, 2024, and the third payment of **$160,942.75** due by January 2, 2025.

**<u>Payment Terms</u>**

8. **Payment Obligation**:  It is understood and agreed the enrollment of Student is for the full academic year and the obligation to pay tuition cannot be apportioned or mitigated except as expressly provided for herein. *i*Brain will not make any deductions, omissions, or refunds for excused or unexcused absences, withdrawal, suspension, or for any other reason, except as outlined in Sections 10 and 11.

It is understood Parent(s)/Guardian(s) may seek public funding from their local school district to pay for Student's Full Tuition due to *i*Brain for the School Year by asserting Student's due process rights.  In the event Parent(s)/Guardian(s) is required to file a due process complaint against the local school district seeking an Order on Pendency and/or Findings of Fact and Decision for funding, the tuition payment obligations will be suspended, except those obligations outlined in sections 8(a) and 8(b), until a final determination/decision is issued by an impartial hearing officer, state review officer, or state or federal court, and then all monies then-due will become immediately due within thirty (30) days of the final adjudication.

   a.  **Pendency Placement - Payment Obligations**: It is understood Parent(s)/Guardian(s) may seek public funding from the local school district to pay for Student's Full Tuition due to *i*Brain for the School Year by asserting Student's Due Process Rights under 20 U.S.C. § 1415[j], whereby the local school district is required to maintain Student in his/her last-agreed upon placement during the pendency of any impartial hearing proceedings ("Stay-put") which is automatic upon filing a Due Process Complaint ("DPC"). Upon filing the DPC and asserting the Stay-put provision ("DPC Date"), the payments obligations as outlined in this Enrollment Contract shall be due within 30 days of DPC Date, according to the terms herein. Payment obligations shall remain in effect until the Stay-put rights are no longer active.

   In the event the local school district does not comply with the Stay-put rights of Student and fails to make the payment obligations as outlined in this Enrollment Agreement, Parent(s) /Guardian(s): (1) may seek immediate enforcement of the Stay-put rights in state or federal court and MUST provide a payment schedule within two weeks of such enforcement action; (2), if Parent(s)/Guardian(s) does not seek enforcement within 14 days of the payment obligations becoming due, Parent(s)/Guardian(s) will be required to execute a payment schedule while the Student remains at iBRAIN; or, (3) Parent(s)/Guardian(s) will be required to establish payment plan and may withdraw Student by terminating contract per section 11.

   b.  **Order on Pendency Denied - Payment Obligations:** It is understood Parent(s)/Guardian(s) may seek public funding from the local school district to pay for Student's Full Tuition due iBrain for the School Year by asserting Student's Due Process Rights under 20 U.S.C. § 1415[j], whereby the

E - 2

Document Ref: IQHGF-BU6XU-FEGUH-CK7LC

local school district is required to maintain Student in his/her last-agreed upon placement during the pendency of any impartial hearing proceedings ("Stay-put") is automatic upon filing a Due Process Complaint ("DPC"). In the event Parent(s)/Guardian(s) seeks and is denied an Order on Pendency by an Impartial Hearing Officer, State Review Officer, or a state or federal court, for all or part of the Full Tuition funding from the local school district due under this Enrollment Contract, Parent(s)/Guardian(s) will be permitted to immediately withdraw Student from iBrain by terminating this contract per Section 11 within 30 days of receipt of the Order on Pendency. Parent(s)/Guardian(s) will be required to execute a payment schedule to comply with the contractual obligations based upon the financial need of Parent(s)/Guardian(s) for any balances due to *i*Brain on the date of withdrawal.

c. Late Payment Penalty. Upon the failure to pay in full any payment obligation due based on the terms of this Enrollment Contract ("Amount Outstanding") within seven (7) business days of the due date for such payment, a late payment penalty of ten percent (10.0%) of the Amount Outstanding (the "Late Payment Amount") shall immediately be added to the Amount Outstanding. The imposition of the Late Payment Amount shall be in addition to any other rights and remedies of iBRAIN under this Agreement. Any balances of any amount which remains unpaid, i.e., Amount Outstanding, including any Late Payment Amount, more than thirty (30) days after it is due shall accrue interest until paid at the rate equal to the lesser of two percent (2.0%) per calendar month or the maximum amount allowed under Applicable Law. However, in no event shall this interest provision be construed as a grant of permission for payment delays.

