EXHIBIT 3

# LIBERTY & FREEDOM
## LEGAL GROUP
### Empowering YOUR Voice through Civil Rights Advocacy

July 2, 2024

**Sent Via E-Mail: (IHOQUEST@SCHOOLS.NYC.GOV)**

Impartial Hearing Office
New York City Department of Education
131 Livingston Street, Room 201
Brooklyn, New York 11201

**DUE PROCESS COMPLAINT - SCHOOL YEAR 2024-2025**

Student:
NYC ID#:
DOB:
Parent/Guardian:          Marlene Vasquez
Home Address:
School:                   International Academy for the Brain ("iBRAIN")

To Whom It May Concern:

      The Liberty and Freedom Legal Group, Ltd. ("Counsel"), represents the above-named Student ("Student" or "      " and his parent/guardian Marlene Vasquez ("Parent") (collectively "Clients") in matters pertaining to the classification, program, placement, and implementation of special education and related services for the Student for the 2024-2025 extended school year ("24/25 ESY").

      The New York City Department of Education ("DOE") has procedurally and substantively denied the Student a Free Appropriate Public Education ("FAPE") as mandated by federal law, for the 24/25 ESY. Accordingly, we write to request an impartial hearing pursuant to Section 1415 of the Individuals with Disabilities Education Act, 20 U.S.C. §1400, et seq. ("IDEA"), Article 89 of the New York State Education Law, and Part 200.5 of the Regulations of the New York State Commissioner of Education.

      Please note, as per 34 C.F.R. §300.510(a)(1), and consistent with 20 U.S.C. §1415(f)(1)(B)(i), within fifteen (15) days of receiving notice of the Parent's Due Process Complaint ("DPC") and prior to the initiation of an impartial due process hearing under 34 C.F.R. §300.511, the DOE must convene a meeting with the Parent and the relevant members of the IEP Team who have specific knowledge of the facts identified herein. The Parent requests an immediate Resolution Meeting. In the event DOE fails to hold the Resolution Meeting within fifteen (15) days of receipt of the Parent's DPC or fails to participate in the Resolution Meeting,

1

**Address:**

300 East 95th Street
Suite 130
New York, NY 10128

**Phone:**

646-850-5035

then the Parent is requesting the Impartial Hearing Officer ("IHO") start the impartial hearing timeline immediately as per 34 C.F.R. §300.510(b)(5); 8 N.Y.C.R.R. §200.5(j)(2)(vi)(b).

The Parent also requests that the Impartial Hearing Office expedite this DPC by scheduling a pre-hearing conference immediately to address the ongoing violations of state and federal law as outlined below. Our Clients request that any Impartial Hearing be open to the public as per 34 C.F.R. §300.512(c).

## **PENDENCY**

Our Clients request an interim order of pendency pursuant to federal and state special education law. Specifically, the IDEA and New York Education Law both contain "stay-put" provisions which give the child the right to remain in his or her current educational placement at public expense during the pendency of any administrative or judicial proceedings. 20 U.S.C. §1415(j); N.Y. Educ. Law 4404(4). Thus, the law allows the Student to remain in his "last-agreed-upon placement" until the impartial hearing process (including all appeals) is complete, unless the Parent and the DOE otherwise agree in writing.

As per 20 U.S.C. §1415(j),                pendency entitlements are automatic upon the filing of this Due Process Complaint ("DPC") and are required to be implemented by the DOE as a matter of law without the necessity of any application, motion, or other showing by Counsel, until there is a final order.

The DOE was put on notice through the Ten-Day Notice filed by the Parent (see Exhibit A) that the Parent was asserting their "stay-put" rights. While not required, attached is a Pendency Form based on the DOE's previous forms outlining the basis for pendency and the pendency program (see Exhibit B). The legal basis for pendency for this Student is attached as Exhibit C. The DOE has not responded to the Parent's Ten-Day Notice, nor have they made any indication they will begin implementing the Student's Pendency Placement.

Due to the DOE's history of failing to automatically implement the Student's pendency in previous school years, we respectfully request an immediate pendency hearing so an Interim Order on Pendency can be issued by the Impartial Hearing Officer ("IHO"). Without the implementation and honoring of the statutory entitlement of pendency, the Student will suffer from the lack of funding for the services and program at iBRAIN. We are providing a Draft Interim Order on Pendency (see Exhibit D), which includes:

- Funding for the cost of tuition, and supplemental services, where applicable, to be paid directly to the International Academy for the Brain ("iBRAIN") pursuant to the enrollment agreement between the Parent-Petitioner and iBRAIN (see Exhibit E) as outlined in Petitioner's DPC; and,
- Funding for transportation services, as well as all services necessary to said transportation, to be paid directly to the transportation provider, pursuant to the transportation contract between the Parent-Petitioner and the transportation company (see Exhibit F) as outlined in Petitioner's DPC.

2

## DISPUTED ISSUES

This DPC includes three sections: (I) a description of ███ educational needs and abilities; (II) an enumeration of the ways by which DOE failed to meet its obligation to provide ███ with a FAPE; and (III) a proposal for how this failure may be remedied.

## I.  STUDENT'S EDUCATIONAL NEEDS AND ABILITIES

███ suffers from a brain injury resulting in severe impairments in the following areas: cognition, language, memory, attention, reasoning, abstract thinking, judgment, problem solving, sensory, perceptual and motor abilities, psychosocial behavior, physical functions, information processing and speech. ███ has been diagnosed with ███ Gastaut Syndrome, cerebral palsy, and infantile spasms.

Because of his severe brain injury, ███ is non-verbal and non-ambulatory, and requires a specialized educational program, supported by an extensive regimen of related services, in order to receive educational benefits and make progress. Additionally, because of the significant amount of related services and the care ███ requires to prepare to participate in his school day, and the care required to prepare him for dismissal, ███ requires an educational program that operates on an extended school day as part of an extended school year.

███ has intensive management needs, requiring a significant degree of individualized attention and intervention throughout the school day. While ███ is non-verbal, he is able to use visual eye gaze and facial expressions to communicate.

███ has attended iBRAIN since December 2022. Based on his needs, ███ requires a small, 8:1:1 class size that is highly structured and offers an educational program delivered *via* a direct instruction model, with a full-time 1:1 paraprofessional during the school day to assist with all school activities and activities of daily living activity and during transportation. ███ requires a modified environment reducing visual and sound distractions. He requires a two-person transfer to and from his wheelchair or other repositioning. Furthermore, because of his seizure disorder, ███ requires an air-conditioned environment to prevent additional seizures, including during academic and therapy periods, and transportation. He also needs the services of a school nurse to monitor his highly complex medical and health needs. In addition, periodic breaks, additional processing time for tasks, and purposeful repetition of tasks during therapy sessions and educational instruction are required to accommodate ███ intensive needs for him to receive educational benefits, access his program, and make progress.

███ requires an extensive regimen of related services, each provided in 60-minute sessions, including occupational therapy (OT), physical therapy (PT), speech and language therapy (SL), assistive technology (AT), Vision Education Services (VES), and music therapy (MT) to benefit from special education instruction, along with monthly Parent Counseling and Training (PCT). ███ also receives AT devices and services. All of his related services are provided on a push-in/pull-out basis so that ███ will be able to generalize skills across environments and locations.

3

## EDUCATIONAL PROGRAM HISTORY

As will be further demonstrated during the impartial hearing, the DOE failed to offer ▓▓▓▓ an appropriate educational program for the 24/25 ESY.

First, there were significant Procedural Violations of IDEA for all of the IEPs the DOE created for this Student which (a) impeded the Student's right to a FAPE; (b) significantly impeded the Parent's opportunity to participate in the decision-making process regarding the provision of a free appropriate public education to the Student; and (c) caused a deprivation of educational benefits.

These Procedural Violations include, but not are not limited to, a failure to: (1) Provide Procedural Safeguards Notice; (2) Conduct evaluation or reevaluation (at least every 3 years); (3) Provide Parent with mandated notices, such as, Meeting Notices, PWNs, IEPs, Evaluations, (4) Provide Parent with information on how to request an IEE at public expense; (5) Provide proper meeting notices/PWN; (6) Acknowledge/listen to/accommodate Parent's concerns at the IEP meeting; (7) Provide appropriate PWNs for each change or refusal or change proposed; (8) Place the Student in the least restrictive environment (LRE); (9) Develop an IEP for each school year at issue; (10) Include appropriate present levels of performance; (11) Identifying the Student's needs; (12) Include goals to match each of the Student's needs that are objectively written with a baseline of performance (objective means of measuring progress on a regular basis); (13) Include a section on Parent's concerns, or failure to include Parent's concerns and failure to inform Parent about this option; (14) Include or address assistive technology (AT) needs; (15) Include or identify all of the Student's management needs; (16) Clearly identify all services provided including Location, Frequency, Duration; (17) Explain whether Student is to be educated with non-disabled peers, and when; (18) IEP meeting notice and meeting failed to include mandated members of the CSE team and therefore failure to convene a properly composed CSE team without the Student's Special Education Teacher, Related Service Providers, Parent Member, among others; (19) Failure to follow proper procedures in developing an IEP; (20) Critical decisions made outside of the IEP team; (21) Critical decisions pre-determined; (22) Timely or actually conduct an annual CSE review and develop an IEP; and (23) Timely or actually provide an appropriate school location notice.

In addition, there are many Substantive Violations of the IDEA for each of the years the DOE actually developed an IEP for ▓▓▓▓ including, but not limited to: (1) the Student's disability and unique needs from that disability are not identified in the IEP; (2) there were no current or appropriate evaluations done prior to the development of each IEP; (3) an IEE should have been conducted; (4) the IEP does not fully explain each service the Student will receive and whether the teachers and providers are trained in that service; (5) the IEP does not provide training for (a) assistive technology, (b) two-person transfers, (c) seizures and other medical needs of the Student; (6) Some of the goals are not measurable or appropriate, or repeat year after year; (7) the IEPs do not reflect meaningful progress nor does the level of progress correctly reflect the Student's potential; (8) there are not appropriate accommodations on the IEP; (9) it is not clear how classwork, testing, and his curriculum are modified for this Student; (10) the Student is not

4

educated alongside non-disabled peers; and (11) the Parent's concerns are not included nor addressed.

**Early History**

███  received Early Intervention ("EI") services and speech and language therapy ("SL"), occupational therapy ("OT"), physical therapy ("PT"), and special instruction during the 2019-2020 school year. ███ then attended the Elizabeth Seton School, a special hospital-based preschool program in Westchester County, during the 2020-2021 school year. However, due to concerns related to the COVID-19 pandemic, Parent opted for ███ to attend Seton remotely for the school year.

███ later attended preschool at ADAPT, a special non-public pre-school located in the Bronx, during the 2021-2022 school year. Parent came to disagree with this placement because she did not believe that ███ was receiving sufficient services to address his needs. His teacher was often absent, and most of the time ███ was taught by teaching assistants.

On May 24, 2022, DOE convened a Committee on Special Education ("CSE") to develop a "Turning 5" IEP for ███ ("May 2022 IEP"). The CSE recommended a 12:1:4 class in a District 75 public school, with OT, PT, and SL each three times per week in thirty-minute sessions. Parent was concerned with the large class size. Parent also believed that the recommended related services were insufficient for ███

Despite ███ intensive need for assistance with self-care, and his need for individualized support in order to participate in his educational program, the CSE failed to recommend a 1:1 paraprofessional. Although the May 2022 IEP indicates that ███ was working on an "augmentation program," with switches and an iPad in preschool, the CSE also failed to recommend any assistive technology ("AT") devices or services. Further, the CSE failed to recommend a 1:1 travel paraprofessional, air conditioning, and limited travel time for special transportation services.

