UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
**MARTINE THOMAS,** as Parent and Natural Guardian
of **A.T.,** and **MARTINE THOMAS**, Individually, *et al.,*

                *Plaintiffs,*

    -against-

**DAVID C. BANKS**, in his Official Capacity as Chancellor
of the New York City Department of Education, and the
**NEW YORK CITY DEPARTMENT OF EDUCATION**,

              *Defendants.*
------------------------------------------------------------------X

                    **24-cv-05138**


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINING**
<u>**ORDER AND/OR PRELIMINARY INJUNCTION**</u>


Rory J. Bellantoni, Esq.
Liberty & Freedom Legal Group
*Attorneys for Plaintiffs*
300 East 95th Street, #130
New York, New York 10128
rory@pabilaw.org

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………….…….…...v

PRELIMINARY STATEMENT ……………………………………………….…….……1

STATEMENT OF FACTS……………………………………………………….......…4

LEGAL BACKGROUND……………………………………………………………...9

ARGUMENT…………………………………………………………………………12

**I.** DOE HAS ENGAGED IN AN ONGOING SYSTEMIC PRACTICE
OF REFUSING TO CONVENE FEDERALLY-MANDATED RESOLUTION
SESSIONS IN VIOLATION OF 20 U.S.C. § 1415(f)(1)(B)……………………………12

    A. *Congressional Intent and the Importance of "Shall"*……………………..…..12

    B. *Statutory Requirements for Resolution Meetings*…………………………....………13

    C. *Judicial Interpretation, Impact on Plaintiffs, and Necessity
    for a Preliminary Injunction*……………………………………………………..14

**II.** PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION
ORDERING DOE TO COMPLY WITH IDEA'S MANDATE TO CONVENE
RESOLUTION SESSIONS UNDER 20 U.S.C. § 1415(f)(1)(B)……..…......................16

    A. *Likelihood of Success on the Merits*……………………….....................16

    B. *Irreparable Harm*……………………………………………………………..17

    C. *The Balance of the Equities Favors Injunctive Relief*……………………………20

    D. *Injunctive Relief under IDEA is in the Public Interest*…………………………..21

**III.** THE ISSUE RAISED HERE IS RIPE FOR JUDICIAL DETERMINATION…………22

CONCLUSION……………………………………………………………………..24

# <u>TABLE OF AUTHORITIES</u>

*Page(s)*

## <u>Federal Cases</u>

*Abbott Lab'ys v. Gardner*,
  387 U.S. 136 (1967) ................................................................................................ 23

*Able v. United States*,
  88 F.3d 1280 (2d Cir. 1996) ................................................................................... 22

*Aquavella v. Richardson*,
  437 F.2d 397 (2d Cir. 1971) ................................................................................... 23

*Avaras v. Clarkstown Cent. Sch. Dist.*,
  2019 WL 4600870 (S.D.N.Y. September 21, 2019) ......................................... 7, 9, 11

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*,
  458 U.S. 176 (1982) ............................................................................................ 9, 22

*Beth V. by Yvonne V. v. Carroll*,
  87 F.3d 80 (3d Cir. 1996) ..................................................................................... 3, 4

*C.F. ex-rel. R.F. v. New York City Dep't of Educ.*,
  746 F.3d 68 (2d Cir. 2014) ..................................................................................... 11

*Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex-rel. Charlene F.*,
  526 U.S. 66 (1999) .............................................................................................. 9, 20

*Christopher W. v. Portsmouth Sch. Comm.*,
  877 F.2d 1089 (1st Cir. 1989) .................................................................................. 3

*Connection Distrib. Co. v. Reno*,
  154 F.3d 281 (6th Cir. 1998) ................................................................................... 18

*Dubois v. Connecticut State Bd. of Educ.*,
  727 F.2d 44 (2d Cir. 1984) ..................................................................................... 21

*E. Ramapo Cent. Sch. Dist. v. DeLorenzo*,
  2013 WL 5508392 (S.D.N.Y. Oct. 3, 2013) ........................................................... 12

*E. Z.-L. ex-rel. R.L. v. New York City Dep't of Educ.*,
  763 F. Supp. 2d 584 (S.D.N.Y. 2011) ............................................................... 5, 14

i

*Elrod v. Burns,*
    427 U.S. 347 (1976) ............................................................................................. 18

*Endrew F. ex-rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-,*
    580 U.S. 386 (2017) ......................................................................................... 9, 22

*Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter,*
    510 U.S. 7 (1993) ................................................................................................... 9

*Forest Grove Sch. Dist. v. T.A.,*
    557 U.S. 230 (2009) ............................................................................................. 21

*G.N. v. Bd. of Educ. of Twp. of Livingston,*
    309 F. App'x 542 (3d Cir. 2009) ........................................................................... 3

*Henrietta D. v. Bloomberg,*
    331 F.3d 261 (2d Cir. 2003) ................................................................................. 16

*Honig v. Doe,*
    484 U.S. 305 (1988) ......................................................................................... 3, 22

*In re Zyprexa Injunction,*
    474 F. Supp. 2d 385 (E.D.N.Y. 2007) .................................................................. 20

*J.A. v. Monroe Twp. Bd. of Educ.,*
    2019 WL 1760583 (D.N.J. April 22, 2019) ........................................................... 3

*Joelner v. Vill. of Washington Park, Illinois,*
    378 F.3d 613 (7th Cir. 2004) ................................................................................ 18

*Komninos by Komninos v. Upper Saddle River Bd. of Educ.,*
    13 F.3d 775 (3d Cir. 1994) ..................................................................................... 3

*M.O. v. New York City Dep't of Educ.,*
    793 F.3d 236 (2d Cir. 2015) ................................................................................... 9

*Moonsammy v. Banks, No. 24 CIV.,*
    2024 WL 2831042 (S.D.N.Y. June 3, 2024) .......................................................... 3

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,*
    297 F.3d 195 (2d Cir. 2002) ................................................................................... 9

*New York Progress & Prot. PAC v. Walsh,*
    733 F.3d 483 (2d Cir. 2013) ................................................................ 18

*Occidental Chem. Corp. v. FERC,*
    869 F.2d 127 (2d Cir. 1989) ................................................................ 22

*S.C. v. Huntsville City Sch.,*
    441 F. Supp. 3d 1228 (N.D. Ala. 2020) ............................................. 14

