UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTINE THOMAS individually and as Parent and Natural Guardian of A.T *et al.*,<br><br>Plaintiffs,<br><br>-against-<br><br>DAVID C. BANKS, in his official capacity as Chancellor of the New York City Department of Education *et ano*,<br><br>Defendants. | Case No. 24-cv-5138-JLR |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

MURIEL GOODE-TRUFANT
**Acting Corporation Counsel for The City of New York**
**100 CHURCH STREET**
**NEW YORK, NEW YORK 10007**
Jaimini Vyas
212-356-2079

**Attorneys for Defendants**

**PRELIMINARY STATEMENT**

Defendants, David C. Banks, in his official capacity as Chancellor of the New York City Department of Education, and the New York City Department of Education ("DOE") (collectively, "Defendants"), respectfully submit this Memorandum of Law in opposition to Plaintiffs' motion for a temporary restraining order and preliminary injunction.

In filing this motion seeking emergency preliminary injunctions to enforce rights under 20 U.S.C. §1415 (f)(1)(B) and 34 C.F.R. § 300.510(a), as well as similar motions in four other actions in this District,[1] Plaintiffs represented by the Brain Injury Rights Group[2] ("BIRG"), have yet again "sprinted to federal court," burdening judges in this District with requests for relief to which they are not entitled—just as they did in *Mendez v. Banks,* 65 F.4th 56 (2d. Cir. 2023), and numerous other actions over the last several years. As in those previous actions, Plaintiffs cannot meet the legal standards required to obtain a temporary restraining order and preliminary injunction.

First, Plaintiffs cannot show a likelihood of success on the merits because they refused to accept from DOE the relief they now seek from this Court. Second, Plaintiffs cannot show that irreparable harm will befall them if they allow the underlying administrative matters to proceed to a hearing. Unlike in those prior actions, it is clear that here Plaintiffs are seeking relief that they do not want and have actively refused to receive. Accordingly, Plaintiffs' motion must be denied.

---

[1] These cases are *Bruckauf et al. v. Banks et al.*, 24-cv-5136-LGS; *Ramos et al. v. Banks et al.*, 24-cv-5109-LGS; *Moonsammy et al. v. Banks et al.*, 24-cv-5151-PAE and *Chaperon et al. v. Banks et al.*, 24-cv-5135-JHR.

[2] Plaintiffs' Counsel appears to be operating as both "Brain Injury Rights Group" and "Liberty & Freedom Legal Group" conterminously.

**STATEMENT OF FACTS**

The extended (twelve-month) school year for New York City Public Schools began on July 2, 2024. On or about that same day, multiple parents represented by BIRG filed due process complaints ("DPCs") alleging that their children had been denied a free and appropriate public education ("FAPE") and requesting that the DOE fund the students' attendance at the International Institute for the Brain ("iBRAIN"). The DPCs also requested that DOE hold "resolution sessions" within 15 days as required by the IDEA.

On July 11, 2024, DOE informed Plaintiffs that resolution sessions would be held between July 12, 2024 and July 17, 2024. Upon information and belief, the first of those sessions was held on July 12, 2024 at 9:30 AM. Peter Albert, an attorney with BIRG, attended the meeting. Except for iBRAIN and BIRG founder Patrick Donohue, the parents did not.

For DOE, members of the Committee on Special Education ("CSE") with specific knowledge of the facts in the student's DPC and the authority to assess DOE's educational offerings for the 2024-2025 school year attended. Upon meeting with those individuals, Mr. Albert declared that neither he nor his clients would attend any further resolution sessions, and promptly canceled the scheduled resolution sessions for the remaining Plaintiffs. While DOE has attempted to reschedule those sessions, not a single parent has attended.

**LEGAL STANDARD**

The IDEA, 20 U.S.C. §1415(f)(1)(B) and 34 C.F.R. §300.510(a) require that "[w]ithin 15 days of receiving notice of the parent's due process complaint . . . the [Local Educational Agency ("LEA")] must convene a meeting with the parent and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the due process complaint that (i) includes a representative of the public agency who has decision-making authority on behalf of that

agency; and (ii) may not include an attorney of the LEA unless the parent is accompanied by an attorney."

"[T]he purpose of the meeting is for the parent of the child to discuss the due process complaint, and the facts that form the basis of the due process complaint, so that the LEA has the opportunity to resolve the dispute that is the basis for the due process complaint." 34 C.F.R. § 300.510(a).

The resolution meeting is the first step in the IDEA's 30-day resolution period. However, if the resolution meeting fails to occur, the C.F.R. provides remedies to both parties. Specifically, "[i]f the LEA is unable to obtain the participation of the parent in the resolution meeting after reasonable efforts have been made … the LEA may, at the conclusion of the 30-day period, request that a hearing officer dismiss the parent's due process complaint." 34 C.F.R. §300.510(b)(4). "If the LEA fails to hold the resolution meeting … within 15 days of receiving notice of a parent's due process complaint or fails to participate in the resolution meeting, the parent may seek the intervention of a hearing officer to begin the due process hearing timeline." 34 C.F.R. §300.510(b)(5).

