UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
**MARTINE THOMAS,** individually and as Parent and
Natural Guardian of AT., *et al.,*

                                  *Plaintiffs,*

   -against-                                                      24-cv-5138 (JLR)

**DAVID C. BANKS**, in his official capacity as Chancellor
of the New York City Department of Education, and the
**NEW YORK CITY DEPARTMENT OF EDUCATION,**

                                  *Defendants.*
------------------------------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFFS' PRELIMINARY INJUNCTION**


Mary Jo Whatley, Esq.
Liberty & Freedom Legal Group
*Attorneys for Plaintiffs*
300 East 95th Street, #130
New York, New York 10128
maryjo@pabilaw.org

## **TABLE OF CONTENTS**

*Page(s)*

**PRELIMINARY STATEMENT**……………………………………………………..……..........1

**ARGUMENT**…………………………………………….…………………….....…...3

    I.    PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF
           SUCCESS ON THE MERITS………………………………………………….…3

    II.    PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF
           IRREPARABLE HARM……………………………………………………….…6

    III.    A PRELIMINARY INJUNCTION WILL SERVE THE
            PUBLIC INTEREST……………………………………………………………………8

    IV.    THE BALANCE OF HARDSHIPS FAVORS PLAINTIFFS……………………….10

**CONCLUSION**……………………………………………………………………...……….11

## PRELIMINARY STATEMENT

In addressing the Defendants' memorandum in opposition to Plaintiffs Motion for Preliminary Injunction, it is crucial to differentiate the context and legal basis of this case from the one cited by Defendants, namely *Mendez v. Banks*. Defendants erroneously attempt to draw parallels between *Mendez* and the present case, which only serves to obfuscate the real issue at hand—Plaintiffs' right to timely resolution meetings as mandated by the Individuals with Disabilities Education Act ("IDEA") and implementing regulations. The context and legal implications of *Mendez* are distinct from the case at bar. Here, the focus is on the unambiguous procedural rights concerning resolution meetings as set forth in the IDEA; in *Mendez*, the issue was entitlement to payment of the pendency placement, as more fully set forth *infra,* and which the IDEA does not directly address.

The Defendants' reliance on *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023), is misplaced and has no relevance to the matter before this Court. *Mendez* primarily dealt with the substantive provision contained in 20 U.S.C. § 1415(j), which entitles families to an automatic injunction requiring a school district to maintain a student's then-current educational placement, but is silent regarding payment procedures. As the Court held in *Mendez*, "without a showing 'that a delay or failure to pay has jeopardized [a] child's educational placement…' the DOE is not obligated to circumvent its ordinary payment procedures." *Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 559 (2024). Thus, *Mendez* concerns the process required to ensure the maintenance of a student's educational placement during disputes, not the unrelated procedural safeguards surrounding resolution meetings which are at issue here.

The Plaintiffs have a right to resolution meetings that are substantive and capable of resolving disputes. Defendants' actions have created a procedural quagmire, where Plaintiffs are

forced to seek expedited hearings due to the failure of the DOE to hold valid resolution meetings. This procedural landscape, compounded by the DOE's inconsistent positions in various cases, highlights the need for judicial intervention.

In the cases of *Ramos*[1] and *Bruckauf*[2], recently filed in the Southern District of New York, and assigned to the Honorable Lorna Gail Schofield, USDJ, the DOE argued that parents could seek expedited hearings due to the failure to agree on the resolution meeting attendees. *See **Exhibit 1** to the Declaration of Mary Jo Whateley ("Whateley Declaration") filed August 7, 2024*. Yet, the DOE subsequently contested these expedited hearings at the respective administrative proceedings, leading to a mixed response from impartial hearing officers. This inconsistency -- and the DOE's current motion practice seeking to dismiss due process complaints based on non-attendance at non-compliant resolution meetings -- highlight the need for judicial intervention.

