UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
**MARTINE THOMAS** and **SCOTT THOMAS**,
as Parents and Natural Guardians of A.**T.,** and
**MARTINE THOMAS** and **SCOTT THOMAS,**
Individually, et al.,

        Plaintiffs,

  -v-

**DAVID C. BANKS**, in his official capacity as
Chancellor of the New York City Department of
Education, and the **NEW YORK CITY
DEPARTMENT OF EDUCATION,**

        Defendants.
------------------------------------------------------------------------X

<u>Case No. 24-cv-05138</u>

DECLARATION OF
PETER G. ALBERT IN
SUPPORT OF
PLAINTIFFS' MOTION
FOR PRELIMINARY
INJUNCTION

      PETER G. ALBERT, ESQ., an attorney duly admitted to practice law in the United States District Court for the Southern District of New York, declares pursuant to 28 U.S.C. §1746 that:

1. The undersigned is counsel for the Plaintiffs herein, in addition to Patrick Donohue ("Donohue"), as Parent and Guardian of S.J.D., a student with a disability.

2. This Declaration is submitted in support of Plaintiffs' application for an Order directing Defendants to conduct Resolution Meetings pursuant to the federal Individuals with Disabilities Education Act, 20 U.S.C. §1400, et seq. ("IDEA") and its implementing regulations regarding Resolution Meetings. 34 C.F.R. §300.501.

3. S.J.D., is a Plaintiff-Student in a pending matter substantially similar to the instant case.

4. Donohue filed an administrative Due Process Complaint ("DPC") on July 2, 2024, requesting DOE to timely conduct a Resolution Meeting as required by law and asserting his right to immediately start the impartial hearing timelines if the DOE failed to do so.

1

5. The purported Resolution Meeting for S.J.D. went forward on July 26, 2024.

6. The Resolution Meeting was attended by: Mariama Sandi, CSE-9 Chair (who does not know S.J.D., nor was she part of the Student's IEP team); Kathleen Zigler, DOE School Psychologist (who does not know S.J.D., nor was she part of the Student's IEP team); Charyna Vega, a CSE-9 employee (who does not know S.J.D., nor was she part of the Student's IEP team); Kat McKay (an attorney with the Liberty and Freedom Legal Group, representing Donohue and S.J.D.); Donohue (the father of S.J.D.); and Your Declarant.

7. At the Resolution Meeting, the first topic addressed was the fact that no Resolution Meeting occurred by the deadline set forth pursuant to New York and federal law.

8. The second topic discussed was a request by Donohue, directed to CSE-9 Chair, Ms. Sandi, that he be provided with the log of information present in the CSE-9 offices and on their computer system related to his daughter S.J.D.

9. It was confirmed by Donohue that, at the Resolution Meeting, not one CSE-9/DOE attendee was present who was a part of drafting S.J.D.'s IEP or a member of her Committee on Special Education.

10. It was confirmed by Donohue that, of those present at the Resolution Meeting, not one of the CSE-9 attendees was thoroughly familiar with or had even read S.J.D.'s IEP.

11. It was confirmed by Donohue that, of those present at the Resolution Meeting, not one of the CSE-9 attendees listened to a recording made of S.J.D.'s IEP meeting.

12. Donohue addressed the need for a determination that S.J.D.'s pendency placement was located at iBRAIN, and the fact that pendency supersedes any other issue in S.J.D.'s due process case at this time.

13. The CSE-9 Chair, Ms. Sandi, refused to address pendency.

14. Donohue addressed class size (for example, noting that the CSE-9's recommendation of a 12:1:4 class size will equate to 29 people in one room (once aides and staff are included).

15. The CSE-9 Chair, Ms. Sandi, refused to address class size as a potential area of resolution that could be achieved at the Resolution Meeting.

16. Donohue addressed management needs and environmental management needs (specifically noting that the climate control for transportation was removed from S.J.D.'s proposed IEP, despite the fact that climate control is a critical safety need for S.J.D. due to her disabilities).

17. The CSE-9 Chair, Ms. Sandi initially refused to address climate control as a potential area of resolution that could be achieved at the Resolution Meeting.

