EXHIBIT 3



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF SPECIAL EDUCATION AND REHABILITATIVE SERVICES

July 23, 2013
Contact Person: Gregg Corr
Telephone: 202-245-7309

OSEP MEMO 13-08

**MEMORANDUM**

TO:         Chief State School Officers
            State Directors of Special Education

FROM:       Melody Musgrove, Ed.D.
            Director
            Office of Special Education Programs

SUBJECT:    Dispute Resolution Procedures under Part B of the Individuals with Disabilities
            Education Act (Part B)


The purpose of this Memorandum is to introduce the updated and combined question and answer (Q&A) document on the dispute resolution procedures that are set out in the Part B regulations, published in the Federal Register on August 14, 2006, including mediation procedures (34 CFR §300.506), State complaint procedures (34 CFR §§300.151-300.153), and due process procedures (34 CFR §§300.507-300.516 and 300.532-300.533).  The Office of Special Education Programs (OSEP) encourages parents and local educational agencies (LEAs) to work collaboratively, in the best interests of children, to resolve the disagreements that may occur when working to provide a positive educational experience for all children, including children with disabilities.  To this end, the IDEA and its implementing regulations provide specific options for resolving disputes between parents and public agencies, which can be used in a manner consistent with our shared goals of improving results and achieving better outcomes for children with disabilities.

Page 2 – Chief State School Officers and State Directors of Special Education

The attached Q&A document provides responses to frequently asked questions to facilitate and enhance States' implementation of the Part B dispute resolution procedures.  The Q&A document incorporates prior clarification of the requirements of Part B of the IDEA and the Part B regulations that OSEP has provided on the dispute resolution procedures in policy memoranda, Q&A documents, letters responding to individual requests for policy clarification, and responses to public comments published in regulatory notices in the Federal Register.  Three previous memoranda are being updated and reissued at this time as part of the Q&A document:  OSEP Memorandum 94-16 issued on March 22, 1994; OSEP Memorandum 00-20 issued on July 17, 2000; and OSEP Memorandum 01-5 issued on November 30, 2000.  Some of the questions and

Page 2 – Chief State School Officers and State Directors of Special Education

answers in the Q&A document were previously contained in *Questions and Answers on Procedural Safeguards and Due Process Procedures For Parents and Children with Disabilities*, January 2007, updated June 2009.  These questions have been revised, amended, and updated, as appropriate.

The Q&A document consists of five sections:  mediation; State complaint procedures; due process complaints and due process hearing procedures; resolution process; and expedited due process hearings.

As part of its general supervisory responsibility, a State educational agency (SEA) must ensure implementation of IDEA's dispute resolution procedures in a manner that meets the requirements of the IDEA.  OSEP encourages States and their public agencies to work cooperatively with parents to attempt to address their differences through informal means whenever possible.  However, when those informal means prove unsuccessful, States should recognize the benefits of encouraging their public agencies to voluntarily engage in mediation with parents, consistent with 34 CFR §300.506.  Also, since the inception of the Part B program in 1977, State complaint procedures have provided a very effective and efficient means of resolving disputes between parents and public agencies, without the need to resort to more formal, adversarial, and costly due process proceedings.

Sections A and B of the Q&A document provide guidance on mediation and State complaint procedures, respectively.  Section C of the Q&A document describes procedures for due process complaints as well as procedures for due process hearings when the dispute between the parents and the public agency cannot be resolved through informal means, through mediation, or through the resolution process.  Even when resorting to IDEA's due process procedures becomes necessary, States and their public agencies should focus on ways to resolve the dispute with parents as early as possible at the local level.  Therefore, appropriate use of the resolution procedures, described in Section D of the attached Q&A document, provides an effective and efficient way of resolving disputes at the local level when a parent files a due process complaint.  Section E of the Q&A document addresses procedures for expedited due process hearings when a parent or a public agency files a due process complaint regarding a disciplinary matter.

This Memorandum and the attached questions and answers are available at http://idea.ed.gov and http://www2.ed.gov/about/offices/list/osers/osep/policy.html**.**

We hope that you find this information helpful.  If you or members of your staff have questions, please contact Gregg Corr or your State Contact in OSEP's Monitoring and State Improvement Planning Division.

Thank you for your continued commitment to improving results for children and youth with disabilities and to ensuring that the rights of children and their parents are protected.

Attachment

Questions and Answers on IDEA Part B Dispute Resolution Procedures

**QUESTIONS AND ANSWERS ON IDEA PART B**
**DISPUTE RESOLUTION PROCEDURES**

Revised July 2013

Regulations for Part B of the Individuals with Disabilities Education Act (IDEA) were published in the *Federal Register* on August 14, 2006, and became effective on October 13, 2006. Supplemental IDEA regulations were published on December 1, 2008, and became effective on December 31, 2008. Since publication of the regulations, the Office of Special Education and Rehabilitative Services (OSERS) in the U.S. Department of Education (Department) has received requests for clarification of some of these regulations. This is one of a series of question and answer (Q&A) documents prepared by OSERS to address some of the most important issues raised by requests for clarification on a variety of high-interest topics. Each Q&A document will be updated to add new questions and answers as other important issues arise or to amend existing questions and answers as needed.

OSERS issues this Q&A document to provide parents, parent training and information centers, school personnel, State educational agencies (SEAs), local educational agencies (LEAs), advocacy organizations, and other interested parties with information to facilitate appropriate implementation of the IDEA dispute resolution procedures, including mediation, State complaint procedures, and due process complaint and due process hearing procedures. This Q&A document represents the Department's current thinking on these topics. It does not create or confer any rights for or on any person. This guidance does not impose any requirements beyond those required under applicable law and regulations. Further, this document pertains only to IDEA Part B and is not meant to interpret Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act of 1990.[1]

This Q&A document updates and revises, as appropriate, the Department's guidance, entitled *Questions and Answers on Procedural Safeguards and Due Process Procedures for Parents and Children with Disabilities* issued in January 2007 and revised in June 2009. This Q&A document also updates and revises the information and questions and answers contained in the following Office of Special Education Programs (OSEP) Memoranda: 94-16, *Complaint Management Procedures Under Part B of the Individuals with Disabilities Education Act - Public Law 101-476 (Part B)*, issued March 22, 1994; 00-20, *Complaint Resolution Procedures under Part B of the Individuals with Disabilities Education Act (Part B)*, issued July 17, 2000; and 01-5, *Questions and Answers on Mediation*, issued November 30, 2000. This Q&A document replaces the previously issued OSEP Memoranda and Q&A document. Generally, the questions and corresponding answers presented in this Q&A document required an interpretation of the IDEA and its implementing regulations and the answers are not simply a restatement of the statutory or regulatory requirements. The responses presented in this document generally are informal guidance representing the interpretation of the Department of the applicable statutory or regulatory requirements in the context of the specific facts presented and are not legally binding. However, where controlling case law on these issues exists in your jurisdiction, it generally would be legally binding. The Q&As in this document are not intended

---

1 For more information about these laws please contact the Office for Civil Rights Enforcement Office that serves your State. Contact information for these offices can be found at: http://wdcrobcolp01.ed.gov/CFAPPS/OCR/contactus.cfm.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

to be a replacement for careful study of the IDEA and its implementing regulations or of controlling case law.  The IDEA, its implementing regulations, and other important documents related to the IDEA are found at **http://idea.ed.gov**.

If you are interested in commenting on this guidance, please email your comments to OSERSguidancecomments@ed.gov and include Dispute Resolution Procedures in the subject of your email or write us at the following address:  Gregg Corr, U.S. Department of Education, Potomac Center Plaza, 550 12th Street, S.W., Room 4108, Washington, D.C. 20202.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

## *Contents*

**A. Mediation**                                                                                                  **1**

**Question A-1:**    What is mediation?                                                                           1

**Question A-2:**    Can OSEP provide a historical context for the mediation provisions in the IDEA statute
and regulations?                                                                                                 1

**Question A-3:**    What are the benefits of mediation?                                                          2

**Question A-4:**    Who are the parties to mediation?  Can States offer mediation to individuals and
organizations other than parents?                                                                                2

**Question A-5:**    What is a mediator?                                                                          3

**Question A-6:**    What are the types of issues that can be the subject of mediation?                           4

**Question A-7:**    Under what circumstances does the IDEA require that mediation be made available to
parents of parentally-placed private school children with disabilities?                                          4

**Question A-8:**    Under what circumstances do the Part B regulations prevent public agencies from using
mediation?                                                                                                       5

**Question A-9:**    What are some similarities and differences between mediation and due process hearings?
                                                                                                                 6

**Question A-10:**   How long does the mediation process take?                                                    7

**Question A-11:**   Does the IDEA address where mediation sessions are held?                                     8

**Question A-12:**   Who may participate in, or attend, the mediation session?  May parents or public agencies
bring their attorneys to mediation sessions and, if so, under what circumstances?                                8

**Question A-13:**   May a child with a disability who is the subject of the mediation process attend the
mediation session with his or her parent?                                                                        8

**Question A-14:**   What options are available if a parent declines a public agency's request to engage in
mediation?                                                                                                       9

**Question A-15:**   May a State use IDEA funds for recruitment and training of mediators?                        9

**Question A-16:**   Who pays for the mediation process?                                                          9

**Question A-17:**   How is a mediator selected?                                                                  10

**Question A-18:**   May more than one mediator be selected to conduct mediation under the IDEA?                  10

**Question A-19:**   May current LEA employees serve as mediators?                                                10

**Question A-20:**   Is it a conflict of interest if a mediator is paid by a State agency?                        11

**Question A-21:**   Does the IDEA address what would constitute effective mediation techniques?                  11

**Question A-22:**   If the parties to the mediation process resolve their dispute, must the agreement reached
by the parties be in writing?                                                                                    11

**Question A-23:**   Are discussions that occur in the mediation process automatically confidential or is the
confidentiality of the mediation session a matter that must be mediated and documented
as a part of the mediation agreement?                                                                            12

**Question A-24:**   Must a written mediation agreement be kept confidential?                                     12

Questions and Answers on IDEA Part B Dispute Resolution Procedures

**Question A-25:**  Does the IDEA allow discussions that occur during the mediation process to be disclosed during the resolution of a State complaint?  12

**Question A-26:**  May parties to the mediation process be required to sign a confidentiality pledge or agreement prior to, or as a precondition, to the commencement of the mediation process?  13

**Question A-27:**  May a State use nonjudicial mechanisms (e.g., State complaint procedures) to resolve allegations that the public agency did not implement a mediation agreement?  13

**Question A-28:**  May a parent file a State complaint on matters that were not addressed in, or that arose after the time covered by, the mediation agreement?  14

## B. State Complaint Procedures                                                            15

**Question B-1:**  Why are States required to have complaint procedures when the IDEA statute does not contain those procedures?  15

**Question B-2:**  What are some differences between a State complaint and a due process complaint?  16

**Question B-3:**  Who may file a State complaint?  17

**Question B-4:**  Are there any mechanisms that an SEA must provide to assist parents and other parties in filing a State complaint?  17

**Question B-5:**  If a parent wishes to challenge a public agency's eligibility determination, may a parent file a State complaint?  18

**Question B-6:**  How should an SEA resolve a State complaint challenging a public agency's eligibility determination?  18

**Question B-7:**  If a parent wishes to challenge a public agency's decision regarding the provision or denial of FAPE to a child with a disability, may a parent file a State complaint?  19

**Question B-8:**  How should an SEA resolve a State complaint challenging a public agency's decision regarding the provision or denial of FAPE to a child with a disability?  19

**Question B-9:**  May the State complaint procedures, including the remedies outlined in 34 CFR §300.151(b), be used to address the problems of a group of children, i.e., a complaint alleging systemic noncompliance?  20

**Question B-10:**  If there is a finding in a State complaint that a child or group of children has been denied FAPE, what are the remedies?  21

**Question B-11:**  How does an SEA resolve a complaint when an organization or individual, other than a child's parent, files a State complaint regarding a specific child?  21

**Question B-12:**  How does an SEA resolve a complaint against itself?  22

**Question B-13:**  May States establish procedures permitting a State complaint to be filed electronically?  22

**Question B-14:**  Must States have procedures for tracking when State complaints are received, including State complaints filed electronically, if applicable?  23

**Question B-15:**  What is an SEA's responsibility to resolve a complaint if the complaint submitted to the SEA does not include all of the content required in 34 CFR §300.153?  24

**Question B-16:**  May an SEA dismiss a complaint alleging systemic noncompliance because the complainant did not include a proposed resolution of the problem?  25

Questions and Answers on IDEA Part B Dispute Resolution Procedures

**Question B-17:**  What is an SEA's responsibility to resolve a complaint if the complainant does not provide a copy of the complaint to the LEA or public agency serving the child at the same time the complaint is filed with the SEA?    25

**Question B-18:**  May a complaint be filed with an SEA over an alleged violation that occurred more than one year prior to the date of the complaint?    26

**Question B-19:**  Does an SEA have the option to accept and resolve complaints alleging violations of the IDEA that occurred more than one year prior to the SEA's receipt of the complaint? What is the SEA's responsibility if such a procedure is permitted?    26

**Question B-20:**  Must an SEA conduct an independent on-site investigation for every complaint filed?    27

**Question B-21:**  When can the SEA extend the 60-day time limit for resolution of a State complaint? Can OSEP identify examples of situations when States have not been permitted to extend the 60-day complaint resolution time limit due to exceptional circumstances?    27

**Question B-22:**  Must an SEA make mediation available when a State complaint is filed?    28

**Question B-23:**  What are the procedures related to an extension of the time limit for resolving a State complaint when the parties are engaged in mediation?    28

**Question B-24:**  If the complainant is a party other than a parent, may the parties use the mediation process to attempt to resolve the issues in the State complaint?    29

**Question B-25:**  Can an SEA dismiss allegations raised in a State complaint that were addressed in a previous settlement agreement resulting from mediation or the resolution process?    29

**Question B-26:**  Can an issue that is the subject of a State complaint also be the subject of a due process complaint requesting a due process hearing?    29

**Question B-27:**  If a parent has filed a State complaint and the State's resolution is still in process, can the parent request a due process hearing pending resolution of the State complaint?    30

**Question B-28:**  May a State complaint be filed on an issue that was previously decided in a due process hearing?    30

**Question B-29:**  May the State complaint procedures be used to resolve a complaint that alleges that a public agency has failed to implement a hearing officer's decision?    30

**Question B-30:**  Once an SEA resolves a State complaint, what must the SEA's written decision contain?    31

**Question B-31:**  What is the SEA's responsibility after a written decision on a State complaint is issued?    31

**Question B-32:**  May a State complaint decision be appealed?    31

**Question B-33:**  Is a State required to make written decisions on State complaints available to the public?    32

**Question B-34:**  When did the Department remove the Secretarial review provision from the Part B regulations? Is an SEA required to develop a process to replace Secretarial review?    32

## C. Due Process Complaints and Due Process Hearing Procedures    34

**Question C-1:**  Why does the IDEA require that a party file a due process complaint in order to request a due process hearing?    34

**Question C-2:**  Who may file a due process complaint?    34

**Question C-3:**  What happens after a due process complaint is submitted?    35

Questions and Answers on IDEA Part B Dispute Resolution Procedures

**Question C-4:**    What happens if a hearing officer determines that a due process complaint is insufficient?

36

**Question C-5:**    What is the timeline for filing a due process complaint?    36

**Question C-6:**    May States establish procedures permitting a due process complaint to be filed electronically?    37

**Question C-7:**    Must States have procedures for tracking when due process complaints are received, including due process complaints filed electronically if a State accepts due process complaints filed electronically?    38

**Question C-8:**    Are there any mechanisms that an SEA must provide to assist parents and public agencies in filing a due process complaint?    38

**Question C-9:**    May a parent file a due process complaint because his or her child's teacher is not highly qualified?    39

**Question C-10:**    Under what circumstances does the IDEA permit parents of parentally-placed private school children with disabilities to use IDEA's due process procedures?    39

**Question C-11:**    Under what circumstances may a public agency use IDEA's due process procedures to override a parent's refusal to consent?    40

**Question C-12:**    If a parent wishes to obtain an independent educational evaluation (IEE) at public expense pursuant to 34 CFR §300.502(b)(1), and the public agency believes that its evaluation is appropriate, must the public agency file a due process complaint to request a due process hearing?    41

**Question C-13:**    If both parents have legal authority to make educational decisions for their child and one parent revokes consent for the provision of special education and related services pursuant to 34 CFR §300.9(c), may the other parent file a due process complaint to override the revocation of consent?    41

**Question C-14:**    Does the IDEA address where due process hearings and reviews are held?    41

**Question C-15:**    What requirements apply to the qualifications and impartiality of hearing officers?    42

**Question C-16:**    Does the SEA have the authority to determine whether a due process complaint constitutes a new issue compared to a previously adjudicated due process complaint between the same parties?    42

**Question C-17:**    May State law authorize the SEA to unilaterally dismiss or otherwise limit the issues that can be the subject of a party's due process complaint?    43

**Question C-18:**    Do hearing officers have jurisdiction over issues raised by either party during the prehearing or hearing which were not raised in the due process complaint?    43

**Question C-19:**    Do hearing officers have the authority to raise and address issues of noncompliance that were not raised by the parties?    43

**Question C-20:**    Under what circumstances may a State prohibit hearing officers from reviewing the appropriateness, and ordering the implementation of, settlement agreements reached under the IDEA?    43

**Question C-21:**    Once the 30-day resolution period or adjusted resolution period expires, what is the timeline for issuing a final hearing decision?    44

**Question C-22:**    When would it be permissible for a hearing officer to extend the 45-day timeline for issuing a final decision in a due process hearing on a due process complaint or for a

|  |  |  |
|---|---|---|
|  | reviewing officer to extend the 30-day timeline for issuing a final decision in an appeal to the SEA, if applicable? | 44 |
| **Question C-23:** | If an SEA contracts with another agency to conduct due process hearings on its behalf, can those decisions be appealed to the SEA? | 44 |
| **Question C-24:** | Does a parent have the right to receive a hearing record at no cost, even though the applicable time period to appeal the hearing decision has expired? | 45 |
| **Question C-25:** | Are "motions for reconsideration" permitted after a hearing officer has issued findings of fact and a decision in a due process hearing? | 46 |
| **Question C-26:** | What is the SEA's responsibility after a due process hearing decision is issued? | 46 |
| **Question C-27:** | Which public agency is responsible for transmitting the findings and decisions in a hearing to the State advisory panel (SAP) and making those findings and decisions available to the public? | 47 |

### D. Resolution Process — 49

| **Question D-1:** | What is the purpose of the resolution meeting? | 49 |
|---|---|---|
| **Question D-2:** | Why is a resolution meeting not required when an LEA files a due process complaint? | 50 |
| **Question D-3:** | Does the parent still have the right to challenge the sufficiency of the due process complaint when an LEA files a due process complaint?  Must the parent respond to the LEA's due process complaint? | 50 |
| **Question D-4:** | If a due process complaint is amended and the 15-day timeline to conduct a resolution meeting starts over, must the LEA conduct another resolution meeting? | 51 |
| **Question D-5:** | If a parent files a due process complaint with the LEA or public agency but does not forward a copy of the due process complaint to the SEA, when does the timeline for convening a resolution meeting begin? | 51 |
| **Question D-6:** | Are there circumstances in which an LEA would not be required to convene a resolution meeting when it receives notice of a parent's due process complaint? | 52 |
| **Question D-7:** | Does the timeline for a due process hearing decision always begin after the 30-day resolution period? | 52 |
| **Question D-8:** | Which individuals participate in the resolution meeting? | 53 |
| **Question D-9:** | May the LEA bring its attorney to a resolution meeting when the parent is accompanied by a non-attorney or qualified representative or advocate with the authority under State law to represent the parent at a due process hearing? | 53 |
| **Question D-10:** | Must an LEA include the days when schools are closed due to scheduled breaks and holidays in calculating the timeline for convening a resolution meeting? | 53 |
| **Question D-11:** | What is an LEA's responsibility to convene a resolution meeting when the parent cannot attend within the 15-day timeline? | 54 |
| **Question D-12:** | Must the LEA continue its attempts to convince a parent to participate in a resolution meeting throughout the 30-day resolution period? | 54 |
| **Question D-13:** | If a party fails to participate in the resolution meeting, must the other party seek the hearing officer's intervention to address the pending due process hearing on the parent's due process complaint? | 55 |