9. **Failure to Secure Tuition Funding:** In the event Parent(s)/Guardian(s) seeks a Findings of Fact and Decision, but is denied all or part of the Full Tuition funding from the local school district due under this Enrollment Contract by a final administrative or judicial decision, including all state and federal appeals resolving the claim for such funding, Parent(s)/Guardian(s) will be permitted to immediately withdraw Student from *i*Brain by terminating this contract per Section 11.

## Contract Release and Termination

10. **Release:** Parent(s)/Guardian(s) acknowledges that Parent(s)/Guardian(s) will be released from this Enrollment Contract without financial penalty or continuing responsibility for tuition payments outlined in this Enrollment Contract should the local school district offer a free appropriate public education to Student by the first day of the School Year as indicated in Section 1 and the Parent(s)/Guardian(s) provides notice as outlined in Section 11 prior to the first day of the School Year. Parent(s)/Guardian(s) may be released from this Enrollment Contract if the Student relocates outside of the local school district, or, if due to health reasons, Student is no longer able to attend *i*Brain, and Parent(s)/Guardian(s) provides notice as outlined in Section 11.

11. **Termination:** Parent(s)/Guardian(s) may terminate this Enrollment Contract by submitting a written Termination Notice per Section 25. The Termination Notice must, (a) be in writing, (b) dated, (c) state Student's name and (d) provide Parent(s)/Guardian(s)'s reasons for terminating the Enrollment Contract. The Termination Notice may be sent through the U.S. Postal Service via certified mail, return receipt, or Federal Express delivery service or by courier. If submitted through the U.S. Postal Service by First Class Mail, the Termination Notice shall be deemed received by *i*Brain five business days after the date that the Termination Notice is postmarked, consistent with Section 25.

If Parent(s)/Guardian(s) terminates this Enrollment Agreement, Parent(s)/Guardian(s) will forfeit Student's non- refundable Tuition Deposit set forth in Section 4 in its entirety and any other payments made per the

E - 3

Document Ref: IQHGF-BU6XU-FEGUH-CK7LC

terms of this Enrollment Agreement.

Applicable tuition refunds, if any, shall be determined as follows:

    A.  All pre-paid tuition fees will be refunded ***if and only if*** the written Termination Notice in the form stated above was RECEIVED on or before the first day of attendance by Student.

    B.  If written Termination Notice is received after the Student's first day of attendance, Parent(s)/Guardian(s) will be responsible for paying all tuition fees for the calendar month in which Termination Notice is received on a *pro rata* basis. Parent(s)/Guardian(s) also will be responsible for paying all outstanding tuition and fees then due and owing, if any, for all months prior to the month in which Termination Notice is received. All such fees shall be paid within ten (10) calendar days after Termination Notice is received by *i*Brain.

## School/Family Cooperation

12. **Parent(s)/Guardian(s) Must Cooperate with School District:** In the event Parent(s)/Guardian(s) decides to seek direct funding from their local school district for the Student's placement and related services at *i*Brain, Parent(s)/Guardian(s) agrees to take all necessary steps to secure funding and to cooperate fully in the process required to secure such funding. In the event that Parent(s)/Guardian(s) does not cooperate with the process, *i*Brain may elect, upon 60 days' notice, to terminate Student's enrollment at *i*Brain.

## Conditions of Enrollment

13. Parent(s)/Guardian(s) hereby authorizes *i*Brain to conduct any interviews, medical examinations, psycho-educational evaluations, and/or related service evaluations necessary for the continued assessment related to Student; and Parent(s)/Guardian(s) authorizes *i*Brain to make necessary information regarding Student available to its staff and/or other paid or unpaid individuals working for or on behalf *i*Brain, including medical and dental consultants and other health care or educational professionals.

14. Parent(s)/Guardian(s) understands that *i*Brain will provide clinical and training services for the community and hereby authorize and consent to the provision of such services, including without limitation, observation, information sharing and trainee participation to the extent *i*Brain deems necessary for training students and staff of other agencies, as well as volunteers, and *i*Brain agrees to use discretion in selecting trainees and sharing information related to Student and to ensure that staff are made aware of the confidentiality of these matters.