Parent visited the CSE's proposed school, P186X, Walter Damrosch School ("Damrosch"), prior to the start of the 22/23 ESY. Parent learned that Damrosch was "full," and that if ███ attended a District 75 school, he would have to attend at a different location, which did not have most of the resources that Damrosch had, such as an adapted playground. Parent was concerned that ███ would be exposed to loud noises, especially during lunch. ███ also experiences anxiety, and cannot be in crowded places. Crowded spaces and noises are also dangerous because it triggers seizures.

Parent disagreed with the May 2022 IEP and the District 75 placement, and began to research alternative placements for ███

In July 2022, ███ was evaluated by a team of professionals at iBRAIN, who determined that ███ required a specialized setting, with more frequent and longer duration of related service sessions, in order to receive educational benefits and make appropriate progress.

Thus, the Parent rejected the DOE IEP and unilaterally placed ███ at iBRAIN in November 2022. For the 2022-2023 school year at iBRAIN, ███ received an appropriate educational program that addressed all of ███ health and educational needs. The Student attended an 8:1:1 class, with direct and small group instruction, and he also received OT, PT, SL, vision education services ("VES"), and Music Therapy ("MT") in 60-minute sessions to allow for repetition, rest, transitioning, and reinforcing of skills. ███ also received access to AT devices and services. ███ related services were provided on a push-in/pull-out basis so that ███ would be able to generalize skills across environments, and not be at risk of becoming context dependent. Importantly, ███ also had the services of a 1:1 paraprofessional to support his needs in his school activities and activities of daily living.

At iBRAIN, ███ also received special transportation services, including a 1:1 travel paraprofessional, a lift bus with air conditioning and wheelchair accessible, and limited travel time in order to accommodate his individual needs.

## 2023-2024 School Year

The CSE convened on June 1, 2023, to create an IEP for ███ for the 2023-2024 extended school year. The Parent and ███ teacher and related service providers at iBRAIN attended and participated in the IEP meeting. The CSE agreed with iBRAIN's recommendations that ███ be classified as a student with a traumatic brain injury ("TBI") and that he receive related services in the same frequency and duration (i.e., 60 minutes) as he currently receives at iBRAIN. The CSE also agreed to a class size of 8:1:1 for ███ and for a 1:1 health paraprofessional.

However, Parent disagreed with DOE's failure to recommend music therapy. While Parent was informed that "music" was part of the curriculum in District 75, the "music" would not be provided by a licensed music therapist. As ███ has shown excellent progress with the MT he receives at iBRAIN and that MT assists ███ in other areas of his curriculum and services, Parent was especially dissatisfied with DOE's failure to recommend MT for ███

Parent also disagreed with the failure of the DOE to recommend AT services for ███ As ███ is non-verbal, the use of AT is the only way he can communicate and is a necessary related service for ███

Parent also disagreed with the recommendation of a District 75 school. In a District 75 school, ███ would not be placed with like peers nor receive the one-on-one attention that he needs in order to receive educational benefits. According to Part 200.6(h)(1-3) of the New York State regulations, "A special class shall be composed of students with disabilities with similar individual needs." By placing ███ in a classroom the DOE knew would not have students with similar needs constitutes a denial of FAPE.

DOE also failed to recommend an extended school day or appropriate special transportation services for ███ The DOE failed to recommend a 1:1 paraprofessional for

transportation, limited travel time, or an air-conditioned bus. Not only was this change not justified by any new information, it was harmful to █████████

Most compelling is that Parent did not receive a PWN or a SLL from the DOE for the 23/24 ESY. Parent had no recommended school to investigate and to send █████ for the beginning of the school year. This amounts to a per se denial of FAPE. As a result, Parent had no choice but to enroll █████ in a non-public school, and he was enrolled at iBRAIN.

## 2024-2025 School Year

The CSE convened on June 5, 2024 to develop an IEP for █████ for the 24/25 ESY. Parent attended the IEP meeting and actively participated. Parent disagreed with DOE's recommended IEP at the meeting.  The DOE changed its prior year class size recommendation from an 8:1:1 to a 12:1:(3+1) class size. Parent disagreed with the CSE recommendation for a 12:1:(3+1) classroom for █████ which would be too large and distracting, and not allow him to progress.

At the IEP meeting, the CSE also recommended the following related services:

> Occupational therapy (OT): 4 times per week for 60 minutes, individually, and 1 time per week in a group;
> Physical therapy (PT): 5 times per week for 60 minutes, individually;
> Speech-language therapy (SL): 4 times per week for 60 minutes, individually, and 1 time per week for 60 minutes, in a group; and,
> Vision education services (VES): 2 times per week for 60 minutes, individually.

The CSE also recommended a 1:1 paraprofessional. For special transportation accommodations, the CSE recommended only a 1:1 paraprofessional and a lift bus to accommodate a regular-size wheelchair. However, the CSE also failed to consider, much less recommend, an extended school day.

Parent disagreed with DOE's recommended IEP at the meeting.

The Parent also disagreed with the DOE's failure to recommend Music Therapy. While Parent was informed that "music" was part of the curriculum in District 75, the "music" would not be provided by a licensed music therapist. As █████ has shown excellent progress with the MT he receives at iBRAIN and that MT assists █████ in other areas of his curriculum and services, Parent was especially dissatisfied with DOE's failure to recommend MT for █████

Parent also disagreed with the failure of the DOE to recommend AT services for █████ As █████ is non-verbal, the use of AT is the only way he can communicate and is a necessary related service for █████

Parent also disagreed with the recommendation of a District 75 school. In a District 75 school, █████ would not be placed with like peers nor receive the one-on-one attention that he

needs in order to receive educational benefits. According to Part 200.6(h)(1-3) of the New York State regulations, "A special class shall be composed of students with disabilities with similar individual needs." By placing ██████ in a classroom the DOE knew would not have students with similar needs constitutes a denial of FAPE.

Additionally, the DOE failed to provide Parent with a Prior Written Notice ("PWN") and a School Location Letter ("SLL") for the 24/25 ESY. Thus, the Parent had no school to send ████ at the start of the extended school year.

At iBRAIN, ██████ attends an 8:1:1 class, with direct and small group instruction, and receives the following related services:

> OT: 5 times per week for 60 minutes, individually;
> PT: 5 times per week for 60 minutes, individually;
> SL: 4 times per week for 60 minutes, individually, and 1 time per week for 60 minutes, in a group;
> VES: 2 times per week for 60 minutes, individually;
> Music therapy (MT): 3 times per week for 60 minutes, individually, and 1 time per week for 60 minutes, in a group; and
> AT: 1 time per week for 60 minutes, individually.

████ related services are all provided on a push-in/pull-out basis to allow him to generalize skills in multiple environments.

At iBRAIN, ██████ also utilizes an AT device and receives support from a 1:1 paraprofessional for all activities of daily living and during his academic and related services. Additionally, ██████ receives transportation services, which include: a 1:1 Paraprofessional, a lift bus/wheelchair ramp, air conditioning, and limited travel time.

Parent remained willing to investigate a placement that the DOE would offer, but given the circumstances and ██████ conditions, Parent had no choice but to evaluate alternative options.

As a result of the issues noted above, Parent decided to re-enroll ██████ at iBRAIN and informed the DOE of this decision via a Ten-Day Notice ("TDN") on June 14, 2024, seeking the DOE to fund ████ program at iBRAIN.

## II.    DOE FAILED TO OFFER OR PROVIDE A FAPE TO STUDENT

The DOE failed to offer or provide ██████ with a FAPE because DOE failed to provide an IEP and placement uniquely tailored to meet ██████ needs for the 24/25 ESY. Additionally, our Clients challenge herein any and all IEPs offered to ██████ for the 2024-2025 extended school year, including, but not limited to the substance of the IEP as well as the school location to implement such IEP. This DPC is based on, but not limited to the following factors listed above,

as well as these additional specifics below, which have procedurally and substantively denied the Student a FAPE:

**A. <u>DOE FAILED TO RECOMMEND AN APPROPRIATE PUBLIC SCHOOL</u>**

    i.   DOE failed to provide a School Location Letter or a Prior Written Notice, thereby denying ███ a FAPE for the 24/25 ESY.

    ii.  A recommendation of a District 75 school will subject ███ to danger as he is non-verbal, non-ambulatory, and lacks safety awareness in order to properly protect himself.

    iii. DOE failed to recommend an appropriate school location for ███ for the 24-25 ESY.

    iv. DOE failed to recommend a school location where the proposed IEP could be implemented by its failure to recommend an extended school day. There are simply not enough hours in the regular school day to provide ███ with the program recommended by the proposed IEP. Thus, DOE's failure to recommend an extended school day constitutes a denial of FAPE.

**B. DOE FAILED TO RECOMMEND AN APPROPRATE CLASS SIZE**

    i.   DOE did not recommend an appropriate class size for ███ instead recommending a 12:1+(3:1) class.

    ii.  ███ requires a quiet, distraction-free environment in order to receive educational benefits and make progress.

    iii. ███ requires a small 8:1:1 class with intensive 1:1 attention from a special education teacher.

    iv. ███ presents with intensive management needs, which, pursuant to §200.6(h)(4)(ii)(b) of the Commissioner's Regulations, mandate placement in a class with <u>no more than eight students</u>.

    v.  The recommended 12:1+(3:1) in a District 75 public school does not provide ███ with the quiet, distraction-free environment he needs to receive educational benefits and make progress.

    vi. The proposed 12:1+(3:1) classroom in a District 75 public school is not appropriate.

        1. Pursuant to the Commissioner's Regulation §200.6, the size and composition of proposed classes shall be based on the "similarity of the individual needs of the students according to: (i) levels of academic or educational achievement and learning characteristics; (ii) levels of social development; (iii) levels of physical development; and (iv) the management needs of the students in the classroom."

        2. The majority of the students in District 75 12:1+(3:1) classes are

ambulatory, which indicates that ████ will not be placed with students who have similar needs and abilities, which is his entitlement under 8 N.Y.C.R.R. § 200.6(h)(3).

3. There is a wide range of academic, social, emotional, behavioral, physical, and developmental needs in the proposed District 75 12:1+(3:1) class.

4. The recommended classroom presents safety risks to ████ because a majority of the students in 12:1+(3:1) classes are ambulatory.

## C. DOE FAILED TO RECOMMEND APPROPRIATE RELATED SERVICES AND SUPPORTS

  i.   DOE's recommendations for related services were insufficient to confer appropriate academic or therapeutic benefit on ████

  ii.   DOE failed to recommend Music Therapy.

  iii.   DOE failed to recommend AT services.

## D. DOE FAILED TO RECOMMEND APPROPRIATE SPECIAL EDUCATION TRANSPORTATION SERVICES

  i.   DOE failed to offer an air-conditioned bus to ████ which he needs to prevent seizures.

  ii.   DOE failed to offer limited travel time to ████ Which would maintain his safety during travel.

  iii.   These denials of services were a denial of FAPE, because they placed ████ in danger during transportation.