*S.O.C., Inc. v. Cnty. of Clark,*
    152 F.3d 1136 (9th Cir.) ...................................................................... 18

*Sammartano v. First Jud. Dist. Ct., in and for Cnty. of Carson City,*
    303 F.3d 959 (9th Cir. 2002) ............................................................... 18

*Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.,*
    471 U.S. 359 (1985) ............................................................................... 9

*Schaffer ex-rel. Schaffer v. Weast,*
    546 U.S. 49 (2005) ..................................................................... 2, 10, 14

*Schmelzer ex-rel. Schmelzer v. New York,*
    363 F. Supp. 2d 453 (E.D.N.Y. 2003) ................................................. 17

*Seafarers Int'l Union of N. Am., AFL-CIO v. U.S. Coast Guard,*
    736 F.2d 19 (2d Cir. 1984) ................................................................... 22

*T.K. v. New York City Dep't of Educ.,*
    810 F.3d 869 (2d Cir. 2016) ................................................................... 9

*United States v. Carson,*
    52 F.3d 1173 (2d Cir. 1995) ................................................................ 16

*Ventura de Paulino v. New York City Dep't of Educ.,*
    959 F.3d 519 (2d Cir. 2020) ................................................................... 3

*Winkelman ex-rel. Winkelman v. Parma City Sch. Dist.,*
    550 U.S. 516 (2007) ............................................................................... 3

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ................................................................................ 16

**Federal Statutes**

20 U.S.C. § 1400 ................................................................................................. 5, 21

20 U.S.C. § 1415 ...................................................................................................... 1

20 U.S.C. § 1415(b)(6) ........................................................................................... 10

20 U.S.C. § 1415(b)(6)(A) ................................................................................. 2, 10

20 U.S.C. § 1415(b)(7)(A), (f)(1) .......................................................................... 11

20 U.S.C. § 1415(f)(1)(A) .................................................................................. 2, 10

20 U.S.C. § 1415(f)(1)(B) ............................................................................... Passim

20 U.S.C. § 1415(f)(2) .............................................................................................. 2

20 U.S.C. § 1415(f)(2), (3) ..................................................................................... 10

20 U.S.C. § 1415(f)(3)(E)(i) & (ii) .......................................................................... 3

20 U.S.C. § 1415(j) .............................................................................................. 4, 5

20 U.S.C. § 1415(k)(3) ........................................................................................... 10

**Federal Regulations**

34 C.F.R. § 300.500 to 300.536 ............................................................................... 1

34 C.F.R. § 300.510 ................................................................................... 11, 17, 25

34 C.F.R. § 300.510(1) ........................................................................................... 24

34 C.F.R. § 300.510(a) ....................................................................................... 7, 13

34 C.F.R. § 300.510(a)(1) ................................................................................... 3, 11

34 C.F.R. § 300.510(a)(1)-(4) ............................................................................... 13

34 C.F.R. § 300.510(a)(2) ....................................................................................... 11

34 C.F.R. § 300.510(a)(3) ................................................................................. 11, 14

34 C.F.R. § 300.510(a)(4) ............................................................................................................ 14

34 C.F.R. § 300.511 to 300.515 ............................................................................................. 2, 10

**<u>Other Authorities</u>**

89 Causes of Action 2d 341 ................................................................................................. 1, 2, 3

1995 House Report at 7 ............................................................................................................... 3

H.R.Rep. No. 296 ......................................................................................................................... 3

## PRELIMINARY STATEMENT

Under the Individuals with Disabilities Education Act ("IDEA"), the New York City Department of Education ("DOE") is required to provide students with disabilities a free appropriate public education ("FAPE") in the least restrictive environment.

IDEA ensures that special education and related services are available to eligible children with disabilities. In accordance with the Act, DOE receives federal funding contingent upon its compliance with IDEA's stipulations. New York State regulations also define the responsibilities of local education agencies, such as the NYC DOE, in providing a student with disabilities with a FAPE. These regulations are codified in Title 8 of the New York Codes, Rules, and Regulations (NYCRR) Part 200. These provisions are integrated with the IDEA and enhance how a FAPE is delivered in New York, emphasizing an Individualized Education Program ("IEP") tailored to the unique needs of each student with a disability.

By both federal and state law, failing to adhere to these legal requirements jeopardizes DOE's eligibility to receive federal funds, underscoring the necessity for immediate and continuous compliance. The legal framework set forth by IDEA and New York State law establishes a clear and authoritative mandate that the NYC DOE must follow to ensure the educational rights of students with disabilities are rigorously protected. The IDEA provides a set of procedural safeguards to secure the ability of children with disabilities and their parents to give effect to other rights conferred by the Act.[1] The procedural safeguards are set forth at 20 U.S.C. § 1415 and 34 C.F.R. § 300.500 to 300.536.

Among the several procedural safeguards Congress provided in the IDEA for the benefit of children with disabilities and their parents, the provisions relating to the dispute resolution process

---

[1] 89 Causes of Action 2d 341 (Originally published in 2019) (Originally published in 2019).

are significant. The safeguards relating to dispute resolution acknowledge that what the Supreme Court has called the "cooperative process … between parents and schools" that is "at the core of the statute," and specifically the "collaboration" in "the IEP process," will often break down.[2] *Schaffer ex-rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005). In recognition of this, the Act gives students and parents the right to bring a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). 89 Causes of Action 2d 341 (Originally published in 2019). Similarly, the Act provides a right to an administrative hearing for either a parent of a child with a disability or a local educational agency that disagrees with a decision.

Whenever a designated educational agency receives a complaint filed under either 20 U.S.C. § 1415(b)(6)(A) or 20 U.S.C. § 1415(f)(1)(A), the party that filed the Complaint (whether a parent of a child with a disability or the local educational agency) "shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A). Rules of procedure for the administrative hearings are set forth at 20 U.S.C. § 1415(f)(2), ((3), and 34 C.F.R. § 300.511 to 300.515. The IDEA requires that within 15 (fifteen) days of receiving notice of a parent's due process complaint[3] and before the start of a due process hearing under 34 C.F.R. § 300.511, the local educational agency ("LEA") must convene a meeting with the parent and the relevant member or members of the IEP team who have specific knowledge of the facts identified in the student's Due Process Complaint ("DPC") that includes a

---

[2] 89 Causes of Action 2d 341 (Originally published in 2019).