To obtain a preliminary injunction, "plaintiffs must show a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiffs' favor, (2) that they are "likely to suffer irreparable injury in the absence of an injunction, (3) that the balance of hardships tips in their favor, and (4) that the public interest would not be disserved by the issuance of a preliminary injunction." *Mendez v. Banks*, 65 F.4th at 63–64 (internal quotation marks and alterations omitted).

**ARGUMENT**

**1. Plaintiffs Cannot Show a Likelihood of Success on the Merits**

Plaintiffs cannot show a likelihood of success on the merits because they have already rejected DOE's attempts to provide them the resolution sessions they are seeking here. The parties do not dispute that DOE attempted to schedule resolution sessions within the 15 days required by the C.F.R. *See* Albert Decl., ¶¶ 10, 13. Further, the parties agree that Plaintiffs have not attended a single resolution session scheduled by DOE. *See* Albert Decl., ¶ 21; Plf. Mtn., ECF 8, at 13-14[3]; Ex. A to Vyas Decl., July 25, 2024 Tr., 6:3, 15-21.

Plaintiffs' only defense for failing to attend these sessions is their contention that these are not "bona fide" resolution sessions. Plf. Mtn. at 13; Ex. A to Vyas Decl., Tr., 5:6-9. They contend that DOE's representatives were not "members of the Student's IEP team" (Plf. Mtn. at 13) because they did not personally attend the plaintiffs' IEP meetings and that they attended the resolution meeting without sufficient authority.

First, Plaintiffs deliberately misinterpret the C.F.R.'s attendance requirement. While both the IDEA and C.F.R. state that "the relevant member or members of the IEP Team" must attend the meeting, the "IEP team" is not defined. However, it is widely understood that the terms "CSE" and "IEP Team" are interchangeable.[4] BIRG has litigated IDEA matters on behalf of students

---

[3] Citations are to page numbers assigned by the ECF filing system.

[4] The New York State Education Department requires DOE to use the terms "CSE" and "CSE Subcommittee." *See* https://www.nysed.gov/special-education/questions-and-answers-special-education-meeting-notice-and-related-requirements (section A, part 11 accessed July 26, 2024). However, the interchangeable nature of these terms is generally understood by education advocates and members of the IDEA parents' bar. *See, e.g.*, https://includenyc.org/help-center/resources/individualized-education-program-iep-meetings/ (accessed July 26, 2024); https://www.littmankrooks.com/special-education-advocacy/the-iep-and-cse-meetings/ (accessed

attending iBRAIN for several years. Their contention that the CSE members who attended the resolution meetings did not qualify as members of the student's "IEP Team" strains credulity.

BIRG's claim that the CSE members lacked appropriate authority to bind DOE is similarly unreasonable. The CSE members who attended the resolution meeting had authority to hear the parent's concerns, authorize additional evaluations, if necessary, offer an alternate public-school placement, and reconvene the CSE to attempt to offer these students a more appropriate IEP if one was deemed necessary.

Plaintiffs have no interest in a meeting at which the sufficiency of the student's IEP is discussed and potentially revised to be implemented at a DOE public school. They seek funding for the parent's unilateral placement of the student at iBRAIN, which the DOE is unable to offer. Further, Plaintiffs suggest that the resolution meetings should have been used to discuss pendency. Pendency is not generally considered to be unique relief sought by the parent; it simply allows the student to remain in their current, last agreed-upon educational placement while the parent seeks relief in an administrative proceeding. *See* 20 U.S.C. §1415(j). It is not an appropriate subject for a resolution meeting, both because it is not a separate request for relief, and because the purpose of the resolution meeting is to prevent the parties from proceeding to an administrative hearing in the first place.

Since July 17, 2024, DOE has continued to offer resolution sessions to Plaintiffs. Plaintiffs have continued to decline to attend those sessions. Thus, Plaintiffs have been offered the relief

---

July 26, 2024); https://www.decrescenzolaw.com/our-services/iep-meetings (accessed July 26, 2024).

sought in the instant motion and categorically refused to accept it. On this basis alone, their request must be denied.

### 2. Plaintiffs Cannot Show a Likelihood of Irreparable Harm

Should this Court determine that Plaintiffs have any chance of success on the merits, Plaintiffs' instant motion should be denied because Plaintiffs have failed to allege any harm to these students—much less irreparable harm. Each student here is receiving the educational services sought in their DPC while these matters are pending at the administrative level; and they will continue to receive those services until a final decision is reached. Moreover, if Plaintiffs could show that DOE had failed to hold the requested resolution sessions, the IDEA and C.F.R. provide a clear remedy—Plaintiffs may immediately proceed to the impartial hearing stage of the administrative process:

> If the LEA fails to hold the resolution meeting … within 15 days of receiving notice of a parent's due process complaint or fails to participate in the resolution meeting, **the parent may seek the intervention of a hearing officer** to begin the due process hearing timeline.