The Defendants' attempt to focus the Court's attention on *Mendez* is an attempt to divert from the real issue: i.e., DOE's ongoing and egregious failure to comply with IDEA's procedural safeguards, resulting in serious delays in resolving Parents' due process complaints which Congress, in passing the IDEA and its Reauthorization. Their assertion that Plaintiffs "sprinted to federal court"[3] is meant to bias the Court against Plaintiffs and their counsel. Plaintiffs here have always diligently sought resolution through the administrative process as required by IDEA. The timeline and sequence of events clearly show that Plaintiffs exercised their rights under IDEA, and the DOE's ongoing non-compliance necessitated judicial intervention. Plaintiffs are not seeking to burden the court but are exercising their right to ensure their children receive a free appropriate public education ("FAPE"), without undue delay. The regulations are clear, and the Defendants'

---

[1] *Ramos, et al. v. Banks et al.,* 24-cv-5109
[2] *Bruckauf, et al. v. Banks et al.,* 24-cv-05151
[3] ECF No. 18, p. 2 of 10 (citing *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023)).

non-compliance should be obfuscated by its mischaracterization of Plaintiffs' motives or by drawing false parallels to unrelated cases.

Plaintiffs respectfully request that the Court grant the motion for a preliminary injunction.

## **ARGUMENT**

### I. **PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS**

The IDEA mandates that local educational agencies ("LEAs"), such as the DOE, <u>must</u> convene a resolution meeting within 15 days of receiving a due process complaint. As set forth in 34 C.F.R. § 300.510(a)(1):

> Within 15 days of receiving notice of the parent's due process complaint, and prior to the initiation of a due process hearing under § 300.511, the LEA must convene a meeting with the parent and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the due process complaint that— (i) Includes a representative of the public agency who has decision-making authority on behalf of that agency; and (ii) May not include an attorney of the LEA unless the parent is accompanied by an attorney.

Defendants argue that they have scheduled resolution sessions, yet these sessions were not conducted in compliance with IDEA requirements. *ECF No. 18, p. 5 of 10.* The regulations specify that the LEA <u>must</u> convene the meeting with members who have the authority to resolve the issues raised in the due process complaint, not merely offer the Parent additional evaluations of their child. The individuals chosen by the DOE to attend the resolution meetings lacked the necessary authority to make binding decisions, rendering these sessions ineffective and non-compliant with the regulations.

Furthermore, 8 NYCRR 200.5(j)(2)(vi)(b) reiterates this requirement:

> If the school district fails to hold the resolution meeting within 15 days of receipt of the parents' due process complaint or fails to participate in the resolution meeting, the parent may seek the intervention of the impartial hearing officer to begin the due process hearing timeline.

Defendants have not only failed to hold proper resolution meetings within the specified time frame but have also attempted to provide meetings with personnel lacking decision-making authority, thus failing to meet the regulatory standards.

Defendants argue that Plaintiffs cannot show a likelihood of success on the merits because they have allegedly rejected DOE's attempts to provide resolution sessions. This argument misrepresents both the facts and the legal requirements under IDEA. Plaintiffs have <u>not</u> rejected resolution sessions that conform with the statute; rather, they merely have insisted on resolution sessions that comply with the plain, unambiguous statutory requirements of IDEA. *ECF No. 9*. The sessions scheduled by the DOE invariably included individuals who lacked the authority to make binding decisions, thereby rendering these sessions ineffective and non-compliant.[4]

Further, Defendants' assert that Plaintiffs deliberately misinterpret the C.F.R.'s attendance requirement is unfounded. *ECF No. 18, p. 5 of 10*. Plaintiffs argue that no individuals were present at these meetings who were a part of these specific students IEP teams. It is a most critical requirement that the attendees have specific knowledge and decision-making authority. *34 C.F.R. § 300.510(a)(1)(i)*. The DOE's representatives at these sessions did not meet this criterion. In fact, at a meeting for a Student-Plaintiff in a matter similarly situated to the instant case, the Parent-Plaintiff attended and confirmed that not one of the individuals present had taken part in drafting the Student-Plaintiff's IEP. *See Declaration of Peter G. Albert ("Albert Declaration") from August 1, 2024 at ¶9-¶11*. Thus, it was the DOE and not the Parent or counsel who was in violation of the IDEA provision regarding what constituted a legally-compliant resolution meeting.