18. Donohue addressed the fact that representatives from S.J.D.'s IEP team must be present in the Resolution Meeting pursuant to the law, but no person was present who drafted the IEP and no person was present who had read S.J.D.'s IEP.

19. The CSE-9 Chair, Ms. Sandi, refused to address the issue of preparation for the Resolution Meeting and appropriateness of the CSE-9 participants.

20. Donohue addressed the fact that the purpose of the Resolution Meeting is to reach a resolution on the issues underlying and set forth in the due process complaint.

21. The CSE-9 Chair, Ms. Sandi, refused to address the purpose of the Resolution Meeting as an attempt to reach a resolution.

22. Donohue addressed the fact that the DOE failed to recommend an extended school day in the DOE's proposed IEP.

23. The CSE-9 Chair, Ms. Sandi, confused extended school day with extended school year purposefully in her communication with Donohue, but then allowed for the discussion.

24. Donohue addressed related services of music therapy, and stated that New York City Public Schools do not offer music therapy.

25. The CSE-9 Chair, Ms. Sandi, initially refused to address music therapy.

26. Later in the meeting, Ms. Sandi, refused to address her level of familiarity with therapies (e.g. rhythmic auditory stimulation) and she appeared to be unfamiliar with those therapies.

27. Eventually, Ms. Sandi stated that she does not know if any New York City public school has a music therapist on staff.

28. The CSE-9 Chair, Ms. Sandi, would not review the iBRAIN IEP during the meeting for S.J.D. and would not address S.J.D.'s IEP during the Resolution Meeting, despite continued attempts by Donohue to do so.

29. The CSE-9 Chair, Ms. Sandi, would not consult or access documents she had access to, including IEPs, documents, and reports, despite continued requests by Donohue to do so.

30. Donohue addressed the fact that the IEP team never considered non-public school placement, but should have.

31. The CSE-9 Chair, Ms. Sandi, stated that she would re-consider a non-public school placement at the next IEP meeting, but would not reach any resolution at the Resolution Meeting.

32. The CSE-9 Chair, Ms. Sandi, stated that she "can consider transportation and nursing services" to be provided for a district school; that CSE-9 will conduct Independent Educational Evaluations ("IEEs") if they are "within our means" and says she would look into finding "someone familiar" with music therapy. She was not ready to reach resolution of any of these issues at the Resolution Meeting.

33. Donohue's experience indicates that this purported meeting was not a truly constituted Resolution Meeting, because the CSE-9 representatives who attended were not selected by both parties, nor did they have the proper authority to resolve the issues raised in the due process complaint, like pendency. The DOE participants were unwilling or without authority to resolve the other issues in the case (despite Ms. Sandi's high level status as the CSE-9 Chair).

34. A first substantive email regarding the Resolution Meeting was sent on Wednesday July 24, 2024 articulating who must attend the Resolution Meeting and the requirements related to their decision making authority. Specifically, the relevant member(s) of the IEP Team who have specific knowledge of the facts identified in the parent's due process complaint must attend. Additionally, the resolution meeting must include a representative of the public agency who has decision-making authority on behalf of that agency. A copy of this email is attached hereto as EXHIBIT 1.

35. An Attachment to this email was sent, it is the Memorandum from Melody Musgrove, Ed.D., Director of the Office of Special Education Programs for the U.S. Department of Education which provides a Q&A dealing with "Dispute Resolution Procedures under Part B of the Individuals with Disabilities Education Act (Part B)" and it details those who must attend the meeting and their authority levels to resolve the case. A copy of this email is attached hereto as EXHIBIT 2.

36. A second substantive email was sent on Thursday, July 25, 2024, articulating that CSE-9 is engaging in practices that are inconsistent with both federal and New York State law and the regulations governing the education of students, including S.J.D., because it is allowing one District representative the decision-making authority to conduct Resolution Meetings for

students with disabilities, while this has already been held to be inconsistent with federal and state law. A copy of this email is attached hereto as EXHIBIT 3.

Dated: August 1, 2024
       New York, New York

                                                  ***/S/***
                                              Peter G. Albert
                                              300 East 95th Street, Suite 130
                                              New York, NY 10128
                                              peter@pabilaw.org