Questions and Answers on IDEA Part B Dispute Resolution Procedures

**Question D-14:**  If a party fails to participate in the resolution meeting, and neither party seeks the hearing officer's intervention to address the pending due process complaint, would the timeline for a due process hearing decision still apply?    55

**Question D-15:**  What is the SEA's responsibility for ensuring that LEAs comply with the resolution process requirements?    55

**Question D-16:**  May an LEA require a parent to sign a confidentiality agreement as a precondition to conducting a resolution meeting?    56

**Question D-17:**  Are there any provisions in the IDEA that require discussions that occur in resolution meetings to remain confidential?    57

**Question D-18:**  Do the Part B regulations allow information discussed at a resolution meeting to be introduced at a due process hearing or civil proceeding?    57

**Question D-19:**  Must a settlement agreement be signed and executed at the resolution meeting, or may a settlement agreement be signed and executed by the parties prior to the conclusion of the 30-day resolution period?    57

**Question D-20:**  If the parties reach agreement on all issues in the parent's due process complaint and execute a written settlement agreement, what happens to the due process complaint?    58

**Question D-21:**  How can written settlement agreements reached through IDEA's resolution process be enforced if a party believes the agreement is not being implemented?    58

**Question D-22:**  If an agreement is not reached during the resolution meeting, must mediation continue to be available?    58

**Question D-23:**  Does the 30-day resolution period apply if the parties elect to use mediation under 34 CFR §300.506 rather than convene a resolution meeting?    58

**Question D-24:**  What is the impact of mediation on the resolution and due process hearing timelines?    59

**Question D-25:**  If the LEA and parents wish to continue the mediation process at the conclusion of the 30-day resolution period must the hearing officer agree to the extension in order for the parties to continue the mediation process?    59

**E.  Expedited Due Process Hearings**    **60**

**Question E-1:**  What is an expedited due process hearing?    60

**Question E-2:**  What is the hearing officer's authority in an expedited due process hearing?    61

**Question E-3:**  How is the timeline for conducting an expedited due process hearing calculated?  Does this timeline begin after the resolution period?    61

**Question E-4:**  May the parties mutually agree to extend the resolution period to resolve an expedited due process complaint?    62

**Question E-5:**  How must SEAs and LEAs apply the timeline requirements for expedited due process hearings if the due process complaint is filed when school is not in session?    62

**Question E-6:**  May a party challenge the sufficiency of a due process complaint requesting an expedited due process hearing?    63

**Question E-7:**  May a hearing officer extend the timeline for making a determination in an expedited due process hearing?    63

Questions and Answers on IDEA Part B Dispute Resolution Procedures

**Question E-8:** How can the parties meet the requirement in 34 CFR §300.512(b) to disclose evaluations and recommendations to all parties at least five business days before an expedited due process hearing begins? 63

**Question E-9:** May a school district proceed directly to court for a temporary injunction to remove a student from his or her current educational placement for disciplinary reasons or must the school district exhaust administrative remedies by first filing a due process complaint to request an expedited due process hearing? 64

Questions and Answers on IDEA Part B Dispute Resolution Procedures

## A.    Mediation

**Authority:**     The requirements for mediation are found in the regulations at
34 CFR §300.506.

---

**Question A-1:**    What is mediation?

**Answer:**    Mediation is an impartial and voluntary process that brings together parties
that have a dispute concerning any matter arising under 34 CFR part 300 (the
Part B of the IDEA (Part B) regulations) to have confidential discussions with
a qualified and impartial individual.  The goal of mediation is for the parties to
resolve the dispute and execute a legally binding written agreement reflecting
that resolution.  Mediation may not be used to deny or delay a parent's right to
a hearing on the parent's due process complaint, or to deny any other rights
afforded under Part B.  34 CFR §300.506(b)(1) and (8).

---

**Question A-2:**    Can OSEP provide a historical context for the mediation provisions in the
IDEA statute and regulations?

**Answer:**    States have successfully used mediation as an informal mechanism to resolve
disputes between parents and public agencies, even though they were not
required to offer mediation prior to 1997.  The Education for All Handicapped
Children Act,2 originally enacted into law in 1975, contained no requirement
for States to offer mediation.  In a comment to the initial regulations
implementing Part B of the Education of the Handicapped Act (EHA)
published in 1977, the former Department of Health, Education, and Welfare
acknowledged that many States pointed to the success of using mediation as
an intervening step prior to conducting a formal due process hearing.  The
comment indicated that States may wish to suggest that mediation be used to
resolve disputes with parents, provided that it was not mandatory and did not
operate to deny or delay a parent's right to a due process hearing.
45 CFR §121a.506 and Comment (1977).3  Based on States' success in using
mediation for more than two decades, Congress included a specific provision
in the IDEA Amendments of 1997, Public Law (Pub. L.) 105-17.  Under
section 615(e) of the IDEA, as amended in 1997, States were required to
establish mediation procedures to resolve disputes between parents and public
agencies, at a minimum, whenever a due process hearing was requested.  In

---

2 The Education for All Handicapped Children Act refers to Public Law (Pub. L.) 94-142.  It is the predecessor
statute to Part B of the IDEA.

3 After the U.S. Department of Education was created, the Part B regulations in part 121a of title 45 of the Code of
Federal Regulations (CFR) were removed and recodified in title 34 CFR part 300.  The former 34 CFR §300.506
and its accompanying comment were unchanged and remained in effect until May 11, 1999.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

the 2004 Amendments to the IDEA, Congress broadened this provision to require States to have procedures to offer mediation to resolve disputes concerning any matter arising under Part B of the IDEA, including matters arising prior to the filing of a due process complaint.

**Question A-3:**    What are the benefits of mediation?

**Answer:**    Although mediation cannot guarantee specific results, States' experience in using mediation has demonstrated a number of benefits. Mediation can be a less expensive and less time-consuming method of dispute resolution between parents and local educational agencies (LEAs), or, as appropriate, State educational agencies (SEAs) or other public agencies. Mediation may result in lower financial and emotional costs compared to due process hearings. Assistance to States for the Education of Children with Disabilities and Early Intervention Program for Infants and Toddlers with Disabilities, Final Regulations, *Analysis of Comments and Changes*, 64 FR 12406, 12611 (Mar. 12, 1999).[4] Because mediation is voluntary and the parties have the flexibility to devise their own remedies, mediation also may result in written agreements where parties have an increased commitment to, and ownership of, the agreement. Some parties report mediation as enabling them to have more control over the process and decision-making. Additionally, because both parties have been involved in developing the mediation agreement, remedies can be individually tailored and contain workable solutions.

Mediation may also be helpful in resolving State complaints under 34 CFR §§300.151-300.153, thus avoiding the need for the SEA to issue a written decision on the complaint. A State's minimum State complaint procedures must provide an opportunity for a parent who has filed a State complaint and the public agency to voluntarily engage in mediation consistent with 34 CFR §300.506. 34 CFR §300.152(a)(3)(ii).

**Question A-4:**    Who are the parties to mediation? Can States offer mediation to individuals and organizations other than parents?

**Answer:**    Parties to mediation are parents[5] of a child with a disability, as defined in

---

4 This Q&A document includes references to Assistance to States for the Education of Children with Disabilities and Early Intervention Programs for Infants and Toddlers with Disabilities, Final Regulations, *Analysis of Comments and Changes*, 64 Federal Register 12406, 12537-12656 (Mar. 12, 1999). This document will be cited throughout this Q&A as "64 FR" with the appropriate page number.

5 Under 34 CFR §300.30(a), the term "parent" means: (1) a biological or adoptive parent of a child; (2) a foster parent, unless State law, regulations, or contractual obligations with a State or local entity prohibit a foster parent from acting as a parent; (3) a guardian generally authorized to act as the child's parent, or authorized to make educational decisions for the child (but not the State if the child is a ward of the State); (4) an individual acting in the place of a biological or adoptive parent (including a grandparent, stepparent, or other relative) with whom the child lives, or an individual who is legally responsible for the child's welfare; or (5) a surrogate parent who has been appointed in accordance with 34 CFR §300.519 or section 639(a)(5) of the IDEA. Under 34 CFR

Questions and Answers on IDEA Part B Dispute Resolution Procedures

34 CFR §300.30 and the LEA, or, as appropriate, a State agency in accordance with 34 CFR §300.228, the SEA, or other public agencies6 that have responsibility for the education of children with disabilities. 34 CFR §300.506.  Unlike State complaints, which can be filed by an organization or individual other than the child's parents, the IDEA contemplates that mediation must be made available only to parents and public agencies to resolve disputes involving any matter under 34 CFR part 300, including matters arising prior to the filing of a due process complaint. While the IDEA does not require that mediation be made available to non-parents, there is nothing in the IDEA that would prohibit a State from making mediation available to resolve disputes between public agencies, organizations, or individuals other than the child's parent regarding matters arising under the IDEA and its implementing regulations. 34 CFR §300.152(a)(3)(ii) and (b)(1)(ii); see also Assistance to States for the Education of Children with Disabilities and Preschool Grants for Children with Disabilities, Final Regulations, *Analysis of Comments and Changes*, 71 FR 46540, 46604 (Aug. 14, 2006).7

**Question A-5:**     What is a mediator?

**Answer:**      A mediator is a qualified and impartial individual who facilitates confidential discussions to achieve a resolution of the dispute that is mutually agreeable to the parties.  The requirement that the mediator is qualified means that the individual is trained in effective mediation techniques and knowledgeable in laws and regulations relating to the provision of special education and related services.  34 CFR §300.506(b)(1)(iii) and (b)(3)(i).  The impartiality requirement means that an individual who serves as a mediator may not be an employee of the SEA or the LEA that is involved in the education or care of

---

§300.520(a), a State may provide that when a child with a disability reaches the age of majority under State law that applies to all children (except for a child with a disability who has been determined to be incompetent under State law), all rights accorded to parents under Part B of the IDEA transfer to the child.  Therefore, if a student who has reached the age of majority under State law is exercising parental rights, that student has the right to use the IDEA's dispute resolution procedures, including mediation under 34 CFR §300.506, the State complaint procedures under 34 CFR §§300.151-300.153, the due process complaint and hearing procedures under 34 CFR §§300.507-300.516, and the procedures for expedited due process hearings in 34 CFR §§300.532-300.533.

6 Under 34 CFR §300.33, the term "public agency" includes the SEA, LEAs, educational service agencies (ESAs), nonprofit public charter schools that are not otherwise included as LEAs or ESAs and are not a school of an LEA or ESA, and any other political subdivisions of the State that are responsible for providing education to children with disabilities.

7 This Q&A document includes references to Assistance to States for the Education of Children with Disabilities and Preschool Grants for Children with Disabilities, Final Regulations, *Analysis of Comments and Changes*, 71 Federal Register 46540, 46547-46753 (Aug. 14, 2006).  This document will be cited throughout this Q&A as "71 FR" with the appropriate page number.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

the child and must not have a personal or professional interest that conflicts with the person's objectivity.  34 CFR §300.506(c)(1).

---

**Question A-6:**    What are the types of issues that can be the subject of mediation?

**Answer:**    The mediation process offers an opportunity for parents and public agencies to resolve disputes about any matter under 34 CFR part 300, including matters arising prior to the filing of a due process complaint.  34 CFR §300.506(a). This includes matters regarding the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education (FAPE) to a child with a disability, as well as any other matters arising under 34 CFR part 300 that may not be the subject of a due process complaint.  An example of a matter that cannot be the subject of a due process complaint but that can be the subject of mediation is a dispute regarding the alleged failure of a particular SEA or LEA employee to be highly qualified.  34 CFR §300.18(f); see also Question C-1 in *Questions and Answers on Highly Qualified Teachers Serving Children with Disabilities*, January 2007.

---

**Question A-7:**    Under what circumstances does the IDEA require that mediation be made available to parents of parentally-placed private school children with disabilities[8]?

**Answer:**    The Department provided the following pertinent explanation in Question L-1 in *Questions and Answers on Serving Children with Disabilities Placed by Their Parents in Private Schools*, April 2011:

> As provided in 34 CFR §300.140(b), a parent of a child enrolled by that parent in a private school has the right to file a due process complaint [and use the mediation procedures in 34 CFR §300.506] regarding the child find requirements in 34 CFR §300.131, including the requirements in 34 CFR §§300.300 through 300.311. The due process provisions in section 615 of the Act and 34 CFR §§300.504 through 300.519 of the regulations [which include the mediation procedures in 34 CFR §300.506], do not apply to issues regarding the provision of services to any particular parentally-placed private school child with disabilities whom an LEA has agreed to serve because there is no individual right to services for such children under the IDEA.  34 CFR §300.140(a).

---

8 "Parentally-placed private school children with disabilities" means children with disabilities enrolled by their parents in private, including religious, schools or facilities that meet the definition of elementary school in 34 CFR §300.13 or secondary school in 34 CFR §300.36, other than children with disabilities covered under 34 CFR §§300.145-300.147.  34 CFR §300.130.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

Disputes that arise about equitable services are, however, properly subject to the State complaint procedures in 34 CFR §§300.151 through 300.153 [described in Section B of this Q&A document]. As provided in 34 CFR §300.140(c), a parent may file a signed written complaint in accordance with the State complaint procedures alleging that an SEA or LEA has failed to meet the private school requirements, such as failure to properly conduct the consultation process.

Under the State complaint procedures, when a parent files a State complaint regarding the private school requirements or the child find requirements in 34 CFR §300.131, including the requirements in 34 CFR §§300.300-300.311, the SEA must give the parent an opportunity to voluntarily engage in mediation consistent with 34 CFR §300.506. 34 CFR §300.152(a)(3)(ii).

In addition, under 34 CFR §300.148 and Supreme Court case law, where FAPE is at issue, parents of a parentally-placed private school child with a disability may utilize the due process procedures, including mediation, if seeking reimbursement for the private school placement based on a denial of FAPE.

---

**Question A-8:**   Under what circumstances do the Part B regulations prevent public agencies from using mediation?

**Answer:**   The Part B regulations prohibit a public agency from using mediation to seek to override:  (1) a parent's failure to respond to a request for, or refusal to consent to, the initial provision of special education and related services (34 CFR §300.300(b)(3)(i)); (2) a parent's revocation of consent for the continued provision of special education and related services to his or her child (34 CFR §300.300(b)(4)(ii));9 or (3) a parent's refusal to consent, or failure to respond to a request to provide consent, to an initial evaluation or reevaluation of a child who is home schooled or parentally-placed in a private school at parental expense (34 CFR §300.300(d)(4)(i)).  Similarly, if parental rights transfer to a student who has reached the age of majority under State law, the public agency also may not use mediation to resolve disputes with students in these three circumstances.  34 CFR §300.520.10

---

9 Mediation, pursuant to 34 CFR §300.506(a), may be used to resolve any disputes under Part B of the Act and its implementing regulations before a parent revokes consent for the continued provision of special education and related services.  However, for the same reasons that mediation is not allowed when a parent refuses to provide initial consent for services (i.e., to ensure that the parent's right to refuse consent for his or her child's receipt of special education and related services is meaningful), mediation is not appropriate once a parent revokes consent for the provision of special education and related services.  73 FR 73008, 73016 (Dec. 1, 2008).

10 If a parent refuses consent to an initial evaluation or reevaluation of his or her child who is enrolled in a public school or is seeking to be enrolled in a public school, or if a parent of such a child fails to respond to a request to provide consent to an initial evaluation, the public agency may seek to engage in mediation with the parent if it believes that the child would benefit from the evaluation or reevaluation.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

---

**Question A-9:**    What are some similarities and differences between mediation and due process hearings?

**Answer:**    The goal of mediation and due process hearings under the IDEA is the same – to achieve resolution of the disputed issues.  Both processes generally involve the same parties – parents and public agencies – but as noted in Question A-4, States have the option of making mediation available to parties other than parents.  The mediator, in the case of mediation, and the hearing officer, in the case of a due process hearing, must be a qualified and impartial individual. Aside from these similarities, there are important differences.

Due process hearing procedures are more formal, and generally the parent and the public agency may be represented by attorneys.  The parties also may choose to be accompanied and advised at a due process hearing by an individual who has special knowledge or training with respect to the problems of children with disabilities.  However, whether individuals may be represented by non-attorneys at due process hearings is determined by State law.  34 CFR §300.512(a)(1).  In contrast, the IDEA is silent on the presence of lawyers or advocates at mediation.  For more discussion of who may accompany a party to a mediation session, see Question A-12.

As noted in Question A-6, the issues that can be the subject of mediation are generally broader than the issues that can be raised in a due process complaint requesting a due process hearing.[11]

In mediation, the parties help set the ground rules and identify their potential remedies, and the process must be voluntary at every phase.  In contrast, the due process procedures impose specific requirements on the parties and the failure to adhere to such requirements generally has negative consequences. 34 CFR §§300.507-300.508 (due process complaints) and 300.510 (resolution process).[12]

---

[11] Compare, 34 CFR §300.506(a) with 34 CFR §300.507(a).

[12] An LEA is required to convene a resolution meeting within 15 days of receiving notice of the parent's due process complaint and prior to the initiation of a due process hearing, except that the resolution meeting need not be held if the parties agree in writing to waive the meeting or agree to engage in mediation described in 34 CFR §300.506.  The IDEA also provides for a 30-day resolution period to resolve the dispute that is the basis for the parent's due process complaint.  (Shortened timelines apply to the resolution process when a parent files a due process complaint regarding a disciplinary matter to request an expedited due process hearing.)  If the parties reach a resolution of their dispute through this process, it must be reflected in a legally binding written settlement agreement.  34 CFR §300.510.  For more information on the resolution process, see Section D of this Q&A document.  For more information on expedited due process hearings, see Section E of this Q&A document.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

In mediation, the mediator acts as a facilitator and does not pass judgment on specific issues, but the parties may choose to execute a legally binding written agreement. In a due process hearing, the hearing officer is required to render a final decision that contains findings of fact and decisions that would generally include specific remedies. The hearing officer must render a decision in accordance with 34 CFR §300.513(a), including determining whether a child received FAPE.13

While mediation is less formal than a due process hearing, all discussions that occur in mediation, including the negotiation discussions, and discussions involving any settlement positions of parties in a mediation session, are confidential and may not be used as evidence in any subsequent due process hearing or civil proceeding. 34 CFR §300.506(b)(8). The IDEA is silent as to whether the mediation agreement itself must be kept confidential. However, under 34 CFR §300.506(b)(6)(i), a legally binding mediation agreement must include a statement that all discussions that occurred during the mediation process will remain confidential and may not be used as evidence in any subsequent due process hearing or civil proceeding. Regardless of whether the parties enter into a legally binding agreement, all discussions that occurred during the mediation also must be kept confidential. 34 CFR §300.506(b)(8). In contrast, the parent has the right to have the due process hearing open to the public. 34 CFR §300.512(c)(2). Also, the public agency, after deleting any personally identifiable information, must transmit the due process hearing findings and decisions to the State advisory panel and make those findings and decisions available to the public. 34 CFR §§300.513(d) and 300.514(c).

---

**Question A-10:**   How long does the mediation process take?

**Answer:**    The IDEA does not specifically address the timing of the mediation process. However, mediation is intended to facilitate prompt resolution of disputes between parents and public agencies at the local level and decrease the use of more costly and divisive due process proceedings and civil litigation. 64 FR 12611 (March 12, 1999). Therefore, a State's procedures governing mediation must ensure that: (1) the mediation process is not used to deny or delay a parent's right to a hearing on the parent's due process complaint, or to deny any other rights afforded under Part B of the IDEA; and (2) each session in the mediation process is scheduled in a timely manner. 34 CFR §300.506(b)(1)(ii) and (5). The length of the mediation process depends on a number of factors, including the type and complexity of issues presented, the availability of the parties, and the willingness of the parties to

---

13 The IDEA statute and regulations provide that the hearing officer can find that a child did not receive FAPE on substantive grounds and, under certain circumstances, based on procedural inadequacies. 34 CFR §300.513(a)(2). See also 71 FR 46707 (August 14, 2006).