15. **Compliance with Local School District Requirements**: Parent(s)/Guardian(s) and *i*Brain agree to cooperate with respect to their interaction with the New York State Education Department and/or their local school district to ensure compliance with applicable laws, regulations and rules.

16. **Medical Releases**: Parent(s)/Guardian(s) agrees to promptly sign a Health Insurance Portability and Accountability Act ("HIPAA") release form and a Family Educational Rights and Privacy Act ("FERPA") release form for the purpose of allowing *i*Brain to communicate with Student's related service therapists and medical providers and have access to Student's medical and therapy providers' records. Parent(s)/Guardian(s) agrees to inform *i*Brain if there are any changes to Student's medical conditions and/or changes to Student's medication regimen. Parent(s)/Guardian(s) further agrees that such information obtained or developed by *i*Brain may be used for research and published accordingly.

E - 4

Document Ref: IQHGF-BU6XU-FEGUH-CK7LC

17. **Physical Restraint**: Parent(s)/Guardian(s) authorizes *i*Brain to use the amount of passive physical restraint believed to be reasonable under the circumstances (and endeavor to use the least amount of such restraint), and utilize environmental time out and/or apply a protective device as necessary to ensure the safety of the Student, staff, and any individual working with the Student in the event Student may cause or reasonably demonstrate a threat of causing injury to self or others, or serious damage to property.

18. Parent(s)/Guardian(s) authorizes *i*Brain to include names, address, telephone number and email addresses in the Family and Staff Membership List to facilitate reasonable communication among families and area support groups for the families.

19. **Consent to Photograph, Video, Record and Interview**: Parent(s)/Guardian(s) understands Student may be filmed by *i*Brain in individual or group sessions, during recreational activities and/or during community outings; and Parent(s)/Guardian(s) agrees to promptly sign a Communications Release granting *i*Brain all rights to publicly exhibit or display photographs and/or photographic slide projections and/or video of Student and/or to permit use thereof by or in any media, including, but not limited to copyright status (or common law copyright) and, staff members may photograph or film Student for the purpose of keeping personal mementos of their time together with Student.

20. Parent(s)/Guardian(s) authorizes *i*Brain to display or enter Student's artwork or original creation(s) in appropriate competitions including public and private exhibitions; and Parent(s)/Guardian(s) authorizes Student to attend trips and events outside of the school setting with appropriate staff support.

21. **Access to Student's Records**: Parent(s)/Guardian(s) has the legal right to inspect and review any educational records relating to Student as well as a legal right to a copy of Student's school files, and Parent(s)/Guardian(s) agrees to reimburse *i*Brain for reasonable copying costs associated with such request.

## Miscellaneous Terms

22. **Assignment**: Parent(s)/Guardian(s) agrees this Enrollment Contract may be assigned or transferred by *i*Brain and it will be binding upon and inure to the benefit of the successors and assigns of *i*Brain.
    a. Assignment of Right to Sue. In the event the local school district, or another entity ("Obligor"), is obligated by administrative or court order to make payment(s) to iBRAIN on behalf of the Parent(s)/Guardian(s) ("Assignor") under the terms of this Agreement and fails to make such payment(s) within thirty-five (35) days upon becoming due ("Outstanding Financial Obligation"), at the written request of iBRAIN, the Parent(s)/Guardian(s) shall assign and transfer to iBRAIN ("Assignee") the title and ownership to such claim and cause of action that exists in Parent(s)/Guardian(s) favor against any such entity and thereby authorize iBRAIN to prosecute said action to resolve said claim at iBRAIN's discretion. Assignor understands that whatever amounts Assignee does not collect from Obligor (whether it be all or part of what is due) shall be paid by Assignor as per the terms of the Agreement.

23. **Severability**: *i*Brain and Parent(s)/Guardian(s) agree in the event any provision of this Enrollment Contract shall become invalid or unenforceable, in whole or in part, for any reason whatsoever, the remaining provisions shall, nevertheless, be valid and binding as if such invalid or unenforceable provision had not been contained in this Enrollment Contract.