## E. DOE FAILED TO EVALUATE ████ IN ALL AREAS OF SUSPECTED DISABILITY

  i.   DOE failed to conduct an AT evaluation.

  ii.   DOE failed to conduct a MT evaluation.

  iii.   DOE failed to provide sufficient evaluative data to support its IEP recommendations for ████

  iv.   DOE's evaluations failed to thoroughly assess ████ in all areas of his suspected disability.

  v.   DOE failed to adequately address the Parent's request to consider an NYSED-approved Non-Public School (NPS), by, inter alia, failing to conduct evaluations before the meeting in connection with an NPS placement, which is violative of the DOE's Standard Operating Procedures Manual ("SOPM").

  vi.   DOE also failed to follow its own procedures identified in the SOPM when considering an NPS placement, which shows that DOE ignored Parent's request for considering an NPS placement.

  vii.   DOE failed to conduct a psychological assessment completed

within three years or, if the school psychologist determined that this was unnecessary, a written report by the psychologists indicating the reasons the assessment was not needed before the IEP meeting;

viii.    DOE failed to assess ███████ specific educational needs for the last six months prior to the IEP meeting.

ix.    DOE failed to recommend an NPS program that would be appropriate for ██████ given that there was no appropriate DOE program.

x.    DOE failed to conduct a neuropsychological evaluation despite the complex nature of ████████ brain-based disorder.

xi.    DOE failed to evaluate ███████ vision needs.

xii.    Because Parents disagree with DOE's failure to conduct appropriate evaluations, Parents are now requesting an independent educational evaluation (IEE) in the form of an independent neuropsychological evaluation, to be conducted by a professional of Parents' choosing at that provider's normal and customary rate.

## F.    DOE DENIED PARENT MEANINGFUL PARTICIPATION IN THE IEP PROCESS

i.    By its failure to appropriately evaluate ███████ DOE failed to provide Parent with sufficient clinical evaluative material to understand the Student's needs and abilities.

ii.    By its failure to provide the Parent with a timely PWN and SLL, DOE denied the Parent's the right to meaningfully participate in the IEP process.

## G.    DOE PREDETERMINED THE OUTCOME OF THE IEP MEETING

i.    Despite the clear, unequivocal recommendations of ███████ teacher and therapists that he be placed in a small class so that he can benefit from instruction with minimal distraction, as well as Parent's statements that the Student would be endangered by a large class, DOE recommended a large, inappropriate, and dangerous 12:1:3+1 class in a D 75 school.

## iBRAIN is Appropriate for ██████

At iBRAIN, ███████ continues to receive special education programming, supported by appropriate related services that address his intensive management needs, that provide educational benefits to ██████ and allow him to make meaningful progress. He attends a small 8:1:1 class with peers who function on a similar level and who have similar needs and are working on similar goals.

11

**Equitable Considerations Favor a Full Award of Tuition, Related Services, and Transportation for ▮▮▮▮ at iBRAIN**

Parent has always made ▮▮▮▮ available for evaluations and/or observations by the DOE. Parent expressed that she was willing to investigate DOE's proposed public-school location but, for the 24/25 ESY, did not receive a school location recommendation prior to the start of the extended school year. Accordingly, any analysis of equitable considerations supports a full award of tuition and related services, including special transportation, for ▮▮▮▮ at iBRAIN.

## III.    PROPOSED RESOLUTION FOR DOE'S FAILURE TO PROVIDE A FAPE

In light of the above, DOE has failed to offer ▮▮▮▮ a FAPE for the 24/25 ESY. Furthermore, ▮▮▮▮ placement at iBRAIN for the 24/25 ESY is and continues to be appropriate to address ▮▮▮▮ academic, physical, and social/emotional needs, and is reasonably calculated to confer educational benefits upon ▮▮▮▮ Additionally, there are no equitable considerations which would bar direct/prospective payment for all costs associated with ▮▮▮▮ placement at iBRAIN, as, at all relevant times, our Clients have cooperated in the DOE/CSE review, development, and placement process.

Our Clients hereby reserve the right to raise any other procedural or substantive issues that may come to their attention during the pendency of the litigation of this matter, including, but not limited to: (1) challenging the qualifications of any of the DOE's proposed supervisors, teachers, paraprofessionals, and/or any other service provider who might have been assigned to work with Student; (2) challenging the appropriateness of DOE's recommended placement by claiming that it cannot or will not maintain an appropriate student-to-staff ratio for the entirety of the school day and that the Student's IEP can be implemented as drafted without an extended school day; (3) challenging the appropriateness of DOE's recommended placement by claiming that it will not or cannot provide ▮▮▮▮ with all of the related services he needs to make meaningful progress; and (4) challenging the appropriateness of the recommended school location by claiming that it does not have the appropriate facilities to effectively implement the DOE's proposed recommendations (e.g., AC, elevator access, therapy rooms).

To avoid prolonged litigation of this matter, Parent proposes the terms of settlement discussed below:

a. An interim order of pendency maintaining iBRAIN as ▮▮▮▮ pendency placement for the 2024-2025 extended school year;

b. An order declaring that DOE denied ▮▮▮▮ a FAPE for the 2024-2025 extended school year;

c. A determination that iBRAIN is an appropriate placement for ▮▮▮▮ during the 2024-2025 extended school year;

12

    d.   An order declaring that equitable considerations favor full funding by the DOE for ███████ placement at iBRAIN for the 2024-2025 extended school year;

    e.   An order directing payment by DOE directly to iBRAIN for the cost of Full Tuition, and the cost of related services, for the 2024-2025 extended school year in accordance with the enrollment agreement between the Parent and iBRAIN;

    f.   An order directing payment by DOE directly to the special transportation company for special education transportation services for the 2024-2025 extended school years with a 1:1 transportation paraprofessional, air conditioning, a lift bus, a regular-sized wheelchair, and limited travel time of 90 minutes in accordance with the terms of the transportation agreements between the Parent and the transportation company;

    g.   An order directing DOE to fund an independent psychological, neuropsychological, and educational needs assessment of ███████

Should this matter proceed to litigation and Parent is a prevailing party on any substantial issue, then we will additionally seek an award of attorneys' fees and the recovery of all related fees and disbursements as permitted by relevant statute.

Very truly yours,

/s:/ Erik Seidel
Erik Paul Seidel, Esq.
The Liberty and Freedom Legal Group, Ltd.
Attorneys for Parent
Email: hearings@pabilaw.org

**LIBERTY & FREEDOM**
**L E G A L   G R O U P**
Empowering YOUR Voice through Civil Rights Advocacy

June 14, 2024

**Sent Via Electronic Mail: (10daynoticecse9@schools.nyc.gov)**
New York City Department of Education
Committee on Special Education 9
333 Seventh Avenue, 4th Floor
New York, New York 10001

<u>**TEN-DAY NOTICE**</u>

Student Name: ███████
NYC OSIS ID Number: ███████
Date of birth: ███████
Parent(s)/Guardian(s): Marlene Vasquez
Home Address: ████████████████████████

To Whom It May Concern:

The Liberty and Freedom Legal Group, Ltd. ("Counsel"), represents the above-named student ("Student" or "██████ and their parent(s)/guardian(s) ("Parent") (collectively "Clients"), in matters pertaining to the classification, program, placement, and implementation of special education and related services for the Student.

Pursuant to 20 U.S.C. §1412 (a)(10)(C)(iii) and 34 C.F.R. §300.148 (d)(1)), and on behalf of our Clients, we are providing the New York City Department of Education, the Student's local educational agency ("DOE"), ten (10) business days' notice of the Parent's rejection of the most recent proposed DOE Individualized Education Program ("IEP"), recommended program and school placement, for the 2024-2025 extended school year ("ESY") because of the DOE's failure to offer or provide the Student with a Free Appropriate Public Education ("FAPE") and maintain the Student at their last agreed upon educational placement, the International Academy for the Brain, d/b/a iBRAIN, Ltd. ("iBRAIN"), while seeking public funding for the Student's placement. iBRAIN is located at 403 East 91st Street, New York, NY 10128, and is a specialized educational program designed to educate students, like the Student, who suffer from a brain injury or brain-based disorder. Also, no school location letter for the 2024-2025 ESY has been issued. If DOE recommends the same District 75 public school as last year, please note the Parent has previously rejected that location because it was not appropriate for the Student.

Parent is requesting the DOE to maintain this status quo during the pending impartial hearing process and any appeals, through the "stay-put" provision pursuant to 20 U.S.C. §1415 (j) and have included the DOE Pendency Form already pre-populated with this Ten-Day Notice, as Exhibit A. In order to maintain the Student in their pendency program, please be prepared to fully implement this pendency placement at the start of the extended school year.

This notice is sent in addition to the Parent having expressed their concerns, disagreements, and rejection of the Committee on Special Education's ("CSE") recommendations at the most recent

Individualized Education Program ("IEP") meeting. The Parent continues to request Independent Education Evaluations (IEEs) of the Student; to be conducted at public expense, in order to appropriately assess the Student in all areas related to their suspected disabilities, including, but not limited to neuropsychological, physical therapy, occupational therapy, speech-language therapy, special education and assistive technology assessments due to the lack of proper assessments conducted by the DOE prior to the development of the most recent IEP meeting.

The Student is a child who suffers from a brain-based injury and the Student's educational needs are multifaceted and complex, and the DOE's recommended program and placement will not appropriately address their educational needs for the 2024-2025 extended school year.

Based on the Parent's review of the proposed recommended program and placement for the Student, the proposed IEP to be implemented during the 2024-2025 extended school year is not designed to enable the Student to receive appropriate educational benefits or receive appropriate related services. The proposed District 75 public school placement recommendations cannot be implemented, as proposed in the IEP, during the regular school day. The Parent is also concerned about the appropriateness of the recommended placement for reasons including, but not limited to, class size ratio, class functional and academic grouping, staffing, accessibility, availability of adequate resources, and the lack of individualized attention and support. Further, the Parent is concerned the physical structure and facility of the proposed school location is not appropriate to address the Student's individual needs.

Our Clients remain willing and ready to entertain an appropriate public or approved non-public school placement that can provide the required intensive academic and related services program the Student requires. Accordingly, the Parent requests the CSE reconvene for this purpose once the IEEs have been completed in order to develop an appropriate IEP. At this time, however, the Parent has no choice other than to re-enroll the Student in iBRAIN, which is an appropriate placement for the Student and is the last agreed-upon placement between the Parent and the DOE.

Very truly yours,

/s:/ Peter Albert
Peter Albert, Esq.
Liberty and Freedom Legal Group, Ltd.
Attorneys for Parents


cc:    Marlene Vasquez
vasquez22080@gmail.com

## __Pendency Implementation Form__

*Please complete the form above the bold line. The DOE will review all submissions prior to implementation.*

| Student Name | OSIS Number | DPC Number |
|---|---|---|
| ███████ | ███████ | |

1. The basis for pendency is:    Unappealed FOFD IHO Case No. 244571, 7/3/2023

2. The pendency program consists of the following:

| Tuition | | |
|---|---|---|
| **School Name** | **10- or 12-Month Program** | **Other Notes** |
| International Academy for the Brain (iBRAIN) | 12-month program | Direct payment of Full Tuition to iBRAIN as per the terms of the enrollment contract between iBRAIN and parent |

| Services | | | | |
|---|---|---|---|---|
| **Service or Item** | **Ratio and Frequency** | **10- or 12-Month Program** | **DOE or Private Provider** | **Private Provider Name and Rate** |
| Special Transportation services | Daily; Round-trip for all school days | 12-month | Private | Direct payment to Sisters Travel and Transportation Services, LLC as per the terms of the transportation agreement with the parent |
| | | | | |

Form submitted by: Peter Albert, July 2, 2024, Parents' Counsel

---

For DOE use only:

The above program should be implemented as pendency

Pendency starts on: July 2, 2024
The date the DPC was filed: July 2, 2024


_____        _____
DOE Reviewer                Date

B - 1

FINDINGS OF FACT AND DECISION - 244571

<u>FINDINGS OF FACT AND DECISION</u>

|  |  |
|---|---|
| Case Number: | 244571 |
| Student's Name: | ███████ |
| Date of Birth: | ██████ |
| District: | 2 |
| Hearing Requested by: | Parent |
| Date of Hearing: | May 4, 2023 |
| Record Close: | May 20, 2023 |
| Hearing Officer: | Peter D. Hoffman |

C - 1

FINDINGS OF FACT AND DECISION - 244571

**NAMES AND TITLES OF PERSONS WHO APPEARED**

(All present by video or telephone)

**For the Student:**
ZACK ZYLSTRA, Law Clerk
MARLENE VASQUEZ, Parent
TIFFANY SEMM, Special Education Director, iBRAIN 2

For the Department of Education:
THERESA GENTHE, ESQ., Attorney

WITNESSES:

Marlene Vasquez
Tiffany Semm

**INTRODUCTION**

This case was brought before me pursuant to appointment by the New York City

Department of Education (DOE) under the Individual with Disabilities Education Act (IDEA), 20

United States Code §1415(f)(1). The hearing demand / complaint letter was filed by the parent on

January 4, 2022. P-A. The hearing was held on May 4, 2023. There were 10 exhibits from the

parents and 6 exhibits from the district. The parents had two witnesses and the district had none.