[3] The Plaintiffs filed their DPCs with the DOE electronically on July 2, 2024. The DOE thus received the DPCs on the same day—July 2. Therefore, the DOE is required to convene each Plaintiff's resolution meeting on or before July 17, 2024.

representative of the public agency who has decision-making authority on behalf of that agency. 34 C.F.R. § 300.510(a)(1). 89 Causes of Action 2d 341 (Originally published in 2019).

Violations of the Act's procedural safeguards constitute a denial of FAPE if they have: (1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision-making process about the provision of FAPE to the child; or (3) caused a deprivation of educational benefits. *J.A. v. Monroe Twp. Bd. of Educ.*, No. 118CV09580NLHKMW, 2019 WL 1760583, at *1–2 (D.N.J. April 22, 2019). *See G.N. v. Bd. of Educ. of Twp. of Livingston*, 309 F. App'x 542, 546 (3d Cir. 2009) (citing *Winkelman ex-rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007) (citing 20 U.S.C. § 1415(f)(3)(E)(i) & (ii))).

In this matter, Plaintiffs are compelled to enforce their substantive and procedural rights under IDEA—their right to pendency and their right to resolution meetings. This motion, however, only addresses DOE's obligation to convene a resolution meeting within 15 days of receiving each Plaintiff's DPC as part of the Act's 30-day resolution period. Plaintiffs have availed themselves of the Act's administrative remedies. They filed their DPCs and requested resolution meetings, and the DOE has failed to schedule the Act's mandatory meetings. An Impartial Hearing Officer ("IHO") cannot "order" DOE to convene the meetings as this Court can. Plaintiffs have exhausted their administrative remedies here, but maintain they are not required to do so, as this action falls under one or more of the Act's exceptions to exhaustion.[4]

---

[4] First, where an action, like this one, "alleges a violation of the stay-put provision, such action falls within one, if not more, of the enumerated exceptions to the IDEA'S exhaustion requirement." *Moonsammy v. Banks*, No. 24 CIV. 2616 (PAE), 2024 WL 2831042, at *5 (S.D.N.Y. June 3, 2024). *See Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 530 (2d Cir. 2020). Second, in the IDEA, Plaintiffs may be excused from the Act's exhaustion requirement where exhaustion would be futile or inadequate. *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994) (quoting *Honig v. Doe*, 484 U.S. 305, 327 (1988)); *see also* H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985) [hereinafter 1985 House Report] (no exhaustion required where "it would be futile to use the due process procedures"). Exhaustion may also be waived (1) where the issue presented is purely a legal question; (2) where the administrative agency cannot grant relief (see 1995 House Report at 7 (no exhaustion

Plaintiffs' claim here is, in essence, that the safeguards to ensure timely and adequate resolution of complaints that are the object of DOE regulations requiring complaint resolution procedures have failed on a system-wide basis, and thus, the sufficiency of DOE's DPC procedures themselves must be challenged. *See Beth V. by Yvonne V.*, 87 F.3d at 89. Plaintiffs' claims contain elements of one or more recognized exceptions to exhaustion. *Id.*

## STATEMENT OF FACTS

Because of the similarities in the relevant facts for each Plaintiff, the following consolidated statement encompasses details about each Plaintiff and their respective Student as outlined in the Complaint.

Plaintiffs are the Parents of Students with disabilities who live in New York City and the Students themselves who are entitled to receive a FAPE annually. Each Student-Plaintiff's current educational program/placement is at the International Academy for the Brain ("iBRAIN"). Each Student has a final, unappealed administrative order that found DOE denied them a FAPE in a prior school year, that iBRAIN is an appropriate unilateral placement, and that equities favor public funding for the private placement. Between June 14 and 17, 2024, each Plaintiff sent a Ten-Day Notice to the DOE rejecting its proposed IEP for the 2024–2025 school year as inappropriate to meet their child's needs and advising DOE of their intent to maintain their child's placement at iBRAIN for the 2024–2025 extended school year. In their Ten-Day Notices, each Plaintiff requested, among other things, that DOE continue to fund their Student's program/placement at iBRAIN as pendency under 20 U.S.C. § 1415(j), to include tuition and related services, including special transportation and nursing where appropriate.

---

required where it is improbable that adequate relief can be obtained by pursuing administrative remedies); and (3) when exhaustion would work severe or irreparable harm upon a litigant. *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 88–89 (3d Cir. 1996); *Komninos by Komninos*, 13 F.3d at 778 (quoting *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1097 (1st Cir. 1989)).

On July 2, 2024, each Parent-Plaintiff filed a DPC challenging the DOE's proposed IEP and alleging that DOE procedurally and/or substantively denied their Student a FAPE as mandated by federal and state law and requesting funding for the Student's educational program/placement at iBRAIN for the 2024–2025 extended school year. Each Plaintiff requested an impartial hearing under § 1415 of the IDEA, 20 U.S.C. § 1400, *et seq.*, Article 89 of the New York State Education Law, and Part 200.5 of the Regulations of the New York State Commissioner of Education.

As part of their DPC, each Plaintiff requested an order requiring the DOE to fund their Student's educational program/placement during the pendency of the due process proceedings relative to their DPC for the 2024–2025 school year, as required by 20 U.S.C. § 1415 (j). Each Plaintiff also requested that a resolution meeting occur within 15 days of DOE's receipt of Plaintiff's DPC. Each DPC was promptly assigned to an IHO and received an IHO Case Number. The July 2 filing of each DPC triggered DOE's statutory obligation to fund the Pendency Placements[5] and DOE's obligation to convene resolution meetings within fifteen days.

On July 11, our office received numerous emails regarding the Students' resolution meetings. See Albert Declaration filed herewith. Ms. Kelly Agnello, a social worker, sent numerous emails throughout the day scheduling resolution meetings. Several hearings were scheduled for Friday, July 12—a number of hearings were also scheduled for July 16 and July 17. After several meetings were scheduled, Mr. Albert, an attorney with our office, emailed Ms. Agnello and asked who would attend the resolution meetings to ensure that members of each Student's IEP team with specific knowledge of the facts identified in the Student's DPC would be at the meetings. Mr. Albert also

---

[5] *See E. Z.-L. ex-rel. R.L. v. New York City Dep't of Educ.*, 763 F. Supp. 2d 584, 599 (S.D.N.Y. 2011), *aff'd sub nom. R.E. v. New York City Dep't of Educ.*, 694 F.3d 167 (2d Cir. 2012) ("If the student's current educational placement is in private school, the responsibility for private school tuition 'stays put' as well. Thus, where, as here, the school district has been paying for a child's private school tuition, it must continue to do so until the moment when the child's educational placement changes.").

asked who would be present at the resolution meetings to represent the district with decision-making authority. Despite sending several emails for different clients and following up with phone calls to Ms. Agnello, Mr. Albert received no response from Ms. Agnello. Having received no response to any emails from Ms. Agnello, Mr. Albert sent additional emails on July 11 and the morning of July 12, asking who would attend the meetings. Mr. Albert received no response before the first meeting began.