34 C.F.R. § 300.510(b)(5) (emphasis added).

Even before bringing the instant motion, Plaintiffs rushed to avail of this administrative remedy, which remains to be exhausted. Plaintiffs have requested in each DPC at issue here and in the five federal cases brought by Plaintiffs' counsel that if DOE fails to hold the Resolution Meeting within fifteen (15) days of receipt of the Parent's DPC or fails to participate in the Resolution Meeting, then Parent is requesting that the Impartial Hearing Officer ("IHO") start the impartial hearing timeline immediately. *See* Plaintiff-Students' July 2, 2024 DPCs, ECF 1-1 at 2; ECF 1-2 at 2; ECF 1-3 at 3; ECF 1-4 at 2; ECF 1-5 at 2, 3.

Plaintiffs claim that "[t]he irreparable harm in this case is that each Student will lose their

**right, to have a resolution meeting that DOE must provide."** Plf. Mtn., ECF 8 at 25 (emphasis in original). That concern is belied, however, by their explicit attempts to curtail the resolution process. Plaintiffs further contend that the harm caused by a failure to hold a resolution session is akin to the chilling effect of a First Amendment violation (*id.*), but that comparison is inapposite. A party whose speech is chilled stops speaking. In contrast, at all times, the students at issue continue to receive their education and related services at iBRAIN. If the parties fail to resolve a DPC during the resolution period, they simply proceed to a hearing before the assigned IHO.

Thus, Plaintiffs have failed to show how the parties' current disagreement regarding the appropriate attendees at the resolution meeting could possibly harm the Student-Plaintiffs.

### 3. A Preliminary Injunction Will Not Serve the Public Interest

As stated in the C.F.R., "the purpose of the meeting is for the parent of the child to discuss the due process complaint, and the facts that form the basis of the due process complaint, so that the LEA has the opportunity to resolve the dispute that is the basis for the due process complaint." 34 C.F.R. §300.510(a)(2). It is inarguable that a good faith resolution session between parties who intend to resolve the issues raised in a DPC serves the public interest. However, by their conduct, it is apparent that Plaintiffs have no intention of participating in a good-faith resolution session.

Plaintiffs' goal in filing the instant motions appears to be to ensure that DOE's resources are taxed through litigation while their administrative proceedings are prioritized and expedited— which in turn affords DOE less time to properly investigate the issues raised in the DPCs and mount appropriate defenses. The tactics employed here are identical to the unsuccessful tactics used by BIRG in previous school years, during which they have brought at least twenty unsuccessful motions for preliminary injunction with the goal of forcing DOE to expedite its administrative procedures and to use the IDEA "to frustrate the fiscal policies of participating

7

states." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 535 (2nd Cir. 2020). *See also Mendez v. Banks,* 65 F.4th 56 (2d. Cir. 2023); *Neske v. New York City Dep't of Educ.*, No. 22-2962, 2023 WL 8888586, 2023 U.S. App. LEXIS 34126 (2d Cir. Dec. 26, 2023). Judicial endorsement of these tactics only stands to harm the public interest. Indeed, these filings alone frustrate DOE's processes by diverting limited resources that can otherwise be meaningfully utilized during the DPC resolution period.

### 4. The Balance of Hardships Favors Defendants

Finally, the balance of hardships does not favor Plaintiffs. Plaintiffs have admitted through their retelling of the facts that DOE has made—and continues to make—reasonable efforts to schedule resolution sessions, and that Plaintiffs have refused to attend those sessions. Scheduling resolution sessions at the beginning of the extended school year is an intensive task, one which requires cooperation between the parties that Plaintiffs have declined to engage in.

Further, should the resolution sessions not occur despite DOE's best efforts, the parties will proceed to the administrative hearing stage, at which point Plaintiffs will present their cases to the assigned IHOs and receive decisions on the merits. As the only relief sought in Plaintiffs' DPCs is monetary reimbursement, the nominal delay Plaintiffs seem to fear will not create the type of injury cognizable for emergency injunctive relief. *See Loveridge v. Pendleton Woolen Mills, Inc.,* 788 F.2d 914, 918 (2d Cir. 1986) ("[W]here money damages are adequate compensation, a preliminary injunction will not issue since equity should not intervene where there is an adequate remedy at law.").

## **CONCLUSION**

For the reasons stated herein, Defendants respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction and grant Defendants such other and further relief as the Court deems just and proper.

Dated: July 31, 2024
    New York, New York,

                             **MURIEL GOODE-TRUFANT**
                             *Acting Corporation Counsel of the City of New York*
                             Attorney for Defendants
                             100 Church Street
                             New York, N.Y. 10007
                             Office: 212-356-2079
                             jvyas@law.nyc.gov

                             /s/ Jaimini A. Vyas
                             _____
                             Jaimini A. Vyas
                             *Assistant Corporation Counsel*