Defendants also allege that Plaintiffs' goal is solely to secure funding for unilateral placements at iBRAIN. *ECF No. 18, p. 6 of 10*. Such an assertion is a red herring and meant to

---

[4] ECF No. 9, ¶22.

divert the Court's attention from the true issue before it: Plaintiffs' right to resolution meetings to address the issues raised in their due process complaints and to explore potential resolutions before escalating to due process hearings.[5] Were the DOE to do so in the first instance, litigation such as the parties are engaged in before this Honorable Court would not be necessary – nor should it be.

The procedural safeguards in IDEA are designed to ensure that disputes can be resolved early and effectively, a goal undermined by the DOE's failure to provide compliant resolution sessions. Notwithstanding DOE's attempts to reframe the issue, Plaintiffs are only asking the Court to enforce the plain language of the IDEA and to ensure that disabled students are provided the rights and protections the IDEA mandates.

Thus, Plaintiffs have satisfied the element of likelihood of success on the merits.

## II. PLAINTIFFS HAVE SHOWN A LIKELIHOOD OF IRREPARABLE HARM

The Defendants acknowledge that "'parents may seek the intervention of a hearing officer to begin the due process hearing timeline.' *34 C.F.R. § 300.510(b)(5)." [ECF No. 18, p. 7 of 10]*. Yet, during the administrative proceedings, the DOE has stymied Plaintiffs' attempts to expedite the due process proceedings. This conflict continued until August 1, 2024, when the DOE undertook a new strategy of delay and introduced several motions to dismiss during the administrative proceedings alleging that the Plaintiff-Parents did not attend resolution meetings. *See **Exhibit 2** to the Whateley Declaration filed August 2,* before the Federal Court that if the parties cannot agree on who will attend the resolution meetings, then the Plaintiffs have access to expedited hearings with the IHOs. *See **Exhibit 1** of Whateley Declaration.*

The harm to the Plaintiffs is exacerbated by the DOE's current strategy of filing motions to dismiss in the Parents' due process complaints at the administrative level. If these motions are

---

[5] The procedural safeguards are set forth at 20 U.S.C. § 1415 and 34 C.F.R. § 300.500 to 300.536.

5

granted by the impartial hearing officers, the Plaintiffs will face even greater delays and the potential dismissal of their due process complaints. This would result in a loss of their placement and program at iBRAIN, which is critical to their educational development and well-being. The potential dismissal of their complaints effectively strips the students of their right to a FAPE, causing profound and irreparable harm.

Further, should the DOE prevail at the administrative level and obtain dismissal of Parents' due process complaints for failure to attend unlawfully-convened resolution meetings, Parents may be forever foreclosed by the 2-year statute of limitations from subsequently bringing the same claims as they initially had raised in the now pending due process complaints.

The harm suffered by Plaintiffs is immediate and ongoing. The IDEA's procedural rights are designed to provide immediate relief and protection, ensuring that students with disabilities do not lose critical educational opportunities while disputes are being resolved. Once lost, these opportunities cannot be adequately remedied by monetary damages or other compensation. A child's educational development is time-sensitive, and any disruption or delay in receiving appropriate services can result in irreversible harm, setting the student back months or even years in their educational progress.  This is especially true here, where the students suffer with profound cognitive and physical disabilities.

Furthermore, denying timely resolution sessions undermines the entire framework of IDEA, built on cooperation and timely intervention, eroding trust in the educational system and the legal protections afforded to students with disabilities. This procedural violation emboldens the DOE to continue its disregard of legal obligations without consequence, thereby weakening the enforcement of IDEA and the protections it guarantees.

The violation of Plaintiffs' procedural rights under IDEA constitutes irreparable harm, as these rights are fundamental to ensuring that students with disabilities receive the FAPE to which they are entitled. *Schmelzer v. New York*, 363 F. Supp. 2d 453, 459 (E.D.N.Y. 2003) ("The procedural requirements of the IDEA were put in place for a particular purpose, and that purpose was to ensure that disabled students were provided a free appropriate education."). The harm caused by violating IDEA's safeguards should be presumed, similar to the harm presumed in First Amendment cases, where the violation of rights is considered sufficient to establish irreparable harm. The loss of educational opportunities for even minimal periods can constitute irreparable injury, especially for students requiring consistent and specialized support.