Questions and Answers on IDEA Part B Dispute Resolution Procedures

cooperate.  Also, the length of the mediation process will depend on the individual techniques used by the mediator.  Unless the parties agree to an extension, the use of mediation may not affect the 30-day resolution period timeline or the 45-day due process hearing timeline established in 34 CFR §§300.510 and 300.515.  Likewise, the use of mediation may not affect the 60-day State complaint resolution time limit established in 34 CFR §300.152(a) unless the parties agree to an extension. 34 CFR §300.152(b)(1)(ii).

---

**Question A-11:**    Does the IDEA address where mediation sessions are held?

**Answer:**    The IDEA provides that each session in the mediation process must be held in a location that is convenient to the parties to the dispute. 34 CFR §300.506(b)(5).  OSEP encourages the parties to work together to determine a convenient location for a mediation session that is acceptable to both parties.  If the parties are comfortable with the location of the mediation session, it is more likely that they will work cooperatively to achieve a resolution of their dispute.

---

**Question A-12:**    Who may participate in, or attend, the mediation session?  May parents or public agencies bring their attorneys to mediation sessions and, if so, under what circumstances?

**Answer:**    The IDEA does not address who may accompany a party at the mediation session.  Because successful mediation often requires that both parties understand and feel satisfied with the plan for conducting a mediation session, it is a best practice to discuss and disclose who, if anyone, will be accompanying the party at the mediation session prior to that session. Because mediation is voluntary on the part of the parties, either party has the right not to participate for any reason, including if the party objects to the person the other party wishes to bring to the mediation session.  This could include a party's objection to the attendance of an attorney representing either the parent or the public agency.  For example, if the parent wishes to bring an attorney to the mediation session and the LEA objects, the parent may choose not to participate.

---

**Question A-13:**    May a child with a disability who is the subject of the mediation process attend the mediation session with his or her parent?

**Answer:**    The IDEA does not address whether the child who is the subject of the mediation can attend the mediation session; therefore, a parent may choose to have his or her child present for all or part of the mediation session.  The age and maturity of the child should be considered in determining the appropriateness of having the child attend the mediation with his or her parent.  For some youth with disabilities, observing and even participating in

Questions and Answers on IDEA Part B Dispute Resolution Procedures

the mediation may be a self-empowering experience where they can learn to advocate for themselves.  Also, if a State provides that all rights accorded to parents under the IDEA transfer to the student who has reached the age of majority consistent with 34 CFR §300.520, then the right to participate in mediation would also transfer to the student.

**Question A-14:**    What options are available if a parent declines a public agency's request to engage in mediation?

**Answer:**    As noted previously, the IDEA and its implementing regulations do not allow a public agency to require a parent to participate in mediation because mediation is voluntary.  However, a public agency may establish procedures to offer parents and schools that choose not to use the mediation process an opportunity to meet, at a time and location convenient to the parents, with a disinterested third party:  (1) who is under contract with an appropriate alternative dispute resolution entity, or a parent training and information center or community parent resource center in the State established under section 671 or 672 of the IDEA; and (2) who would explain the benefits of, and encourage the use of, the mediation process to the parents.
34 CFR §300.506(b)(2).  Public agencies that choose to establish these procedures must make clear to parents and schools that they have the opportunity to participate in the meeting with the disinterested third party, but that their participation is voluntary.  The disinterested third party would explain the benefits of mediation, including that it is voluntary, and if successful, could result in the resolution of the dispute without the need to use more formal, costly, and adversarial due process proceedings.

**Question A-15:**    May a State use IDEA funds for recruitment and training of mediators?

**Answer:**    Yes.  Under 34 CFR §300.704(b)(3)(ii), some portion of the funds the SEA reserves for other State-level activities must be used to establish and implement the mediation process required by section 615(e) of the IDEA and 34 CFR §300.506, including providing for the costs of mediators and support personnel.  This can also include the recruitment and training of mediators.

**Question A-16:**    Who pays for the mediation process?

**Answer:**    The IDEA provides that the State must bear the cost of the mediation process required under section 615(e) of the IDEA and 34 CFR §300.506, including the fee charged by the mediator and the costs of meetings described in 34 CFR §300.506(b)(2) to discuss the benefits of the mediation process.  Therefore, States may not require their LEAs to use Part B funds to pay the costs of mediation.  71 FR 46624 (August 14, 2006).  In addition, the IDEA does not allow States that choose to make mediation available to parties other

Questions and Answers on IDEA Part B Dispute Resolution Procedures

than parents or offer mediation on matters not addressed in the IDEA to use IDEA funds for those activities.

---

**Question A-17:**    How is a mediator selected?

**Answer:**    The success of mediation is closely related to the mediator's ability to obtain the trust of both parties and commitment to the process.  64 FR 12612 (March 12, 1999).  One important way to establish this trust is the selection of a qualified and impartial mediator.  To build trust and commitment in the process of selecting a mediator, the IDEA provides several mechanisms for selecting a mediator.  The State must maintain a list of individuals who are qualified mediators and knowledgeable in laws and regulations related to the provision of special education and related services.
34 CFR §300.506(b)(3)(i).  The State must select a mediator from this list on a random, rotational, or some other impartial basis.  34 CFR §300.506(b)(3)(ii).  The State's selection of mediators on an impartial basis would include permitting the parties involved in a dispute to agree on a mediator.  71 FR 46695 (August 14, 2006).

---

**Question A-18:**    May more than one mediator be selected to conduct mediation under the IDEA?

**Answer:**    No.  The mediation process required under the IDEA specifies that the mediation is conducted by a qualified and impartial mediator who is trained in effective mediation techniques.  34 CFR §300.506(b)(1)(iii).  The use of a single mediator is important to ensure clear communication and accountability. 64 FR 12611-12612 (March 12, 1999).  Therefore, it is impermissible for States to use a panel of mediators to resolve disputes between parents and public agencies involving matters arising under 34 CFR part 300.

---

**Question A-19:**    May current LEA employees serve as mediators?

**Answer:**    The IDEA provides that a mediator under 34 CFR §300.506 may not be an employee of the SEA or the LEA that is involved in the education or care of the child and must not have a personal or professional interest that conflicts with the person's objectivity.  34 CFR §300.506(c)(1).  Therefore, it is impermissible under the IDEA for a current employee of an LEA that is involved in the education or care of the child to serve as a mediator for his or her own LEA.  However, if an employee of a different LEA that is not involved in the education or care of the child has no personal or professional interest that would conflict with his or her objectivity and possesses the requisite qualifications, that individual can serve as a mediator in a dispute involving the parents and the LEA that their child attends.  Notice of Proposed

Questions and Answers on IDEA Part B Dispute Resolution Procedures

Rulemaking Implementing the IDEA Amendments of 2004, 70 FR 35782, 35808 (Jun. 21, 2005).

---

**Question A-20:**   Is it a conflict of interest if a mediator is paid by a State agency?

**Answer:**   No.  A person who otherwise qualifies as a mediator is not an employee of an LEA or State agency solely because he or she is paid by the State agency to serve as a mediator.  34 CFR §300.506(c)(2).

---

**Question A-21:**   Does the IDEA address what would constitute effective mediation techniques?

**Answer:**   No.  The IDEA requires that a mediation session be conducted by a qualified and impartial mediator who is knowledgeable in laws and regulations relating to the provision of special education and related services and is trained in effective mediation techniques.  34 CFR §300.506(b)(1)(iii) and (b)(3)(i).  The IDEA requirement for the use of a qualified and impartial mediator trained in effective mediation techniques helps ensure that decisions about the effectiveness of specific techniques, such as the need for face-to-face negotiation or telephone communications are based upon the mediator's independent judgment and expertise.  Because of the need to allow flexibility in the independent judgment and expertise of each mediator and the unique issues of each dispute, other than providing for the confidentiality of discussions that occur during mediation, the IDEA does not address the specific techniques or procedures that States may require their mediators to use.  Whether formal training and certification for mediators are required is a decision left to each State, depending on State policy.  71 FR 46695 (August 14, 2006).

---

**Question A-22:**   If the parties to the mediation process resolve their dispute, must the agreement reached by the parties be in writing?

**Answer:**   Yes.  If the parties resolve a dispute through the mediation process, the parties must execute a legally binding written agreement that sets forth that resolution and states that all discussions that occurred during the mediation process will remain confidential and may not be used as evidence in any subsequent due process hearing or civil proceeding.  In order for the agreement to be legally binding, it must be in writing.  The agreement must be signed by both the parent and a representative of the public agency who has the authority to bind the agency.  34 CFR §300.506(b)(6).  It is important that the parties understand that the mediation agreement is legally binding and that it is enforceable in any State court of competent jurisdiction or in a district court of the United States or by the SEA, if applicable.  34 CFR §§300.506(b)(7) and 300.537.  Parties are free to consult with others before entering into a mediation agreement.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

---

**Question A-23:**   Are discussions that occur in the mediation process automatically confidential or is the confidentiality of the mediation session a matter that must be mediated and documented as a part of the mediation agreement?

**Answer:**   Under 34 CFR §300.506(b)(8), discussions that occur during the mediation process must be confidential and may not be used as evidence in any subsequent due process hearing or civil proceeding of any Federal court or State court of a State receiving assistance under 34 CFR part 300. This requirement is automatic and may not be altered or modified by parties to mediation conducted under 34 CFR §300.506. Further, this confidentiality requirement applies regardless of whether the parties resolve a dispute through the mediation process. If the parties resolve a dispute through the mediation process, they must execute a legally binding agreement that also includes a statement that all discussions that occurred during the mediation process will remain confidential. 34 CFR §300.506(b)(6)(i).

---

**Question A-24:**   Must a written mediation agreement be kept confidential?

**Answer:**   While discussions that occur during the mediation process must be confidential, neither the IDEA nor its implementing regulations specifically address whether the mediation agreement itself must remain confidential. However, the confidentiality of information provisions in the Part B regulations in 34 CFR §§300.611-300.626 and the Family Educational Rights and Privacy Act (FERPA), and its implementing regulations in 34 CFR part 99 would apply. Further, there is nothing in the IDEA or its implementing regulations that would prohibit the parties from agreeing voluntarily to include in their mediation agreement a provision that limits disclosure of the mediation agreement, in whole or in part, to third parties. Also, there is nothing in the IDEA that would prohibit the parties from agreeing to permit the agreement to be released to the public.

---

**Question A-25:**   Does the IDEA allow discussions that occur during the mediation process to be disclosed during the resolution of a State complaint?

**Answer:**   No. As noted above, the IDEA requires that discussions that occur during the mediation process must be confidential. 34 CFR §300.506(b)(8). Similarly, if the parties execute a written agreement as a result of mediation, that agreement must include a statement that all discussions that occurred during the mediation process must remain confidential. 34 CFR §300.506(b)(6)(i). Neither the IDEA nor its implementing regulations create exceptions to these confidentiality requirements for discussions that occurred during the mediation process when the State resolves a State complaint pursuant to 34 CFR §§300.151-300.153. Maintaining the confidentiality of mediation

Questions and Answers on IDEA Part B Dispute Resolution Procedures

discussions during subsequent State complaint resolution activities is essential to protect the integrity of both processes.

**Question A-26:**    May parties to the mediation process be required to sign a confidentiality pledge or agreement prior to, or as a precondition, to the commencement of the mediation process?

**Answer:**    No.  In the Notice of Proposed Rulemaking implementing the IDEA Amendments of 2004, the Department included a provision that would have required parties to a mediation to sign a confidentiality pledge, without regard to whether the mediation ultimately resolved the dispute.  70 FR 35870 (June 21, 2005).  This proposed provision was based on Note 208 of Conf. Rpt. (Conference Report) No. 108-779, p. 216 (2004).14  However, the Department decided to remove this proposed provision when the final Part B regulations were published in 2006 based on the statutory requirement in section 615(e)(2)(G) that discussions that occur during the mediation process must remain confidential and may not be used as evidence in any subsequent due process hearing or civil proceeding.  71 FR 46696 (August 14, 2006).

Additionally, if the parties resolve a dispute through the mediation process, as noted above, 34 CFR §300.506(b)(6)(i) requires that the legally binding written agreement contain a statement that all discussions that occurred during the mediation process will remain confidential and may not be used as evidence in any subsequent due process hearing or civil proceeding. 34 CFR §300.506(b)(6)(i).  This is so even if the parties do not enter into a mediation agreement.  However, nothing in these regulations is intended to prevent States from allowing parties to sign a confidentiality pledge to ensure that discussions during the mediation process remain confidential, irrespective of whether the mediation results in a legally binding written agreement resolving the dispute.  71 FR 46696 (August 14, 2006).

**Question A-27:**    May a State use nonjudicial mechanisms (e.g., State complaint procedures) to resolve allegations that the public agency did not implement a mediation agreement?

**Answer:**    Yes, as long as the use of those mechanisms is voluntary and does not operate to deny or delay the parties' right to seek judicial enforcement of mediation agreements.  The IDEA provides that parties who resolve a dispute through the mediation process under 34 CFR §300.506 must execute a legally binding written agreement that sets forth that resolution.  34 CFR §300.506(b)(6).  A written, signed mediation agreement is enforceable in any State court of

---

14 Conference Report refers to the joint explanatory statement of the Committee of Conference.  This report accompanied HR 1350, the bill to reauthorize the IDEA in 2004.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

competent jurisdiction or in a district court of the United States.
34 CFR §300.506(b)(7).  However, notwithstanding the provisions in
34 CFR §§300.506(b)(7) addressing judicial enforcement of mediation
agreements and 300.510(d)(2), addressing judicial enforcement of resolution
agreements, nothing in part 300 would prevent the SEA from using other
mechanisms to seek enforcement of those agreements, provided that the use of
the State's mechanisms is not mandatory and does not delay or deny a party
the right to seek enforcement of the written agreement in a State court of
competent jurisdiction or in a district court of the United States.
34 CFR §300.537.  Therefore, in addition to judicial enforcement of mediation
and resolution agreements, 34 CFR §300.537 gives States the flexibility to
allow enforcement of those agreements through other State mechanisms such
as their State complaint resolution procedures in 34 CFR §§300.151-300.153.
71 FR 46604-46605 and 71 FR 46703 (August 14, 2006).

---

**Question A-28:**   May a parent file a State complaint on matters that were not addressed in, or that arose after the time covered by, the mediation agreement?

**Answer:**   Yes.  If the mediation agreement covers a specific time period and that time period has passed, the parent may file a State complaint if the issues that were the subject of the mediation agreement recur or if new issues arise.  Also, if there are issues that were not addressed by the mediation agreement, the parent may file a State complaint to seek to resolve those issues.  However, once both parties have executed a legally binding mediation agreement, the parties are bound by that agreement and a parent cannot seek to change the terms of that agreement by filing a State complaint to alter that agreement.

---

Key regulatory references related to the mediation process, as cited above, can be found at
http://idea.ed.gov/explore/home, and include the following:

- 34 CFR §300.140
- 34 CFR §§300.151-300.153
- 34 CFR §300.506
- 34 CFR §300.520
- 34 CFR §300.537
- 34 CFR §§300.611-300.626

The Q&A documents cited in this section can be found at:

- *Questions and Answers on Highly Qualified Teachers Serving Children with Disabilities*,
  January 2007:
  http://idea.ed.gov/explore/view/p/%2Croot%2Cdynamic%2CQaCorner%2C2%2C
- *Questions and Answers on Serving Children with Disabilities Placed by Their Parents in Private Schools*, April 2011:
  http://idea.ed.gov/explore/view/p/%2Croot%2Cdynamic%2CQaCorner%2C1%2C

Questions and Answers on IDEA Part B Dispute Resolution Procedures

## B.    *State Complaint Procedures*

**Authority:**     The requirements for State complaint procedures are found in the regulations at 34 CFR §§300.151-300.153.

---

**Question B-1:**     Why are States required to have complaint procedures when the IDEA statute does not contain those procedures?

**Answer:**     States have been required to establish and implement their own State complaint procedures, separate from their due process procedures, since 1977, when the initial regulations implementing Part B of the EHA were published (45 CFR §121a.602).  The EHA regulations were moved to part 76 of the Education Department General Administrative Regulations (EDGAR) in the early 1980s and were returned to the Part B of the IDEA regulations in 1992 when the Department decided to move the regulations out of EDGAR and place them in program regulations for the major formula grant programs.  71 FR 46600 (August 14, 2006).  In responding to public comments questioning the basis for the State complaint provisions in 34 CFR §§300.151-300.153, the Department provided the following explanation when the final Part B regulations were published:

> Although Congress did not specifically detail a State complaint process in the Act, we believe that the State complaint process is fully supported by the Act and necessary for the proper implementation of the Act and these regulations.  We believe a strong State complaint system provides parents and other individuals an opportunity to resolve disputes early without having to file a due process complaint and without having to go to a due process hearing.  71 FR 46600 (August 14, 2006).

In addition to the regulations addressing State complaint procedures, there are also a number of statutory provisions in the IDEA that recognize the State complaint process.15

Accordingly, through its Part B State complaint procedures, each State has a powerful tool to address noncompliance with Part B of the IDEA and its implementing regulations in a manner that both supports and protects the

---

15 The State complaint procedures are referred to in the following three sections of the IDEA:  section 611(e)(2)(B)(i), requiring States to expend a portion of Part B funds that they can use for State-level activities for complaint investigation; section 612(a)(14)(E), which provides that a parent is not prevented from filing a State complaint under part 300 with the SEA about staff qualifications; and section 615(f)(3)(F), clarifying that nothing in the Act's due process provisions should be construed to affect the right of a parent to file a complaint with the SEA.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

interests of children with disabilities and their parents and facilitates ongoing compliance by the State and its public agencies with the IDEA and its implementing regulations.  71 FR 46601 (August 14, 2006).

**Question B-2:**    What are some differences between a State complaint and a due process complaint?

**Answer:**    Some differences include who can file each type of complaint, subject matter, timing, procedures, and appeal processes.  More parties are eligible to file a State complaint than a due process complaint.  As explained in Question B-3, a State complaint may be filed by an organization or individual, including one from another State.  In contrast, only a parent[16] or a public agency[17] may file a due process complaint.[18]  Therefore, while a parent has the option of filing a State complaint or a due process complaint to request a due process hearing, an organization or individual, other than a child's parent may not file a due process complaint to request a due process hearing.

Another difference is the subject matter of each type of complaint.  A State complaint must allege that a public agency has violated a requirement of Part B of the IDEA or the Part B regulations, but a due process complaint is available for matters regarding the identification, evaluation, or educational placement of a child with a disability, or the provision of FAPE to the child.  Therefore, while a matter that could be the subject of a due process complaint could also be the subject of a State complaint, the reverse is not always true.

Next, the time period within which each type of complaint can be filed is not the same.  A State complaint must allege a violation that occurred not more than one year prior to the date that the complaint is received in accordance with 34 CFR §300.151; although States have the option of accepting complaints alleging a violation that occurred within a longer time period (see Question B-19).  In contrast, a due process complaint must allege a violation that occurred not more than two years before the parent or public agency knew or should have known about the alleged action that forms the basis for the due process complaint, or, if the State has an explicit time limitation, in the time allowed by State law.  34 CFR §300.507(a)(2).  The regulations provide explicit exceptions to the two-year or State-established timeline.  34 CFR §300.511(f).  See Question C-5 of this Q&A document for a description of these exceptions.

Different procedures apply to written decisions for State complaints and due process complaints.[19]  For State complaints, the SEA must issue a written

16 See Footnote 5 in Section A of this Q&A document for the definition of the term "parent" and for information about the transfer of rights accorded to parents under Part B of the IDEA to a student who has reached the age of majority under State law.

17 See Footnote 6 in Section A of this Q&A document for the definition of the term "public agency."

18 Compare, 34 CFR §300.153(a) with 34 CFR §300.507(a)(1).

Questions and Answers on IDEA Part B Dispute Resolution Procedures

decision to the complainant that addresses each allegation in the complaint within 60 days of the date that the complaint was filed, except that certain specific extensions are allowable as described in Question B-21. In contrast, if a parent files a due process complaint to request a due process hearing and the due process hearing occurs, then a hearing decision must be issued not later than 45 days after the expiration of the resolution period described in 34 CFR §300.510. Note though that a hearing officer may grant a specific extension of the 45-day timeline at the request of either party. See Sections C and D of this Q&A document.