24. **Governing Law**: This Enrollment Contract shall be governed by, construed and enforced in accordance

E - 5

Document Ref: IQHGF-BU6XU-FEGUH-CK7LC

with, the substantive laws of New York State, without regard to any conflicts of law provisions thereof that would result in the application of the laws of any other jurisdiction. New York State shall be the jurisdiction and venue for any dispute involving this Enrollment Contract. The Enrollment Contract may be executed in counterpart with facsimile or electronic copies of signatures that shall serve as acceptable substitutes for original signatures and shall be legally binding.

25. **Notice**:  By executing this Enrollment Contract, each party agrees hereto to the terms set forth above and all notices required under this Enrollment Contract shall be delivered via the U.S. Postal Service via certified mail, return receipt, or Federal Express delivery service, or by courier to the following parties at the address set forth below:

International Academy for the Brain
ATTN: Mr. Kieran Lavin
55 West 116th Street, #159
New York, New York 10026

26. **Merger**:   This Enrollment Contract contains the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, express or implied, oral or written, except as herein contained. The express terms herein control and supersede any course of performance and/or usage of the trade inconsistent with any of the terms hereof. This Enrollment Contract may not be modified or amended other than by an agreement in writing, duly signed by all parties.

By signing below, Parent(s)/Guardians acknowledges that he/she/they have read this Enrollment Contract, understand(s) the terms and conditions, and agree(s) to the conditions outlined in this Enrollment Contract. It is further understood that any questions concerning these conditions have been discussed.

Parent(s)/Guardian(s) signature below signifies that he/she/they have read and understand all aspects of this Enrollment Contract and recognize the legal responsibilities in regard to this Enrollment Contract.

**International Academy for the Brain**

X_____*Kieran Lavin*_____

By: Kieran Lavin

International Academy for the Brain

Date:___2024-06-24___

**Parent/Guardian**

X_____*Martine Thomas*_____

Name(s):___Martine Thomas___

Parent(s)/Guardian(s) of ███████___

Date:___2024-06-19___

E - 6

Document Ref: IQHGF-BU6XU-FEGUH-CK7LC

# Signature Certificate

Reference number: IQHGF-BU6XU-FEGUH-CK7LC

| Signer | Timestamp | Signature |
|---|---|---|

**Martine Thomas**
Email: martinenscottthomas@gmail.com

| | |
|---|---|
| Sent: | 18 Jun 2024 20:34:18 UTC |
| Viewed: | 19 Jun 2024 13:45:18 UTC |
| Signed: | 19 Jun 2024 13:45:44 UTC |

**Recipient Verification:**
✔Email verified          19 Jun 2024 13:45:18 UTC

*Martine Thomas*

IP address: 172.56.160.198
Location: Brooklyn, United States

**Kieran Lavin**
Email: kieran@kieranlavin.com

| | |
|---|---|
| Sent: | 18 Jun 2024 20:34:18 UTC |
| Viewed: | 24 Jun 2024 14:10:10 UTC |
| Signed: | 24 Jun 2024 14:10:20 UTC |

**Recipient Verification:**
✔Email verified          24 Jun 2024 14:10:10 UTC

*Kieran Lavin*

IP address: 163.116.255.47
Location: New York, United States

Document completed by all parties on:
24 Jun 2024 14:10:20 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature solution trusted by 50,000+ companies worldwide.



E - 7

## SCHOOL TRANSPORTATION ANNUAL SERVICE AGREEMENT

This annual agreement, hereinafter referred to as "AGREEMENT", is made and entered into by and between MARTINE & SCOTT THOMAS hereinafter referred to as "CLIENT", Parent(s)/Guardian(s) of ███████, ████████ hereinafter referred to as "STUDENT" residing at ███████████, ████, hereinafter referred to as "HOME" and Sisters Travel and Transportation Services, LLC, a New York State limited liability corporation, hereinafter referred to as "PROVIDER", located at 2585 Broadway #240, New York, NY 10025.

### 1.  TERM

This annual AGREEMENT shall be effective from July 2, 2024, through June 27, 2025, hereinafter referred to as "TERM", and cannot be terminated except as provided in Section 7.