The parents are demanding the following relief:

a.  An Order declaring that DOE denied Student a FAPE during the 22/23 SY;

b.  A determination that iBRAIN is an appropriate placement for ████

c. An Order directing payment by DOE directly to iBRAIN for the cost of Full Tuition
for the 22/23 SY, in addition to the costs of related services, 1:1 private duty nursing
services, and a 1:1 paraprofessional, as needed;

d. Direct payment/prospective funding of special education transportation with limited
time travel, a 1:1 transportation nurse and/or paraprofessional, air conditioning, a lift
bus, oxygen, and a regular-sized wheelchair;

e. Reconvene a new IEP meeting to address changes if necessary;

FINDINGS OF FACT AND DECISION - 244571

 

 

      f. An Order directing DOE to fund an independent neuropsychological evaluation of ██████ to be conducted by an independent professional of Parent's choice at that provider's normal and customary rate.

**JURISDISCTION**

      A decision in this matter is being rendered, pursuant to the Individuals with Disabilities

Education Act, (IDEA), 20 U.S.C. § 1400 et seq., and its implementing regulations, 24 C.F.R.

§300 et seq., and the New York State Education Law, Educ. Law Art 89 § 4404 et seq., and its

implementing regulations, 8 N.Y.C.R.R. § 200.

**BACKGROUND / FINDINGS OF FACT**

      The student is a six-year-old boy. P-B. The parent described her son as follows:

> "██████ suffers from a brain injury resulting in severe impairments in the
> following areas: cognition, language, memory, attention, reasoning, abstract
> thinking, judgment, problem solving, sensory, perceptual and motor abilities,
> psychosocial behavior, physical functions, information processing and speech.
> ██████ has been diagnosed with ████ Gastaut Syndrome, cerebral palsy, and
> infantile spasms. ██████ is nonverbal and non-ambulatory and requires a highly
> specialized educational program."

P-K, ¶¶2 and 3.

      A school psychologist for United Cerebral Palsy examined and reported on the student in

2022. D-5. "Infantile Spasms … , Cerebral Palsy … , and ████ Gastaut Syndrome, which is

associated with infantile spasms." D-5, p.1. ██████ is not ambulatory and upper body movement is

limited. D-5, p. 1. He has little ability to understand spoken language but speech is limited to one

word at a time. D-5, p.1. The student's adaptive skills are within the low range and he is in the

moderate range of Intellectual Disability. D-5, p.3. The student must eat pureed food and he is

dependent on adults for bathing, toileting needs ands dressing. D-5, p.3. Moreover he cannot sit

unsupported D-5, p.4. The school psychologist concluded that the student as follows:

> "In sum, ██████ currently presents as a boy who has significant limitations in his
> daily functioning in all developmental areas, and he will need and benefit from

C - 3

FINDINGS OF FACT AND DECISION - 244571

> wraparound services in as many areas of his life as appropriate and possible to
> help him and his family to care for him, attend to his needs, and help him learn
> and grow over the next several years."

D-5.

In the spring of 2022, a CSE Meeting was held to develop an IEP and placement for the

student for the 2022-2023 school year. D-1. The parent rejected the IEP largely on the basis of the

classroom ratio and the frequency of services to be provided. P-K, ¶6. On August 25, 2022, the

parent provided the district with Ten Day Notice that the parent was rejecting the IEP and the

placement and instead placing the student at IBrain.

The student did not start at IBrain until November 2022. P-K, ¶10. The program at IBrain

is supported by a detailed seventy-one page IBrain IEP. The IEP describes the child and his

disabilities. The student is in a twelve-month program at IBrain with a 1:1 paraprofessional. He has

speech, occupational therapy, music therapy, physical therapy, feeding therapy, assistive

technology visual training and parent counseling and training. All of which have goals for the

services and academics and a page listing the names of the providers and their credentials. This

includes assistive technology with a 1:1 paraprofessional and transportation. The IEP also details

the student's progress and notes progress by the student. P-G.

**STANDARD OF REVIEW**

This is largely a tuition reimbursement matter. The Supreme Court established a three-part

test to determine whether a district may be required to reimburse parents for their expenditures for

private school: (1) was the IEP proposed by the school district inappropriate; and (2) was the

private placement appropriate to the child's needs and (3) whether equitable considerations favored

reimbursement, *Board of Educ. of the Hendrick Hudson Cent. School District v. Rowley*, 458 U.S.

176, 179 (1982), *Gagliardo v. Arlington Central School District,* 489 F. 3d 105, 111 (2nd Cir.

C - 4

2007), *Burlington School Comm. v. Mass. Dept. of Ed.,* 471 US 359, 370, (1985), *Florence County School District Four v. Carter*, 510 U.S. 7, 12-16, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993). This is known as the *Burlington / Carter* test.

In *Jennifer D. As Parent of Travis D. v. New York City Department of Education*, 550 F. Supp. 2d 420 (S.D.N.Y. 2008), the Court found that the parent carried her burden to establish that the unilateral placement program was specially designed to meet her son's needs because it provided a sufficiently structured environment with specific services. If the two-part *Burlington* test is satisfied, the Court has discretion to consider relevant equitable factors. *Jennifer D.* at 429.

An IHO's inquiry into matters brought pursuant to the IDEA involves two distinct elements. First, the hearing officer must determine whether the school system has complied with the procedures set forth in the IDEA. *Rowley* at 176. Second, the IHO must assess whether the IEP developed through those procedures was reasonably calculated to enable the child to receive educational benefits. *Id.*

A procedural violation can be denial of a FAPE if it: (1) impeded the child's right to a FAPE; (2) significantly impeded the  parents' opportunity to participate in the decision-making process regarding the provision of a [FAPE]; or (3) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii);  *A.D.  v. New York City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 38757 (S.D.N.Y. Mar. 19, 2013). Internal quotations omitted). "Multiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not." *Id.*

The Supreme Court in *Rowley* did not explain what educational benefits means but this changed with its decision *Endrew F. V. Douglas County Sch. Dist. RE-1*, 137 S. Ct. 988. (2017). The Court held that an IEP and placement must "be reasonably calculated to enable a child to make

C - 5

progress appropriate in light of the child's circumstances" Id. at 999. *Endrew* also clarified what deference meant in IDEA cases by requiring that the actions of the authorities be "cogent and responsive." Id. at 1002.

**DISCUSSION**

**POINT I**
**THE DISTRICT FAILED TO OFFER A FAPE TO THE STUDENT**

The district has the burden of proof to show that their program will provide FAPE. The district did not meet its burden of proof as it concerns the public school offering a free and Appropriate Education. The burden of proof is on the district to show that its IEP and program are appropriate. New York Educ. Law. §4404(1)(c). The district did not even try to address the burden of proof to show that the IEP and program offered were appropriate for the student. The district conceded prong I of the *Burlington / Carter* test. T:19-20. Therefore, the district failed to show that the IEP and / or program offered provided FAPE to the student

> Procedural violations warrant relief only if they "'(I) impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of [a FAPE] to the parents' child; or (III) caused a deprivation of educational benefits.'" *Id.* (alteration in original) (quoting 20 U.S.C. § 1415(f)(3)(E)(ii)).

*C.H. v. Goshen Cent. Sch. Dist.*, 2013 U.S. Dist. LEXIS 44991, *23, (SDNY, 2013). *R.E. v. New York City Dep't. of Educ.*, 694 F. 3d 167, 192-193 (2d Cir. 2012) (footnote and citations omitted). Procedural violations are not present. Here the district failed to meet its burden to prove that it provided a FAPE to the student because the district failed to put on any case whatsoever.

**POINT II**
**THE PARENTS SHOWED THAT THE UNILATERAL PLACEMENT IS APPROPRIATE**

There is a totality of the circumstances test that includes but is not limited to:

> "No one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits.

C - 6

> Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs. To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction."

*Frank G. v. Bd. of Educ.*, 459 F.3d 356, 364-365 (2d Cir. 2006). Also see *Gagliardo v. Arlington Cent. Sch. Dist.,* (2d Cir. 2006), 489 F.3d 105, 112, 2007 U.S. App. LEXIS 12451, *18-19.

First, parents are not held as strictly to the standard of placement in the least restrictive environment (LRE) as school districts and the fact that a school educates only students with disabilities is not a bar to reimbursement. *W.S. and L.S.* on behalf *of C.S. v. Rye City School District,* 454 F. Supp. 2d 134, 139 (S.D.N.Y., 2006), citing *M.S. v. Bd. of Education of the City School District of Yonkers*, 231 F. 3d 96, 105 (2d Cir., 2000). Parents seeking reimbursement bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate. *M.S. v. Yonkers Bd. of Educ*., 231 F.3d 96, 104 (2nd Cir. 2000). With limited exceptions, "the same considerations and criteria that apply in determining whether the [s]chool [d]istrict's placement is appropriate should be considered in determining the appropriateness of the parents' placement." The issue is whether a public or private placement is "reasonably calculated to enable the child to receive educational benefits." *Frank G.,* at 364, (quoting Rowley, at 207). A private placement meets this standard if it is "likely to produce progress, not regression." *Walczak v. Florida Union Free School Dist.,* 142 F. 3d 119, 130, (2d Cir., 1998).

The parent has the burden to establish that its choice of unilateral placement is appropriate for the student. As seen above, the placement is appropriate. While the district witness from the

C - 7

placement could not remember the certifications and licensing of the teachers and service providers the same can be found in the IBrain IEP. Moreover, the seventy-one page, IBrain IEP, P-G, shows in detail an appropriate program. Moreover, contrary to the district the IBrain IEP also shows that the student was making progress and receiving an educational benefit. The student is entitled to busing.

### POINT III
### NEUROPSYCHOLOGICAL EVALUATION

The district is correct as it concerns the psychological evaluation. The district did nothing to show that a neuropsychological evaluation was appropriate under these circumstances.

### POINT IV
### THE EQUITIES

The authority to grant reimbursement is discretionary and therefore when deciding on the extent of reimbursement to award parents, courts may take into account equitable factors. (Carter, 510 U.S. 7; Burlington at 369-70. Also see, G.B. v. Tuxedo Union Free Sch. Dist., 2010 U.S. Dist. LEXIS 124319 *61 (S.D.N.Y. Sept. 30, 2010); M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 68 (2d Cir. 2000); Frank G., 459 F.3d at 363-364; Gagliardo, 489 F.3d at 112. Under IDEA, the reimbursement may be reduced or denied if parents fail to make their child available for evaluation by the district, fail to provide notice of the unilateral placement or if the actions taken by the parents are found to be unreasonable.

Here, the parent did nothing to prevent the district from rendering an IEP, making a placement or providing services to the student. The parents attended CSE Meetings and actively participated. The parent provided a timely ten day notice to the district when she placed the student at IBrain. P-D. The equities favor the parent.