On July 12, 2024, at 9:30 a.m., having received no response to his email or phone calls, Mr. Albert participated in the first scheduled "Resolution Meeting" via Microsoft Teams. The Parent could not attend with less than 24 hours' notice. DOE did not have a member or members of the Student's IEP team with specific knowledge of the facts identified in the student's DPC, nor did it have a representative of the public agency with decision-making authority on behalf of that agency. Instead, the CSE-9 staff who participated in the "Resolution Meeting" included Ms. Agnello, a social worker who acknowledged she was not part of the student's CSE team and had no authority to resolve the issues in the Parent's DPC, and Ms. Sandi, who acknowledged she was not part of the student's CSE team and only had authority to recommend additional assessments and evaluations requested in the DPC. Ms. Sandi had no authority to address and settle the Student's Pendency claims or the Student's placement in private school—she could not agree to the Student's private school program/placement, including related services like special transportation and nursing, where applicable.

Upon determining the meeting was not a bona fide resolution meeting, Mr. Albert informed the CSE-9 staff that there was no reason to continue with the meeting and that he would be cancelling all other scheduled meetings unless the DOE provided a list of DOE participants who a) were part of the CSE team, familiar with each student, and b) had decision-making authority to

resolve ALL issues raised in the DPC.[6] Ms. Agnello and Ms. Sandi acknowledged they were the only two DOE staff members scheduled to participate in all meetings.

After the initial meeting on Friday morning, Mr. Albert canceled scheduled meetings for the day, but attempted to reschedule proper resolution meetings with proper DOE representatives. To date, the meetings have not been rescheduled.

Students are entitled to resolution meetings under IDEA for several reasons. First, the IDEA mandates that within fifteen days of receiving a DPC, the local educational agency ("LEA") must convene a resolution meeting with the parents and relevant members of the IEP team. This requirement is codified in *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 18-CV-6964 (NSR), 2019 WL 4600870 (S.D.N.Y. September 21, 2019) and 34 C.F.R. § 300.510(a). The purpose of the resolution session is to provide the parties with the opportunity to resolve the dispute that forms the basis of the DPC, ensuring timely and meaningful resolution of disputes without resorting to lengthy administrative or judicial processes. The session must include a public agency representative with decision-making authority and may not include an LEA attorney unless an attorney accompanies the parent. The parent and the LEA jointly determine the relevant IEP team members to attend the meeting. These procedural safeguards are essential mechanisms designed to uphold educational stability and continuity for students with disabilities, ensuring that disputes are resolved promptly and fairly, preventing prolonged disruptions to the student's education.

Fourteen days have passed since each Plaintiff filed their DPC, and resolution meetings with the appropriate DOE personnel have not been convened. Despite clear statutory requirements and prior favorable decisions affirming the appropriateness of each Student's educational program/placement at iBRAIN, DOE has failed to meet its legal obligations regarding the

---

[6] There were at least two other meetings that were commenced without the proper DOE personnel.

resolution period. Despite these clear mandates, DOE failed to convene the required resolution meetings.

IDEA was established to ensure that children with disabilities receive educational services designed to meet their unique needs. A critical component of this statute is the obligation of school districts to engage in a resolution process with parents within fifteen days of receiving a DPC to resolve disputes over their child's education. DOE has persistently neglected this responsibility, thereby denying Plaintiffs the opportunity for timely resolution sessions. Defendants' IDEA violations, specifically their failure to convene appropriate resolution meetings as required by the Act and its applicable regulations, require judicial intervention. Plaintiffs seek a temporary restraining order and/or preliminary injunction compelling the DOE to comply with the Act's mandates related to resolution meetings and the resolution session. This relief is necessary to prevent further harm to Plaintiffs, who are entitled to a prompt resolution of their educational disputes.

The Court's intervention is essential to ensure that DOE fulfills its statutory duties during the resolution period, thereby safeguarding the educational rights of Plaintiffs and their children with disabilities. The balance of equities and the public interest strongly support granting the requested injunction to uphold the rights of Plaintiffs and their Students with disabilities. The DOE's failure to convene resolution sessions within the mandated timeframe, with the personnel required by the Act, underscores DOE's ongoing disregard for the procedural requirements of IDEA, requiring judicial intervention to ensure compliance and protect the educational rights of the Student-Plaintiffs.

## **LEGAL BACKGROUND**

The IDEA was enacted to ensure "that all children with disabilities have available to them...
a free appropriate public education, which emphasizes special education and related services
designed to meet their unique needs." *Avaras*, 2019 WL 4600870; *Murphy v. Arlington Cent. Sch.
Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Cedar Rapids Cmty. Sch. Dist. v.
Garret F. ex-rel. Charlene F.*, 526 U.S. 66 (1999)). The Second Circuit has described this as
ensuring "an education 'likely to produce progress, not regression,' and one that 'afford[s] the
student with an opportunity greater than mere trivial advancement.'" *T.K. v. New York City Dep't
of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) (quoting *M.O. v. New York City Dep't of Educ.*, 793
F.3d 236, 239 (2d Cir. 2015)). This was further affirmed by the Supreme Court in *Endrew F. ex-
rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017) ("a student offered an
educational program providing 'merely more than *de minimis* progress from year to year can hardly
be said to have been offered an education at all").

The 'centerpiece' of IDEA and its principal mechanism for achieving this goal is the IEP.
The IEP is how special education and related services are 'tailored to the unique needs' of a
particular child. *Endrew F. ex-rel. Joseph F.*, 580 U.S. 386 (quoting *Bd. of Educ. of Hendrick
Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 181 (1982)). When the IEP
is substantively deficient, parents may unilaterally reject it in favor of sending their child to private
school and seek tuition reimbursement from the State. *T.K.*, 810 F.3d at 875. A school district will
be required to reimburse parents for expenditures made for a private school placement if the
services offered to the student by the school district are inadequate or inappropriate. See *Florence
Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 13–16 (1993); *Sch. Comm. of
Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369–70 (1985).