The DOE's failure to provide compliant resolution meetings – compounded by its subsequent filing of motions to dismiss blaming the parent for their failure to appear at meetings in which they were denied the input into the participants as required by the IDEA, and to which the DOE did not confirm included representatives with authority to settle the Parent's issues set forth in their due process complaints -- has caused and continues to cause significant irreparable harm to the Plaintiffs.

The ongoing procedural violations threaten the educational stability and future progress of these students, which constitute irreparable harm and thereby require immediate judicial intervention.

**III.    A PRELIMINARY INJUNCTION WILL SERVE THE
         <u>PUBLIC INTEREST</u>**

Defendants argue that Plaintiffs' motion aims to tax DOE's resources through litigation rather than seeking genuine resolution. *ECF No. 18, p. 8 of 10*. This argument misrepresents the Plaintiffs' intentions and the nature of the harm they face. It is the DOE's blatant and continued failure to comply with IDEA's procedural requirements that has necessitated this litigation. Plaintiffs are

7

seeking to enforce their statutory rights to timely and effective resolution meetings, which the DOE has repeatedly failed to provide.

The balance of equities strongly favors the Plaintiffs. Denying the requested relief would perpetuate the violation of their procedural rights under IDEA, further delaying the resolution of their disputes and adversely affecting the educational stability and development of the Student-Plaintiffs. The ongoing failure to provide compliant resolution meetings denies students the timely educational interventions they need, causing irreparable harm that cannot be adequately remedied later.

In contrast, the harm to the DOE is negligible. Ensuring that DOE complies with its legal obligations under IDEA and convenes proper resolution meetings imposes no undue burden. *34 C.F.R. § 300.510(a)*.

The DOE is indisputably mandated by law to provide these meetings within the specified timeframe and to be attended by the appropriate personnel. *20 U.S.C. § 1415(f)(1)(B); 34 C.F.R. § 300.510(a)*. Granting the preliminary injunction would simply enforce these existing legal requirements, ensuring that Plaintiffs' rights are upheld without imposing upon the DOE additional requirements not contained in the IDEA.

The balance of equities decisively favors the Plaintiffs. The denial of proper resolution meetings causes immediate and irreparable harm to the educational stability and development of the Student-Plaintiffs. In contrast, requiring the DOE to comply with its existing legal obligations imposes no undue burden.

### IV. <u>THE BALANCE OF HARDSHIPS FAVORS PLAINTIFFS</u>

Defendants argue that the balance of hardships does not favor Plaintiffs and that any delay is not an irreparable injury as Plaintiffs seek only monetary reimbursement. This argument ignores the fundamental purpose of IDEA and the rights it protects.

The IDEA's procedural safeguards are essential to ensuring that students with disabilities receive a FAPE. Enforcing these provisions is in the public interest. The Congressional purpose behind the IDEA was to ensure that children with disabilities receive an appropriate education, conditioned on compliance with federal standards. Protecting these rights is paramount. *Sch. Comm. of Burlington v. Dep't of Educ*, 471 U.S., at 367, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (quoting 20 U.S.C. § 1400(c).

The harm to Plaintiffs is immediate and substantive. IDEA's procedural safeguards, including timely resolution meetings, prevent significant educational disruptions. Moreover, If the motions to dismiss are granted at the administrative level, Plaintiffs risk losing their procedural rights, which would strip them of the ability to address and resolve educational deficiencies, exacerbating the harm.

The balance of hardships favors Plaintiffs. The educational stability and development of the Student-Plaintiffs are at stake due to the Defendants new tactic of moving to dismiss the Plaintiffs due process complaints, whereas DOE faces minimal inconvenience in complying with its legal obligations. The Court's intervention is necessary to rectify ongoing IDEA violations and ensure that students with disabilities receive the education and support they are legally entitled to. At every turn, DOE appears to attempt to interfere with and delay providing disabled students with the procedural safeguards that Congress envisioned would ensure prompt resolution of disputes.

## **CONCLUSION**

Based on the preceding, Plaintiffs respectfully ask the Court to grant their motion for a preliminary injunction and to provide such other, further, and different relief as the Court deems just, proper, and equitable.

By: ___/S/ _____
Mary Jo Whateley, Esq. (mw9535)
300 East 95th Street, Suite 130
New York, New York 10128
(646) 850-5035
Maryjo@pabilaw.org