The regulations are silent as to whether a decision on a State complaint may be appealed, but see Question B-32 for a discussion of how State appeal and reconsideration procedures can be implemented consistent with Part B. Also, as described in the response to Question B-34, the Part B regulations do not provide for Secretarial review of a final decision on a State complaint. In contrast, a decision reached in a due process hearing is final, unless a party aggrieved by the decision appeals by requesting a State-level review, if applicable, or by bringing a civil action in an appropriate State or Federal court. 34 CFR §§300.514 and 300.516.

| | |
|---|---|
| **Question B-3:** | Who may file a State complaint? |
| **Answer:** | Any organization or individual, including one from another State, may file a signed written State complaint that meets the requirements in 34 CFR §300.153. 34 CFR §300.151(a). |

| | |
|---|---|
| **Question B-4:** | Are there any mechanisms that an SEA must provide to assist parents and other parties in filing a State complaint? |
| **Answer:** | Yes. Under 34 CFR §300.509, each SEA must develop model forms to assist parents and other parties in filing a State complaint; however, the SEA or LEA may not require the use of the model forms. Parents and other parties may use the appropriate model form, or another form or document, so long as the form or document that is used meets the content requirements in 34 CFR §300.153 for filing a State complaint. If the SEA's model form includes content not required by 34 CFR §300.153, the form must identify that content and specify that it is optional. |

| | |
|---|---|
| **Question B-5:** | If a parent wishes to challenge a public agency's eligibility determination, may a parent file a State complaint? |
| **Answer:** | Yes. The Department's long-standing position is that an SEA may not refuse to resolve a parent's State complaint challenging a public agency's eligibility |

---

19 Compare, 34 CFR §300.152(a) with 34 CFR §§300.507-300.508.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

determination through its complaint resolution procedures even though the complaint concerns a matter that could also be the subject of a due process complaint to request a due process hearing.

**Question B-6:**    How should an SEA resolve a State complaint challenging a public agency's eligibility determination?

**Answer**:    In resolving a State complaint challenging a public agency's eligibility determination, an SEA should determine not only whether the public agency has followed the required Part B procedures to reach its determination, but also whether the public agency has reached a determination consistent with Part B requirements governing the evaluation and eligibility determination in 34 CFR §§300.304-300.311, in light of the individual child's abilities and needs.  The SEA must determine whether the child was determined eligible based on evidence that he or she met the definition of "child with a disability" under 34 CFR §300.8 and fell within the age ranges specified at 34 CFR §§300.101 and 300.102.  To do so, the SEA may need to review the evaluation data in the child's record or any additional data provided by the parties to the complaint.  In addition, the SEA may need to review the explanation included in the public agency's prior written notice to the parents under 34 CFR §300.503 explaining why the agency made the challenged eligibility determination (and/or refused to make an alternative determination requested by the parents or others).  If necessary, the SEA may need to interview appropriate individuals to determine:  (1) whether the public agency followed procedures and applied standards that are consistent with State standards, including the requirements of Part B; and (2) whether the public agency's eligibility determination is consistent with those standards and supported by the evaluation and other data included in the child's record or the information provided by the parties to the complaint.  The SEA may find that the public agency has complied with Part B requirements if public agency has followed required procedures, applied required standards, and reached a determination that is reasonably supported by the child-specific data and is consistent with Part B.

If the SEA determines that the public agency's eligibility determination is not supported by the child-specific facts, the SEA can order the public agency, on a case-by-case basis, to reconsider the eligibility determination in light of those facts.  In addition, a parent always has the right to challenge the public agency's eligibility determination by filing a due process complaint to request a due process hearing and may also engage in mediation with the public agency to seek to resolve the dispute.

**Question B-7:**    If a parent wishes to challenge a public agency's decision regarding the provision or denial of FAPE to a child with a disability, may a parent file a State complaint?

Questions and Answers on IDEA Part B Dispute Resolution Procedures

**Answer:**    Yes.  As is true for State complaints challenging a public agency's eligibility determination, the Department's long-standing position is that an SEA may not refuse to resolve a State complaint alleging a denial of FAPE.  This is true even if the SEA believes that the parent should file a due process complaint against the LEA or that the due process hearing process is a more appropriate mechanism to resolve such disputes.  If a parent believes that the program offered or provided to his or her child with a disability does not constitute FAPE and files a State complaint instead of a due process complaint, the SEA must resolve the State complaint.  This responsibility includes resolving a State complaint by a parent, who has unilaterally placed his or her child in a private school at her or her own expense, alleging a denial of FAPE.

---

**Question B-8:**    How should an SEA resolve a State complaint challenging a public agency's decision regarding the provision or denial of FAPE to a child with a disability?

**Answer:**    In resolving a State complaint challenging whether a public agency's decision regarding the provision or denial of FAPE to a child is correct, an SEA may need to determine not only whether the public agency has followed the required Part B procedures to reach its determination, but also whether the public agency has properly addressed the individual child's abilities and needs.  Thus, the SEA would need to review any data provided by the parties to the complaint and the child's record, including evaluation data and any explanations included in the public agency's prior written notice to the parents under 34 CFR §300.503 as to why the public agency made its decision regarding the child's educational program or services (and/or refused to make an alternative decision requested by the parents or others).  If necessary, the SEA may need to interview appropriate individuals to determine:  (1) whether the agency followed procedures and applied standards that are consistent with State standards, including the requirements of Part B; and (2) whether the determination made by the public agency is consistent with those standards and supported by the data on the individual child's abilities and needs.  The SEA may find that the public agency has complied with Part B requirements if the evidence clearly demonstrates that the agency has followed required procedures, applied required standards, and reached a determination that is reasonably supported by the child-specific data.  71 FR 46601 (August 14, 2006).

If the SEA finds a violation of FAPE for the child, it must address the violation.  This includes, as appropriate, ordering an IEP Team to reconvene to develop a program that ensures the provision of FAPE for that child or ordering compensatory services.  See Question B-10 for remedies.  In addition, a parent alleging a denial of FAPE has the right to challenge the IEP Team's decision by filing a due process complaint to request a due process hearing and may also engage in mediation with the public agency to seek to resolve the dispute.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

---

**Question B-9:**    May the State complaint procedures, including the remedies outlined in
34 CFR §300.151(b), be used to address the problems of a group of children,
i.e., a complaint alleging systemic noncompliance?

**Answer:**    Yes.  An SEA is required to resolve any complaint that meets the
requirements of 34 CFR §300.153.  This includes a complaint alleging that a
public agency has not provided FAPE to an individual child or a group of
children in accordance with Part B.  As noted in the response to Question B-1,
State complaint procedures provide a powerful tool to enable a State to fulfill
its general supervisory responsibility to monitor implementation of Part B
requirements in the State.  This responsibility applies to the monitoring of its
public agencies' compliance with Part B with respect to both systemic and
child-specific issues. 34 CFR §§300.149 and 300.600(a).

A State complaint alleging systemic noncompliance could be one that alleges
that a public agency has a policy, procedure, or practice applicable to a group
of children that is inconsistent with Part B or the Part B regulations.  An
example of a complaint alleging systemic noncompliance is a complaint
alleging that an LEA has a policy, procedure, or practice that would limit
extended school year (ESY) services to children in particular disability
categories or the type, amount, or duration of services that can be provided as
ESY services.

If the complaint names certain children and alleges that the same violations
apply to a class, category, or similarly situated children, the SEA must review
all relevant information to resolve the complaint, but would not need to
examine additional children if no violations are identified in the policies,
procedures, or practices for the named children.  However, if the SEA
identifies violations for any of the named children, the SEA's complaint
resolution must include measures to ensure correction of the violations for all
children affected by the alleged systemic noncompliance described in the
complaint.  Additionally, the SEA would need to examine the policies,
procedures, and practices that may be causing the violations and the SEA's
written decision on the complaint must contain procedures for effective
implementation of that decision, including corrective actions to achieve
compliance.  34 CFR §§300.152(b)(2)(iii), 300.149(a)(2)(ii), and 300.600(e).

---

**Question B-10:**    If there is a finding in a State complaint that a child or group of children has
been denied FAPE, what are the remedies?

**Answer:**    In resolving a complaint in which there is a finding that a public agency has
not provided appropriate services, whether to an individual child or a group of
children, an SEA, through its general supervisory authority under Part B, is
required to address:  (1) the failure to provide appropriate services, including

Questions and Answers on IDEA Part B Dispute Resolution Procedures

corrective action appropriate to address the needs of the child (such as compensatory services or monetary reimbursement); and (2) appropriate future provision of services for all children with disabilities. 34 CFR §300.151(b). Thus, an SEA, pursuant to its general supervisory authority, has broad flexibility to determine appropriate remedies to address the denial of appropriate services to an individual child or group of children.

---

**Question B-11:**    How does an SEA resolve a complaint when an organization or individual, other than a child's parent, files a State complaint regarding a specific child?

**Answer:**    An SEA is required to resolve any complaint that meets the requirements of 34 CFR §300.153 filed by an organization or individual, including one from another State. This includes a signed written complaint alleging that a public agency has violated a requirement of Part B of the IDEA or the Part B regulations regarding a particular child with a disability, regardless of whether the State complaint has been filed by the child's parent or by an organization or individual other than the child's parent. Thus, in resolving such a complaint, the SEA would be required to follow the minimum State complaint procedures in 34 CFR §300.152 as it would for any other State complaint that alleges that a public agency has violated a requirement of Part B of the IDEA or the Part B regulations.

If a complaint is filed by an organization or individual other than the parent, parental consent must be obtained before an SEA may provide personally identifiable information about a child to a non-parent complainant as part of the complaint decision. 34 CFR §§99.30 and 300.622.

If parental consent is not obtained, any personally identifiable information about the child who is the subject of the complaint must be redacted from the SEA's written decision on the complaint. Because the complaint resolution would likely involve the child's personally identifiable information, it may not be possible for the SEA's decision to be issued to a non-parent complainant. The SEA must make this determination case by case, but should not withhold relevant nonpersonally identifiable information from the complainant regarding the results of the SEA's complaint resolution. Moreover, even if the SEA would be unable to issue a written decision to the complainant because of its personally identifiable nature, the SEA still must ensure that it resolves the complaint, issues a written decision that addresses each allegation in the complaint, and ensures timely implementation of its written decision, including, if appropriate, corrective actions to achieve compliance and remedies for the denial of appropriate services. 34 CFR §§300.152(b)(2) and 300.151(b).

---

**Question B-12:**    How does an SEA resolve a complaint against itself?

**Answer:**    An SEA must resolve a complaint alleging that it has violated a requirement of Part B or the Part B regulations just as it must resolve any other signed written complaint that meets the requirements in 34 CFR §300.153. Under

Questions and Answers on IDEA Part B Dispute Resolution Procedures

34 CFR §300.33, the term "public agency" includes the SEA. Therefore, an SEA must resolve a complaint alleging that the SEA (a public agency) has violated a requirement of Part B or the Part B regulations.

In resolving a complaint filed against the SEA, an SEA may either appoint its own personnel or may make arrangements with an outside party to resolve the complaint. Regardless of whether the SEA chooses to resolve the complaint on its own or chooses to use an outside party, the SEA must ensure that all of the procedures in 34 CFR §§300.151-300.153 are followed. Specifically, an independent on-site investigation must be conducted, if necessary, consistent with 34 CFR §300.152(a)(1) and the SEA must take appropriate steps to ensure this occurs. Additionally, the SEA must ensure that all relevant information is reviewed and that an independent determination is made as to whether the public agency (in this case the SEA) has violated a requirement of Part B or the Part B regulations with respect to the complaint. 34 CFR §300.152(a)(4).

The SEA also must ensure that it or an outside party, whichever resolves the complaint, considers all available remedies in the case of a denial of appropriate services consistent with 34 CFR §300.151(b). Regardless of whether the complaint is resolved by the SEA or by an outside party that the SEA designates to resolve the complaint, the SEA must comply with all corrective actions, including remedies, set out in the final decision. 71 FR 46602 (August 14, 2006).

---

**Question B-13:**    May States establish procedures permitting a State complaint to be filed electronically?

**Answer:**    Yes. Under 34 CFR §300.153(a), a complaint must be signed and written. This regulation does not address whether States can accept State complaints filed electronically with digital or electronic signatures. Because the IDEA does not prohibit this practice, States considering accepting, or choosing to accept, electronic submissions of State complaints with electronic signatures would need to ensure that there are appropriate safeguards to protect the

Questions and Answers on IDEA Part B Dispute Resolution Procedures

integrity of the process.  71 FR 46629 (August 14, 2006) (regarding whether States can accept electronic parental consent).

In developing the appropriate safeguards, States should consider that the Department has addressed criteria for accepting electronic signatures to satisfy the signed written consent requirements in the FERPA regulations in 34 CFR part 99.  Under 34 CFR §99.30(d), "signed and dated written consent" may include a record and signature in electronic form that identifies and authenticates a particular person as the source of the consent and indicates such person's approval of the information contained in the electronic consent.

Applying these criteria to electronic complaint submissions, it would be reasonable for States that either are considering accepting, or have chosen to accept, electronic filings of Part B State complaints with electronic signatures to ensure that their process includes safeguards sufficient to identify or authenticate the complainant and indicate that the complainant approves of the information in the complaint.  In other words, these safeguards should be sufficient to ensure that an organization or individual submitting a complaint electronically understands that the complaint has the same effect as if it were filed in writing.  States would also need to ensure that the same confidentiality requirements that apply to signed written State complaints apply to State complaints filed electronically.  34 CFR §§300.611-300.626.  States that are considering or have chosen to accept State complaints filed electronically with electronic signatures also should consult any relevant State laws governing electronic transactions.

---

**Question B-14:**    Must States have procedures for tracking when State complaints are received, including State complaints filed electronically, if applicable?

**Answer:**    Yes.  Each SEA must include in its minimum State complaint procedures a time limit of 60 days after the date that the complaint is filed to resolve the complaint.  34 CFR §300.152(a).  This includes all signed written complaints, including complaints filed electronically, if applicable.  The Department interprets this requirement to mean that States must ensure that the 60-day[20] time limit for complaint resolution begins on the date that a complaint is received.  While a State has some discretion in determining when a complaint is considered received, the SEA must ensure that its procedures allow for the timely resolution of complaints and are uniformly applied, consistent with 34 CFR §300.152(a) and (b).  For example, if a State complaint is filed electronically on a day that is not considered a business day (e.g., the weekend), the State could consider the complaint received on the date the complaint is filed or on the next business day.

---

20 Under 34 CFR §300.11(a), "[d]ay means calendar day unless otherwise indicated as business day or school day."

Questions and Answers on IDEA Part B Dispute Resolution Procedures

Under 34 CFR §300.151(a)(2), the State must adopt procedures for widely disseminating to parents and other interested individuals, including parent training and information centers, community parent resource centers, protection and advocacy agencies, independent living centers, and other appropriate entities, the State complaint resolution procedures under 34 CFR §§300.151-300.153. These must include criteria the State uses for determining when the State considers a State complaint to be received.

Likewise, information about filing and timelines for resolving State complaints must also be included in the explanation of State complaint procedures in the procedural safeguards notice to parents in accordance with 34 CFR §300.504(c)(5). The procedural safeguards notice must be provided to parents at least one time a school year, upon receipt of the first State complaint in a school year, and in the other circumstances specified in 34 CFR §300.504(a).

**Question B-15:** What is an SEA's responsibility to resolve a complaint if the complaint submitted to the SEA does not include all of the content required in 34 CFR §300.153?

**Answer:** The regulations do not specifically address an SEA's responsibility in this situation. Under 34 CFR §300.153, a complaint must include a statement that a public agency has violated a requirement of Part B of the Act or the Part B regulations; the facts on which the statement is based; and the signature and contact information for the complainant. If the complaint alleges a violation with respect to a specific child, the complaint also must include the name and address of the residence of the child; the name of the school the child is attending; in the case of a homeless child or youth, available contact information for the child and the name of the school the child is attending; a description of the problem of the child, including facts relating to the problem; and a proposed resolution of the problem to the extent known and available to the party at the time the complaint is filed. When an SEA receives a complaint that is not signed or does not include contact information, or any other information required in 34 CFR §300.153(b), the SEA may choose to dismiss the complaint. 71 FR 46606 (August 14, 2006). In general, a State complaint may not be dismissed for not including a proposed resolution of the problem unless an SEA can clearly demonstrate that the resolution is known to the complaining party at the time the complaint is filed.

In general, an SEA should adopt proper notice procedures for such situations. For example, an SEA could provide notice indicating that the complaint will be dismissed for not meeting the content requirements or that the complaint will not be resolved and the time limit not commence until the missing content is provided. The SEA could also include this information in its written procedures for resolving State complaints pursuant to 34 CFR §300.151(a).

Questions and Answers on IDEA Part B Dispute Resolution Procedures

To ensure that a State's complaint resolution procedures are not inconsistent with Part B, in general, an SEA may not adopt procedures that limit or diminish the parent's or other complainant's ability to present a State complaint and obtain timely resolution of the issues presented.

---

**Question B-16:**   May an SEA dismiss a complaint alleging systemic noncompliance because the complainant did not include a proposed resolution of the problem?

**Answer:**   No.  Under 34 CFR §300.153(b)(4)(v),  the requirement for the complaint to include a proposed resolution of the problem to the extent known and available to the party at the time the complaint is filed applies only to complaints alleging violations with respect to a specific child.

---

**Question B-17:**   What is an SEA's responsibility to resolve a complaint if the complainant does not provide a copy of the complaint to the LEA or public agency serving the child at the same time the complaint is filed with the SEA?

**Answer:**   Under 34 CFR §300.153(d), the complainant must provide a copy of the complaint to the LEA or public agency serving the child at the same time the complaint is filed with the SEA.  The regulations do not specifically address a situation where the complainant only provides the complaint to the SEA and does not forward it to the LEA or public agency serving the child.  An SEA should include the actions that will be taken under these circumstances in its complaint procedures established under 34 CFR §300.151(a) and provide proper notice of its procedures.  An SEA's complaint procedures should address how the complainant's failure to provide the required copy to the LEA or public agency serving the child will affect the initiation of the complaint resolution and/or the time limit for completing the complaint resolution.

For example, an SEA could adopt procedures that include advising the complainant in writing that the complaint resolution will not proceed and the 60-day time limit will not begin until the complainant provides the LEA or public agency serving the child with a copy of the complaint as required by the regulations.  71 FR 46606 (August 14, 2006).  As an additional protection for parents, consistent with 34 CFR §300.199, we encourage States to adopt procedures that ensure that the SEA provides a copy of the complaint to the LEA or public agency serving the child if the complainant does not do so.

To ensure that a State's complaint resolution procedures are not inconsistent with Part B, in general, an SEA may not adopt procedures that limit or diminish the parent's or other complainant's ability to present a State complaint and obtain timely resolution of the issues presented.

---

**Question B-18:**   May a complaint be filed with an SEA over an alleged violation that occurred more than one year prior to the date of the complaint?

Questions and Answers on IDEA Part B Dispute Resolution Procedures

**Answer:**          Prior to October 13, 2006, (the effective date of the August 14, 2006, Part B regulations), States were required to accept complaints that alleged violations that occurred not more than one year prior to the date that the complaint was received, unless a longer period of time was reasonable because the violation was continuing or the complainant was requesting compensatory services for a violation that occurred not more than three years prior to the date that the complaint was received.  64 FR 12465 (March 12, 1999).  This provision was removed in the 2006 Part B regulations.  Under 34 CFR §300.153(c), a complaint must allege a violation that occurred not more than one year prior to the date that the complaint is received.  This requirement applies even if the alleged violation is continuing or if the complainant is requesting compensatory services.  However, as described in Question B-19, a State may choose to accept and resolve complaints alleging violations that occurred more than one year prior to the SEA's receipt of the complaint as an additional protection for parents.  71 FR 46606 (August 14, 2006).