The STUDENT attends a private school, the International Academy for the Brain ("iBRAIN"), located at 403 East 91st Street, New York, NY 10128 (iBRAIN-Manhattan), or at 213 48th Street, Brooklyn, NY 11220 (iBRAIN-Brooklyn) hereinafter referred to as "SCHOOL".

STUDENT attends SCHOOL year-round for approximately 223 days based on SCHOOL's, 12-month 2024-2025 School Year calendar, hereinafter referred to as "SCHOOL DAYS."

### 2.  PURPOSE OF THIS AGREEMENT

The purpose of this AGREEMENT is to establish responsibilities between PROVIDER and CLIENT, hereinafter referred to as "PARTIES", related to the provision of special school transportation services, hereinafter referred to as "SERVICES", for STUDENT during the TERM from HOME to SCHOOL and SCHOOL to HOME during SCHOOL DAYS.

### 3.  SCHEDULE OF SERVICE

The pick-up location each SCHOOL DAY morning will be HOME and the drop-off location will be SCHOOL, hereinafter referred to as "AM TRIP."

The pick-up location each SCHOOL DAY in the afternoon will be SCHOOL and the drop-off location will be HOME, hereinafter referred to as "PM TRIP."

The AM TRIP and PM TRIP will be no more than 60 minutes each way.

The timing of the AM TRIP and PM TRIP will be determined at least seven (7) days prior to the first day of SCHOOL DAYS. There will be a 15-minute grace period for STUDENT to be ready for AM TRIP and PM TRIP, hereinafter referred to as "FLEXIBLE PICK-UP / DROP-OFF TIMES."

In addition, the CLIENT has the right to change the AM TRIP or PM TRIP times or locations, within New York City, with 72 hours notification to PROVIDER, hereinafter referred to as "CHANGE TO TRIP." The CLIENT must receive written email confirmation from PROVIDER of the request of CHANGE TO TRIP to guarantee modification to the AM TRIP or PM TRIP.

*INCLEMENT WEATHER*
PROVIDER will follow the decisions of the SCHOOL, for all Inclement Weather school delays or cancellations. Transportation will be provided for delayed opening and early dismissals according to SCHOOL's weather-related changes. PROVIDER reserves the right to make a decision to adjust pickup times as necessary when it is determined to be in the best interest of STUDENT, this information will be communicated to each CLIENT via email and/or phone call.

### 4.  PROVIDER RESPONSIBILITES

1

F - 1

PROVIDER shall provide the vehicles, drivers and dispatching necessary to provide the SERVICES in accordance with the terms of this AGREEMENT.

The PROVIDER agrees to use safe and clean equipment and properly trained and licensed drivers employed by or under contract with the PROVIDER.

The vehicle providing SERVICES for CLIENT shall meet any and all standards required by federal and state law. The vehicle will also maintain the following conditions: Air conditioning, regular-size wheelchair accessibility (e.g., lift-bus/wheelchair ramp), and sitting space to accommodate a person to travel with STUDENT, as needed. If STUDENT requires additional equipment for transportation (i.e., oxygen tanks), the vehicle will accommodate these additional needs of STUDENT

## 5.  INSURANCE

PROVIDER shall obtain and keep in force during the TERM of this AGREEMENT the following insurance coverages:

Workmen's Compensation Insurance in compliance with the laws of the State of New York covering all employees who perform for PROVIDER under this AGREEMENT.

Comprehensive Auto Liability Insurance on all vehicles used in connection with this AGREEMENT whether owned, non-owned, or hired; and

Comprehensive General Liability Insurance with limits for bodily injury or death.

## 6.  FEES and PAYMENT FOR SERVICES

The PARTIES agree all SERVICES will be billed at an annual rate of $147,403.00, hereinafter referred to as "FEES". CLIENT shall pay FEES with three payment installments: Payment 1: $24,567.25 due on July 2, 2024, Payment 2: $49,134.25 due on September 1, 2024, and a final payment, Payment 3 $73,701.50 due on January 1, 2025.