C - 8

FINDINGS OF FACT AND DECISION - 244571

**DECISION AND ORDER**

It is hereby ordered that the parents' application for services is hereby granted for the 2022-

2023, from November 1, 2023, school year as follows:

a.  An Order declaring that DOE denied student a FAPE during the 22/23 SY;

b.  A determination that iBRAIN is an appropriate placement for the student;

c. An Order directing payment by DOE directly to iBRAIN for the cost of Full Tuition
for the 22/23 SY, starting in November 2022, in addition to the costs of related services, 1:1
private duty nursing
services, and a 1:1 paraprofessional, as needed;

d. Direct payment/prospective funding of special education transportation, starting in
November 2022, with limited time travel, a 1:1 transportation nurse and/or paraprofessional, air
conditioning, a lift bus, oxygen, and a regular-sized wheelchair;

Dated:         July 3, 2023
               S. Salem, NY

_____
By,      Peter D. Hoffman, IHO

FINDINGS OF FACT AND DECISION - 244571

## <u>NOTICE OF RIGHT TO APPEAL</u>

Within 40 days of the date of this decision, the parent and/or the Public School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An Appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for proceedings before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

C - 10

FINDINGS OF FACT AND DECISION - 244571

**Parent Exhibits**

| PARENT EXHIBIT | DATE | DESCRIPTION | NUMBER OF PAGES |
|---|---|---|---|
| A | 01/04/22 | Due Process Complaint | 7 |
| B | 05/24/22 | DOE IEP 22/23 | 29 |
| C | 07/27/21 | DOE IEP 21/22 | 22 |
| D | 08/25/22 | Ten Day Notice 22/23 | 2 |
| E | 07/28/22 | IBRAIN Enrollment Contract | 7 |
| F | 10/17/23 | Sisters Transportation Agreement | 6 |
| G | 03/29/23 | IBRAIN IEP | 71 |
| H | 02/04/22 06/15/22 | Prior Written Notice/School Location Letter 22/23 | 10 |
| I | 09/16/22 | Determination Report | 1 |
| J | 04/27/23 | Affidavit Tiffany Semm | 5 |
| K | 04/27/23 | Affidavit Marlene Vasquez (Parent) | 3 |

## WITNESS LIST– IMPARTIAL HEARING # 244571

1.  Marlene Vasquez, Parent

2.  Tiffany Semm, Director of Special Education (iBRAIN)

C - 11

FINDINGS OF FACT AND DECISION - 244571

**DOE Exhibits**

| # | Document Description | Date | Page Count |
|---|---------------------|------|-----------|
| 1 | Individualized Education Program (IEP) | 05/24/2022 | 29 |
| 2 | Prior Written Notice Package | 05/31/2022 | 4 |
| 3 | Turning 5 School Location Letter | 06/15/2022 | 5 |
| 4 | Social History Update | 04/13/2022 | 2 |
| 5 | Psychological Evaluation | 02/28/2022 | 4 |
| 6 | Classroom Observation | 05/04/2022 | 2 |
| 7 | CPSE IEP | 07/27/2021 | 22 |

C - 12

**L.V. v. NYC Department of Education, 03 Civ. 9917 (SDNY)**

Parents of children with Individualized Education Programs who received or who may receive an order at the conclusion of an impartial hearing should read the attached notice about possible disclosure of information and documents about their children as part of a federal court litigation.

Translations in Spanish, Arabic, Bengali, Chinese, French, Haitian Creole, Korean, Russian, and Urdu are available on the DOE webpage at https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings

**Notice of Potential Disclosure of Student Education Records**

**Please read this notice carefully**. This is a message about possible disclosure of documents or data that might contain information about your child, if your child has been classified as a student with a disability and has been or may be the subject of a final Impartial Hearing Order.

**I.      Nature of the Lawsuit**

This lawsuit challenged the failure of the Department of Education ("DOE") of the City of New York to timely implement orders issued by impartial hearing officers in connection with impartial hearings held pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* and N.Y. Education Law § 4401, *et seq.* In 2007, the parties entered into a Stipulation of Settlement (the "Stipulation") in which the DOE agreed to timely implement these orders.

In January 2021, the Court granted plaintiffs' motion for the appointment of a special master. On April 14, 2021, the Court entered an Order appointing David Irwin of Thru-Ed as the Special Master.  On May 14, 2021, the Court entered an Order detailing the duties and authority of the Special Master which include, among other things, the authority to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders a. Pursuant to this Order, the Special Master may have access to education records of students, upon DOE's compliance with the Family Education Rights and Privacy Act (20 U.S.C. § 1232g; 34 C.F.R. Part 99) ("FERPA").

## II.    Data Ordered to Be Disclosed

In order for the Special Master to perform his duties, the Court has directed the DOE to provide the Special Master (and employees and consultants at Thru-Ed) with access to records containing confidential student record information, including, but not limited to, documents submitted in the impartial hearing process, impartial hearing orders, data about compliance, and students' special education documents, such as individualized education programs, evaluations, authorizations, invoices, etc. The Special Master is required to keep any student documents and information confidential. No student-specific information will be shared with plaintiffs' counsel unless the student's parent specifically consents. If there is any student-specific information in the Special Master's reports to the Court, that information would not be made public.

The Special Master will use this information only for his work to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders.  The disclosure of this information does not affect any of your rights as a parent to seek special education services for your child.

## IV.    Objections to Disclosure

If you agree to the disclosure of this information to the Special Master, you do not need to do anything more.

If you do not want your child's information shared with the Special Master, you must object to this disclosure by submitting an objection to DOE's attorney, addressed to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York  NY  10007

or via email at LVObjection@law.nyc.gov.  Please reference the *LV v. DOE* lawsuit (Case No. 03-9917) when writing.  An Objection Form accompanies this Notice, though no written objection will be rejected if it is not submitted on this form.  If you object, no records containing you and your child's personally identifiable information or other FERPA-protected information will be provided to the Special Master, although nominal and incidental disclosure of your child's name may occur.  **Any objections must be received by December 3, 2021 or for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order**.

**If you would like more information about this notice, please contact the attorneys for plaintiffs**, **Rebecca Shore, of Advocates for Children of New York, Inc. at 646-532-6078.**

C - 14

**OBJECTION TO DISCLOSURE OF RECORDS**
**LV v. DOE, 03 Civ. 9917 (SDNY)**

If you agree to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, you do not need to complete this form.

If you object to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, please compete and return this form to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York, NY  10007

or via email at LVObjection@law.nyc.gov

Child's name: _____

Name: _____

Address: _____

Impartial Hearing Order Case # (if known): _____

Date of Order (if known): _____

If you object to the release of your confidential information, please check the line below:

_____    I do not agree to have my confidential records disclosed to the Special Master in *L.V. v. DOE*.

_____                    _____
        Date                                            Please sign here

C - 15

If you object to the release of information, your objection must be received by December 3, 2021 or, for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order.

    \*   \*   \* If you do not notify the DOE of your objections to the documents being released, you child's information will be provided to the Special Master appointed in *LV v. DOE*, 99 Civ. 9917 (SDNY) and/or consultants and employees of Thru-Ed. The information will remain confidential and the disclosure of this information will not affect any of your rights to seek special education services for your child.

C - 16

| |
|---|
| للاطلاع على هذا المستند باللغة العربية، قُم بزيارة الموقع الإلكتروني https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Yg͢Ä·s Ä̀·t ·Ä·t̀ n͢a'l á̀ https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings n͢a'f́̀ |
| 若要以中文查看，請上網到 https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Pour consulter ce texte en français, allez sur https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Pou wè tèks sa a an kreyòl ayisyen, ale sou https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| 본 문서를 한국어로 보시려면 다음 웹사이트를 이용하십시오: https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Для просмотра документа на русском языке посетите https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| Para ver este contenido en español, visite https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings |
| اس کو اردو میں دیکھنے کے لیے https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings پر جائیں |

C - 17

NEW YORK CITY OFFICE OF ADMINISTRATIVE
TRIALS AND HEARINGS (OATH)
SPECIAL EDUCATION HEARINGS DIVISION
-------------------------------------------------------------------X
In the Matter of the Due Process Complaint of
Marlene Vasquez and Ronny Cruz ("Parent"), as Parent/Guardian of

L.C. ("Student"), and Individually;


                   Petitioners,                            **ORDER OF PENDENCY**


   -against-

                                                  **IHO Case No.**

 **THE NEW YORK CITY DEPARTMENT
OF EDUCATION,**                          **IHO**

               Respondent.
-------------------------------------------------------------------X

      This Order addresses a Student with disabilities whose Parent challenges the Individualized Educational Program ("IEP") and placement proposed for the 2024-2025 extended school year by Respondent The New York City Department of Education ("DOE"). Through this Order, the Parent seeks to enforce the Student's pendency rights under § 1415(j) of the Individuals with Disabilities Education Act ("IDEA") and Section 4404(4) of the New York State Education Law, which entitle the Student to remain in his/her current educational placement, at public expense, during the pendency of their administrative and/or judicial proceeding.

      Under IDEA, the pendency inquiry identifies the Student's then-current educational program/placement. *Mackey v. Bd. of Educ., Arlington C.S.D.*, 386 F.3d 158 (2d Cir. 2004), *supplemented*, 112 F. App'x 89 (2d Cir. 2004). Although not defined by statute, the phrase "then current educational placement" has been found to mean the last agreed-upon placement at the moment when the due process proceeding is commenced. *Murphy v. Arlington C.S.D.*, 86 F. Supp. 2d 354 (S.D.N.Y. 2000), *aff'd*, 297 F.3d 195 (2d Cir. 2002).

      The Student's "last agreed upon placement" is at the International Academy for the Brain ("iBRAIN"). This placement is based upon the Unappealed FOFD IHO Case No. 244571, 7/3/2023 which found that: 1) DOE denied Student a FAPE; 2) iBRAIN was appropriate for Student; and, 3) equitable considerations supported a full award of direct payment of tuition and related services, including special transportation for Student at iBRAIN.

      Unless otherwise excluded, Pendency includes all costs of special education and related

services, including transportation. Under the IDEA, "related services" include transportation, and under N.Y. Educ. Law, "special education" includes transportation. When a student receives special education services, an order on pendency– without transportation—would render the award meaningless.

For the preceding reasons, it is hereby ORDERED that effective July 2, 2024, and during the pendency of all Due Process Proceedings relative to IHO Case No.          , the 2024-2025 Extended School Year, and all administrative and judicial proceedings thereafter, the DOE shall fund the Student's placement at iBRAIN. This placement includes the following:

- Funding for the cost of Full Tuition to be paid directly to the International Academy for the Brain ("iBRAIN") pursuant to the enrollment agreement between the Parent-Petitioner and iBRAIN (see Exhibit E in Petitioners Due Process Complaint) as outlined in Petitioner's Due Process Complaint; and
- Funding for transportation services, as well as all services necessary to said transportation, to be paid directly to the transportation provider pursuant to the transportation contract between the Parent-Petitioner and the transportation company (see Exhibit F in Petitioners Due Process Complaint) as outlined in Petitioner's Due Process Complaint; and

Dated: _____        So Ordered: _____

IHO : _____

2

D - 2



Phone - 646-315-1548
Email - info@iBrainNYC.org
Web - www.iBrainNYC.org

**ANNUAL ENROLLMENT CONTRACT**

This is a contract ("Enrollment Contract" or "Agreement") between **Marlene Vasquez & Ronny Cruz** ("Parent(s)/Guardian(s)") and The International Academy for the Brain, dba iBRAIN Ltd ("iBrain") for the enrollment of ▉▉▉▉▉▉▉ ("Student") for the **2024 - 2025 school year** ("School Year"). The parties hereby agree to the following terms:

**<u>Enrollment Period</u>**

1. iBrain offers enrollment to Student for the extended school year ("School Year"), starting on July 2, 2024, and ending on June 27, 2025, subject to the terms and conditions set forth below.