Among the several procedural safeguards Congress provided in the IDEA for the benefit of children with disabilities and their parents, the provisions relating to the dispute resolution process are significant. The safeguards relating to dispute resolution acknowledge that what the Supreme Court has called the "cooperative process... between parents and schools" that is "at the core of the statute," and specifically the "collaboration" in "the IEP process," will often break down. *Schaffer ex-rel. Schaffer*, 546 U.S. at 53.

In recognition of this, the IDEA provides a right of students and parents to bring a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). This provision confers the right of Complaint on "any party,"[7] thus it is also available to a LEA or other public agency involved in an IDEA dispute relating to the referenced categories of matters. Similarly, the IDEA provides a right to an administrative hearing (an "appeal") for either a parent of a child with a disability, or a LEA, which disagrees with a decision in a manifestation determination review, or a decision about placement arising from such manifestation determination. 20 U.S.C. § 1415(k)(3).

Whenever a designated state agency receives a complaint filed under either 20 U.S.C. § 1415(f)(1)(A) or 20 U.S.C. § 1415(k)(3), the party which filed the Complaint (whether a parent of a child with a disability or the LEA) "shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the LEA, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A). Rules of procedure for those administrative hearings are set forth at 20 U.S.C. § 1415(f)(2), (3), and 34 C.F.R. § 300.511 to 300.515.

---

[7] 20 U.S.C. § 1415(b)(6).

To challenge an IEP, a parent must first file a DPC detailing the alleged deficiencies of the IEP. *Avaras*, 2019 WL 4600870; *C.F. ex-rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014) (citing 20 U.S.C. § 1415(b)(7)(A), (f)(1)). Within fifteen (15) days of receiving notice of the parent's DPC, the DOE must convene a meeting with the parent. 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510.

Within 15 days of receiving notice of the parents' DPC and before the start of a due process hearing under the IDEA, the LEA must convene a meeting with the parents **and the relevant member or members of the IEP team who have specific knowledge of the facts identified in the DPC. This meeting must include a public agency representative with decision-making authority on that agency's behalf** and may not include an attorney of the LEA unless an attorney accompanies the parent. The parent and the LEA determine the relevant IEP team members to attend the meeting. 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(a)(1). The purpose of the meeting is for the parent to discuss the facts of the DPC, giving the LEA a chance to resolve the issue. 34 C.F.R. § 300.510(a)(2). A resolution session is not required if both parties agree to waive it or use IDEA mediation in writing. 34 C.F.R. § 300.510(a)(3).

If the LEA does not resolve the DPC to the parent's satisfaction within 30 days of receipt, a due process hearing may occur, and the timeline for issuing a due process hearing final decision begins at the expiration of the 30-day period. If the LEA fails to hold a resolution meeting within 15 days of receiving notice of a parent's DPC or fails to participate in the resolution meeting, a parent may seek the intervention of a hearing officer to begin the due process hearing timeline. Except where the parties have jointly agreed to waive the resolution process or use mediation, the failure of the parent filing a DPC to participate in the resolution meeting will delay the timelines for the resolution process and due process hearing until the meeting takes place. If the LEA cannot

obtain the participation of the parent in the resolution meeting after reasonable efforts have been made and such efforts have been documented, the LEA may, after 30 days, request that a hearing officer dismiss the parent's DPC. But there is no correlating sanction where the DOE fails to convene a resolution meeting or a resolution meeting with the proper personnel.

## **ARGUMENT**

**I.    DOE HAS ENGAGED IN AN ONGOING SYSTEMIC PRACTICE OF REFUSING TO CONVENE FEDERALLY-MANDATED RESOLUTION SESSIONS IN VIOLATION OF 20 U.S.C. § 1415(f)(1)(B)**

DOE has consistently engaged in illegal practices by willfully failing and refusing to convene federally-mandated resolution meetings as required by IDEA. This deliberate non-compliance directly violates 20 U.S.C. § 1415(f)(1)(B), undermining the procedural safeguards designed to ensure timely and effective resolution of disputes between parents and school districts.

> Prior to the opportunity for an impartial due process hearing under subparagraph (A), the LEA shall convene a meeting with the parents and the relevant member or members of the IEP team who have specific knowledge of the facts identified in the Complaint—
>
> I.    within 15 days of receiving notice of the parents' Complaint; (II) which **shall** include a representative of the agency who has decision-making authority on behalf of such agency;
>
> …
>
> III.    which may not include an attorney of the local educational agency unless the parent is accompanied by an attorney; and
>
> IV.    where the parents of the child discuss their Complaint, and the facts that form the basis of the Complaint, and the local educational agency is provided the opportunity to resolve the Complaint, unless the parents and the local educational agency agree in writing to waive such meeting, or agree to use the mediation process described in subsection (e).

*E. Ramapo Cent. Sch. Dist. v. DeLorenzo*, No. 13-CV-1613 CS, 2013 WL 5508392 (S.D.N.Y. Oct. 3, 2013)(citing 20 U.S.C. § 1415(f)(1)(B)).

### *A.    Congressional Intent and the Importance of "Shall"*

When Congress enacted the IDEA, it aimed to ensure that all children with disabilities have access to a FAPE. The dispute resolution process is central to achieving this goal, which Congress meticulously designed to foster cooperation and prompt resolution of conflicts between parents and school districts. In drafting the resolution provisions of the IDEA, Congress employed the term "shall" to underscore the mandatory nature of these requirements. The use of "shall" signifies something that must be done by the LEA, such as the DOE, to comply with the stipulated procedures.

The resolution session is essential to the IDEA's procedural safeguards, ensuring that disputes can be resolved expeditiously without resorting to lengthy administrative or judicial processes. Congress intended the resolution session to be a collaborative meeting where parents and relevant school officials could discuss the DPC and attempt to resolve the issues at hand. The statutory language mandates that within fifteen (15) days of receiving notice of a parent's DPC, the LEA must convene a resolution meeting with the parents and relevant members of the IEP team who have specific knowledge of the facts identified in the Complaint and who have the authority to enter binding settlements and/or resolutions. These requirements are codified in § 1415(f)(1)(B) and 34 C.F.R. § 300.510(a).