---

**Question B-19:**   Does an SEA have the option to accept and resolve complaints alleging violations of the IDEA that occurred more than one year prior to the SEA's receipt of the complaint?  What is the SEA's responsibility if such a procedure is permitted?

**Answer:**          As with other procedural protections, a State may elect to provide more protections for children with disabilities and their parents than those specifically required by the IDEA, provided that the State procedure is not inconsistent with the IDEA.  Therefore, an SEA may adopt a policy or procedure to accept and resolve complaints regarding alleged violations that occurred outside the one-year timeline in 34 CFR §300.153(c).  In general, such a procedure would be treated as an additional protection for children with disabilities and their parents and not inconsistent with Part B.  71 FR 46606 (August 14, 2006).

Pursuant to 34 CFR §300.199(a)(2), the State must identify in writing to LEAs located in the State and the Secretary of Education any rule, regulation, or policy as a State-imposed requirement that is not required by Part B of the IDEA and Federal regulations.  Stakeholders, including parents, parent training and information centers, protection and advocacy agencies, independent living centers, and other appropriate entities, must be informed of the State's complaint resolution procedures pursuant to 34 CFR §300.151(a)(2).  Therefore, if an SEA adopts a policy or procedure to accept and resolve complaints alleging violations that occurred outside of the one-year timeline, stakeholders must be informed of the policy or procedure through the State's complaint procedures so that they will be able to make informed decisions about how and when they may use the State complaint procedures.  Additionally, a public agency's notice of procedural safeguards, which must be given to parents one time a year and upon receipt of the first State complaint under 34 CFR §§300.151-300.153 in a school year, must

Questions and Answers on IDEA Part B Dispute Resolution Procedures

include a full explanation of all of the procedural safeguards available to parents. This notice must include an explanation of the opportunity to present and resolve complaints through the State complaint procedures, including, among other information, the time period in which a parent may file a State complaint. 34 CFR §300.504(c)(5)(i).

**Question B-20:** Must an SEA conduct an independent on-site investigation for every complaint filed?

**Answer:** No. An SEA is required to conduct an independent on-site investigation only if it determines that such an investigation is necessary. 34 CFR §300.152(a)(1). The standards to be used in determining whether to conduct an on-site investigation are left to each State. If the SEA determines that there is no need to conduct an independent on-site investigation, the SEA must comply with all other applicable requirements in 34 CFR §300.152(a) and (b) in resolving the complaint.

**Question B-21:** When can the SEA extend the 60-day time limit for resolution of a State complaint? Can OSEP identify examples of situations when States have not been permitted to extend the 60-day complaint resolution time limit due to exceptional circumstances?

**Answer:** The regulations specify two allowable reasons for extending the 60-day time limit for complaint resolution. Under 34 CFR §300.152(b)(1), the SEA may extend this time limit only if: (1) exceptional circumstances exist with respect to a particular complaint; or (2) the parent (or individual or organization, if mediation or other alternative means of dispute resolution is available to the individual or organization under State procedures) and the public agency involved agree to extend the time to engage in mediation or other alternative means of dispute resolution, if available in the State. States need to determine case by case whether it is appropriate to extend the 60-day resolution time limit for a particular complaint due to exceptional circumstances.

OSEP has found that the following do not constitute exceptional circumstances that would warrant an extension of the 60-day time limit: State staff shortages or heavy caseloads; school vacations and breaks; the use of mediation or alternative dispute resolution without agreement by the parent (or individual or organization under State procedures) and the public agency to extend the 60-day time limit.

**Question B-22:** Must an SEA make mediation available when a State complaint is filed?

**Answer:** Under 34 CFR §300.152(a)(3)(ii), the SEA must provide an opportunity for a parent who has filed a State complaint and the public agency to voluntarily engage in mediation consistent with 34 CFR §300.506. This should provide a

Questions and Answers on IDEA Part B Dispute Resolution Procedures

potential way of promptly resolving disputes between parents and public agencies at the local level. Resolving a complaint through mediation could also prove to be less costly if it avoids the need for the SEA to resolve the complaint, particularly if the SEA were to determine that an on-site investigation would be necessary. Ultimately, children with disabilities will be the beneficiaries of a local resolution because disputes about their educational programs can be resolved in a more timely manner. 71 FR 46603 (August 14, 2006).

While the IDEA does not require that mediation under 34 CFR §300.506 be made available to parties other than parents, there is nothing in the IDEA or its implementing regulations that would prevent States from offering voluntary mediation, or other alternative means of dispute resolution, if available in the State, to parties other than parents. 71 FR 46603-46604 (August 14, 2006). This matter is also discussed in Question A-4 of this Q&A document. An SEA may not require, but may request, that mediation (under 34 CFR §300.506) or other forms of alternative dispute resolution made available in the State take place before its complaint resolution.

---

**Question B-23:**   What are the procedures related to an extension of the time limit for resolving a State complaint when the parties are engaged in mediation?

**Answer:**   Under 34 CFR §300.152(b)(1)(ii), the 60-day time limit for complaint resolution may be extended if the parent (or individual or organization, if mediation or other alternative means of dispute resolution is available to them under State procedures) and the public agency involved agree to extend the time to engage in mediation under 34 CFR §300.152(a)(3)(ii), or to engage in other alternative means of dispute resolution, if available in the State. The SEA may not treat mediation, in and of itself, as an exceptional circumstance under 34 CFR §300.152(b)(1)(i) that would warrant an extension of the time limit for complaint resolution. Rather, the parties engaged in mediation or other alternative means of dispute resolution, if available in the State, must agree to extend the time limit.

If the parties involved agree to engage in mediation once the State complaint is filed but do not agree to the extension of the complaint resolution time limit and the mediation is not successful in resolving the dispute, the State must ensure that the complaint is resolved within 60 days after the complaint was filed, as specified in 34 CFR §300.152(a). At any time that either party withdraws from mediation or other alternative means of dispute resolution, or withdraws agreement to the extension of the time limit, the extension of the time limit for complaint resolution would end. 71 FR 46604 (August 14, 2006).

Questions and Answers on IDEA Part B Dispute Resolution Procedures

---

**Question B-24:** If the complainant is a party other than a parent, may the parties use the mediation process to attempt to resolve the issues in the State complaint?

**Answer:** Under 34 CFR §300.152(a)(3)(ii), an SEA is required to offer the parent and the public agency the opportunity to voluntarily engage in mediation to resolve the issues in a State complaint when the parent has filed a State complaint. The regulations do not require an SEA to provide an opportunity for mediation when an organization or individual other than the child's parent files a State complaint. However, the Department encourages SEAs and their public agencies to consider alternative means of resolving disputes between public agencies and organizations or other individuals, at the local level, consistent with State law and administrative procedures. It is up to each State, however, to determine whether non-parents can use mediation or other alternative means of dispute resolution. 71 FR 46604 (August 14, 2006).

---

**Question B-25:** Can an SEA dismiss allegations raised in a State complaint that were addressed in a previous settlement agreement resulting from mediation or the resolution process?

**Answer:** If a State complaint alleges violations specific to the child who is the subject of a prior settlement agreement resulting from mediation or the resolution process, the SEA may determine that the settlement agreement is binding on the parties as to those issues and inform the complainant to that effect. However, if the State complaint alleges systemic noncompliance or the State has reason to believe that the violations are systemic, it must resolve the allegations through its complaint resolution procedures. If the State finds systemic violations, it must provide for appropriate remedies for all students covered in the complaint, which could include prescribing in its complaint decision remedies for the denial of appropriate services, including corrective actions to address both past violations and future compliance. 34 CFR §§300.151(b) and 300.152(b)(2)(iii).

---

**Question B-26:** Can an issue that is the subject of a State complaint also be the subject of a due process complaint requesting a due process hearing?

**Answer:** Yes. An issue in a State complaint can also be the subject of a due process complaint requesting a due process hearing, as long as the issue relates to a matter regarding the identification, evaluation, or educational placement of a child with a disability, or the provision of FAPE to the child, as described in 34 CFR §300.507(a)(1) or to a disciplinary matter as described in 34 CFR §§300.530-300.532. If a due process complaint is filed on an issue that is also the subject of a pending State complaint, the State must set aside any part of the State complaint that is being addressed in the due process hearing until the hearing officer issues a final decision. However, any issue in

Questions and Answers on IDEA Part B Dispute Resolution Procedures

the State complaint that is not part of the due process action must be resolved using the 60-day time limit and procedures described in 34 CFR §300.152(a) and (b).  34 CFR §300.152(c)(1).

**Question B-27:**    If a parent has filed a State complaint and the State's resolution is still in process, can the parent request a due process hearing pending resolution of the State complaint?

**Answer:**    Yes.  A parent who has filed a State complaint is not prevented from filing a due process complaint on the same or similar issues.  However, if a parent files a due process complaint and the hearing officer rules on that issue, the due process hearing decision is binding as to that issue.  Therefore, while the State may have begun the process of resolving a State complaint prior to the receipt of a due process complaint, pursuant to 34 CFR §300.152(c)(1), the State must set aside any issues in the State complaint that are being addressed in the due process hearing.  As indicated in Question B-26, any issue in the State complaint that is not part of the due process action must be resolved using the State complaint resolution procedures in accordance with 34 CFR §300.152(a) and (b).  34 CFR §300.152(c).

**Question B-28:**    May a State complaint be filed on an issue that was previously decided in a due process hearing?

**Answer:**    Under 34 CFR §300.152(c)(2)(i), if a hearing officer has previously ruled on an issue at a due process hearing involving the same parties, the decision is binding on that issue.  If a State complaint involving the same parties is filed on the same issue that was previously decided by the hearing officer, the SEA must inform the complainant that the hearing decision is binding on that issue.  34 CFR §300.152(c)(2)(ii).  However, the SEA must use its State complaint resolution procedures to resolve any issue in the complaint that was not decided in the due process hearing.  In determining that it will not resolve an issue in a State complaint because that issue was previously decided in a due process hearing, the SEA must ensure that the legal and factual issues are identical.

**Question B-29:**    May the State complaint procedures be used to resolve a complaint that alleges that a public agency has failed to implement a hearing officer's decision?

**Answer:**    Yes.  Under 34 CFR §300.152(c)(3), if a State complaint alleges that a public agency has failed to implement a due process hearing decision, the complaint must be resolved by the SEA.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

**Question B-30:**   Once an SEA resolves a State complaint, what must the SEA's written decision contain?

**Answer:**   Within 60 days of the date that the complaint was filed, subject to allowable extensions, an SEA is required to issue a written decision to the complainant that addresses each allegation in the complaint and contains:  (1) findings of fact and conclusions; and (2) the reasons for the SEA's final decision. 34 CFR §300.152(a)(5).  In addition, under 34 CFR §300.152(b)(2), the SEA must have procedures for effective implementation of its final decision, if needed, including technical assistance activities, negotiations, and corrective actions to achieve compliance.  Therefore, if necessary to implement the SEA's final decision, the SEA's written decision must contain remedies for the denial of appropriate services, including corrective actions that are appropriate to address the needs of the child or group of children involved in the complaint.  If appropriate, remedies could include compensatory services or monetary reimbursement, and measures to ensure appropriate future provision of services for all children with disabilities.  34 CFR §300.151(b).

**Question B-31:**   What is the SEA's responsibility after a written decision on a State complaint is issued?

**Answer:**   The SEA must ensure that the public agency involved in the complaint implements the written decision on the complaint in a timely manner.  The State's complaint procedures must include procedures for effective implementation of the SEA's final decision, if needed, including technical assistance activities, negotiations, and corrective actions to achieve compliance.  34 CFR §300.152(b)(2).

To ensure corrective action and pursuant to its general supervisory responsibilities in 34 CFR §§300.149 and 300.600, the SEA must inform the public agency that is involved in the complaint of any findings of noncompliance and the required corrective action, and ensure that the corrective action is completed as soon as possible and within the timeframe specified in the SEA's written decision, and in no case later than one year of the State's identification of the noncompliance.  34 CFR §300.600(e).

**Question B-32:**   May a State complaint decision be appealed?

**Answer:**   The regulations are silent as to whether a State complaint decision may be appealed.  The regulations neither prohibit nor require the establishment of procedures to permit either party to request reconsideration of a State complaint decision, although as noted below, the parent or public agency may use mediation or file a due process complaint to request a due process hearing to resolve disputed issues.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

Under 34 CFR §300.152(a), the SEA is required to issue a written decision on each complaint within 60 days after the complaint is filed, unless the SEA extends the time limit because exceptional circumstances exist with respect to the particular complaint or the parties agree to extend the time limit to engage in mediation, or other alternative means of dispute resolution, if available in the State. This means that, absent an allowable extension of the time limit for a particular complaint, the State must issue a final decision within 60 days of the date the complaint is filed.

A State may choose to establish procedures for reconsideration of complaint decisions that would result in a decision on the reconsideration within 60 days of the date on which the complaint was originally filed. Alternatively, a State may establish procedures for the reconsideration when the reconsideration process would not be completed until later than 60 days after the original filing of the complaint, but only if the public agency's implementation of any corrective action required in the SEA's final decision is not delayed pending the reconsideration process. Therefore, if the reconsideration process is completed later than 60 days after the filing of the State complaint, the public agency must implement any required corrective actions while the reconsideration process is pending.

Also, if the issue is still in dispute, the parent or public agency may, if they have not already done so, use mediation under 34 CFR §300.506 or file a due process complaint to request a due process hearing in accordance with 34 CFR §§300.507-300.508, subject to any applicable exceptions described in Questions C-9 and C-10 of this Q&A document.

**Question B-33:**    Is a State required to make written decisions on State complaints available to the public?

**Answer:**    No. There is no requirement in Part B of the IDEA for a State to make written State complaint decisions available to the public. If the State chooses to do so, through such means as posting on its Web site, it must ensure that the confidentiality of any personally identifiable information in the complaint decision is protected from unauthorized disclosure. 34 CFR §§300.622 and 99.30. An SEA also should consult State law for its public records requirements.

**Question B-34:**    When did the Department remove the Secretarial review provision from the Part B regulations? Is an SEA required to develop a process to replace Secretarial review?

**Answer:**    The prior regulation in 34 CFR §300.661(d), permitting Secretarial review of State complaints filed under 34 CFR §§300.660-300.662 (the predecessor to 34 CFR §§300.151-300.153), was removed when the 1999 final Part B

Questions and Answers on IDEA Part B Dispute Resolution Procedures

regulations were published, and took effect on May 11, 1999. Under the prior regulation, an organization or individual who was dissatisfied with the State's complaint resolution had the option of requesting that the Office of Special Education and Rehabilitative Services review the SEA's final decision. The decision whether to grant Secretarial review was discretionary and most requests for Secretarial review were denied because the Department was not in the position to evaluate factual disputes in individual cases. 64 FR 12646 (March 12, 1999). The regulations do not require a State to establish a procedure to replace Secretarial review.

---

Key regulatory references related to the State complaint process, as cited above, can be found at http://idea.ed.gov/explore/home, and include the following:

- 34 CFR §300.149
- 34 CFR §§300.151-300.153
- 34 CFR §300.199
- 34 CFR §§300.506-300.516
- 34 CFR §§300.530-300.532
- 34 CFR §300.537
- 34 CFR §300.600
- 34 CFR §§300.611-300.626

Questions and Answers on IDEA Part B Dispute Resolution Procedures

## C.    *Due Process Complaints and Due Process Hearing Procedures*

**Authority:**         The requirements for due process complaints and due process hearings are found in the regulations at 34 CFR §§300.507-300.516.

---

**Question C-1:**    Why does the IDEA require that a party file a due process complaint in order to request a due process hearing?

**Answer:**         The IDEA Amendments of 2004 made significant changes to IDEA's due process procedures, and parties no longer have the right to request a due process hearing directly.  Rather, in order to request a due process hearing under the IDEA, a party (a parent[21] or a public agency[22]) or the attorney representing the party, first must file a due process complaint consistent with 34 CFR §§300.507 and 300.508.  When a parent or a parent's attorney files a due process complaint, the IDEA provides for a 30-day resolution period, subject to certain adjustments, prior to the initiation of a due process hearing. 34 CFR §300.510.  The purpose of the resolution process[23] is to attempt to achieve a prompt resolution of the parent's due process complaint as early as possible at the local level and to avoid the need for a more costly, adversarial, and time-consuming due process proceeding.  Thus, the IDEA's due process procedures emphasize prompt and early resolution of disputes between parents and public agencies through informal mechanisms at the local level without resorting to the more formal and costly due process hearing procedures and potential for civil litigation.

---

**Question C-2:**    Who may file a due process complaint?

**Answer:**         A parent or a public agency may file a due process complaint to request a due process hearing on any matter relating to the identification, evaluation, or educational placement of a child with a disability or the provision of FAPE to the child.  34 CFR §300.507(a).

---

21 See Footnote 5 in Section A of this Q&A document for the definition of the term "parent" and for information about the transfer of rights accorded to parents under Part B of the IDEA to a student who has reached the age of majority under State law.

22 See Footnote 6 in Section A of this Q&A document for the definition of the term "public agency."

23 For more information on the resolution process, see Section D of this Q&A document.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

**Question C-3:**     What happens after a due process complaint is submitted?

**Answer:**     Under 34 CFR §300.508(a), the party filing the due process complaint, or the attorney representing the party, must forward a copy of the complaint to the other party and to the SEA, and that complaint must remain confidential.  A due process complaint must meet the content requirements in 34 CFR §300.508(b) and therefore, must contain:  the name of the child; the address of the residence of the child; the name of the school the child is attending; in the case of a homeless youth, available contact information for the child and the name of the school the child is attending; a description of the nature of the problem, including relevant facts; and a proposed resolution of the problem to the extent known and available to the party at the time.

The next step in the process is to determine whether the complaint can be deemed sufficient—i.e., whether the due process complaint contains the information outlined above.  Section 300.508(d)(1) provides that the due process complaint must be deemed sufficient, unless the receiving party notifies the other party and the hearing officer in writing, within 15 days of receiving the complaint, that the receiving party believes the complaint does not meet the content requirements in 34 CFR §300.508(b).  Under 34 CFR §300.508(d)(2), the hearing officer has five days to make a determination on the sufficiency of the complaint (i.e., whether the due process complaint meets the applicable content requirements).  This determination is made based on the hearing officer's review of the complaint alone.  The hearing officer must immediately notify both parties in writing of the determination of whether the due process complaint meets the content requirements in 34 CFR §300.508(b).  If the hearing officer determines that the due process complaint notice is not sufficient, the hearing officer's decision must identify how the notice is insufficient so that the filing party can amend the due process complaint, if appropriate.  71 FR 46698 (August 14, 2006).

In addition, with the one exception described below, the party receiving a due process complaint must send the other party a response, which specifically addresses the issues raised in the due process complaint, within 10 days of receiving notice of the complaint from the other party.  The one exception is if the LEA receiving the due process complaint has not sent the parent a prior written notice consistent with 34 CFR §300.503, concerning the subject matter of the parent's due process complaint.  If the LEA has not done so before the parent's due process complaint has been filed, the LEA must send the parent a prior written notice, consistent with 34 CFR §300.503, which explains, among other matters, why the LEA proposed or refused to take the action raised in the due process complaint.

Prior to the initiation of a due process hearing, within 15 days of receiving notice of the parent's due process complaint, the LEA must convene a resolution meeting with the parent and the relevant member or members of the

Questions and Answers on IDEA Part B Dispute Resolution Procedures

IEP Team to discuss the issues in the parent's due process complaint, unless the parent and the LEA agree in writing to waive the meeting or the parties agree to use mediation under 34 CFR §300.506.24  If the LEA has not resolved the due process complaint to the satisfaction of the parent within 30 days of the receipt of the due process complaint, the due process hearing may occur.  34 CFR §300.510(b)(1).

**Question C-4:**    What happens if a hearing officer determines that a due process complaint is insufficient?

**Answer:**    As explained in the *Analysis of Comments and Changes* to the final Part B regulations:

> If the hearing officer determines the notice [due process complaint] is not sufficient, the hearing officer's decision will identify how the notice is insufficient, so that the filing party can amend the notice, if appropriate.  71 FR 46698 (August 14, 2006).