CLIENT understands and accepts FEES will be based on SCHOOL DAYS, whether STUDENT used SERVICES or not, unless PROVIDER was at fault for STUDENT not utilizing SERVICES. All of the FEES described above are considered "PROVIDED SERVICES". CLIENT warrants STUDENT will be enrolled in SCHOOL for the TERM and obligation to pay FEES is unconditional and cannot be apportioned or mitigated, except as explained above. PROVIDER will not take any deductions, omissions, or refunds for unexcused absences, withdrawal, suspension or for any other reason except as outlined in Section 7.

PROVIDER understands and accepts CLIENT will be seeking third party payments for SERVICES from the local school district (e.g., New York City Department of Education) ("THIRD PARTY") through either a Stipulation Agreement or through an impartial hearing process. PROVIDER agrees to suspend payment obligations until an interim or final administrative or judicial decision is made obligating THIRD PARTY to pay all or part of FEES and those payment obligations will become immediately due as per the terms of this AGREEMENT, and shall be paid within thirty (30) days of the interim or final decision or execution of a Stipulation Agreement. In the event an administrative or court decision is not in the CLIENT's favor for payment, payment will be suspended until the CLIENT has exhausted all legal remedies available to them to secure third party funding, when all payments will immediately become due.

Late Payment Penalty. Upon the failure to pay in full any payment obligation due based on the terms of this AGREEMENT ("Amount Outstanding") within seven (7) business days of the due date for such payment, a late payment penalty of ten percent (10.0%) of the Amount Outstanding (the "Late Payment Amount") shall immediately be added to the Amount Outstanding. The imposition of the Late Payment Amount shall be in addition to any other rights and remedies of PROVIDER under this AGREEMENT. Any balances of any

2

F - 2

amount which remains unpaid, i.e., Amount Outstanding, including any Late Payment Amount, more than thirty (30) days after it is due shall accrue interest until paid at the rate equal to the lesser of two percent (2.0%) per calendar month or the maximum amount allowed under Applicable Law. However, in no event shall this interest provision be construed as a grant of permission for payment delays.

7.  **TERMINATION**

Termination for Cause.  If PROVIDER or CLIENT fails to perform in the manner called for in this AGREEMENT, or if PROVIDER or CLIENT fails to comply with any other provisions of the AGREEMENT and fails to correct such noncompliance within five (5) business days written notice thereof, CLIENT or PROVIDER may terminate this AGREEMENT for cause.

Termination shall be effected by serving a written notice of termination on PROVIDER or CLIENT setting forth the manner in which PROVIDER or CLIENT is in default.

The CLIENT may terminate the AGREEMENT if STUDENT relocates outside of local school district or due to health reasons STUDENT is no longer requiring special school transportation services.  Termination shall be effected by serving a written notice of termination on PROVIDER setting forth the conditions for termination.

In the event, CLIENT has exhausted all legal remedies available to them to secure third party funding, the CLIENT may terminate the AGREEMENT in writing, but will remain responsible for any balance due to PROVIDER on the date of such termination.

8.  **INDEPENDENT CONTRACTOR RELATIONSHIP**

The PARTIES acknowledge and agree the SERVICES performed by the PROVIDER, its employees, agents or sub-contractors shall be as an independent contractor and nothing in this AGREEMENT shall be deemed to constitute a partnership, joint venture, agency relationship or otherwise between the PARTIES.

9.  **COMPLIANCE WITH LAWS**

PROVIDER, in the performance of this AGREEMENT, shall comply with all applicable federal, state and local laws and ordinances, including regulations for licensing, certification and operation of facilities, programs, accreditation, and licensing of individuals, and any other standards or criteria as described in this AGREEMENT to assure quality of services.

10.  **NONDISCRIMINATION POLICY**

PROVIDER is an equal opportunity employer.

Nondiscrimination in Employment.  In the performance of this AGREEMENT, PROVIDER will not discriminate against any employee or applicant for employment on the grounds of race, creed, color, natural origin, sex, marital status, age or the presence of any sensory, mental or physical handicap; provided that the prohibition against discrimination in employment because of handicap shall not apply if the particular disability prevents the proper performance of the particular work involved. PROVIDER shall ensure that applicants are employed, and that employees are treated during their employment, without regard to their race, creed, color, natural origin, sex, marital status, age or the presence of any sensory, mental or physical handicap. Such action shall include, but not be limited to the following:  employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay, or other forms of compensation; and selection for training, including apprenticeships.