**<u>Academic Program, Related and Other Services</u>**

2. Parent(s)/Guardian(s) attests they have reviewed the curriculum program for iBrain's educational and related services programs and certain related materials.

3. Parent(s)/Guardian(s) understands the academic and related service programs for Student for the School Year will be provided as follows:

    a. iBrain will provide the academic and related service programming as outlined in: (i) Student's most recent Individualized Education Program ("IEP") issued by the Student's local school district; or (ii) recommend an academic program that will be outlined in Student's iBrain IEP if the local school district's IEP has not been updated or if iBrain and Parent(s)/Guardian(s) disagree with the proposed academic program recommendation in Student's IEP issued by the local school district for the academic year. Where iBrain recommends changes to the Student's recent IEP, iBrain assumes all responsibility to defend against all challenges to the appropriateness of the changes it makes to Student's academic programming as reflected on the most recent IEP.

**<u>Tuition, Deposit and Related Service Fees</u>**

4. **Deposit:** Parent(s) agrees to pay an initial, non-refundable deposit of $100 ("Deposit") made payable to "International Academy for the Brain" for the 2024-2025 school year. The Deposit will be applied against the Full Tuition as outlined in Sections 7 and will be due the first day of school.

5. **Base Tuition Fees:** Base Tuition Fee for the iBrain program is **$213,000** for the School Year starting on July 2, 2024 and ending on June 27, 2025. The Base Tuition includes the cost of an individual paraprofessional, and school nurse as well as the academic programming outlined in Section 3.

6. **Supplemental Tuition Fees:** The Base Tuition cost does not include the cost of related services, transportation paraprofessional, any individual nursing services or assistive technology devices and

Document Ref: TXAVD-RBC2F-QU7A8-S424E

equipment. Supplemental Tuition includes the cost of the Student's related services programming such as physical therapy, occupational therapy, speech-language therapy, vision education services, assistive technology services, music therapy, hearing education services and parent counseling and training as outlined in Section 3. The total Supplementary Tuition Fees for the 2024-2025 school year is **$113,779.40.**

7. **Full Tuition:** Full Tuition for the 2024-2025 academic year is inclusive of Base Tuition Fees as described in Section 5 and Supplemental Tuition Fees as described in Section 6. The Full Tuition is **$326,779.40** shall be paid in three installments with the first payment of **$55,684.38** due by July 2, 2024, the second installment payment of **$104,041.87** due by September 5, 2024, and the third payment of **$167,053.15** due by January 2, 2025.

**Payment Terms**

8. **Payment Obligation**:  It is understood and agreed the enrollment of Student is for the full academic year and the obligation to pay tuition cannot be apportioned or mitigated except as expressly provided for herein. *i*Brain will not make any deductions, omissions, or refunds for excused or unexcused absences, withdrawal, suspension, or for any other reason, except as outlined in Sections 10 and 11.

It is understood Parent(s)/Guardian(s) may seek public funding from their local school district to pay for Student's Full Tuition due to *i*Brain for the School Year by asserting Student's due process rights.  In the event Parent(s)/Guardian(s) is required to file a due process complaint against the local school district seeking an Order on Pendency and/or Findings of Fact and Decision for funding, the tuition payment obligations will be suspended, except those obligations outlined in sections 8(a) and 8(b), until a final determination/decision is issued by an impartial hearing officer, state review officer, or state or federal court, and then all monies then-due will become immediately due within thirty (30) days of the final adjudication.

   a.  **Pendency Placement - Payment Obligations**: It is understood Parent(s)/Guardian(s) may seek public funding from the local school district to pay for Student's Full Tuition due to *i*Brain for the School Year by asserting Student's Due Process Rights under 20 U.S.C. § 1415[j], whereby the local school district is required to maintain Student in his/her last-agreed upon placement during the pendency of any impartial hearing proceedings ("Stay-put") which is automatic upon filing a Due Process Complaint ("DPC"). Upon filing the DPC and asserting the Stay-put provision ("DPC Date"), the payments obligations as outlined in this Enrollment Contract shall be due within 30 days of DPC Date, according to the terms herein. Payment obligations shall remain in effect until the Stay-put rights are no longer active.

   In the event the local school district does not comply with the Stay-put rights of Student and fails to make the payment obligations as outlined in this Enrollment Agreement, Parent(s) /Guardian(s): (1) may seek immediate enforcement of the Stay-put rights in state or federal court and MUST provide a payment schedule within two weeks of such enforcement action; (2), if Parent(s)/Guardian(s) does not seek enforcement within 14 days of the payment obligations becoming due, Parent(s)/Guardian(s) will be required to execute a payment schedule while the Student remains at iBRAIN; or, (3) Parent(s)/Guardian(s) will be required to establish payment plan and may withdraw Student by terminating contract per section 11.

   b.  **Order on Pendency Denied - Payment Obligations:** It is understood Parent(s)/Guardian(s) may seek public funding from the local school district to pay for Student's Full Tuition due iBrain for the School Year by asserting Student's Due Process Rights under 20 U.S.C. § 1415[j], whereby the

E - 2

Document Ref: TXAVD-RBC2F-QU7A8-S424E

local school district is required to maintain Student in his/her last-agreed upon placement during the pendency of any impartial hearing proceedings ("Stay-put") is automatic upon filing a Due Process Complaint ("DPC"). In the event Parent(s)/Guardian(s) seeks and is denied an Order on Pendency by an Impartial Hearing Officer, State Review Officer, or a state or federal court, for all or part of the Full Tuition funding from the local school district due under this Enrollment Contract, Parent(s)/Guardian(s) will be permitted to immediately withdraw Student from iBrain by terminating this contract per Section 11 within 30 days of receipt of the Order on Pendency. Parent(s)/Guardian(s) will be required to execute a payment schedule to comply with the contractual obligations based upon the financial need of Parent(s)/Guardian(s) for any balances due to *i*Brain on the date of withdrawal.

c. Late Payment Penalty. Upon the failure to pay in full any payment obligation due based on the terms of this Enrollment Contract ("Amount Outstanding") within seven (7) business days of the due date for such payment, a late payment penalty of ten percent (10.0%) of the Amount Outstanding (the "Late Payment Amount") shall immediately be added to the Amount Outstanding. The imposition of the Late Payment Amount shall be in addition to any other rights and remedies of iBRAIN under this Agreement. Any balances of any amount which remains unpaid, i.e., Amount Outstanding, including any Late Payment Amount, more than thirty (30) days after it is due shall accrue interest until paid at the rate equal to the lesser of two percent (2.0%) per calendar month or the maximum amount allowed under Applicable Law. However, in no event shall this interest provision be construed as a grant of permission for payment delays.

9. **Failure to Secure Tuition Funding:** In the event Parent(s)/Guardian(s) seeks a Findings of Fact and Decision, but is denied all or part of the Full Tuition funding from the local school district due under this Enrollment Contract by a final administrative or judicial decision, including all state and federal appeals resolving the claim for such funding, Parent(s)/Guardian(s) will be permitted to immediately withdraw Student from *i*Brain by terminating this contract per Section 11.

## Contract Release and Termination

10. **Release:** Parent(s)/Guardian(s) acknowledges that Parent(s)/Guardian(s) will be released from this Enrollment Contract without financial penalty or continuing responsibility for tuition payments outlined in this Enrollment Contract should the local school district offer a free appropriate public education to Student by the first day of the School Year as indicated in Section 1 and the Parent(s)/Guardian(s) provides notice as outlined in Section 11 prior to the first day of the School Year. Parent(s)/Guardian(s) may be released from this Enrollment Contract if the Student relocates outside of the local school district, or, if due to health reasons, Student is no longer able to attend *i*Brain, and Parent(s)/Guardian(s) provides notice as outlined in Section 11.

11. **Termination:** Parent(s)/Guardian(s) may terminate this Enrollment Contract by submitting a written Termination Notice per Section 25. The Termination Notice must, (a) be in writing, (b) dated, (c) state Student's name and (d) provide Parent(s)/Guardian(s)'s reasons for terminating the Enrollment Contract. The Termination Notice may be sent through the U.S. Postal Service via certified mail, return receipt, or Federal Express delivery service or by courier. If submitted through the U.S. Postal Service by First Class Mail, the Termination Notice shall be deemed received by *i*Brain five business days after the date that the Termination Notice is postmarked, consistent with Section 25.

If Parent(s)/Guardian(s) terminates this Enrollment Agreement, Parent(s)/Guardian(s) will forfeit Student's non- refundable Tuition Deposit set forth in Section 4 in its entirety and any other payments made per the

E - 3

Document Ref: TXAVD-RBC2F-QU7A8-S424E

terms of this Enrollment Agreement.

Applicable tuition refunds, if any, shall be determined as follows:

   A.  All pre-paid tuition fees will be refunded *if and only if* the written Termination Notice in the form stated above was RECEIVED on or before the first day of attendance by Student.

   B.  If written Termination Notice is received after the Student's first day of attendance, Parent(s) /Guardian(s) will be responsible for paying all tuition fees for the calendar month in which Termination Notice is received on a *pro rata* basis. Parent(s)/Guardian(s) also will be responsible for paying all outstanding tuition and fees then due and owing, if any, for all months prior to the month in which Termination Notice is received. All such fees shall be paid within ten (10) calendar days after Termination Notice is received by *i*Brain.

## School/Family Cooperation

12. **Parent(s)/Guardian(s) Must Cooperate with School District:**  In the event Parent(s)/Guardian(s) decides to seek direct funding from their local school district for the Student's placement and related services at *i*Brain, Parent(s)/Guardian(s) agrees to take all necessary steps to secure funding and to cooperate fully in the process required to secure such funding. In the event that Parent(s)/Guardian(s) does not cooperate with the process, *i*Brain may elect, upon 60 days' notice, to terminate Student's enrollment at *i*Brain.

## Conditions of Enrollment

13. Parent(s)/Guardian(s) hereby authorizes *i*Brain to conduct any interviews, medical examinations, psycho-educational evaluations, and/or related service evaluations necessary for the continued assessment related to Student; and Parent(s)/Guardian(s) authorizes *i*Brain to make necessary information regarding Student available to its staff and/or other paid or unpaid individuals working for or on behalf *i*Brain, including medical and dental consultants and other health care or educational professionals.

14. Parent(s)/Guardian(s) understands that *i*Brain will provide clinical and training services for the community and hereby authorize and consent to the provision of such services, including without limitation, observation, information sharing and trainee participation to the extent *i*Brain deems necessary for training students and staff of other agencies, as well as volunteers, and *i*Brain agrees to use discretion in selecting trainees and sharing information related to Student and to ensure that staff are made aware of the confidentiality of these matters.

15. **Compliance with Local School District Requirements**:  Parent(s)/Guardian(s) and *i*Brain agree to cooperate with respect to their interaction with the New York State Education Department and/or their local school district to ensure compliance with applicable laws, regulations and rules.

16. **Medical Releases**:  Parent(s)/Guardian(s) agrees to promptly sign a Health Insurance Portability and Accountability Act ("HIPAA") release form and a Family Educational Rights and Privacy Act ("FERPA") release form for the purpose of allowing *i*Brain to communicate with Student's related service therapists and medical providers and have access to Student's medical and therapy providers' records. Parent(s)/Guardian(s) agrees to inform *i*Brain if there are any changes to Student's medical conditions and/or changes to Student's medication regimen. Parent(s)/Guardian(s) further agrees that such information obtained or developed by *i*Brain may be used for research and published accordingly.