### B.    *Statutory Requirements for Resolution Meetings*

The express purpose of the resolution meeting is to provide an opportunity for the parties to resolve the dispute that forms the basis of the DPC. This session must include a public agency representative with decision-making authority and may not include an attorney of the LEA unless an attorney accompanies the parent. The parent and the LEA jointly determine the relevant IEP team members to attend the meeting, ensuring that those with the most pertinent knowledge are present to facilitate an effective resolution. These requirements are detailed in 34 C.F.R.

§ 300.510(a)(1)-(4). Indeed, 34 C.F.R. § 300.510(a)(4) specifically states, "The parent and the LEA determine the relevant members of the IEP team to attend the meeting."

Congress established these procedural safeguards to emphasize timely and meaningful resolution of disputes. The mandatory nature of the resolution session, as reflected by the term "shall," reflects Congress's intent to prevent unnecessary delays and ensure that parents and students can address their concerns promptly. The statutory framework allows the resolution meeting to be waived, but only if both parties agree in writing or choose to participate in mediation instead. 34 C.F.R. § 300.510(a)(3)

### C.    *Judicial Interpretation, Impact on Plaintiffs, and Necessity for a Preliminary Injunction*

Courts have consistently upheld the mandatory nature of these resolution procedures. The Supreme Court has highlighted the cooperative process envisioned by IDEA, emphasizing that collaboration between parents and schools is at the core of the Act. *Schaffer ex-rel. Schaffer*, 546 U.S. at 53. The court also affirmed that the responsibility for private school tuition "stays put" during the pendency of due process proceedings, underscoring the importance of maintaining stability in the student's educational placement while disputes are resolved. *E. Z.-L. ex-rel. R.L.*, 763 F. Supp. 2d at 599.

IDEA's implementing regulations are clear that the 15-day period within which the LEA must convene a resolution meeting begins when the school system receives notice of an administrative Complaint, not when the student files the Complaint. *S.C. v. Huntsville City Sch.*, 441 F. Supp. 3d 1228 (N.D. Ala. 2020). Despite these clear statutory mandates and judicial affirmations, the DOE has engaged in a continuous and systemic practice of failing to convene resolution meetings within 15 days of receiving a parent's DPC or, as here, convening meetings without the appropriate personnel. This failure deprives Plaintiffs and Students of their statutory

14

right to resolve their disputes promptly. Each Plaintiff filed a DPC on July 2, seeking pendency funding for their Student's program/placement at iBRAIN for the 2024–2025 extended school year; a finding that DOE denied their Student a FAPE; a finding that the Student's educational placement is appropriate; and a finding that equitable considerations favor full funding for tuition and related services.

DOE's refusal to comply with the resolution session requirements exacerbates the educational inequities faced by the Students, many of whom rely on the stability and specialized support provided by their current placements. The lack of resolution meetings delays the adjudication of their DPCs and perpetuates the harm caused by DOE's failure to provide appropriate educational services.

Without a temporary restraining order or preliminary injunction from this Court, DOE will likely continue its non-compliance with IDEA's requirements, thereby denying the Students their right to a resolution meeting. DOE has refused to schedule resolution meetings with appropriate personnel, as required by IDEA. See Albert Declaration. The immediate and irreparable harm resulting from this failure includes the inability to have a resolution meeting as contemplated by Congress, which harms the rights established under IDEA and undermines the procedural safeguards designed to protect students with disabilities.

The Court's intervention is essential to compel the DOE to fulfill its legal obligations and ensure that the rights of Student-Plaintiffs are upheld. Without an order, DOE simply does not do what Congress has tasked it to do. The Court's help is needed. The injunction will enforce compliance with the statute, promote timely resolution of disputes, and prevent further harm to the educational and developmental progress of the students involved.

15

**II.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ORDERING DOE TO COMPLY WITH IDEA'S MANDATE TO CONVENE RESOLUTION SESSIONS UNDER 20 U.S.C. § 1415(f)(1)(B)**

Plaintiffs are entitled to injunctive relief. When seeking such relief, a plaintiff must establish that they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Plaintiffs satisfy each of these prongs.

In this case, Plaintiffs seek an injunction narrowly tailored to address DOE's IDEA violations and to remedy Defendants' unlawful policy of denying the Plaintiffs their right to a proper resolution meeting. The Court has broad discretion to enjoin possible future violations of the law where past violations have been shown. It may assume that past misconduct is highly suggestive of the likelihood of future violations. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 290 (2d Cir. 2003) (citing *United States v. Carson*, 52 F.3d 1173, 1183–84 (2d Cir. 1995)).

Plaintiffs will likely succeed on the merits, given the clear evidence of DOE's past IDEA violations. They are also likely to suffer irreparable harm without preliminary relief, as the denial of resolution meetings directly impacts the stability and continuity of their children's educational placements. The balance of equities favors the Plaintiffs, as the injunction would enforce existing legal rights and ensure compliance with federal law. Lastly, granting the injunction is in the public interest, as it upholds the legal protections designed to support the education of children with disabilities.

### A.    Likelihood of Success on the Merits

Plaintiffs can show a likelihood of success on the merits because every student who receives special education services is entitled to file a DPC when the placement and program offered by

16

DOE is deemed deficient. Here, each Plaintiff filed a DPC on July 2 and triggered DOE's legal obligation to convene a resolution session within fifteen (15) days as explicitly stated in 20 U.S.C. § 1415(f)(1)(B) and 34 C.F.R. § 300.510. This statutory requirement itself establishes a strong likelihood of success on the merits for Plaintiffs.

Each Plaintiff here is likely to succeed on the merits because DOE's obligation to convene proper resolution meetings is legally mandated by IDEA, absent one of the two exceptions delineated earlier, neither of which applies here and with which DOE cannot credibly dispute. The statutory language requires the DOE to act within the specified time, and their failure to do so violates federal law. This non-compliance strongly supports Plaintiffs' case and demonstrates a high likelihood of success on the merits.