A party may amend its due process complaint only if the other party consents in writing to the amendment and is given the opportunity to resolve the due process complaint through a meeting held pursuant to 34 CFR §300.510 (opportunity for a resolution meeting or, the parent and the LEA agree in writing to waive the meeting, or if the parties agree to use the mediation process in §300.506); or the hearing officer grants permission to amend the complaint at any time not later than five days before the due process hearing begins.  34 CFR §300.508(d)(3)(ii).  If a party files an amended due process complaint, the timelines for the resolution meeting and resolution period begin again with the filing of the amended due process complaint. 34 CFR §300.508(d)(4).  If the hearing officer determines that the complaint is insufficient and the complaint is not amended, the complaint may be dismissed.  71 FR 46698 (August 14, 2006).

In general, a party may refile a due process complaint if the complaint remains within the applicable timeline for filing, whether the IDEA timeline or the State-established timeline, under 34 CFR §§300.507(a)(2) and 300.511(f).

**Question C-5:**    What is the timeline for filing a due process complaint?

**Answer:**    The due process complaint must allege a violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the due process

---

24 For more information on mediation, see Section A of this Q&A document.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

complaint, or, if the State has an explicit time limitation for filing a due process complaint under 34 CFR part 300, in the time allowed by that State law.  34 CFR §300.507(a)(2).  The applicable timelines described above do not apply to a parent if the parent was prevented from filing a due process complaint due to:  (1) specific misrepresentations by the LEA that it had resolved the problem forming the basis of the due process complaint; or (2) the LEA's withholding of information from the parent it was required under part 300 to provide to the parent.  34 CFR §300.511(f).  There is nothing in the IDEA or the Part B regulations that would preclude a State from having a time limit for filing a due process complaint that is shorter or longer than two years.  71 FR 46697 (August 14, 2006).  The time limitation for filing a due process complaint used by the State, whether the IDEA timeline or the State-established timeline, must be included in the notice of procedural safeguards that must be given to parents one time a year and upon receipt of the first due process complaint under 34 CFR §300.507 in a school year.
34 CFR §§300.504(a)(2) and 300.504(c)(5)(i).

---

**Question C-6:**    May States establish procedures permitting a due process complaint to be filed electronically?

**Answer:**    Yes.  Under 34 CFR §300.508(a)(1), the public agency must have procedures that require the party or the attorney representing the party to provide to the other party a due process complaint (which must remain confidential).  The party filing the due process complaint must forward a copy of the complaint to the SEA, and the complaint must include specific content as described in Question C-3.  34 CFR §300.508(a)(2) and (b).  So long as these requirements are met, there is nothing in the Part B regulations that would prohibit a State from accepting due process complaints that are filed electronically.  Because the IDEA does not prohibit this practice, States considering accepting, or choosing to accept, electronic filings of due process complaints would need to ensure that there are appropriate safeguards to protect the integrity of the process.  Compare, 71 FR 46629 (August 14, 2006) (regarding whether States can accept electronic parental consent).

In developing the appropriate safeguards, States also should consider that the Department has addressed criteria for accepting electronic signatures to satisfy the signed, written consent requirements in the FERPA regulations in 34 CFR part 99.  Under 34 CFR §99.30(d), "signed and dated written consent" may include a record and signature in electronic form that identifies and authenticates a particular person as the source of the consent and indicates such person's approval of the information contained in the electronic consent.

Applying these criteria to electronic due process complaint submissions, it would be reasonable for States that either are considering accepting, or have chosen to accept, electronic filings of due process complaints to ensure that their process includes safeguards sufficient to identify or authenticate the party filing the complaint and indicate that the party approves of the

Questions and Answers on IDEA Part B Dispute Resolution Procedures

information in the due process complaint. In other words, these safeguards should be sufficient to ensure that a party filing a due process complaint electronically understands that the complaint has the same effect as if it were filed in writing. States would also need to ensure that the same confidentiality requirements that apply to written due process complaints apply to due process complaints filed electronically. 34 CFR §§300.611-300.626. States that are considering or have chosen to accept due process complaints filed electronically should also consult any relevant State laws governing electronic transactions.

**Question C-7:**    Must States have procedures for tracking when due process complaints are received, including due process complaints filed electronically if a State accepts due process complaints filed electronically?

**Answer:**    Yes. States must have procedures, which may be determined by State law, to determine when due process complaints are received, whether filed in hard copy or electronically, including mechanisms to ensure the timely resolution of due process complaints in accordance with 34 CFR §300.510 and for the timely resolution of due process hearings in accordance with 34 CFR §300.515. While a State has some discretion in establishing procedures for determining when a due process complaint notice is considered received, the State remains responsible for ensuring that its procedures allow for the timely resolution of due process complaints and due process hearings and are uniformly applied, consistent with 34 CFR §§300.510 and 300.515. For example, if a due process complaint notice is filed electronically on a day that is not considered a business day (e.g., the weekend), the State could consider the due process complaint notice received on the date the due process complaint notice is filed or on the next business day.

Under 34 CFR §300.504(c)(5), the State must include an explanation of the State's due process complaint procedures in the notice of procedural safeguards, which must be given to parents one time a year and upon receipt of the first due process complaint under 34 CFR §300.507 in a school year. Because these procedures must include filing and decisional deadlines, these procedures would need to address the criteria that the State uses for determining when the State considers a due process complaint notice to be received, including due process complaint notices filed electronically, if the State permits due process complaints to be filed electronically.

**Question C-8:**    Are there any mechanisms that an SEA must provide to assist parents and public agencies in filing a due process complaint?

**Answer:**    Under 34 CFR §300.509, each SEA must develop model forms to assist parents and public agencies in filing a due process complaint; however, the SEA or LEA may not require the use of the model forms. Parents and public

Questions and Answers on IDEA Part B Dispute Resolution Procedures

agencies may use the appropriate model form, or another form or document, so long as the form or document that is used meets the content requirements in 34 CFR §300.508(b) for filing a due process complaint.  If the SEA's model form includes content not required by 34 CFR §300.508(b), the form must identify that content and specify that it is optional.

---

**Question C-9:**    May a parent file a due process complaint because his or her child's teacher is not highly qualified?

**Answer:**    No.  The regulations in 34 CFR §300.18(f) state that there is no right of action on behalf of an individual student or class of students for the failure of a particular SEA or LEA employee to be highly qualified.  See also 34 CFR §300.156(e).  However, a parent may file a State complaint with the SEA or use the mediation process under 34 CFR §300.506 to resolve issues regarding staff qualifications.  See also Question C-1 in *Questions and Answers on Highly Qualified Teachers Serving Children with Disabilities, dated January 2007* and Question A-6 of this Q&A document.

---

**Question C-10:**    Under what circumstances does the IDEA permit parents of parentally-placed private school children with disabilities to use IDEA's due process procedures?

**Answer:**    The Department provided the following explanation in Question L-1 in *Questions and Answers on Serving Children with Disabilities Placed by Their Parents in Private Schools*, April 2011:

> As provided in 34 CFR §300.140(b), a parent of a child enrolled by that parent in a private school has the right to file a due process complaint regarding the child find requirements in 34 CFR §300.131, including the requirements in 34 CFR §§300.300 through 300.311.  The due process provisions in section 615 of the Act and 34 CFR §§300.504 through 300.519 of the regulations do not apply to issues regarding the provision of services to any particular parentally-placed private school child with disabilities whom an LEA has agreed to serve because there is no individual right to services for such children under the IDEA. 34 CFR §300.140(a).

> However, as described in Question A-7 of this Q&A document, disputes that arise about equitable services are subject to the State complaint procedures in 34 CFR §§300.151-300.153.25  34 CFR §300.140(c)(1).  A parent wishing to

---

25 For more information on State complaint procedures, see Section B of this Q&A document.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

file a complaint alleging that an SEA or LEA has violated the requirements in 34 CFR §§300.132-300.135 and §§300.137-300.144 may file a State complaint with the SEA in accordance with the State complaint procedures in 34 CFR §§300.151-300.153.

In addition, under 34 CFR §300.148 and Supreme Court case law, where FAPE is at issue, parents of a parentally-placed private school child with a disability may utilize the due process procedures, including mediation, if seeking reimbursement for the private school placement based on a denial of FAPE.

---

**Question C-11:**    Under what circumstances may a public agency use IDEA's due process procedures to override a parent's refusal to consent?

**Answer:**    A public agency may use the due process procedures to override a parent's refusal to consent or failure to respond to a request to provide consent only for initial evaluations and reevaluations of children enrolled, or seeking to be enrolled, in public schools.  If a parent of a child enrolled in public school, or seeking to be enrolled in public school, does not provide consent for an initial evaluation, or the parent fails to respond to a request to provide consent, the public agency may, but is not required to, pursue the initial evaluation of the child by utilizing the due process procedures in 34 CFR §§300.507-300.516, if appropriate, except to the extent inconsistent with State law relating to such parental consent.  34 CFR §300.300(a)(3)(i).  Also, a public agency may, but is not required to, use the due process procedures to seek to override a parent's refusal to provide consent to a reevaluation, if the parent has enrolled his or her child or is seeking to enroll the child in a public school. 34 CFR §300.300(c)(1)(ii).

However, if a parent of a child who is home schooled or parentally-placed in a private school by the parent at the parent's expense does not provide consent (or fails to respond to a request to provide consent) for the initial evaluation or reevaluation of his or her child, the public agency may not use the due process procedures under 34 CFR §§300.507-300.516 in order to obtain agreement or a ruling that the evaluation or reevaluation may be provided to the child. 34 CFR §300.300(d)(4).

In addition, if a parent fails to respond to a request for, or refuses to consent to, the initial provision of special education and related services to his or her child, the public agency may not use the due process procedures under 34 CFR §§300.507-300.516 in order to obtain agreement or a ruling that the services may be provided to the child.  34 CFR §300.300(b)(3).  Further, if at any time subsequent to the initial provision of special education and related services, a parent revokes consent in writing for the continued provision of special education and related services to his or her child, the public agency may not use the due process procedures under 34 CFR §§300.507-300.516 in

Questions and Answers on IDEA Part B Dispute Resolution Procedures

order to obtain agreement or a ruling that the services may be provided to the child.  34 CFR §300.300(b)(4).

---

**Question C-12:**    If a parent wishes to obtain an independent educational evaluation (IEE) at public expense pursuant to 34 CFR §300.502(b)(1), and the public agency believes that its evaluation is appropriate, must the public agency file a due process complaint to request a due process hearing?

**Answer:**    Yes.  Under 34 CFR §300.502(b)(2), if a parent requests an IEE at public expense, the public agency must, without unnecessary delay, either file a due process complaint to request a hearing to show that its evaluation is appropriate or ensure that an IEE is provided at public expense, unless the agency demonstrates in a hearing pursuant to 34 CFR §§300.507-300.513 that the evaluation obtained by the parent did not meet agency criteria.  If the public agency files a due process complaint to request a hearing and the final decision is that the agency's evaluation is appropriate, the parent still has the right to an IEE, but not at public expense.  Once a final decision is rendered, a parent aggrieved by that decision would have the right to appeal that decision to the SEA pursuant to 34 CFR §300.514, if applicable, or to bring a civil action in an appropriate State or Federal court pursuant to 34 CFR §300.516.

---

**Question C-13:**    If both parents have legal authority to make educational decisions for their child and one parent revokes consent for the provision of special education and related services pursuant to 34 CFR §300.9(c), may the other parent file a due process complaint to override the revocation of consent?

**Answer:**    No.  As long as the parent has legal authority pursuant to applicable State law or a court order to make educational decisions for the child, the public agency must accept either parent's revocation of consent under 34 CFR §300.300(b)(4).  A parent who disagrees with the other parent's revocation of consent does not have the right to use the due process procedures to override the other parent's revocation of consent for their child's continued receipt of special education and related services.  The IDEA does not address this issue as State law governs the resolution of disagreements between parents.  However, the public agency may, based on State or local law, provide or refer parents to alternative dispute resolution systems to attempt to resolve their disagreements.

---

**Question C-14:**    Does the IDEA address where due process hearings and reviews are held?
**Answer:**    The Part B regulations require that each hearing and each review involving oral arguments must be conducted at a time and place that is reasonably convenient to the parents and child involved.  34 CFR §300.515(d).  OSEP believes that it is important for public agencies to be flexible in scheduling due process hearings to enable parents to participate.  While a public agency

Questions and Answers on IDEA Part B Dispute Resolution Procedures

must make a good faith effort to accommodate the parent's scheduling request, consistent with 34 CFR §300.515(d), public agencies are not precluded from also considering their own scheduling needs when accommodating the parent's request and in setting a time and place for conducting the due process hearing and/or review.

**Question C-15:**    What requirements apply to the qualifications and impartiality of hearing officers?

**Answer:**    The Part B regulations are designed to ensure the independence of hearing officers, while maintaining minimum qualifications.  Under 34 CFR §300.511(c), a hearing officer must not be:  (1) an employee of the SEA or the LEA that is involved in the education or care of the child; or (2) a person having a personal or professional interest that conflicts with the person's objectivity in the hearing.  This provision addresses independence.

Under 34 CFR §300.511(c)(1)(ii)-(iv), a hearing officer also must:  (1) possess knowledge of, and the ability to understand, the provisions of the IDEA, Federal and State regulations pertaining to the IDEA, and legal interpretations of the IDEA by Federal and State courts; (2) possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice; and (3) possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice. This provision addresses minimum qualifications for impartial hearing officers.

Also, 34 CFR §300.511(c)(2) provides that a person who otherwise qualifies to conduct a hearing under 34 CFR §300.511(c)(1) is not an employee of the agency solely because he or she is paid by the agency to serve as a hearing officer.  This provision clarifies that hearing officers may be reimbursed for serving as hearing officers without compromising their impartiality.  71 FR 46705 (August 14, 2006).

**Question C-16:**    Does the SEA have the authority to determine whether a due process complaint constitutes a new issue compared to a previously adjudicated due process complaint between the same parties?

**Answer:**    No.  The *Analysis of Comments and Changes* accompanying the 1999 final Part B regulations reflects the Department's long-standing position that this matter is an issue for the hearing officer to decide and is not a decision that can be made by the public agency, including an LEA or an SEA.  Therefore, a public agency does not have the authority to deny a parent's due process complaint requesting a due process hearing on the basis that it believes the parent's issues are not new.  Rather, IDEA leaves these determinations to a hearing officer.  64 FR 12613 (March 12, 1999).

Questions and Answers on IDEA Part B Dispute Resolution Procedures

---

**Question C-17:** May State law authorize the SEA to unilaterally dismiss or otherwise limit the issues that can be the subject of a party's due process complaint?

**Answer:** No. Under the IDEA, hearing officers have complete authority to determine the sufficiency of all due process complaints filed and to determine jurisdiction of issues raised in due process complaints consistent with 34 CFR §§300.508(d) and 300.513.

---

**Question C-18:** Do hearing officers have jurisdiction over issues raised by either party during the prehearing or hearing which were not raised in the due process complaint?

**Answer:** Pursuant to 34 CFR §300.511(d), the party requesting the due process hearing may not raise issues at the due process hearing that were not raised in the due process complaint filed under 34 CFR §300.508(b), unless the other party agrees. The IDEA does not address whether the non-complaining party may raise other issues at the hearing that were not raised in the due process complaint. Therefore, the decision as to whether such matters can be raised at the hearing should be left to the discretion of the hearing officer in light of the particular facts and circumstances of the case. 71 FR 46706 (August 14, 2006).

---

**Question C-19:** Do hearing officers have the authority to raise and address issues of noncompliance that were not raised by the parties?

**Answer:** The IDEA does not address whether hearing officers may raise and resolve issues of noncompliance if the party requesting the hearing does not raise the issues. Such decisions are best left to States and are generally addressed in their procedures for conducting due process hearings. 71 FR 46706 (August 14, 2006).

---

**Question C-20:** Under what circumstances may a State prohibit hearing officers from reviewing the appropriateness, and ordering the implementation of, settlement agreements reached under the IDEA?

**Answer:** The IDEA provides that agreements reached through the mediation or resolution processes may be enforced in an appropriate State or Federal court, or by the SEA if applicable. 34 CFR §§300.506(b)(7), 300.510(d)(2), and 300.537. Neither the IDEA nor the Part B regulations specifically address the authority of hearing officers to review or approve these settlement agreements. Also, the IDEA does not specifically address enforcement by hearing officers of settlement agreements reached by the parties outside of the IDEA's mediation and resolution processes. Therefore, in the absence of controlling case law, a State may have uniform rules relating to a hearing

Questions and Answers on IDEA Part B Dispute Resolution Procedures

officer's authority or lack of authority to review and/or enforce settlement agreements reached outside of the IDEA's mediation and/or resolution processes. However, such rules must have general application and may not be limited to proceedings involving children with disabilities and their parents.

---

**Question C-21:**  Once the 30-day resolution period or adjusted resolution period expires, what is the timeline for issuing a final hearing decision?

**Answer:**  The public agency conducting the due process hearing (either the SEA or the public agency directly responsible for the education of the child) must ensure that not later than 45 days after the expiration of the 30-day resolution period described in 34 CFR §300.510(b) or the adjustments to the time period permitted in 34 CFR §300.510(c), a final decision is reached in the due process hearing and a copy of the decision is mailed to each of the parties. The SEA is responsible for monitoring compliance with this timeline, subject to any allowable extensions described in Question C-22. 34 CFR §§300.149 and 300.600.

---

**Question C-22:**  When would it be permissible for a hearing officer to extend the 45-day timeline for issuing a final decision in a due process hearing on a due process complaint or for a reviewing officer to extend the 30-day timeline for issuing a final decision in an appeal to the SEA, if applicable?

**Answer:**  The timelines for due process hearings and reviews described in 34 CFR §300.515(a) and (b) may only be extended if a hearing officer or reviewing officer exercises the authority to grant a specific extension of time at the request of a party to the hearing or review. 34 CFR §300.515(c).

A hearing officer may not unilaterally extend the 45-day due process hearing timeline. Also, a hearing officer may not extend the hearing decision timeline for an unspecified time period, even if a party to the hearing requests an extension but does not specify a time period for the extension. Likewise, a reviewing officer may not unilaterally extend the 30-day timeline for reviewing the hearing decision. In addition, a reviewing officer may not extend the review decision timeline for an unspecified time period, even if a party to the review requests an extension but does not specify a time period for the extension.

---

**Question C-23:**  If an SEA contracts with another agency to conduct due process hearings on its behalf, can those decisions be appealed to the SEA?

**Answer:**  No. In a one-tier system, the SEA conducts due process hearings. In a two-tier system, the public agency directly responsible for the education of the child conducts due process hearings. The determination of which entity conducts due process hearings is based on State statute, State regulation, or a written policy of the SEA. 34 CFR §300.511(b). In a one-tier system, a party

aggrieved by the SEA's findings and decision has the right to appeal by bringing a civil action in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. 34 CFR §300.516(a). In a one-tier system, an aggrieved party has no right of appeal to the SEA. However, in a two-tier system, an aggrieved party has the right to appeal the public agency's decision to the SEA which must conduct an impartial review of the findings and decision appealed. 34 CFR §300.514(b). A party dissatisfied with the decision of the SEA's reviewing official has the right to bring a civil action in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. 34 CFR §§300.514(d) and 300.516(a). There is nothing in the IDEA that would prohibit a State with a one-tier due process system from carrying out its responsibility by retaining impartial hearing officers under contract to conduct the hearings or contracting with another agency that is not a public agency under the IDEA to conduct the hearings. Because the SEA is the entity responsible for conducting the hearing, there is no right of appeal to the SEA.

---

**Question C-24:**    Does a parent have the right to receive a hearing record at no cost, even though the applicable time period to appeal the hearing decision has expired?