Nondiscrimination in Services.  PROVIDER will not discriminate against any recipient of any services or benefits provided for in this AGREEMENT on the grounds of race, creed, color, natural origin, sex, marital

3

F - 3

status, age or the presence of any sensory, mental or physical handicap.

If any assignment and/or subcontracting by PROVIDER, said assignment or subcontract shall include appropriate safeguards against discrimination.  PROVIDER shall take such action as may be required to ensure full compliance with the provisions in the immediately preceding paragraphs herein.

## 11.  ASSIGNMENT/SUBCONTRACTING

PROVIDER may assign or subcontract its performance under this AGREEMENT or any portion of this AGREEMENT and it will be binding upon and inure to the benefit of the successors and assigns of PROVIDER.

In the event THIRD PARTY, or another entity ("Obligor"), is obligated by administrative or court order to make payment(s) to PROVIDER on behalf of CLIENT ("Assignor") under the terms of this AGREEMENT and fails to make such payment(s) within thirty-five (35) days upon becoming due ("Outstanding Financial Obligation"), at the written request of PROVIDER, CLIENT shall assign and transfer to PROVIDER ("Assignee") the title and ownership to such claim and cause of action that exists in CLIENT's favor against any such entity and thereby authorize PROVIDER to prosecute said action to resolve said claim at PROVIDER's discretion. Assignor understands that whatever amounts Assignee does not collect from Obligor (whether it be all or part of what is due) shall be paid by Assignor as per the terms of the AGREEMENT.

## 12.  CONSENT TO COLLATERAL ASSIGNMENT

CLIENT hereby consents to the collateral assignment by the PROVIDER of all of its right, title and interest in, to and under this AGREEMENT to a collateral agent pursuant to any security agreement the PROVIDER may enter into. The PARTIES agree the collateral agent (or its designee or assignee) shall be entitled to enforce this AGREEMENT in its own name and to exercise any and all rights of the PROVIDER under this AGREEMENT in accordance with the terms hereof (either in its own name or in the name of the PROVIDER, as the collateral agent may elect), and the PARTIES agree to comply and cooperate in all respects with such exercise.  Without limiting the generality of the foregoing, the collateral agent (or its designee or assignee), shall have the full right and power to enforce directly against the CLIENT all obligations of the CLIENT under this AGREEMENT and otherwise to exercise all remedies available to the PROVIDER hereunder, and to make all demands and give all notices and make all requests (either in its own name or in the name of the PROVIDER, as the collateral agent may elect) required or permitted to be made or given by the PROVIDER under this AGREEMENT, and the CLIENT acknowledges and agrees that any such action taken by the collateral agent shall be deemed effective for all purposes of this AGREEMENT to the same extent as if such action had been taken directly by the PROVIDER.  If the CLIENT shall receive inconsistent directions under this AGREEMENT from the PROVIDER and the collateral agent, the directions of the collateral agent shall be deemed the superseding directions (so long as such directions are consistent with the provisions of this AGREEMENT) and the CLIENT shall accordingly comply with such directions of the collateral agent.

## 13.  MODIFICATIONS

Either party may request modifications/amendments to this AGREEMENT, however, no change or addition to this AGREEMENT shall be valid or binding upon either party unless such change or addition be in writing and signed by both PARTIES.  Such amendments shall be attached to and made a part of this AGREEMENT.

## 14.  NOTICE

By executing the AGREEMENT, the PARTIES agree to the terms set forth above and all notices required for in the AGREEMENT shall be sent by certified mail, return receipt or overnight delivery with signature to the addresses designated for the PARTIES on the first page of this AGREEMENT.

F - 4

Document ID: e438c09f-8db1-44f3-b330-20cd4f0216dc

## 15. <u>ATTORNEY'S FEES AND COSTS</u>

If any legal proceeding is brought for the enforcement of this AGREEMENT, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this AGREEMENT, the prevailing party shall be entitled to recover from the other party, in addition to any other relief to which such party may be entitled, reasonable attorney's fees and others costs incurred in such action or proceeding.