E - 4

Document Ref: TXAVD-RBC2F-QU7A8-S424E

17. **Physical Restraint**:  Parent(s)/Guardian(s) authorizes *i*Brain to use the amount of passive physical restraint believed to be reasonable under the circumstances (and endeavor to use the least amount of such restraint), and utilize environmental time out and/or apply a protective device as necessary to ensure the safety of the Student,  staff, and any individual working with the Student in the event Student may cause or reasonably demonstrate a threat of causing injury to self or others, or serious damage to property.

18. Parent(s)/Guardian(s) authorizes *i*Brain to include names, address, telephone number and email addresses in the Family and Staff Membership List to facilitate reasonable communication among families and area support groups for the families.

19. **Consent to Photograph, Video, Record and Interview**:  Parent(s)/Guardian(s) understands Student may be filmed by *i*Brain in individual or group sessions, during recreational activities and/or during community outings; and Parent(s)/Guardian(s) agrees to promptly sign a Communications Release granting *i*Brain all rights to publicly exhibit or display photographs and/or photographic slide projections and/or video of Student and/or to permit use thereof by or in any media, including, but not limited to copyright status (or common law copyright) and, staff members may photograph or film Student for the purpose of keeping personal mementos of their time together with Student.

20. Parent(s)/Guardian(s) authorizes *i*Brain to display or enter Student's artwork or original creation(s) in appropriate competitions including public and private exhibitions; and Parent(s)/Guardian(s) authorizes Student to attend trips and events outside of the school setting with appropriate staff support.

21. **Access to Student's Records**:  Parent(s)/Guardian(s) has the legal right to inspect and review any educational records relating to Student as well as a legal right to a copy of Student's school files, and Parent(s)/Guardian(s) agrees to reimburse *i*Brain for reasonable copying costs associated with such request.

**<u>Miscellaneous Terms</u>**

22. **Assignment**:  Parent(s)/Guardian(s) agrees this Enrollment Contract may be assigned or transferred by *i*Brain and it will be binding upon and inure to the benefit of the successors and assigns of *i*Brain.
    a.  Assignment of Right to Sue. In the event the local school district, or another entity ("Obligor"), is obligated by administrative or court order to make payment(s) to iBRAIN on behalf of the Parent(s)/Guardian(s) ("Assignor") under the terms of this Agreement and fails to make such payment(s) within thirty-five (35) days upon becoming due ("Outstanding Financial Obligation"), at the written request of iBRAIN, the Parent(s)/Guardian(s) shall assign and transfer to iBRAIN ("Assignee") the title and ownership to such claim and cause of action that exists in Parent(s)/Guardian(s) favor against any such entity and thereby authorize iBRAIN to prosecute said action to resolve said claim at iBRAIN's discretion. Assignor understands that whatever amounts Assignee does not collect from Obligor (whether it be all or part of what is due) shall be paid by Assignor as per the terms of the Agreement.

23. **Severability**:  *i*Brain and Parent(s)/Guardian(s) agree in the event any provision of this Enrollment Contract shall become invalid or unenforceable, in whole or in part, for any reason whatsoever, the remaining provisions shall, nevertheless, be valid and binding as if such invalid or unenforceable provision had not been contained in this Enrollment Contract.

24. **Governing Law**:  This Enrollment Contract shall be governed by, construed and enforced in accordance

E - 5

Document Ref: TXAVD-RBC2F-QU7A8-S424E

with, the substantive laws of New York State, without regard to any conflicts of law provisions thereof that would result in the application of the laws of any other jurisdiction. New York State shall be the jurisdiction and venue for any dispute involving this Enrollment Contract. The Enrollment Contract may be executed in counterpart with facsimile or electronic copies of signatures that shall serve as acceptable substitutes for original signatures and shall be legally binding.

25. **Notice**:  By executing this Enrollment Contract, each party agrees hereto to the terms set forth above and all notices required under this Enrollment Contract shall be delivered via the U.S. Postal Service via certified mail, return receipt, or Federal Express delivery service, or by courier to the following parties at the address set forth below:

International Academy for the Brain
ATTN: Mr. Kieran Lavin
55 West 116th Street, #159
New York, New York 10026

26. **Merger**:  This Enrollment Contract contains the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, express or implied, oral or written, except as herein contained. The express terms herein control and supersede any course of performance and/or usage of the trade inconsistent with any of the terms hereof. This Enrollment Contract may not be modified or amended other than by an agreement in writing, duly signed by all parties.


By signing below, Parent(s)/Guardians acknowledges that he/she/they have read this Enrollment Contract, understand(s) the terms and conditions, and agree(s) to the conditions outlined in this Enrollment Contract. It is further understood that any questions concerning these conditions have been discussed.


Parent(s)/Guardian(s) signature below signifies that he/she/they have read and understand all aspects of this Enrollment Contract and recognize the legal responsibilities in regard to this Enrollment Contract.



**International Academy for the Brain**          **Parent/Guardian**

*Kieran Lavin*                                   *Marlene Vasquez*

X_____                       X_____

By: Kieran Lavin                                 Name(s): __Marlene Vasquez_____

International Academy for the Brain              Parent(s)/Guardian(s) of ▮▮▮▮▮▮▮ _____


Date:___2024-06-21_____                    Date:_____2024-06-20_____

E - 6

Document Ref: TXAVD-RBC2F-QU7A8-S424E

# Signature Certificate

Reference number: TXAVD-RBC2F-QU7A8-S424E

| Signer | Timestamp | Signature |
|---|---|---|
| **Marlene Vasquez**<br>Email: vasquez22080@gmail.com | | |

| | | |
|---|---|---|
| Sent: | 18 Jun 2024 20:01:00 UTC | |
| Viewed: | 20 Jun 2024 14:35:50 UTC | |
| Signed: | 20 Jun 2024 14:36:14 UTC | |

**Recipient Verification:**

✔ Email verified            20 Jun 2024 14:35:50 UTC

IP address: 67.86.238.18
Location: The Bronx, United States

**Kieran Lavin**
Email: kieran@kieranlavin.com

| | |
|---|---|
| Sent: | 18 Jun 2024 20:01:00 UTC |
| Viewed: | 21 Jun 2024 21:16:50 UTC |
| Signed: | 21 Jun 2024 21:17:02 UTC |

**Recipient Verification:**

✔ Email verified            21 Jun 2024 21:16:50 UTC

IP address: 163.116.135.119
Location: New York, United States

Document completed by all parties on:
21 Jun 2024 21:17:02 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature solution trusted by 50,000+ companies worldwide.



**SCHOOL TRANSPORTATION ANNUAL SERVICE AGREEMENT**

This annual agreement, hereinafter referred to as "AGREEMENT", is made and entered into by and between MARELNE VASQUEZ & RONNY CRUZ, hereinafter referred to as "CLIENT", Parent(s)/Guardian(s) of ███████████ hereinafter referred to as "STUDENT" residing at ███████ ███████, hereinafter referred to as "HOME" and Sisters Travel and Transportation Services, LLC, a New York State limited liability corporation, hereinafter referred to as "PROVIDER", located at 2585 Broadway #240, New York, NY 10025.

1.  **TERM**

This annual AGREEMENT shall be effective from July 2, 2024, through June 27, 2025, hereinafter referred to as "TERM", and cannot be terminated except as provided in Section 7.

The STUDENT attends a private school, the International Academy for the Brain ("iBRAIN"), located at 403 East 91st Street, New York, NY 10128 (iBRAIN-Manhattan), or at 213 48th Street, Brooklyn, NY 11220 (iBRAIN-Brooklyn) hereinafter referred to as "SCHOOL".

STUDENT attends SCHOOL year-round for approximately 223 days based on SCHOOL's, 12-month 2024-2025 School Year calendar, hereinafter referred to as "SCHOOL DAYS."

2.  **PURPOSE OF THIS AGREEMENT**

The purpose of this AGREEMENT is to establish responsibilities between PROVIDER and CLIENT, hereinafter referred to as "PARTIES", related to the provision of special school transportation services, hereinafter referred to as "SERVICES", for STUDENT during the TERM from HOME to SCHOOL and SCHOOL to HOME during SCHOOL DAYS.

3.  **SCHEDULE OF SERVICE**

The pick-up location each SCHOOL DAY morning will be HOME and the drop-off location will be SCHOOL, hereinafter referred to as "AM TRIP."

The pick-up location each SCHOOL DAY in the afternoon will be SCHOOL and the drop-off location will be HOME, hereinafter referred to as "PM TRIP."

The AM TRIP and PM TRIP will be no more than 90 minutes each way.

The timing of the AM TRIP and PM TRIP will be determined at least seven (7) days prior to the first day of SCHOOL DAYS. There will be a 15-minute grace period for STUDENT to be ready for AM TRIP and PM TRIP, hereinafter referred to as "FLEXIBLE PICK-UP / DROP-OFF TIMES."

In addition, the CLIENT has the right to change the AM TRIP or PM TRIP times or locations, within New York City, with 72 hours notification to PROVIDER, hereinafter referred to as "CHANGE TO TRIP." The CLIENT must receive written email confirmation from PROVIDER of the request of CHANGE TO TRIP to guarantee modification to the AM TRIP or PM TRIP.

*INCLEMENT WEATHER*
PROVIDER will follow the decisions of the SCHOOL, for all Inclement Weather school delays or cancellations. Transportation will be provided for delayed opening and early dismissals according to SCHOOL's weather-related changes. PROVIDER reserves the right to make a decision to adjust pickup times as necessary when it is determined to be in the best interest of STUDENT, this information will be communicated to each CLIENT via email and/or phone call.

4.  **PROVIDER RESPONSIBILITES**

1

Document ID: 579d8423-98d0-48b2-9937-baeca1324a63

PROVIDER shall provide the vehicles, drivers and dispatching necessary to provide the SERVICES in accordance with the terms of this AGREEMENT.

The PROVIDER agrees to use safe and clean equipment and properly trained and licensed drivers employed by or under contract with the PROVIDER.

The vehicle providing SERVICES for CLIENT shall meet any and all standards required by federal and state law. The vehicle will also maintain the following conditions: Air conditioning, regular-size wheelchair accessibility (e.g., lift-bus/wheelchair ramp), and sitting space to accommodate a person to travel with STUDENT, as needed. If STUDENT requires additional equipment for transportation (i.e., oxygen tanks), the vehicle will accommodate these additional needs of STUDENT

## 5. <u>INSURANCE</u>

PROVIDER shall obtain and keep in force during the TERM of this AGREEMENT the following insurance coverages:

Workmen's Compensation Insurance in compliance with the laws of the State of New York covering all employees who perform for PROVIDER under this AGREEMENT.

Comprehensive Auto Liability Insurance on all vehicles used in connection with this AGREEMENT whether owned, non-owned, or hired; and

Comprehensive General Liability Insurance with limits for bodily injury or death.

## 6. <u>FEES and PAYMENT FOR SERVICES</u>

The PARTIES agree all SERVICES will be billed at an annual rate of $220,993.00, hereinafter referred to as "FEES". CLIENT shall pay FEES with three payment installments: Payment 1: $36,832.25 due on July 2, 2024, Payment 2: $73,664.25 due on September 1, 2024, and a final payment, Payment 3 $110,496.50 due on January 1, 2025.

CLIENT understands and accepts FEES will be based on SCHOOL DAYS, whether STUDENT used SERVICES or not, unless PROVIDER was at fault for STUDENT not utilizing SERVICES. All of the FEES described above are considered "PROVIDED SERVICES". CLIENT warrants STUDENT will be enrolled in SCHOOL for the TERM and obligation to pay FEES is unconditional and cannot be apportioned or mitigated, except as explained above. PROVIDER will not take any deductions, omissions, or refunds for unexcused absences, withdrawal, suspension or for any other reason except as outlined in Section 7.