### B.    *Irreparable Harm*

Plaintiffs need not put forth a substantial amount of evidence of irreparable injury because, as the Court held in *Schmelzer ex-rel. Schmelzer v. New York*, 363 F. Supp. 2d 453, 459 (E.D.N.Y. 2003), such injury is obvious: "The procedural requirements of the IDEA were put in place for a particular purpose, and that purpose was to ensure that disabled students were provided a free appropriate education." 363 F. Supp. 2d at 459.

If DOE is not ordered to convene a resolution session for each Plaintiff with the proper personnel, each Student-Plaintiff here will suffer two forms of irreparable injury: (1) a continued violation of their procedural rights outlined in 20 U.S.C. § 1415(f)(1)(B); and (2) the denial of the Parents' rights to attempt to resolve the issues—or any of the issues—set forth in their DPC. DOE should not be allowed to continue to shirk its legal obligations under IDEA—specifically, its obligation to provide each Plaintiff with a resolution meeting with the appropriate personnel. At each resolution meeting there should be a relevant member or members of each Student's IEP team

with specific knowledge of the facts identified in the Student's DPC, and there should be someone with the authority to enter binding settlements and/or resolutions.

The irreparable harm in this case is that each Student will lose their **right, to have a resolution meeting that DOE must provide.** Terms like shall, must, and right should be treated with the seriousness they deserve. If Plaintiffs do not get the resolution meetings they are entitled to immediately, they will lose their right to have such meetings. Such harm is irreparable. The harm caused by violating IDEA's safeguards should be presumed, like the harm presumed in First Amendment cases, where the violation of rights is considered sufficient to establish irreparable harm. Courts have consistently held that the loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "Violations of First Amendment rights are commonly considered irreparable injuries because the damages that accompany them are especially difficult to prove or quantify." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (quoting *Joelner v. Vill. of Washington Park, Illinois*, 378 F.3d 613, 620 (7th Cir. 2004)) (citing *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)). "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Sammartano v. First Jud. Dist. Ct., in and for Cnty. of Carson City*, 303 F.3d 959 (9th Cir. 2002) (quoting *Elrod*, 427 U.S. 347) (*see also S.O.C., Inc. v. Cnty. of Clark*, 152 F.3d 1136, 1148 (9th Cir.), *amended,* 160 F.3d 541 (9th Cir. 1998) (holding that a civil liberties organization that had demonstrated probable success on the merits of its First Amendment overbreadth claim had thereby also demonstrated irreparable harm).

Similarly, the violation of Plaintiffs' procedural rights under IDEA constitutes irreparable harm, as these rights are fundamental to ensuring that students with disabilities receive the FAPE to which they are entitled. The IDEA's procedural safeguards, such as the timely convening of resolution sessions, are not mere formalities; they are essential mechanisms designed to uphold the educational stability and continuity for students with disabilities. These procedural protections ensure that disputes are resolved promptly and fairly, preventing prolonged disruptions to the student's education.

Without these safeguards, students are at significant risk of not receiving the services and support they need, which can have a long-lasting effect on their educational progress and overall development. Timely resolution sessions help address and correct any deficiencies in the educational program or placement, thus safeguarding the student's right to an appropriate education tailored to their unique needs. The absence of such timely interventions can result in significant educational setbacks, regression in skills, and diminished educational outcomes, particularly for students with disabilities who require consistent and specialized support.

The harm suffered by Plaintiffs is not only immediate and ongoing but also irreparable. The IDEA's procedural rights are designed to provide immediate relief and protection to ensure that students with disabilities do not fall behind or lose critical educational opportunities while disputes are being resolved. Once lost, these opportunities cannot be adequately remedied by monetary damages or other compensation. A child's educational development is time-sensitive, and any disruption or delay in receiving appropriate services can result in irreversible harm, setting the student back months or even years in their educational progress.

Furthermore, the failure to convene resolution sessions within the prescribed timeframe undermines the entire framework of IDEA, which is built on the premise of cooperation and timely

intervention. This procedural violation erodes trust in the educational system and the legal protections afforded to students with disabilities. It sends a message that the DOE can disregard its legal obligations without consequence, thereby weakening the enforcement of the IDEA and the protections it guarantees.

Denying timely resolution sessions deprives students of their right to a FAPE and disrupts the necessary continuum of educational services and supports. This disruption affects the immediate educational placement and jeopardizes the student's future educational trajectory and overall well-being. The harm is, therefore, profound and irreparable, emphasizing the urgent need for a preliminary injunction to compel compliance with the IDEA's procedural mandates and ensure that students with disabilities receive the education and support to which they are legally entitled. Accordingly, this factor favors the Plaintiffs here.

## C. *The Balance of Equities Favors Injunctive Relief*

To weigh the balance of the equities, courts consider "the harm to [the plaintiff] if relief is denied against the harm to [the defendant] if relief is granted." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 425 (E.D.N.Y. 2007), *judgment entered sub nom. In re Zyprexa Litig.*, No. 07-CV-0504, 2007 WL 669797 (E.D.N.Y. March 1, 2007), and *aff'd sub nom. Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010).

The equities favor injunctive relief here, as each Plaintiff filed their DPC with DOE on July 2, 2024. Denying the requested relief would cause significant harm to Plaintiffs, as it would perpetuate violation of their procedural rights under the IDEA and further delay the resolution of their disputes. This delay would adversely affect the educational stability and development of the Student-Plaintiffs, compounding the irreparable harm they are already experiencing. Ensuring that children with disabilities receive the services to which they are entitled is a fundamental purpose

of the IDEA. *Cedar Rapids Community School Dist.*, 526 U.S. at 79 ("…since Congress intended to open the doors of public education to all qualified children and required participating States to educate disabled children with nondisabled children whenever possible."). On the other hand, the harm to Defendants, if any, is negligible.

The balance of the equities weighs in Plaintiffs' favor. Plaintiffs face irreparable harm if relief is denied, while Defendants face minimal to no harm if the injunction is granted. The Court's intervention is necessary to rectify the ongoing violations of the IDEA and to uphold the statutory rights of the Student-Plaintiffs. The balance of equities strongly supports the issuance of a preliminary injunction to compel Defendants to comply with their legal obligations under the IDEA.

### D.    Injunctive Relief under IDEA is in the Public Interest

Adherence to federal law is in the public interest. Enjoining Defendants from violating the provisions of the IDEA will promote the public interest by enforcing the procedural rights guaranteed to students with disabilities and their parents under the IDEA. Here, requiring the DOE to comply with its legal obligations, specifically to convene a resolution session timely under 20 U.S.C. § 1415(f)(1)(B) of the IDEA is both appropriate and in the public's interest. Such injunctive relief aligns with the spirit and plain language of the IDEA, a remedial statute providing broad relief to safeguard the rights of all students with disabilities.