**Answer:**    Yes. The IDEA provides specific rights to a party to a due process hearing conducted pursuant to 34 CFR §§300.507-300.513, or a party appealing the due process hearing decision to the SEA pursuant to 34 CFR §300.514(b), if applicable, or a party to an expedited due process hearing conducted pursuant to 34 CFR §300.532. A party to these proceedings has the right to obtain a written, or, at the option of the parents, an electronic, verbatim record of the hearing. A party to these proceedings also has the right to obtain a written, or, at the option of the parents, electronic findings of fact and decisions. 34 CFR §300.512(a)(4) and (5). Parents must be given the right to have the record of the hearing and the findings of fact and decisions provided at no cost. 34 CFR §300.512(c)(3).

The IDEA and the Part B regulations do not establish a time period within which a parent must request a record of the hearing or the findings of fact and decisions; nor do they otherwise limit the time period of a parent's right to receive the hearing record and findings of fact and decisions at no cost. We also note that in very limited circumstances, judicial principles of fairness may allow a reviewing officer or court to waive the timeline for a specific appeal. Moreover, the information contained in a hearing record or in the findings of fact and decisions could be used for purposes other than appealing a due process hearing decision. There could be situations where a parent would need the information contained in the hearing record or decision for an IEP Team meeting or for mediation or in a subsequent State complaint or due process complaint.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

In addition, States and their public agencies are required to retain records to show compliance with programmatic requirements for a three-year period.  If any litigation involving the records has been started before the expiration of the three-year period, the records must be retained until completion of the action and resolution of all issues which arise from it, or until the end of the regular three-year period, whichever is later.  34 CFR §§76.731 and 80.42(b).

---

**Question C-25:**  Are "motions for reconsideration" permitted after a hearing officer has issued findings of fact and a decision in a due process hearing?

**Answer:**  As explained in Question C-23, in a one-tier system where the due process hearing is conducted by the SEA, or its agent, a party does not have the right to appeal a decision to the SEA or make a motion for reconsideration.  Under 34 CFR §300.514(a), a decision made in a due process hearing conducted by the SEA is final, except that a party aggrieved by that decision may appeal the decision by bringing a civil action in any State court of competent jurisdiction or in a district court of the United States under 34 CFR §300.516.

Once a final decision has been issued, no motion for reconsideration is permissible.  However, a State can allow motions for reconsideration prior to issuing a final decision, but the final decision must be issued within the 45-day timeline or a properly extended timeline.  For example, motions for reconsideration of interim orders made during the hearing would be permissible as long as the final decision is issued within the 45-day timeline or a properly extended timeline.  Proper notice should be given to parents if State procedures allow for amendments and a reconsideration process may not delay or deny parents' right to a decision within the time periods specified for hearings and appeals.  64 FR 12614 (March 12, 1999).

There may be situations in which the final due process hearing decision contains technical or typographical errors.  It is permissible for a party to request correction of such errors when the correction does not change the outcome of the hearing or substance of the final hearing decision.  This type of request does not constitute a request for reconsideration as discussed within this response.

---

**Question C-26:**  What is the SEA's responsibility after a due process hearing decision is issued?

**Answer:**  Hearing decisions must be implemented within the timeframe prescribed by the hearing officer, or if there is no timeframe prescribed by the hearing officer, within a reasonable timeframe set by the State as required by 34 CFR §§300.511-300.514.  The SEA, pursuant to its general supervisory responsibility under 34 CFR §§300.149 and 300.600, must ensure that the public agency involved in the due process hearing implements the hearing

Questions and Answers on IDEA Part B Dispute Resolution Procedures

officer's decision in a timely manner, unless either party appeals the decision. If necessary to achieve compliance from the LEA, the SEA may use appropriate enforcement actions consistent with its general supervisory responsibility under 34 CFR §§300.600 and 300.608.

**Question C-27:**   Which public agency is responsible for transmitting the findings and decisions in a hearing to the State advisory panel (SAP) and making those findings and decisions available to the public?

**Answer:**   The entity that is responsible for conducting the hearing transmits the findings and decisions to the SAP and makes them available to the public.  In a two-tier system where the hearing is conducted by the public agency directly responsible for the education of the child (i.e., the LEA), that public agency, after deleting any personally identifiable information, must transmit the findings and decisions in the hearing to the SAP and make those findings and decisions available to the public.  In a one-tier system where the hearing is conducted by the SEA, the SEA must first delete any personally identifiable information and then transmit the findings and decisions in the hearing to the SAP and make those findings and decisions available to the public. 34 CFR §300.513(d).  If a State has a two-tier due process system and the decision is appealed, the SEA, after deleting any personally identifiable information, must transmit the findings and decisions in the review to the SAP and make those findings and decisions available to the public. 34 CFR §300.514(c).  In carrying out these responsibilities, SEAs and LEAs must comply with the confidentiality of information provisions in 34 CFR §§300.611-300.626.  34 CFR §300.610.

OSEP has advised that in a one-tier due process system, the SEA may meet these requirements by means such as posting the redacted decisions on its Web site or another Web site location dedicated for this purpose and directing SAP members or members of the public to that information.

Key regulatory references related to due process complaints and due process hearings, as cited above, can be found at http://idea.ed.gov/explore/home, and include the following:

- 34 CFR §300.140
- 34 CFR §300.149
- 34 CFR §300.167
- 34 CFR §§300.507-300.516
- 34 CFR §300.520
- 34 CFR §300.600
- 34 CFR §§300.611-300.626

The Q&A documents cited in this section can be found at:

Questions and Answers on IDEA Part B Dispute Resolution Procedures

- *Questions and Answers on Highly Qualified Teachers Serving Children with Disabilities*, January 2007:
  http://idea.ed.gov/explore/view/p/%2Croot%2Cdynamic%2CQaCorner%2C2%2C

- *Questions and Answers on Serving Children with Disabilities Placed by Their Parents in Private Schools*, April 2011:
  http://idea.ed.gov/explore/view/p/%2Croot%2Cdynamic%2CQaCorner%2C1%2C

Questions and Answers on IDEA Part B Dispute Resolution Procedures

# D.    *Resolution Process*

**Authority:**        The requirements for the resolution process are found in the regulations at
                      34 CFR §300.510.

---

**Question D-1:**      What is the purpose of the resolution meeting?
**Answer:**            The purpose of the resolution meeting is to achieve a prompt and early
                       resolution of a parent's[26] due process complaint to avoid the need for a more
                       costly, adversarial, and time-consuming due process hearing and the potential
                       for civil litigation.  Section 300.510(a)(1) of the Part B regulations, consistent
                       with section 615(f)(1)(B)(i) of the IDEA, provides that within 15 days of
                       receiving notice of the parent's due process complaint, and prior to the
                       initiation of an impartial due process hearing under 34 CFR §300.511, the
                       LEA must convene a meeting with the parent and the relevant members of the
                       IEP Team who have specific knowledge of the facts identified in the due
                       process complaint.[27]  The two exceptions to this requirement are described in
                       Question D-6.  In the *Analysis of Comments and Changes* accompanying the
                       August, 2006 final Part B regulations, the Department described the purpose
                       of a resolution meeting as follows:

> The purpose of the [resolution] meeting is for the parent to discuss
> the due process complaint and the facts that form the basis of the
> due process complaint so that the LEA has an opportunity to
> resolve the dispute.  71 FR 46700 (August 14, 2006).

                       If the LEA has not resolved the due process complaint to the satisfaction of
                       the parent within 30 days of the receipt of the due process complaint, the due
                       process hearing may occur.  34 CFR §300.510(b)(1).

---

**Question D-2:**      Why is a resolution meeting not required when an LEA files a due process
                       complaint?

**Answer:**            The IDEA requires an LEA to convene a resolution meeting only if the parent
                       is the complaining party.[28]  Section 615(f)(1)(B)(i) of the IDEA is clear that
                       the LEA's obligation to convene a resolution meeting prior to the initiation of

---

26 See Footnote 5 in Section A of this Q&A document for the definition of the term "parent" and for information
about the transfer of rights accorded to parents under Part B of the IDEA to a student who has reached the age of
majority under State law.

27 For expedited due process complaints, the resolution meeting must occur within seven days of receiving notice of
the parent's due process complaint.  34 CFR §300.532(c)(3).  The resolution process requirements for expedited
due process complaints are described in more detail in Section E of this Q&A document.

28 It should be noted, however, that one way for an LEA to amend a due process complaint that is not sufficient, is
for the parent to agree in writing and be given an opportunity to resolve the LEA's due process complaint through
a resolution meeting.  34 CFR §300.508(d)(3)(i).

Questions and Answers on IDEA Part B Dispute Resolution Procedures

a due process hearing is triggered within 15 days of receiving notice of a parent's due process complaint, and the implementing regulation in 34 CFR §300.510(a) reflects this statutory provision. As explained in Note 212 of Conf. Rpt. (Conference Report) No. 108-779, p. 217 (2004), "[b]oth the House Bill and Senate amendment require the LEA and parent of a child with a disability to meet within 15 days of a parent's complaint being filed to attempt to resolve the complaint." Thus, as also explained in the *Analysis of Comments and Changes* accompanying the Part B regulations, "[t]here is no provision requiring a resolution meeting when an LEA is the complaining party. The Department's experience has shown that LEAs rarely initiate due process proceedings." 71 FR 46700 (August 14, 2006). Therefore, we expect that LEAs will attempt to resolve disputes with parents prior to filing a due process complaint. This includes communicating with a parent about the disagreement and convening an IEP Team meeting, as appropriate, to discuss the matter and attempt to reach a solution. The LEA and parent may also choose to voluntarily engage in the mediation process described in 34 CFR §300.506 or another appropriate alternative dispute resolution mechanism available in the State to resolve the issue.

Because there is no requirement to convene a resolution meeting when an LEA files a due process complaint, the 45-day timeline for issuing a final decision in a due process hearing begins the day after the LEA's due process complaint is received by the other party and the SEA.

---

**Question D-3:**    Does the parent still have the right to challenge the sufficiency of the due process complaint when an LEA files a due process complaint? Must the parent respond to the LEA's due process complaint?

**Answer:**    A parent's rights and obligations are not altered even though the resolution process requirements do not apply when an LEA files a due process complaint. The parent still retains the right to challenge the sufficiency of the due process complaint within 15 days of receipt of the complaint, consistent with 34 CFR §300.508(d). It should be noted that one way for an LEA to amend a due process complaint that is not sufficient is for the parent to agree

Questions and Answers on IDEA Part B Dispute Resolution Procedures

in writing and be given an opportunity to resolve the LEA's due process complaint through a resolution meeting. 34 CFR §300.508(d)(3)(i). Also, the parent must send a response to the LEA that addresses the issues raised in the due process complaint within 10 days of receiving the complaint. 34 CFR §300.508(f).

---

**Question D-4:**    If a due process complaint is amended and the 15-day timeline to conduct a resolution meeting starts over, must the LEA conduct another resolution meeting?

**Answer:**    Yes. Under 34 CFR §300.508(d)(3), a party may amend its due process complaint subject to the following conditions. The other party must consent in writing to the amendment and be given the opportunity to resolve the complaint through a meeting held pursuant to 34 CFR §300.510. Alternatively, the hearing officer may grant permission to amend the complaint at any time not later than five days before the due process hearing begins. This process is intended to ensure that the parties involved understand the nature of the complaint before the due process hearing begins. 71 FR 46698 (August 14, 2006).

Under 34 CFR §300.508(d)(4), when a due process complaint is amended, the timeline for the resolution meeting and the time period for resolving the complaint begin again with the filing of the amended due process complaint. 71 FR 46698 (August 14, 2006).

---

**Question D-5:**    If a parent files a due process complaint with the LEA or public agency but does not forward a copy of the due process complaint to the SEA, when does the timeline for convening a resolution meeting begin?

**Answer:**    The Part B regulations do not address this specific question. In establishing procedures for administering the due process complaint system, States should address how a parent's failure to provide the required copy of the due process complaint to the LEA or public agency and SEA will affect the resolution process and due process hearing timelines. However, such procedures must be consistent with the due process requirements of Part B of the IDEA.

For example, a State could require that the LEA advise the parent in writing that the timeline for starting the resolution process will not begin until the parent provides the SEA with a copy of the due process complaint as required by the regulations. As an additional protection for parents, consistent with 34 CFR §300.199, we encourage States to adopt procedures that ensure the LEA or public agency provides a copy of the due process complaint to the SEA and proceeds with the established timelines.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

---

**Question D-6:**     Are there circumstances in which an LEA would not be required to convene a resolution meeting when it receives notice of a parent's due process complaint?

**Answer:**     Yes.  Under 34 CFR §300.510(a)(3), there are two occasions when a resolution meeting need not occur:  (1) when the parent and LEA agree in writing to waive the meeting; and (2) when the parent and LEA agree to use the mediation process described in 34 CFR §300.506 to resolve the due process complaint.  There are no provisions in the IDEA that allow a parent or an LEA to unilaterally waive the resolution meeting, because the resolution meeting is "a required vehicle for the parent and the LEA to attempt to resolve their differences prior to initiating a due process hearing."  71 FR 46702 (August 14, 2006).  Likewise, an agreement to use another alternative dispute resolution mechanism if available in the State, by itself, would not relieve the LEA of its obligation to convene a resolution meeting.

---

**Question D-7:**     Does the timeline for a due process hearing decision always begin after the 30-day resolution period?

**Answer:**     No.  The Part B regulations allow adjustments to the 30-day resolution period.  These adjustments may result in a shorter or longer period to resolve the due process complaint and affect when the timeline for a due process hearing decision begins.

If the LEA has not resolved the due process complaint to the satisfaction of the parent within 30 days of the receipt of the due process complaint, the due process hearing may occur.  34 CFR §300.510(b)(1).  However, under 34 CFR §300.510(c), there are three circumstances which permit the resolution period to be made shorter than 30 days or longer than 30 days.  Note that the 45-day due process hearing timeline in 34 CFR §300.515(a) starts the day after one of the following events:  (1) both parties agree in writing to waive the resolution meeting; (2) after either the mediation or resolution meeting starts but before the end of the 30-day resolution period, the parties agree in writing that no agreement is possible; or (3) if both parties agree in writing to continue the mediation at the end of the 30-day resolution period, but later, the parent or public agency withdraws from the mediation process.

In addition, as set out in Question D-13, a hearing officer may begin the timeline for a due process hearing decision after receiving a parent's request to begin that timeline, under 34 CFR §300.510(b)(5), based on the LEA's failure to hold the resolution meeting within 15 days of receiving notice of a parent's due process complaint or failure to participate in the resolution meeting.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

Further, except where the parties jointly agree to waive the resolution process or use mediation, the failure of the parent filing a due process complaint to participate in the resolution meeting will delay the timelines for the resolution process and due process hearing until the resolution meeting is held. 34 CFR §300.510(b)(3). As explained in Question D-13, an LEA may request a hearing officer to dismiss a complaint when the LEA has been unable to obtain the participation of the parent in a resolution meeting despite making reasonable efforts to do so. 34 CFR §300.510(b)(4).

---

**Question D-8:** Which individuals participate in the resolution meeting?

**Answer:** Under 34 CFR §300.510(a)(4), the parent and the LEA determine the relevant members of the IEP Team to attend the resolution meeting. The LEA must convene a resolution meeting with the parent and relevant member(s) of the IEP Team who have specific knowledge of the facts identified in the parent's due process complaint. The resolution meeting must include a representative of the public agency who has decision-making authority on behalf of that agency. An attorney of the LEA may not attend the resolution meeting unless the parent is accompanied by an attorney. 34 CFR §300.510(a)(1). This is true even if a non-attorney advocate attends the meeting on behalf of the parent. We encourage LEAs and parents to cooperate in determining who will attend the resolution meeting, because a resolution meeting is unlikely to result in any resolution of the dispute if the parties cannot agree on who should attend. 71 FR 46701 (August 14, 2006).

---

**Question D-9:** May the LEA bring its attorney to a resolution meeting when the parent is accompanied by a non-attorney or qualified representative or advocate with the authority under State law to represent the parent at a due process hearing?

**Answer:** No. Under 34 CFR §300.510(a)(1)(ii), an LEA's attorney may not participate in the resolution meeting unless the parent is accompanied by an attorney. Therefore, the attendance of an LEA's attorney is expressly limited to instances where the parent brings an attorney, not a non-attorney advocate or other qualified individual, to the resolution meeting. While the IDEA states that parties to a due process hearing may be accompanied and advised by non-attorneys, the issue of whether non-attorneys may "represent" parties to a due process hearing is a matter that is left to each State to decide. 34 CFR §300.512(a)(1) and 73 FR 73006, 73017, and 73027 (Dec. 1, 2008).

---

**Question D-10:** Must an LEA include the days when schools are closed due to scheduled breaks and holidays in calculating the timeline for convening a resolution meeting?

**Answer:** Yes. Even during periods when school is closed, the LEA must hold the resolution meeting within 15 days of receiving notice of the parent's due

Questions and Answers on IDEA Part B Dispute Resolution Procedures

process complaint. 34 CFR §300.510(a). The only exceptions to this requirement are if the parent and the LEA agree in writing to waive the resolution meeting, or the parent and the LEA agree to use mediation under 34 CFR §300.506.

Under 34 CFR §300.11(a), "[d]ay means calendar day unless otherwise indicated as business day or school day." Therefore, the SEA or LEA may not suspend the 15-day timeline for convening a resolution meeting while schools are closed for breaks or holidays. Such a delay would be inconsistent with the 15-day timeline for convening the resolution meeting and the 30-day resolution period described in 34 CFR §300.510, and also would delay the initiation of the 45-day timeline for issuing a final decision in a due process hearing under 34 CFR §300.515(a). 71 FR 46704 (August 14, 2006).

---

**Question D-11:** What is an LEA's responsibility to convene a resolution meeting when the parent cannot attend within the 15-day timeline?

**Answer:** The LEA must attempt to schedule an in person meeting with the parent within 15 days of receiving the parent's due process complaint. If the LEA notifies the parent of its intent to schedule a resolution meeting within the 15-day timeline and the parent informs the LEA in advance of the meeting that circumstances prevent the parent from attending the meeting in person, it would be appropriate for an LEA to offer to use alternative means to ensure parent participation, such as video conferences or conference telephone calls, subject to the parent's agreement. 71 FR 46701 (August 14, 2006). Whether the meeting is conducted in person or by alternative means, the LEA must include the required participants and be prepared to discuss with the parent the facts that form the basis of the due process complaint and any possible resolution of the complaint.

---

**Question D-12:** Must the LEA continue its attempts to convince a parent to participate in a resolution meeting throughout the 30-day resolution period?

**Answer:** Yes. If a parent fails or refuses to participate in a resolution meeting that the LEA attempts to convene within 15 days of receiving notice of the parent's due process complaint, an LEA must continue to make diligent efforts throughout the remainder of the 30-day resolution period to convince the parent to participate in a resolution meeting. At the conclusion of the 30-day resolution period, an LEA may request that a hearing officer dismiss the complaint when the LEA is unable to obtain the participation of a parent in a resolution meeting, despite making reasonable efforts to obtain the parent's participation and documenting its efforts, using the procedures in 34 CFR §300.322(d). 71 FR 46702 (August 14, 2006).

Questions and Answers on IDEA Part B Dispute Resolution Procedures

Examples of appropriate efforts LEAs can make to obtain the participation of the parent in the resolution meeting include detailed records of telephone calls made or attempted and the results of those calls and copies of correspondence sent to the parents and any responses received.  34 CFR §300.510(b)(4).  In making such efforts, it also would be appropriate for an LEA to inform the parent that the LEA may seek the intervention of a hearing officer to dismiss the parent's due process complaint if the parent does not participate in the resolution meeting.

**Question D-13:**    If a party fails to participate in the resolution meeting, must the other party seek the hearing officer's intervention to address the pending due process hearing on the parent's due process complaint?

**Answer:**    Yes.  The regulations in 34 CFR §300.510(b)(4) provide that an LEA may request a hearing officer to dismiss a complaint when the LEA has been unable to obtain the participation of the parent in a resolution meeting despite making reasonable efforts to do so and documenting those efforts.  Under 34 CFR §300.510(b)(5), if an LEA fails to hold a resolution meeting within the required timelines or fails to participate in a resolution meeting, the parent may seek the intervention of a hearing officer to begin the due process hearing timeline.  The appropriate party must seek the hearing officer's intervention to either dismiss the complaint or to initiate the hearing timeline, depending on the circumstances.