## 16. <u>JURISDICTION</u>

This AGREEMENT has been and shall be construed as having been made and delivered within New York State, and it is agreed by the PARTIES hereto this AGREEMENT shall be governed by, and construed and enforced in accordance with, the substantive laws of New York State, without regard to any conflicts of law provisions thereof that would result in the application of the laws of any other jurisdiction. Any action of law, suit in equity, or judicial proceeding for the enforcement of this AGREEMENT or any provisions thereof, shall be instituted and maintained only in any of the courts of competent jurisdiction in New York County, New York State.

## 17. <u>SEVERABILITY</u>

It is understood and agreed by the parties hereto that if any part, term or provision of this AGREEMENT is held by the courts of the United States to be illegal, the validity of the remaining provisions shall not be affected, and the rights and obligations of the PARTIES shall be construed and enforced as if the AGREEMENT did not contain the particular provision held to be invalid.

If it should appear that any provision hereof is in conflict with any statutory provision of New York State, said provision which may conflict therewith shall be deemed inoperative and null and void insofar as they may be in conflict therewith, and shall be deemed modified to conform to such statutory provision.

## 18. <u>ENTIRE CONTRACT</u>

The PARTIES agree this AGREEMENT is the complete expression of the terms hereto and any oral representations or understandings not incorporated herein are excluded. Further, any modification of this AGREEMENT shall be in writing and signed by both PARTIES. Failure to comply with any of the provisions stated herein shall constitute material breach of contract and cause for termination. It is also agreed by the PARTIES the forgiveness of the nonperformance of any provision of this AGREEMENT does not constitute a waiver of the provisions of this AGREEMENT.

## 19. <u>EXECUTION OF AGREEMENT</u>

The AGREEMENT may be executed in counterpart with facsimile copies of signatures that shall serve as acceptable substitutes for original signatures and shall be legally binding.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK]

F - 5

Document ID: e438c09f-8db1-44f3-b330-20cd4f0216dc

IN WITNESS WHEREOF, the parties hereto have caused this AGREEMENT to be executed.

***CLIENT:***

_____
DATE

███████████
STUDENT NAME

MARTINE & SCOTT THOMAS
CLIENT NAME

*Martine Thomas*
_____
CLIENT SIGNATURE

***PROVIDER:***

*Peter Lam*
_____
Account Manager/Authorized Signature

Peter Lam
Account Manager/Authorized Signatory Name
Sisters Travel and Transportation Services, LLC
2585 Broadway #240, New York, NY 10025

F - 6

Document ID: e438c09f-8db1-44f3-b330-20cd4f0216dc



## Completed Document Audit Report
Completed with SignWell.com

### Title: ██████████ 24-25 AGREEMENT

Document ID: e438c09f-8db1-44f3-b330-20cd4f0216dc

Time Zone: (GMT+00:00) Coordinated Universal Time

---

## Files

██████████ 24-25 AGREEMENT.docx                                    Jun 15, 2024 18:15:38 UTC

## Activity

| | | |
|---|---|---|
| **Sisters Travel and Transportation Services** | created the document | Jun 15, 2024 18:16:01 UTC |
| IP: 108.29.32.84 | | |
| **Sisters Travel and Transportation Services** | sent the document to sisterstravelllc@gmail.com and martinenscottthomas@gmail.com | Jun 15, 2024 18:41:58 UTC |
| IP: 108.29.32.84 | | |
| **Martine Thomas** | first viewed document | Jun 15, 2024 19:30:26 UTC |
| IP: 2607:fb91:3198:4cd1:4cbb:8eff:fee4:1a81 | | |
| **Martine Thomas** | signed the document | Jun 15, 2024 19:30:38 UTC |
| IP: 2607:fb91:3198:4cd1:4cbb:8eff:fee4:1a81 | | |
| **Sisters Travel and Transportation Services** | first viewed document | Jun 17, 2024 15:11:30 UTC |
| IP: 158.222.168.132 | | |
| **Sisters Travel and Transportation Services** | signed the document | Jun 17, 2024 15:11:55 UTC |
| IP: 158.222.168.132 | | |

F - 7