PROVIDER understands and accepts CLIENT will be seeking third party payments for SERVICES from the local school district (e.g., New York City Department of Education) ("THIRD PARTY") through either a Stipulation Agreement or through an impartial hearing process. PROVIDER agrees to suspend payment obligations until an interim or final administrative or judicial decision is made obligating THIRD PARTY to pay all or part of FEES and those payment obligations will become immediately due as per the terms of this AGREEMENT, and shall be paid within thirty (30) days of the interim or final decision or execution of a Stipulation Agreement. In the event an administrative or court decision is not in the CLIENT's favor for payment, payment will be suspended until the CLIENT has exhausted all legal remedies available to them to secure third party funding, when all payments will immediately become due.

Late Payment Penalty. Upon the failure to pay in full any payment obligation due based on the terms of this AGREEMENT ("Amount Outstanding") within seven (7) business days of the due date for such payment, a late payment penalty of ten percent (10.0%) of the Amount Outstanding (the "Late Payment Amount") shall immediately be added to the Amount Outstanding. The imposition of the Late Payment Amount shall be in addition to any other rights and remedies of PROVIDER under this AGREEMENT. Any balances of any

2

F - 2

amount which remains unpaid, i.e., Amount Outstanding, including any Late Payment Amount, more than thirty (30) days after it is due shall accrue interest until paid at the rate equal to the lesser of two percent (2.0%) per calendar month or the maximum amount allowed under Applicable Law. However, in no event shall this interest provision be construed as a grant of permission for payment delays.

## 7.  TERMINATION

Termination for Cause.  If PROVIDER or CLIENT fails to perform in the manner called for in this AGREEMENT, or if PROVIDER or CLIENT fails to comply with any other provisions of the AGREEMENT and fails to correct such noncompliance within five (5) business days written notice thereof, CLIENT or PROVIDER may terminate this AGREEMENT for cause.

Termination shall be effected by serving a written notice of termination on PROVIDER or CLIENT setting forth the manner in which PROVIDER or CLIENT is in default.

The CLIENT may terminate the AGREEMENT if STUDENT relocates outside of local school district or due to health reasons STUDENT is no longer requiring special school transportation services.  Termination shall be effected by serving a written notice of termination on PROVIDER setting forth the conditions for termination.

In the event, CLIENT has exhausted all legal remedies available to them to secure third party funding, the CLIENT may terminate the AGREEMENT in writing, but will remain responsible for any balance due to PROVIDER on the date of such termination.

## 8.  INDEPENDENT CONTRACTOR RELATIONSHIP

The PARTIES acknowledge and agree the SERVICES performed by the PROVIDER, its employees, agents or sub-contractors shall be as an independent contractor and nothing in this AGREEMENT shall be deemed to constitute a partnership, joint venture, agency relationship or otherwise between the PARTIES.

## 9.  COMPLIANCE WITH LAWS

PROVIDER, in the performance of this AGREEMENT, shall comply with all applicable federal, state and local laws and ordinances, including regulations for licensing, certification and operation of facilities, programs, accreditation, and licensing of individuals, and any other standards or criteria as described in this AGREEMENT to assure quality of services.

## 10.  NONDISCRIMINATION POLICY

PROVIDER is an equal opportunity employer.

Nondiscrimination in Employment.  In the performance of this AGREEMENT, PROVIDER will not discriminate against any employee or applicant for employment on the grounds of race, creed, color, natural origin, sex, marital status, age or the presence of any sensory, mental or physical handicap; provided that the prohibition against discrimination in employment because of handicap shall not apply if the particular disability prevents the proper performance of the particular work involved. PROVIDER shall ensure that applicants are employed, and that employees are treated during their employment, without regard to their race, creed, color, natural origin, sex, marital status, age or the presence of any sensory, mental or physical handicap. Such action shall include, but not be limited to the following:  employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay, or other forms of compensation; and selection for training, including apprenticeships.

Nondiscrimination in Services.  PROVIDER will not discriminate against any recipient of any services or benefits provided for in this AGREEMENT on the grounds of race, creed, color, natural origin, sex, marital

3

F - 3

status, age or the presence of any sensory, mental or physical handicap.

If any assignment and/or subcontracting by PROVIDER, said assignment or subcontract shall include appropriate safeguards against discrimination. PROVIDER shall take such action as may be required to ensure full compliance with the provisions in the immediately preceding paragraphs herein.

## 11. ASSIGNMENT/SUBCONTRACTING

PROVIDER may assign or subcontract its performance under this AGREEMENT or any portion of this AGREEMENT and it will be binding upon and inure to the benefit of the successors and assigns of PROVIDER.

In the event THIRD PARTY, or another entity ("Obligor"), is obligated by administrative or court order to make payment(s) to PROVIDER on behalf of CLIENT ("Assignor") under the terms of this AGREEMENT and fails to make such payment(s) within thirty-five (35) days upon becoming due ("Outstanding Financial Obligation"), at the written request of PROVIDER, CLIENT shall assign and transfer to PROVIDER ("Assignee") the title and ownership to such claim and cause of action that exists in CLIENT's favor against any such entity and thereby authorize PROVIDER to prosecute said action to resolve said claim at PROVIDER's discretion. Assignor understands that whatever amounts Assignee does not collect from Obligor (whether it be all or part of what is due) shall be paid by Assignor as per the terms of the AGREEMENT.

## 12. CONSENT TO COLLATERAL ASSIGNMENT

CLIENT hereby consents to the collateral assignment by the PROVIDER of all of its right, title and interest in, to and under this AGREEMENT to a collateral agent pursuant to any security agreement the PROVIDER may enter into. The PARTIES agree the collateral agent (or its designee or assignee) shall be entitled to enforce this AGREEMENT in its own name and to exercise any and all rights of the PROVIDER under this AGREEMENT in accordance with the terms hereof (either in its own name or in the name of the PROVIDER, as the collateral agent may elect), and the PARTIES agree to comply and cooperate in all respects with such exercise. Without limiting the generality of the foregoing, the collateral agent (or its designee or assignee), shall have the full right and power to enforce directly against the CLIENT all obligations of the CLIENT under this AGREEMENT and otherwise to exercise all remedies available to the PROVIDER hereunder, and to make all demands and give all notices and make all requests (either in its own name or in the name of the PROVIDER, as the collateral agent may elect) required or permitted to be made or given by the PROVIDER under this AGREEMENT, and the CLIENT acknowledges and agrees that any such action taken by the collateral agent shall be deemed effective for all purposes of this AGREEMENT to the same extent as if such action had been taken directly by the PROVIDER. If the CLIENT shall receive inconsistent directions under this AGREEMENT from the PROVIDER and the collateral agent, the directions of the collateral agent shall be deemed the superseding directions (so long as such directions are consistent with the provisions of this AGREEMENT) and the CLIENT shall accordingly comply with such directions of the collateral agent.

## 13. MODIFICATIONS

Either party may request modifications/amendments to this AGREEMENT, however, no change or addition to this AGREEMENT shall be valid or binding upon either party unless such change or addition be in writing and signed by both PARTIES. Such amendments shall be attached to and made a part of this AGREEMENT.

## 14. NOTICE

By executing the AGREEMENT, the PARTIES agree to the terms set forth above and all notices required for in the AGREEMENT shall be sent by certified mail, return receipt or overnight delivery with signature to the addresses designated for the PARTIES on the first page of this AGREEMENT.

F - 4

Document ID: 579d8423-98d0-48b2-9937-baeca1324a63

### 15. **ATTORNEY'S FEES AND COSTS**

If any legal proceeding is brought for the enforcement of this AGREEMENT, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this AGREEMENT, the prevailing party shall be entitled to recover from the other party, in addition to any other relief to which such party may be entitled, reasonable attorney's fees and others costs incurred in such action or proceeding.

### 16. **JURISDICTION**

This AGREEMENT has been and shall be construed as having been made and delivered within New York State, and it is agreed by the PARTIES hereto this AGREEMENT shall be governed by, and construed and enforced in accordance with, the substantive laws of New York State, without regard to any conflicts of law provisions thereof that would result in the application of the laws of any other jurisdiction. Any action of law, suit in equity, or judicial proceeding for the enforcement of this AGREEMENT or any provisions thereof, shall be instituted and maintained only in any of the courts of competent jurisdiction in New York County, New York State.

### 17. **SEVERABILITY**

It is understood and agreed by the parties hereto that if any part, term or provision of this AGREEMENT is held by the courts of the United States to be illegal, the validity of the remaining provisions shall not be affected, and the rights and obligations of the PARTIES shall be construed and enforced as if the AGREEMENT did not contain the particular provision held to be invalid.

If it should appear that any provision hereof is in conflict with any statutory provision of New York State, said provision which may conflict therewith shall be deemed inoperative and null and void insofar as they may be in conflict therewith, and shall be deemed modified to conform to such statutory provision.

### 18. **ENTIRE CONTRACT**

The PARTIES agree this AGREEMENT is the complete expression of the terms hereto and any oral representations or understandings not incorporated herein are excluded. Further, any modification of this AGREEMENT shall be in writing and signed by both PARTIES. Failure to comply with any of the provisions stated herein shall constitute material breach of contract and cause for termination. It is also agreed by the PARTIES the forgiveness of the nonperformance of any provision of this AGREEMENT does not constitute a waiver of the provisions of this AGREEMENT.

### 19. **EXECUTION OF AGREEMENT**

The AGREEMENT may be executed in counterpart with facsimile copies of signatures that shall serve as acceptable substitutes for original signatures and shall be legally binding.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK]

F - 5

IN WITNESS WHEREOF, the parties hereto have caused this AGREEMENT to be executed.

*CLIENT:*

_____
DATE

███████████
STUDENT NAME

MARELNE VASQUEZ & RONNY CRUZ
CLIENT NAME

*Marlene Vasquez*
CLIENT SIGNATURE

*PROVIDER:*

*Peter Lam*
Account Manager/Authorized Signature

Peter Lam
Account Manager/Authorized Signatory Name
Sisters Travel and Transportation Services, LLC
2585 Broadway #240, New York, NY 10025

6

F - 6



## Completed Document Audit Report
Completed with SignWell.com

**Title:** ▉▉▉▉▉▉▉▉▉ 24-25 AGREEMENT

Document ID: 579d8423-98d0-48b2-9937-baeca1324a63

Time Zone: (GMT+00:00) Coordinated Universal Time

---

## Files

▉▉▉▉▉▉ 24-25 AGREEMENT.docx     Jun 17, 2024 16:51:06 UTC

## Activity

**Sisters Travel and Transportation Services**
created the document
IP: 158.222.168.132    Jun 17, 2024 16:51:28 UTC

**Sisters Travel and Transportation Services**
sent the document to sisterstravelllc@gmail.com and vasquez22080@gmail.com
IP: 158.222.168.132    Jun 17, 2024 17:05:08 UTC

**Marlene Vasquez**
first viewed document
IP: 2607:fb91:21a9:880c:f145:ea1f:4929:c538    Jun 21, 2024 02:44:48 UTC

**Marlene Vasquez**
signed the document
IP: 2607:fb91:21a9:880c:f145:ea1f:4929:c538    Jun 21, 2024 02:45:02 UTC

**Sisters Travel and Transportation Services**
first viewed document
IP: 108.29.32.84    Jun 21, 2024 11:22:16 UTC

**Sisters Travel and Transportation Services**
signed the document
IP: 108.29.32.84    Jun 21, 2024 11:23:14 UTC

F - 7