The Congressional purpose in adopting the Education for All Handicapped Children Act 20 U.S.C. § 1400 *et seq.,* the precursor to IDEA, was to remedy the condition of children with disabilities who were not receiving education appropriate for their needs. Congress provided federal funding to state and local school systems for special education purposes and conditioned the grant of funds on compliance with federal standards. *Dubois v. Connecticut State Bd. of Educ.*,

727 F.2d 44 (2d Cir. 1984). This federal law aims to ensure that the rights of students with disabilities and their parents/guardians are protected. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009); *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 206–07.

Protecting the rights of students with disabilities by enforcing the provisions of the IDEA that a school district has repeatedly failed and refused to comply with is in the public interest. The public interest is served when educational agencies are held accountable to the standards outlined in the IDEA, ensuring that all students receive the FAPE to which they are entitled. The Supreme Court has repeatedly emphasized the importance of safeguarding the educational rights of students with disabilities as a matter of public policy. *Honig*, 484 U.S. at 323; *see also Endrew F. ex-rel. Joseph F.*, 580 U.S. 386.

Enforcing IDEA's requirements benefits the individual students and reinforces the broader principle that educational institutions must comply with federal law. This compliance ensures that all students with disabilities have the educational opportunities necessary for their development and success. Therefore, the public interest strongly favors granting injunctive relief to uphold the rights and protections guaranteed under the IDEA.

## III.    THE ISSUE RAISED HERE IS RIPE FOR JUDICIAL DETERMINATION

In determining whether a claim is ripe, the Second Circuit has enunciated various factors for Courts to consider: (1) whether the issue to be reviewed is more legal or factual in nature, (2) whether the agency action is likely to have an immediate and substantial impact upon the complaining party, (3) whether judicial review would delay or impede effective enforcement of the relevant administrative scheme, (4) whether the agency's actions are final, and (5) whether an adequate factual record has been established. *Able v. United States*, 88 F.3d 1280, 1289–90 (2d Cir.

1996) (citing *Occidental Chem. Corp. v. FERC*, 869 F.2d 127, 129 (2d Cir. 1989); *Seafarers Int'l Union of N. Am., AFL-CIO v. U.S. Coast Guard*, 736 F.2d 19, 25–27 (2d Cir. 1984); *Aquavella v. Richardson*, 437 F.2d 397, 403–04 (2d Cir. 1971).

First, the issues before the court on the pending preliminary injunction motion are primarily legal rather than factual. Plaintiffs seek enforcement of their right to a resolution session in strict compliance with the IDEA—nothing more, nothing less. This aligns with the principle that when the issue presented is purely legal, it is more likely to be ripe for judicial review. *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977).

Second, requiring DOE to comply with its federal mandate will have an immediate and substantial effect on Plaintiffs by providing them the opportunity envisioned by the IDEA—the potential to resolve all issues, or any issue, without the necessity of court intervention. This saves both parties time and expense and conserves judicial resources. As the Supreme Court noted in *Abbott Laboratories*, 387 U.S. 136, the ripeness doctrine is intended to prevent courts from entangling themselves in abstract disagreements. However, it does not bar review of concrete legal issues presented in a clean-cut and final manner. *Abbott Laboratories*, 387 U.S. at 148.

Third, regarding "whether judicial review would delay or impede effective enforcement of the relevant administrative scheme," judicial review, in this case, supports ripeness. Absent judicial review, the DOE will continue violating the IDEA's mandate to provide parents with resolution meetings and sessions to resolve the issues raised in their DPCs. Judicial intervention will not impede but expedite enforcement of Plaintiffs' rights under IDEA, ensuring that they can attempt to resolve the issues outlined in their DPCs.

Fourth, the agency's actions are final. The DOE's failure to convene resolution sessions within the prescribed timeframe constitutes a final agency action, as no further administrative

remedies are available to Plaintiffs to compel compliance. Here, the DOE's inaction is final because it represents a definitive refusal to comply with the statutory requirements, thus rendering Plaintiffs' claims ripe for review.

Fifth, an adequate factual record has been established. The facts surrounding the DOE's non-compliance are well-documented and undisputed. Plaintiffs have filed Due Process Complaints, and the DOE failed to convene the required resolution sessions, with the proper personnel within the 15-day period. This clear factual record provides a sufficient basis for the court to adjudicate the legal issues presented.

Lastly, the Plaintiffs would suffer greater hardship if judicial review is withheld than would the DOE if it is not. Plaintiffs are merely seeking Court intervention to require DOE to fulfill its clear statutory obligations under the IDEA and its implementing regulations. 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(1). Without court action, the DOE cannot be relied on to meet its statutory duties, resulting in ongoing harm to the Plaintiffs.

All factors considered, the Plaintiffs' claims are ripe for judicial determination. The issues are primarily legal, the agency's action has a substantial impact, judicial review will expedite rather than delay enforcement, the agency's actions are final, and an adequate factual record has been established. Judicial intervention is therefore necessary and appropriate to ensure compliance with the IDEA and to protect Plaintiffs' rights.

## **CONCLUSION**

Based on the preceding, Plaintiffs respectfully ask the Court to issue a temporary restraining order and/or preliminary injunction directing Defendants to convene a resolution meeting for each Plaintiff with a relevant member or members of their Student's IEP team who have specific knowledge of the facts identified in the Student's DPC, as well as a public agency representative,

with decision-making authority on that agency's behalf, within 15 days of receipt of their DPC or as soon thereafter as practicable, but in no event more than 30 days from receipt of Plaintiff's DPC as required by 20 U.S.C. § 1415(f)(1)(B) and 34 C.F.R. § 300.510; and granting such other, further, and different relief as the Court may deem just, proper, and equitable.

Dated:  July 15, 2024
       New York, New York

                                        Respectfully submitted,
                                        Liberty & Freedom Legal Group
                                        *Attorneys for Plaintiffs*

                   By:      */S/*
                                          Rory J. Bellantoni (RB2901)
                                          300 East 95th Street, Suite 130
                                          New York, New York 10128
                                          (646) 850-5035
                                          rory@pabilaw.org