**Question D-14:**    If a party fails to participate in the resolution meeting, and neither party seeks the hearing officer's intervention to address the pending due process complaint, would the timeline for a due process hearing decision still apply?

**Answer:**    Yes.  If there is no adjustment to the 30-day resolution period timeline as described in Question D-7, and if the LEA or the parent does not seek the hearing officer's intervention as described in Question D-13, regardless of the reasons for the parties' inaction, the 45-day timeline for a due process hearing decision would remain in effect.  34 CFR §§300.510(b)(2) and 300.515(a).

**Question D-15:**    What is the SEA's responsibility for ensuring that LEAs comply with the resolution process requirements?

**Answer:**    As explained in the *Analysis of Comments and Changes,* the Department fully expects that only in very rare situations will an LEA fail to meet its obligation to convene a resolution meeting within 15 days of receiving notice of the parent's due process complaint, delay the due process hearing by scheduling meetings at times or places that are inconvenient for the parent, or otherwise not participate in good faith in the resolution process.  In instances of noncompliance, parents are able to request a hearing officer to allow the due process hearing to proceed.  71 FR 46702 (August 14, 2006).

Questions and Answers on IDEA Part B Dispute Resolution Procedures

In addition, an SEA has an affirmative obligation to ensure its LEAs' compliance with the resolution process timelines, consistent with its general supervisory and monitoring responsibilities. 34 CFR §§300.149 and 300.600(d)(2). The SEA must monitor LEAs located in the State for compliance with the requirements for resolution meetings in 34 CFR §300.510. Accordingly, the State must ensure that its LEAs convene a resolution meeting within 15 days of receiving notice of the parent's due process complaint. If the LEA fails to convene a resolution meeting and the parties have not agreed to use mediation or agreed in writing to waive the meeting, the State must ensure the LEA corrects the noncompliance as soon as possible and in no case more than one year after the State's identification of noncompliance, as required in 34 CFR §300.600(e). If necessary to achieve compliance, the SEA may use appropriate enforcement actions consistent with its general supervisory responsibility under 34 CFR §§300.600 and 300.608 to ensure that the LEA complies.

Also, as part of the State's general supervisory responsibility, the SEA must ensure that due process hearing decision timelines are properly calculated and enforced. Therefore, the SEA must establish a mechanism for tracking the resolution process to determine when the resolution period has concluded and the 45-day due process hearing timeline in 34 CFR §300.515(a) (or the expedited due process hearing timeline in 34 CFR §300.532(c)(2)) begins. The SEA has the flexibility to determine its procedures and the appropriate mechanism for tracking the resolution process, given the State's unique circumstances.

---

**Question D-16:**   May an LEA require a parent to sign a confidentiality agreement as a precondition to conducting a resolution meeting?

**Answer:**   No. An LEA may not require a confidentiality agreement as a precondition to conducting a resolution meeting. The only reasons that an LEA would be excused from the requirement to convene a resolution meeting with the parent within 15 days of receiving notice of the parent's due process complaint are those specified in 34 CFR §300.510(a)(3) and discussed in Question D-6. Neither of these exceptions addresses confidentiality agreements. Nor is there any separate requirement, such as that in 34 CFR §300.506(b)(8) for mediation discussions, requiring parties to resolution meetings to keep the discussions that occur in those meetings confidential. However, as noted in the *Analysis of Comments and Changes*, there is nothing in the IDEA or its implementing regulations that would prohibit the parties to a resolution meeting from entering into a confidentiality agreement as part of their resolution agreement resolving the dispute that gave rise to the parent's complaint. 71 FR 46704 (August 14, 2006).

Questions and Answers on IDEA Part B Dispute Resolution Procedures

---

**Question D-17:**   Are there any provisions in the IDEA that require discussions that occur in resolution meetings to remain confidential?

**Answer:**   In general, the answer is no.  Unlike mediation, IDEA and its implementing regulations do not prohibit or require discussions that occur during a resolution meeting to remain confidential.  However, the confidentiality requirements in section 617(c) of the IDEA and the Part B regulations at 34 CFR §§300.611-300.626 and FERPA and its implementing regulations in 34 CFR part 99 apply.

---

**Question D-18:**   Do the Part B regulations allow information discussed at a resolution meeting to be introduced at a due process hearing or civil proceeding?

**Answer:**   In general, yes.  Unlike mediation, the IDEA and its implementing regulations contain no requirement for discussions in resolution meetings to be kept confidential and not be introduced in a subsequent due process hearing or civil proceeding.  There is nothing in the IDEA or its implementing regulations that would prevent the parties from voluntarily agreeing that the resolution meeting discussions will remain confidential, including prohibiting the introduction of those discussions at any subsequent due process hearing or civil proceeding.  Absent an enforceable agreement by the parties requiring that these discussions remain confidential, either party may introduce information discussed during the resolution meeting at a due process hearing or civil proceeding when presenting evidence and confronting or cross-examining witnesses consistent with 34 CFR §300.512(a)(2).  As noted in Question D-16, neither an SEA nor an LEA may require the parties to enter into such an agreement as a precondition to participation in the resolution meeting.  71 FR 46704 (August 14, 2006).

---

**Question D-19:**   Must a settlement agreement be signed and executed at the resolution meeting, or may a settlement agreement be signed and executed by the parties prior to the conclusion of the 30-day resolution period?

**Answer:**   Pursuant to 34 CFR §300.510(d), if a resolution to the dispute is reached at the resolution meeting, the parties must execute a legally binding agreement.  Either party may void the agreement within three business days of the agreement's execution.  This regulation contemplates that an agreement may not be finalized at the resolution meeting and therefore allows for a 30-day resolution period.  At a time subsequent to the resolution meeting, the parties may have additional discussions and may execute a written settlement agreement within the 30-day resolution period.  Only a legally binding agreement reached during the 30-day period that meets the requirements of 34 CFR §300.510(d) and (e), is considered an agreement under the resolution process requirements.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

---

**Question D-20:**   If the parties reach agreement on all issues in the parent's due process complaint and execute a written settlement agreement, what happens to the due process complaint?

**Answer:**   The Part B regulations do not address the status of the due process complaint or which party is responsible for requesting that the due process complaint be dismissed or withdrawn once a resolution agreement is reached and the three-business-day review period has passed.  Such matters are left to the discretion of the State and the hearing officer.

---

**Question D-21:**   How can written settlement agreements reached through IDEA's resolution process be enforced if a party believes the agreement is not being implemented?

**Answer:**   A written settlement agreement reached through IDEA's resolution process is enforceable in any State court of competent jurisdiction or in a district court of the United States.  34 CFR §300.510(d)(2).  Even though this regulation provides for judicial enforcement of resolution agreements, it also provides an SEA the option of using other mechanisms or procedures that permit parties to seek enforcement of resolution agreements.  However, this can occur only if use of those mechanisms is not mandatory and does not delay or deny a party the right to seek enforcement of the written agreement in an appropriate State or Federal court.  34 CFR §300.537.

---

**Question D-22:**   If an agreement is not reached during the resolution meeting, must mediation continue to be available?

**Answer:**   Yes.  Under 34 CFR §300.506, the public agency must ensure that mediation is available to allow parties to disputes involving any matter under this part, including matters arising prior to the filing of a due process complaint, to resolve disputes through the mediation process described in 34 CFR §300.506.  However, mediation must be voluntary on the part of both parties, and may not be used to deny or delay a parent's right to a due process hearing on a due process complaint.

---

**Question D-23:**   Does the 30-day resolution period apply if the parties elect to use mediation under 34 CFR §300.506 rather than convene a resolution meeting?

**Answer:**   Yes.  If the parties choose to use mediation rather than participate in a resolution meeting, the 30-day resolution period is still applicable.  Under 34 CFR §300.510(c), the resolution period applies to the use of mediation after the filing of a due process complaint requesting a due process hearing.  When the parties engage in mediation, the resolution period may be adjusted

Questions and Answers on IDEA Part B Dispute Resolution Procedures

in accordance with 34 CFR §300.510(c)(2) and (3).  Adjustments to the resolution period when mediation is used are described in Question D-24.

---

**Question D-24:** What is the impact of mediation on the resolution and due process hearing timelines?

**Answer:** If both parties agree to use the mediation process described in 34 CFR §300.506 instead of the resolution process described in 34 CFR §300.510, the resolution meeting does not need to be held but the 30-day resolution period would still apply.  34 CFR §300.510(a)(3)(ii).  If the parties agree in writing to continue the mediation process beyond the end of the 30-day resolution period that began when the due process complaint was received, the 45-day due process hearing timeline does not begin until one of the parties withdraws from the mediation process or the parties agree in writing that no agreement can be reached through mediation. 34 CFR §300.510(c)(2) and (3).

---

**Question D-25:** If the LEA and parents wish to continue the mediation process at the conclusion of the 30-day resolution period must the hearing officer agree to the extension in order for the parties to continue the mediation process?

**Answer:** In general, no.  The regulations contemplate that the parties may agree in writing to continue the mediation at the end of the 30-day resolution period pursuant to 34 CFR §300.510(c)(3).  Therefore, such agreements would not require hearing officer involvement or approval, but notice to the hearing officer of the agreement would be appropriate.

To the extent that the hearing officer already has established a hearing schedule that is inconsistent with the extension agreed to by the parties, either party may request a specific extension of time from the hearing officer. 34 CFR §300.515(c).

---

Key regulatory references related to the resolution process, as cited above, can be found at http://idea.ed.gov/explore/home, and include the following:

- 34 CFR §300.11
- 34 CFR §300.149
- 34 CFR §§300.506-300.516
- 34 CFR §300.537
- 34 CFR §300.600
- 34 CFR §§300.611-300.626

Questions and Answers on IDEA Part B Dispute Resolution Procedures

## E.    *Expedited Due Process Hearings*

**Authority:**       The requirements for expedited due process hearings are found in the regulations at 34 CFR §§300.532-533.

---

**Question E-1:**    What is an expedited due process hearing?

**Answer:**          An expedited due process hearing is a hearing involving a due process complaint regarding a disciplinary matter, which is subject to shorter timelines than a due process hearing conducted pursuant to 34 CFR §§300.507-300.516. Under 34 CFR §300.532(a), a parent[29] of a child with a disability who disagrees with any decision regarding placement under 34 CFR §§300.530 and 300.531, or the manifestation determination under 34 CFR §300.530(e), or an LEA that believes that maintaining the child's placement is substantially likely to result in injury to the child or to others, may appeal the decision by requesting a hearing.  If a parent or LEA files a due process complaint to request a due process hearing under one of these circumstances the SEA or LEA is responsible for arranging an expedited due process hearing, which must occur within 20 school days of the date that the due process complaint requesting the hearing is filed.  The hearing officer must make a determination within 10 school days after the hearing.  34 CFR §300.532(c)(2).  Although this hearing must be conducted on an expedited basis under these shortened timelines, it is an impartial due process hearing subject to the requirements of 34 CFR §§300.507, 300.508(a)-(c), and §§300.510-300.514, except as provided in 34 CFR §300.532(c)(2)-(4), as described in Question E-3. 34 CFR §300.532(c)(1).

The shortened timelines for conducting expedited due process hearings in disciplinary situations should enable hearing officers to make prompt decisions about disciplinary matters while ensuring that all of the due process protections in 34 CFR §§300.510-300.514 are maintained.

Note that when a due process complaint requesting an expedited due process hearing is filed either by the parent or the LEA, the child must remain in the alternative educational setting chosen by the IEP Team pending the hearing officer's decision or until the time period for the disciplinary action expires, whichever occurs first, unless the parent and the public agency agree otherwise.  34 CFR §300.533 and 71 FR 46726 (August 14, 2006).

---

**Question E-2:**    What is the hearing officer's authority in an expedited due process hearing?

---

[29] See Footnote 5 in Section A of this Q&A document for the definition of the term *"parent"* and for information about the transfer of rights accorded to parents under Part B of the IDEA to a student who has reached the age of majority under State law.

Questions and Answers on IDEA Part B Dispute Resolution Procedures

**Answer:**    An impartial hearing officer conducting an expedited due process hearing under 34 CFR §300.511 hears, and makes a determination regarding, the due process complaint.  Under 34 CFR §300.532(b)(2), a hearing officer also has the authority to determine whether the child's removal from his or her placement violated 34 CFR §300.530 (authority of school personnel); whether a child's behavior was a manifestation of his or her disability; and whether maintaining the child's current placement is substantially likely to result in injury to the child or to others.  In determining what is the appropriate relief, if any, the hearing officer may return the child to the placement from which he or she was removed or may order that a child's placement be changed to an appropriate interim alternative educational setting for no more than 45 school days if the hearing officer determines that maintaining the current placement of the child is substantially likely to result in injury to the child or to others.  34 CFR §300.532(b)(2).  These procedures may be repeated if the LEA believes that returning the child to the original placement is substantially likely to result in injury to the child or to others.  34 CFR §300.532(b)(3).  A decision in an expedited due process hearing may be appealed consistent with 34 CFR §§300.514 and 300.516.  34 CFR §300.532(c)(5).  In a one-tier system, where the SEA conducts the expedited due process hearing, a party aggrieved by the findings and decision has the right to appeal by bringing a civil action in a State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.  34 CFR §§300.516(a) and 300.532(c)(5).  In a two-tier system, where the public agency directly responsible for the education of the child conducts the expedited due process hearing, the findings and decision in the hearing can be appealed to the SEA.  34 CFR §300.514(b).  If a party is dissatisfied with the SEA's decision, the party may appeal by bringing a civil action in an appropriate State or Federal court, pursuant to 34 CFR §300.516.  34 CFR §300.514(d).

---

**Question E-3:**    How is the timeline for conducting an expedited due process hearing calculated?  Does this timeline begin after the resolution period?

**Answer:**    The following shortened timelines apply when a due process complaint requesting an expedited due process hearing is filed.  The resolution meeting must occur within seven days of receiving notice of the parent's due process complaint (34 CFR §300.532(c)(3)(i)), unless the parents and the LEA agree in writing to waive the resolution meeting, or agree to use the mediation process described in 34 CFR §300.506 (34 CFR §300.532(c)(3)).  Under 34 CFR §300.532(c)(3)(ii), the due process hearing may proceed unless the matter has been resolved to the satisfaction of both parties within 15 days of the receipt of the due process complaint.  Thus, for expedited due process

Questions and Answers on IDEA Part B Dispute Resolution Procedures

hearings, there is a 15-day resolution period from the date the parent's due process complaint requesting an expedited due process hearing is received, and the time period for resolution is measured in terms of calendar days, not school days. Under 34 CFR §300.11(a), "[d]ay means calendar day, unless otherwise indicated as business day or school day." The Part B regulations define school day as "any day, including a partial day that children are in attendance at school for instructional purposes. School day has the same meaning for all children in school, including children with and without disabilities." 34 CFR §300.11(c).

Further, the expedited due process hearing must occur within 20 school days from the date that the parent's due process complaint requesting a due process hearing is filed. Thus, the resolution period is part of, and not separate from, the expedited due process hearing timeline. If an expedited due process hearing occurs, the hearing officer must make a determination within 10 school days after the hearing. 34 CFR §300.532(c)(2).

---

**Question E-4:**   May the parties mutually agree to extend the resolution period to resolve an expedited due process complaint?

**Answer:**   No. There is no provision in the IDEA or the Part B regulations that permits adjustments to the 15-day resolution period for expedited due process complaints. 34 CFR §300.532(c). Also, there is no provision in the Part B regulations permitting the parties to agree to extend this time period. Therefore, when the parties have participated in a resolution meeting or engaged in mediation and the dispute has not been resolved to the satisfaction of both parties within 15 days of the receipt of the due process complaint, the expedited due process hearing may proceed. 34 CFR §300.532(c)(3)(ii).

---

**Question E-5:**   How must SEAs and LEAs apply the timeline requirements for expedited due process hearings if the due process complaint is filed when school is not in session?

**Answer:**   When a due process complaint requesting an expedited due process hearing is filed during the summer or when school is not otherwise in session, the SEA or LEA responsible for arranging the expedited due process hearing is not required to count those days in calculating the expedited due process hearing timelines. A school day has the same meaning for all children in school, including children with and without disabilities. 34 CFR §300.11(c)(2). Therefore, any day that children without disabilities are not in school is not counted as a school day, and is not considered in calculating the expedited due process hearing timelines. For example, a day on which a public agency only provides extended school year services to children with disabilities and does not operate summer school programs for all children cannot be counted as a "school day." 71 FR 46552 (August 14, 2006). In contrast, if a due process complaint requesting a hearing is filed under 34 CFR §§300.507-300.516,

Questions and Answers on IDEA Part B Dispute Resolution Procedures

when school is not in session, the SEA is required to meet the 30-day resolution period and 45-day hearing timelines in 34 CFR §§300.510 and 300.515(a).

---

**Question E-6:**    May a party challenge the sufficiency of a due process complaint requesting an expedited due process hearing?

**Answer:**    No. The sufficiency provision in 34 CFR §300.508(d), described previously in Questions C-3 and C-4 of this Q&A document, does not apply to expedited due process complaints. Because of the shortened timelines that apply to conducting an expedited due process hearing, it would be impractical to extend the timeline in order for this provision to apply. 34 CFR §300.532(a) and 71 FR 46725 (August 14, 2006).

---

**Question E-7:**    May a hearing officer extend the timeline for making a determination in an expedited due process hearing?

**Answer:**    No. The SEA or LEA is responsible for arranging the expedited due process hearing, which must occur within 20 school days of the date the due process complaint requesting the hearing is filed. The hearing officer must make a determination within 10 school days after the hearing. 34 CFR §300.532(c)(2). There is no provision in the Part B regulations that would give a hearing officer conducting an expedited due process hearing the authority to extend the timeline for issuing this determination at the request of a party to the expedited due process hearing.

A State may establish different procedural rules for expedited due process hearings than it has established for other due process hearings, but except for the timelines in 34 CFR §300.532(c)(3), those rules must be consistent with 34 CFR §§300.510 through 300.514.

---

**Question E-8:**    How can the parties meet the requirement in 34 CFR §300.512(b) to disclose evaluations and recommendations to all parties at least five business days before an expedited due process hearing begins?

**Answer:**    Because the 15-day resolution period for a due process complaint requesting an expedited due process hearing concludes well before the 20-school-day period within which the hearing must occur, the parties should have enough time to meet this requirement before the hearing begins. This is because 15 calendar days would usually be the equivalent of 11 school days. Also, there is nothing in the IDEA that would prevent the parties from agreeing to disclose relevant information to all other parties less than five business days prior to an expedited due process hearing. 71 FR 46706 (August 14, 2006).

Questions and Answers on IDEA Part B Dispute Resolution Procedures

---

**Question E-9:**   May a school district proceed directly to court for a temporary injunction to remove a student from his or her current educational placement for disciplinary reasons or must the school district exhaust administrative remedies by first filing a due process complaint to request an expedited due process hearing?

**Answer:**   While this situation is not addressed specifically by the Part B regulations, the Department's position, in the context of discipline, is that a school district may seek judicial relief through measures such as a temporary restraining order when necessary and legally appropriate.  In addition, there is extensive case law addressing exigent circumstances where exhaustion of administrative remedies is not required or where the failure to exhaust administrative remedies may be excused.  In general, a school district that goes directly to court seeking to remove a child with a disability would need to show that the proposed removal is appropriate (e.g., that other interventions will not reduce the immediate risk of injury) and that exhaustion of the expedited due process hearing process should not be required (e.g., due to the exigency of the situation).  If appropriate, prior to seeking a court order, the LEA should attempt other interventions which could include, but are not limited to, the use of positive behavioral interventions and supports and other strategies to address the behavior giving rise to the proposed removal.  See 34 CFR §§300.324(a)(2)(i) and 300.530(e)-(f).

---

Key regulatory references related to expedited due process hearings, as cited above, can be found at http://idea.ed.gov/explore/home, and include the following:

- ▪ 34 CFR §300.11
- ▪ 34 CFR §§300.506-300.516
- ▪ 34 CFR §§300.530-300.533