EXHIBIT 1

O7HHRamC

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
     CYNTHIA RAMOS, as Parent and
3    Natural Guardian of W.R., et
     al.
4
                    Plaintiffs,
5
             v.                          24 Civ. 5109 (LGS)
6
     DAVID C. BANKS, et al.,
7
                    Defendants.
8    ------------------------------x
     OLIVER BRUCKAUF, as Parent and
9    Natural Guardian of E.D., et al.
10                  Plaintiffs,
11           v.                          24 Civ. 5136 (LGS)
12   DAVID C. BANKS, et al.,
                                         Remote Oral Argument
13
                    Defendants.
14   ------------------------------x     New York, N.Y.
                                         July 17, 2024
15                                       1:35 p.m.
16   Before:
17                  HON. LORNA G. SCHOFIELD,
18                                       District Judge
19                  APPEARANCES
20   BRAIN INJURY RIGHTS GROUP
          Attorneys for Plaintiffs
21   BY:  RORY J. BELLANTONI
          -and-
22   LAW OFFICES OF IRINA ROLLER, PLLC
     BY:  MARY WHATELEY
23
     NEW YORK CITY LAW DEPARTMENT
24        Attorneys for Defendant
     BY:  THOMAS LINDEMAN
25
```

O7HHRamC

1          (The Court and all parties present remotely)

2          THE DEPUTY CLERK:  We are here in the matters of

3     24 Civ. 5109 and 24 Civ. 5136.

4          Before we begin, I just want to remind everyone that

5     recording or rebroadcasting of this proceeding is prohibited.

6     I'm also going to ask counsel to please state your name before

7     you speak, each time you speak, as we have a court reporter

8     present.  We're here before the Honorable Lorna G. Schofield.

9          THE COURT:  Hello, everyone.  Thank you for convening

10    on short notice, and thank you particularly to Mr. Lindeman for

11    getting your response in with so little notice.  I really

12    appreciate it.

13         We're here on the application of the plaintiff for a

14    TRO.  I first saw the papers yesterday, and I know that today

15    is the day by which this meeting is supposed to be convened,

16    the one that's being sought as the emergency relief.  So I

17    thought we should at least have argument today, and I could at

18    least find out what's happening and see if we can find a way

19    forward.

20         I have looked at but not studied the papers.  I am

21    generally familiar with them.  Before we get too far, though,

22    let me ask the first question, which is why is this properly

23    before me in the sense that it appears that there are clear

24    administrative remedies, which are to appear before the IHO in

25    an attempt to resolve it, and why is there not a problem of

O7HHRamC

1    failure to exhaust administrative remedies?

2              Could I hear from plaintiff.

3              MR. BELLANTONI:  Yes, your Honor.  Rory Bellantoni on

4    behalf of the plaintiffs.

5              Your Honor, as far as there being remedies available

6    for not conducting a resolution meeting, if the parent doesn't

7    participate in a resolution meeting, the district can move to

8    dismiss the parents' due process complaint.  If the DOE doesn't

9    participate in the meeting, a fallback position is that the

10   hearings can start immediately.  However, initiating the due

11   process hearings, because the IHO, the impartial hearing

12   officers, do not preside over the resolution process, if the

13   parent wants to meet, discuss the issues in the complaint as

14   contemplated by the act and the regulations, there is no way to

15   force the school district to do that.  The IHO can't do that.

16   The IHO does not preside over resolution meetings as a fallback

17   if the meetings don't take place.  If these meetings don't take

18   place, we simply move on to the due process proceedings, and

19   there we are.  They're not resolved any faster than they would

20   normally be.  There is no remedy.

21             As far as failing to exhaust, I discussed this in the

22   papers a little bit.  This is not an individual problem.  This

23   is a systemic problem.  There's nobody within the

24   administrative process who can grant relief with respect to

25   this systemic issue of not having procedures in place to

O7HHRamC

1    conduct these due process —— I'm sorry, these resolution

2    meetings in good faith pursuant to the statute, and there is no

3    further administrative relief we can ask for.  As I said, we

4    can't petition the IHO to convene a resolution meeting.  We

5    have 15 days from when the DPC is filed for those meetings to

6    convene, but 30 days for the resolution process to play itself

7    out.  So here there really is no other administrative remedy

8    that the plaintiffs can avail themselves of.  They would just

9    have to forfeit the right to sit down and discuss the due

10   process complaints and the issues therein with the DOE prior to

11   going to a formal hearing.

12           Hello?

13           THE DEPUTY CLERK:  Just hang on one second.  I think

14   the judge might have gotten disconnected.

15           THE COURT:  Hello.

16           MR. BELLANTONI:  Yes.

17           THE COURT:  OK.  Sorry.  Could I hear from

18   Mr. Lindeman.

19           MR. LINDEMAN:  Yes, your Honor.  To respond to

20   Mr. Bellantoni's claims, I would argue that the relief for the

21   plaintiff is, in fact, to proceed to the hearing.  The

22   resolution section —— the preliminary resolution section are

23   intended to give the parties the opportunity to engage in a

24   dialogue and discuss the parents' concerns before the hearing

25   begins, but they exist to give the school district a way of

O7HHRamC

1    avoiding an administrative hearing functionally.

2            If, for whatever reason, it is impossible to schedule

3    that session within 15 days, the resolution period ends early,

4    it ends 15 days early, the parties proceed to hearing.  The

5    parent gets to raise their complaints there.  I think that the

6    claim that going to a hearing is not relief on its face is

7    incorrect under the statute.

8            THE COURT:  So if I can just tell you what I

9    understand —— and I'm addressing this to Mr. Lindeman, and you

10   tell me if that is correct —— what I understand is that, at

11   least as to the issue I had asked about, which was exhaustion

12   of administrative remedies, it really —— as the plaintiff says,

13   there really is no exhaustion requirement here because there is

14   no remedy in the sense that the hearing either takes place or

15   it doesn't, and if it doesn't take place —— or, sorry, this

16   collaborative session, the preliminary resolution session,

17   takes place or it doesn't, and if it does not, then the

18   administrative hearing goes forward.

19           Is that more or less right?

20           MR. LINDEMAN:  I would somewhat contest that, your

21   Honor, only insofar as the resolution period is supposed to

22   take a grand total of 30 days.  The first 15 days is for

23   setting up this preliminary session, getting the parties in a

24   room.  After that, there's an additional 15 days in which the

25   school district has the opportunity to respond to the

O7HHRamC

1    plaintiffs' concerns and attempt to satisfy them in some way.

2          If the first preliminary session does not happen,

3    plaintiffs are not obligated to wait for 15 days for the school

4    district to attempt to satisfy their concerns.  It is accurate

5    that the stages are —— that the proposed resolution hearing is

6    go to a hearing, but I think that the expedited timeline that

7    we are discussing and the early end of the resolution session

8    is the relief.  If the school district does not appear to be ——

9    has no interest in engaging in this process, which here the

10   Department of Education does, but when they do not, then the

11   parents can simply proceed to a due process hearing, as they

12   normally would, without having to wait for the school district

13   to attempt to resolve any issues.

14         THE COURT:  So let me ask, then —— get on with my next

15   question.

16         I read the relief that is requested, and the relief

17   that is requested is to convene a resolution meeting for each

18   plaintiff with a relevant member or members of their student's

19   IEP team who have specific knowledge of the facts, etc., as

20   well as a public agency representative with decision-making

21   authority on that agency's behalf.  And as I understand it, the

22   plaintiffs' complaint is that the people who were present at

23   the meeting that was attempted did not meet that description.

24   And my understanding is that the defendants are saying there

25   were two people there, that the second person certainly did,

O7HHRamC

1    that they had decision-making authority on the agency's behalf

2    and were a public agency representative, and that the first

3    person was not a member of the student's IEP team but

4    nevertheless had knowledge of the facts that were relevant.  Is

5    that correct?

6              Go ahead.

7              MR. BELLANTONI:  For the plaintiff, your Honor?

8              THE COURT:  Mr. Bellantoni, I'll hear you.  Go ahead.

9              MR. BELLANTONI:  Yes.  More or less that is correct,

10   your Honor.  What took place is on July 11, Thursday, emails

11   were sent out to schedule resolution meetings for the next day,

12   Friday.  They were to commence at 9 a.m., take place every hour

13   throughout the day by telephone.  There are regs and

14   requirements that these are in-person meetings.  Nevertheless,

15   they were to take place on the telephone.

16             The individual who was conducting the meeting was a

17   social worker.  The statute and the regulation require that

18   somebody familiar with the students, the facts in the student's

19   DPC, a member of the IEP team, and somebody who can bind the

20   district participate in these meetings.  You look at the

21   regulation, in 300, the regulation provides that the parent and

22   the school district shall choose the members of the team or

23   members who are going to participate at the meeting.

24             When Mr. Albert attended the first meeting, the

25   representatives at the meeting told him that the only authority

O7HHRamC

1    they had was to offer additional IEEs, to the extent the

2    student needed them or requested them, and not every student

3    requested an IEE in their due process complaint.

4         We also have an email we received after submission to

5    the Court from a DOE attorney who indicated that, yes, this is

6    the process.  Individuals with limited authority attend these

7    meetings.  That, in order to settle all of the issues in the

8    due process complaint, because there's private educational

9    placement involved here and related services, they would need

10   to have somebody from general counsel at the meeting and

11   somebody from the comptroller's office.  So that did not happen

12   on Friday.  There was nobody from the comptroller's office.

13   There was nothing from the Office of General Counsel.

14        THE COURT:  Wait, wait, wait, wait, though.  I thought

15   the whole purpose of the meeting, though, was for the parents

16   to air what their concerns were to give the DOE the opportunity

17   to respond and fix whatever they thought they wanted to or

18   could to either narrow or obviate the need for an

19   administrative hearing.

20        MR. BELLANTONI:  That is correct.  But, again, the

21   response from the DOE attorney was the only issues their

22   representatives can speak to —— Mr. Ribakoff sent an email ——

23   were additional IEEs.  He said that the individuals who were

24   attending the meeting —— I forgot her last name, the social

25   worker —— she didn't have the authority to enter into an

O7HHRamC

| | |
|---|---|
| 1 | agreement that dealt with anything other than providing |
| 2 | additional educational evaluations.  And Mr. Lindeman —— |
| 3 | THE COURT:  Excuse me.  Tell me the name or the |
| 4 | number, identify the regulation that says who has to be at the |
| 5 | meeting. |
| 6 | MR. BELLANTONI:  OK.  The statute, your Honor, talks |
| 7 | about —— |
| 8 | THE COURT:  No, no, just tell me what it is, and I'm |
| 9 | going to ask my law clerk to send it to me. |
| 10 | MR. BELLANTONI:  OK.  I'm sorry.  The 34 CFR |
| 11 | Section 300.510, and the —— |
| 12 | THE COURT:  So 300.510.  OK. |
| 13 | MR. BELLANTONI:  510, yeah.  And the statute —— if I |
| 14 | can have just a minute, your Honor, is 20 U.S.C. 1415, I |
| 15 | believe it's (f)(1)(B)(i).  I can just double-check that.  I |
| 16 | apologize. |
| 17 | THE COURT:  That's all right. |
| 18 | MR. BELLANTONI:  20 U.S.C. Section 1415(f)(1)(B) is |
| 19 | the section that talks about —— |
| 20 | THE COURT:  OK.  I have the language from that, and it |
| 21 | says "convene a meeting with the parents" —— and you did not |
| 22 | bring the parents, as I understand —— "and the relevant member |
| 23 | or members of the IEP team who have specific knowledge of the |
| 24 | facts identified in the complaint," and that is —— "which shall |
| 25 | include representatives of the agency who have decision-making |

O7HHRamC

1    authority on behalf of such agency."

2            Now I know what it says, and you're saying that they

3    had someone there who was not a member of the IEP team and the

4    person who had decision-making authority did not have full

5    decision-making authority.

6            So let me hear from Mr. Lindeman.

7            MR. BELLANTONI:  If I may point out one more thing,

8    your Honor, just in (IV) of the statute and (2) of the

9    regulation, it talks about the meeting going forward —— or the

10   opportunity to resolve the complaint.  And, again, the purpose

11   of the meeting under the reg is to resolve the dispute that is

12   the basis of the due process complaint, not selected issues

13   therein.

14           As far as the parent, your Honor, with less than 24

15   hours' notice, we were able to schedule some parents for these

16   meetings and not others.  They just were not available.

17           Thank you, your Honor.

18           THE COURT:  Mr. Lindeman, can I hear from you about

19   the people who were required to be at the meeting.

20           MR. LINDEMAN:  Yes, your Honor.  For a small amount of

21   background information, I believe it does say this in

22   plaintiffs' moving papers, but the CSE committees that handle

23   the students who attend the iBRAIN campuses, the one in

24   Manhattan and Brooklyn, are CSE-8 and CSE-9.  At this specific

25   meeting, the two individuals were both from CSE-9.  One of them

O7HHRamC

1    is a social worker who is not on a specific IEP team but did

2    have specialized knowledge relating to the services proposed by

3    CSE-9 and had the ability to reconvene the IEP team if

4    appropriate.

5         It's worth noting, potentially, that New York City is,

6    I believe, the only school district in the state that separates

7    the CSE and the IEP team out.  Obviously, due to our size, it's

8    not entirely practical to attempt to schedule within 15 days a

9    meeting that has a full IEP team available for every single

10    student, but the goal is to get the parents and get someone who

11    can hear them out in the room and make sure that, if the parent

12    is open to it, the IEP team can be reconvened or further

13    evaluations can be done.

14         At the core of plaintiffs' due process complaint is

15    that they were denied a free and public education.  It is

16    accurate that they have sought reimbursement for their

17    unilateral placement at a private school, but agreeing to

18    settle for that is not a requirement under either the statute

19    or the regulation.  We are required to send someone with

20    decision-making authority, but in this case, that doesn't

21    necessarily mean full authority to settle any and all claims.

22    It simply means to offer something to meet plaintiffs' ——

23         THE COURT:  I was just trying to get at what you're

24    trying to tell me right now.  What decision-making authority do

25    you think that the representative needs to have at that

O7HHRamC

1   meeting?  What's your position?

2           MR. LINDEMAN:  I believe the representative has to

3   have the ability to either reconvene the IEP team and reopen

4   the question of what a free and appropriate public education is

5   for this specific student and, when necessary, to order further

6   or additional evaluations to show whether or not the student in

7   question needs the services that they are requesting.

8           The underlying issue of all due process complaints is

9   whether or not these students are receiving or being offered

10  the services that they need to get a FAPE at a public school,

11  in this instance a District 75 school.  If somebody's there who

12  can evaluate that question and attempt to gather more

13  information for us, I believe the district has met its good

14  faith obligations.  If plaintiffs want to settle beyond that,

15  of course, they're free to seek a due process hearing.  But we

16  can't have someone from my office and the comptroller's office

17  appear at the 6,000 or 10,000 resolution sessions we would have

18  to hold over the summer alone of every single summer.  It would

19  just never get done.

20          THE COURT:  OK.  I understand.

21          So let me ask plaintiffs' counsel, Mr. Bellantoni, you

22  have actual living clients who, in addition to having this

23  complaint about something that is structural or procedural or a

24  general practice, you also have specific clients whose children

25  have specific needs with a school year that's about to start in

O7HHRamC

1    the fall, and what I understand, or assume, is all of the

2    clients are trying to get funding to send their children to

3    iBRAIN so that they can get a free and adequate public

4    education.  And my question is what are you trying to get from

5    this proceeding?  What do you want?

6         MR. BELLANTONI:  Thank you, your Honor.

7         For the reporter, Rory Bellantoni again.

8         Your Honor, if I can just address two things quickly.

9    The parents can ask at any time that the IEP team reconvene, so

10   that's not something they need from the DOE at a resolution

11   meeting.  The extended school year has actually started for

12   these kids.  It starts the beginning of July.  They're looking

13   for ── I'm sorry.  Go ahead, Judge.

14        THE COURT:  No, no, go ahead.

15        MR. BELLANTONI:  The parents are looking for the

16   ability to, as you said earlier, if not resolve ── Mr. Lindeman

17   said earlier that they don't have to agree to everything the

18   parents are asking for.  I get that, but they should have

19   somebody at these meetings who can agree; who can, if not grant

20   the plaintiffs everything they're looking for ── which would be

21   ridiculous.  I'm not saying that should happen ── but who can

22   resolve issues and perhaps narrow the scope of the upcoming

23   hearings so they take place faster than they normally do.

24        This is not something the plaintiffs are asking for.

25   This is something that Congress requires of the local

O7HHRamC

| | |
|---|---|
| 1 | educational agency.  Mr. Lindeman said before they were |
| 2 | actually required to have a meeting with the appropriate |
| 3 | personnel.  Appropriate by my definition —— |
| 4 | THE COURT:  Let me just ask you, though, so the person |
| 5 | that they have there can order additional evaluations, if |
| 6 | necessary, and they can reconvene the IEP team and reopen |
| 7 | questions about what a free and adequate public education is. |
| 8 | And so why isn't that enough?  What more authority do you want |
| 9 | that person to have? |
| 10 | You said they don't have to be able to agree to |
| 11 | everything.  What do you think they need to be able to agree |
| 12 | to? |
| 13 | MR. BELLANTONI:  Well, they should, per the statute, |
| 14 | be there and able to agree to everything.  Again, not saying |
| 15 | they would, but there are issues of pendency.  Each one of |
| 16 | these students has an administrative order that found the DOE |
| 17 | failed to provide the students with a FAPE in the prior school |
| 18 | year —— most of these kids it's last year —— that. |
| 19 | i L0 BRAIN is an appropriate unilateral placement.  iBRAIN is |
| 20 | their current placement, and it's a placement that the DOE has |
| 21 | an obligation to continue funding until they provide the |
| 22 | students with a proper FAPE. |
| 23 | I don't know that every one of these issues has to be |
| 24 | the product of a due process hearing.  The pendency issues |
| 25 | could be resolved.  Pendency placement could be resolved. |

O7HHRamC

1   Related services can be resolved.  In many of these IEPs where

2   the placement, the actual brick-and-mortar placement, is

3   contested, the DOE recommends transportation, just like the

4   parents do.  The DOE recommends a transportation that's

5   wheelchair accessible, schools that are wheelchair accessible,

6   and sometimes they're not.  These are issues that can be

7   discussed, and there can be some kind of resolution with

8   respect to individual issues, if not the entire case.

9         But somebody who simply has the authority to grant

10  additional IEEs or is familiar with the student's case because

11  they read an IEP beforehand, the statute clearly contemplates

12  somebody that has more knowledge than just reading the

13  student's IEP right before the meeting.  And if, for some

14  reason, we can't come to a resolution, then, unfortunately, we

15  can't.  But the parents are entitled to this.

16        I know Mr. Lindeman says that these meetings are for

17  the benefit of the school only.  It's not necessarily true

18  because the school can't waive the resolution meeting without

19  the parents' consent.  They can do nothing and wait for the 15

20  days to expire and then the hearing starts, but they can't

21  unilaterally waive this resolution meeting process.  It's not

22  simply something that's designed for the benefit of the school

23  district.  As I said before, even if we can't resolve every

24  issue in a due process complaint, it's certainly the ability to

25  narrow issues for the upcoming hearings that might make the

O7HHRamC

1    hearings go a little quicker than they tend to here in New York

2    City.

3          THE COURT:  OK.  Let me tell you where I am on

4    likelihood of success.  It sounds to me like the statute says

5    one thing.  The DOE says:  Here is what we have done and what

6    we can do, and that is sufficient as good faith compliance with

7    the statute.  And the plaintiff says:  No, that's not

8    sufficient.  You need someone who has more authority and more

9    familiarity, and therefore, what's provided isn't sufficient.

10         That seems to me to raise an issue.  It's not entirely

11   clear whether it's an issue of fact or whether it's an issue of

12   law, but I think it's an issue.  And if I were forced to rule

13   on it without the benefit of further briefing in an evidentiary

14   hearing, in other words, in a posture we're in now for a TRO, I

15   would say that the burden of proof is on the plaintiff, and I

16   would say that it's about 50/50, in my mind, and therefore, the

17   plaintiff has not sustained its burden of proof.

18         However, I also want to talk about irreparable harm,

19   because it seems to me, on the issue of irreparable harm, based

20   on what I've heard, that the school year has already started.

21   It sounds like these children are at iBRAIN already; that there

22   is going to be a dispute about who pays for it; and that, in

23   the end, it will be resolved with payment of money or not; and

24   therefore, there is not irreparable harm.

25         I understand that the plaintiff is saying, well, we

O7HHRamC

```
 1   didn't have a chance to narrow the issues, but in the end, what

 2   you're trying to get is compensation for these children going

 3   to iBrain, and that's what the ultimate relief either will be

 4   or won't.

 5           So let me ask, Mr. Bellantoni, why is there

 6   irreparable harm?

 7           MR. BELLANTONI:  Mr. Bellantoni again.

 8           Your Honor, in this sense, I don't think —— obviously,

 9   I could be wrong.  I often am —— "irreparable" doesn't

10   necessarily mean catastrophic.  It doesn't mean, in the context

11   of the First Amendment examples that I gave —— and I understand

12   the First Amendment's a little bit stronger than the right to a

13   resolution hearing —— but the idea is if your ability to speak

14   is chilled, if somebody stops your ability to speak, if

15   somebody prevents you from accessing a right that was given to

16   you either by the First Amendment or otherwise, harm is

17   presumed.

18           Here, much like the explanation I gave earlier about

19   exhaustion of remedies, if the parents lose this ability ——

20   and, again, I'm going to assume that if there are resolution

21   meetings, an opportunity to discuss these issues, the DOE, if

22   they're ordered to conduct these meetings, will conduct them in

23   good faith with people who can bind the district.  If they do

24   that, then there is no remedy.  Irreparable —— there's nothing

25   that could repair the plaintiffs' ability to have this
```

O7HHRamC

```
1    resolution meeting.  I'm not talking about the ultimate whether
2    or not there's a finding on prong one or two or three of the
3    Burlington-Carter test.  This loss of a right —— the IDEA says
4    "shall."  It says "must."  This is mandatory.  If it's
5    mandatory, then those words don't mean what they mean.  They
6    shall convene; they must convene, they have to.  There's no
7    wiggle room.  There's no "may."  There's no "in their
8    discretion."
9             THE COURT:  Let me just interrupt for a second.
10            I understand your argument, but my question is —— and
11   I'm trying to get back to the practicality of it —— this sounds
12   very theoretical.  You're saying they will have lost this
13   right.  They will have lost the right to speak, to negotiate,
14   to try to narrow issues.  I understand what you're saying, but
15   from a practical point of view, what are you trying to get
16   right now?  What harm is there that I can try to fix?  What
17   could I do to avoid some harm to your clients?
18            MR. BELLANTONI:  Your Honor, again —— and I apologize
19   for going back to the same answer if it's not sufficient, but
20   issues like pendency, if somebody was aware of the fact of
21   these cases, if somebody had the authority to bind the DOE and
22   came to these meetings and said, OK.  School has started.
23   These kids don't have to worry about being moved or not
24   receiving benefits while they're at.iBRAIN.  They all have
25   unappealed final pendency orders, then their stay-put
```

O7HHRamC

1    placement, their pendency is at iBRAIN.  The DOE will fund

2    that pendency.  And I understand *Mendez* very well, your Honor.

3    I'm not asking for accelerated payment, but at this point we

4    still have no idea from year to year, from case to case, what

5    the DOE's process is with respect to pendency.  That is one

6    issue that could be discussed.

7         Again, as I said, transportation, we could understand

8    what the DOE's position is with respect to transportation

9    services.  Are they going to provide transportation?  If

10   they're not going to actually provide transportation, what is

11   it they need to be able to pay transportation going forward?

12   So that we don't have cases where the parents win these due

13   process proceedings and then afterwards start enforcement

14   actions only to have the DOE, at the tail end of these

15   proceedings, say, well, we're not going to pay for

16   transportation because of X, Y, Z issue.  We're not going to

17   pay for nursing because of some other issues that are systemic,

18   that are not just ——

19        THE COURT:  Let me ask this question:  We are on day

20   15 now, I think, for these cases, and there's a 30-day window.

21   And then this collaborative meeting portion of the process is

22   done, and we go on to the next part.

23        Your clients —— and there are constraints.  I mean, in

24   the sense you just said you weren't able to get your clients

25   there, the parents there, to the meeting in time with so little

O7HHRamC

1    notice.  There are similar constraints on the other side, and

2    it doesn't have to do just with notice, but it has to do with

3    limitations on the number of personnel, having people who have

4    authority to make all of these decisions.

5         So what I'm trying to do right now is negotiate some

6    kind of meeting that would be meaningful for your clients,

7    realistic for the DOE, that could happen in the near future so

8    that your clients would have more clarity about some of these

9    issues but wouldn't necessarily be what you're asking for.

10        So let me ask Mr. Lindeman whether it's possible to

11   convene these meetings on fairly short notice in a way that

12   provides a little bit more clarity about the pendency issue or

13   about transportation, or tell me that's just not possible

14   because, in the end, that comes down to money and whether the

15   money can be spent, and you can't do that at a meeting with

16   people who are just sitting around a table without going

17   through an administrative process of getting funding.

18        Let me hear from Mr. Lindeman.

19        MR. LINDEMAN:  Thank you, your Honor.  Thomas

20   Lindeman.

21        I really do feel like I have to push back on this

22   point a little because, when we started, Mr. Bellantoni was

23   saying he wanted a member of the IEP team, a specific member of

24   the IEP team, to attend this meeting.  And while we disagree on

25   whether it's required that someone who helped write the IEP is

O7HHRamC

1    there or whether a member of CSE who helped create the IEP and

2    knows about it needs to be there, I think we did at least agree

3    that the purpose of this meeting is to get members of the CSE

4    and the parents in a room to have them talk about the problems.

5    Pendency issues are dealt with by the attorneys who respond to

6    due process complaints.  Issues as to documentation and payment

7    are handled by the implementation units.  Eventual settlements

8    are either handled by the attorneys at the administrative level

9    or eventually by my office.  None of those people are supposed

10   to be at this meeting under the statute.  We have turned what

11   is supposed to be a theoretical preliminary resolution session,

12   where the parent explains why they think an IEP will not

13   provide their student appropriate services, into a settlement

14   conference, which it is not.

15          It is certainly plausible that, given adequate notice

16   and time that the statute does not provide, more people could

17   be drawn into the room to discuss the difference between a

18   12:1:1 and an 8:1:1 or a 6:1:1 and a 6:1:4 classroom layout for

19   any given student or it could be determined whether or not a

20   student needed both an in-school nurse and a transportation

21   nurse or just one of those.  But those things, which are dealt

22   with by IEP teams, is not the same as the district's pendency

23   obligation or the eventual payment necessities, which are not

24   contemplated by Congress in the statute and, I think, not

25   rights the plaintiff can seek here.

1        I'm also a little uncomfortable with even suggesting

2   that going forward —— obviously, we are on day 15, but my

3   client has made reasonable efforts to set up these meetings and

4   to find times that worked for their personnel.  And plaintiffs

5   have made it clear that they will not be attending those

6   meetings.  At this point, even if we schedule meetings, if the

7   parent isn't in the room —— whether their attorneys there or

8   not, if the parent isn't in the room, there's very little to do

9   at the meeting except for discuss these potential legal

10  settlements that Mr. Bellantoni wants.  And if we're doing

11  that, we should proceed to the hearing, which is what

12  plaintiffs want to do anyway.

13        THE COURT:  OK.  Mr. Bellantoni, what's your response

14  to that?

15        MR. BELLANTONI:  Yes, Judge.

16        Again, for the reporter, Mr. Bellantoni.

17        First of all, again, your Honor asked me for some

18  examples.  These are issues raised in the DPC.  Whether

19  Mr. Lindeman doesn't think they should be discussed in a

20  resolution meeting or not, they are issues raised in the DPC.

21  The point of the resolution meeting is to resolve the issues or

22  the dispute that is the basis for the due process complaint.

23  Outside of New York City, all of these issues are routinely

24  discussed in resolution meetings.

25        Your Honor's question about the 15-day, I will just

O7HHRamC

1    say, your Honor, that although the statute says the meetings

2    must convene within 15 days, the resolution period is 30 days.

3    I know some meetings were scheduled.  We attended, and then we

4    weren't able to finish because we felt the appropriate people

5    weren't there.

6            As far as the plaintiffs being at these meetings, the

7    plaintiffs intend to be at these if the appropriate personnel

8    are at the meeting, your Honor, if they can discuss all of the

9    issues raised in the due process complaint, not just select

10   issues.  Again, not saying that the City is going to

11   necessarily settle every one of those, but they have a right to

12   discuss the issues that are the basis of the due process

13   complaint.

14           And I think the idea that some of these meetings were

15   scheduled and have to be rescheduled outside the 15-day period,

16   the statute does say "convene," it doesn't say "complete."  I

17   don't want to find myself here next year arguing they have to

18   be completed within 15 days.  But I think it's certainly

19   reasonable, since we asked for this relief now, if your Honor

20   were to order these meetings take place in the next week,

21   certainly before 30 days from July 2, that we will object to

22   that.  That's kind of the relief we're asking for.  So I don't

23   know that I can sit back and say, Judge, we need all these

24   meetings tomorrow.  That would be unreasonable and ridiculous.

25   But, certainly, to schedule them within the next few days and

O7HHRamC

1    have these meetings within the next week, with the appropriate

2    people there, that would be something the plaintiffs are

3    willing to do.

4              THE COURT:  But the problem is the appropriate people

5    there.  There's a dispute about who the appropriate people are,

6    and it sounds like the people you are asking for are not people

7    who realistically can be there.  So I'm not going to order

8    something that isn't possible to do.  That doesn't seem to make

9    sense.

10             MR. BELLANTONI:  Your Honor, the suggestion has been

11   that somebody from the Office of General Counsel, the

12   comptroller's office can be there.  You can order somebody from

13   each department to be there or you can order them to delegate

14   their authority to somebody if they feel that that person can

15   exercise the delegation of authority appropriately.

16             I don't think, your Honor — and I can defer to the

17   Court — the answer that "we can't do it" is sufficient under

18   the IDEA where they take federal funds and agree to comply with

19   the statute.  They're not complying with the statute if there

20   isn't somebody from the public agency who can settle the

21   disputes that are raised in the due process complaint.  I'm not

22   asking for any more than is in the statute, your Honor.

23             THE COURT:  Then answer me one more question.  If 30

24   days go by and it's not — and it's not held, why isn't all

25   this moot?

O7HHRamC

1          MR. BELLANTONI:  If 30 days go by —— I'm sorry, Rory

2    Bellantoni again —— 30 days go by and there is no resolution

3    meeting?

4          THE COURT:  Right.

5          Wait.  Thirty days go by.  There's been an effort to

6    have a resolution meeting.  You've said that it's not adequate.

7    DOE says it is adequate.  The 30 days passed.  Now the time has

8    passed for the resolution meeting, and it's time to go to a

9    hearing.  Why isn't the issue of the resolution meeting moot?

10         MR. BELLANTONI:  I don't know —— I'm not sure how I

11   can answer that.  I'm not sure that there's a cause of action.

12   There is some case law to support the authority that you can

13   bring a cause of action for failing to have the resolution

14   meeting.  There's other authority that says there has to be

15   more injury than just failing to have the resolution meeting.

16         But the failure to have the resolution meeting becomes

17   moot to the extent that the ability to have the meeting doesn't

18   exist any longer.  That doesn't necessarily mean that the

19   students weren't harmed by the denial of —— a procedural rather

20   than a substantive violation.  If it's a substantive violation,

21   there's a denial of FAPE.  But where there are procedural

22   violations, as your Honor knows, they don't necessarily rise to

23   the level of denial of a FAPE in and of themselves, but ——

24         THE COURT:  Let me just stop you.

25         So it sounds like the request for injunctive relief

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O7HHRamC

1    becomes moot, and there is a question of whether there remains

2    a claim for damages.  Let me ask you a question about your

3    complaint in this action.  That is something I have not looked

4    at.  I assume you filed a complaint to commence the action.

5            What is the gravamen of the complaint?

6            MR. BELLANTONI:  Your Honor, the gravamen of the

7    complaint talks about pendency and establishing pendency.  We

8    talk about, in the complaint, the systemic problem with the

9    resolution meetings, the failure to have them in past years.

10   But, admittedly —— this is the mootness/ripeness issue ——

11   asking for damages for not having resolution meetings before

12   the time runs would not be ripe.  So they're not in the

13   complaint.  Didn't ask for them.  But indicated that we want

14   these resolution meetings, and we believe we'll be harmed if we

15   don't have them.  And yes, they commenced, and then on and on

16   and you know the rest of the story.

17           As of the 15th or 30th day, plaintiffs may ask to

18   amend the complaint now to seek damages for failing to have the

19   resolution meetings.

20           THE COURT:  So let me ask a different question.

21           If the DOE offered or if I ordered that these

22   resolution meetings be scheduled to take place in the next week

23   with your clients, the parents, present and with the same

24   people present who were at the last meeting, would you attend?

25           MR. BELLANTONI:  If your Honor orders us to, I

1    wouldn't have any choice.  But again, your Honor, if they don't

2    have the ability ——

3            THE COURT:  No, no, no.  If I said —— well, let me put

4    it differently.

5            If I said that the DOE had to reschedule and reoffer

6    the meetings in essentially the format that they have been

7    offered, what would your clients' position be?

8            MR. BELLANTONI:  Without ordering that they delegate

9    more authority to them, the position would be they're not a

10   resolution meeting contemplated by the statute.  And even if we

11   went to them, and I would —— again, if your Honor ordered my

12   clients to go, I would tell them they had to go unless they

13   have some other scheduling conflict.  But at the end of the

14   day, they're not getting anything more than was offered

15   originally, and that's not an ability to resolve issues beyond

16   the IEE process.

17           THE COURT:  So, Mr. Lindeman, let me ask for some

18   final thoughts on any of this.  Is there any of that that you

19   want to react to?  Is there anything you want to offer?

20           MR. LINDEMAN:  Your Honor, I do want to note, just

21   briefly, that plaintiffs do request an injunctive order

22   immediately —— requiring my client to immediately schedule

23   resolution meetings in their complaint, but I agree that at the

24   end of 30 days, that claim is moot.

25           I think, from my perspective, it speaks volumes that

O7HHRamC

plaintiffs send their attorney and not themselves to the

initial meeting.  They did not try to reschedule it.  They did

not attempt to find a mutually agreeable time, and they did not

request that a specific member from the IEP team be there.  It

is certainly true that in the statute the parties are supposed

to attempt to agree on — or I shouldn't say in the statute, I

suppose.  I should say in the resolution.  The parent and local

educational agency are supposed to determine the relevant

members of the team to come together.  So if we disagree on

that, that's a conversation we could have without a preliminary

injunction and taking up an hour of this Court's time.

But I don't think plaintiffs want to go to a

resolution meeting.  I think that plaintiffs filed a complaint

seeking the same relief they requested last year in *Frias* and

*Grullon* and *Lummayos* and *Rivas* and *Crosley* and *Zimmerman* and in

many other cases seeking pendency determinations in this

district and in the Eastern District, and I think their

complaint seeks payment, as it did in the prior year, under

*Mendez*.  And I think that this claim is simply a way to get in

front of the courts and take up an inordinate amount of time

without actually accomplishing anything.

THE COURT:  Let me ask this:  What happened with the

actions last year?  Were the requests for the same kind of

relief?

MR. LINDEMAN:  Last year plaintiffs filed, I believe,

O7HHRamC

1   six actions across two districts.  I handled personally five of

2   those actions, including *Frias v. Banks* and *Grullon v. Banks* in

3   front of Judge Clarke, *Lummayos v. Banks* in front of Judge

4   Cronan, and in the Eastern District, *Rivas* and *Zimmerman* in

5   front of Judges Chen and Hall.

6        In this district, we moved to dismiss.  Judge Clarke

7   exclusively ruled that plaintiffs were not entitled to a

8   determination on pendency, and they were not entitled to

9   payments on pendency until they had already come to an

10  agreement or an IHO had reached that determination.  She did

11  rule when an adverse determination had been reached, plaintiffs

12  could then bring a claim.  But it's the third week of July, so

13  no determinations have been made at this time.  We are well

14  before that process.  I think this claim is simply a way to be

15  on the docket and have the court's attention before those

16  claims become ripe.

17       THE COURT:  What did Judge Cronan's, Judge Chen, and

18  Judge Hall do?

19       MR. LINDEMAN:  Judge Cronan dismissed his claim as

20  moot.  Judge Chen issued an order to show cause that I believe

21  plaintiffs responded to, and that case ended up being dismissed

22  as well.  And I believe that Judge Hall case is still open for

23  one plaintiff.  That case ended up being amended, and there's

24  some ongoing disagreements about what payment obligations are

25  owed with the documentation that plaintiffs have provided.

O7HHRamC

 1   That is a longer and different conversation that I know your

 2   Honor is well aware of it.

 3           MR. BELLANTONI:  Your Honor, may I be heard?

 4           THE COURT:  Yes.

 5           MR. BELLANTONI:  Mr. Bellantoni, for the reporter.

 6           Mr. Lindeman doesn't quite cast those cases in the

 7   light that actually existed.  We moved for preliminary

 8   injunction to determine the pendency placement of each of those

 9   children, of each of the children in those cases.  Eventually,

10   the preliminary injunction that we moved for was denied, but

11   the Court, including Judge Clarke in *Grullon* and *Rodriguez* or

12   *Frias*, none of the cases were dismissed until the DOE sometime

13   in August, by declaration of folks in the implementation unit,

14   finally conceded that pendency lies at iBRAIN.  They weren't

15   dismissed as not stating a cause of action.  All the judges in

16   the case wanted to know where the pendency lied for these

17   cases.  And if you look at all the dockets, all the dockets

18   have status letters where the DOE ultimately conceded, let's

19   say, by mid-August, early September, that all of the students

20   had pendency at iBRAIN.

21           As far as not being entitled to a pendency order,

22   well, the students weren't entitled to pendency orders because

23   the DOE agreed that pendency lied at iBRAIN, but we didn't

24   pursue a pendency order.  The students, however, are entitled

25   to either pendency determinations or a concession on the part

O7HHRamC

1    of the DOE that pendency lies at iBRAIN.  And as you heard

2    Mr. Lindeman, it's the third week in July and still there's no

3    — we can't even set up these meetings, let alone get an answer

4    on pendency.  That's the DOE's problem.  That's another issue

5    to discuss another day.  But as far as painting those cases in

6    the light of they were all dismissed, they were dismissed when

7    the DOE said they were going to pay.

8         And by the way, the DOE in all those cases said we're

9    going to pay pendency, we're going to fund pendency in late

10   August, and by November, when they still hadn't funded almost

11   $4.5 million worth of pendency and the school was in danger of

12   shutting, the plaintiffs had to move for orders under *Mendez*,

13   because now the placements were in jeopardy.  And as far as,

14   again, preliminary injunctions, those were denied, but the

15   cases were kept on each judge's docket until the DOE finally

16   implemented the pendency it had said four months earlier that

17   it was going to implement.

18        So I'm not quite sure why we're bringing up last year

19   now, other than to move the Court's attention to the facts

20   that —

21        THE COURT:  Wait.  Just wait and cool down a little

22   bit, please.

23        MR. BELLANTONI:  Yes, Judge.

24        THE COURT:  The reason we're discussing it is because

25   I asked what happened in the cases, and part of the reason I

O7HHRamC

1    asked what happened in the cases is I wondered whether the

2    issue we're talking about now, which is the need to convene a

3    resolution meeting with certain participants, was adjudicated

4    or litigated in those cases.  And I'm gathering from what I'm

5    hearing that it was not.

6            Is that right, Mr. Bellantoni?

7            MR. BELLANTONI:  Yes, I'm sorry, Judge.  It was not.

8    In prior years the students had waived their right —— and it's

9    in the papers —— had waived their right to a resolution meeting

10   in exchange for an expedited hearing, hoping that maybe we can

11   start these proceedings sooner and get decisions sooner.

12   However, they neither got the resolution meeting, nor did they

13   get the expedited hearing that was proposed as an alternative

14   to waiving.  So, again, this idea that an expedited ——

15           THE COURT:  Wait, wait.  And you, as I understand it,

16   you've already begun the process of commencing the hearing

17   proceedings, is that right, in front of the IHO?  And so that

18   is, in essence, your next stop, is that right?

19           MR. BELLANTONI:  The hearings have not started.  I'm

20   not sure where we are, where, I call, the admin team is with

21   demanding immediate hearings because we don't have resolution

22   meetings, but that would be the next step unless something

23   different happens here.  So the answer is, I hate to say, sort

24   of, but ——

25           THE COURT:  I understand.

O7HHRamC

1          MR. BELLANTONI:  We haven't started hearings.  I

2   believe there may have been requests for hearings.  Some of the

3   IHOs have also been brought into this process —— I'm not sure

4   by us or by the DOE —— in that resolution hearings aren't

5   commencing, and the idea being tossed around out there is, OK,

6   then do we start these hearings immediately?  Immediately

7   being, I guess, a day after tomorrow.  But no hearings have yet

8   commenced.

9          THE COURT:  OK.  But it sounds like that —— you have

10   begun the process of engaging in the hearings that you're

11   entitled to.  Your clients have the right to proceed

12   immediately to the impartial hearing stage.

13          So what I'm going to do now is I'm going to deny the

14   request for the TRO on the grounds of no irreparable harm,

15   essentially because the plaintiffs are entitled to proceed to

16   the impartial hearing stage and raise the arguments that they

17   would have raised in the resolution meeting.

18          But what I would like is I would like Mr. Lindeman to

19   prepare a proposed form of order for me with findings on

20   irreparable harm, slightly more fulsome than what's in your

21   letter, which I know you had to prepare quickly, and send it to

22   me —— actually, file it on the docket.  You can file it as an

23   attachment to a letter if that's the easiest way to get it onto

24   the docket, but file it on the docket.

25          And then if I could have a response from

O7HHRamC

1   Mr. Bellantoni.  And what I would like in the response is

2   proposed revisions, because my ruling is that I'm denying the

3   TRO on the basis of no irreparable harm.  But if you would like

4   to propose different language or correct statements without

5   changing the result, I will take any comments like that and

6   consider them.

7           Is that understood?  I'll set time to do that as long

8   as I know, in the first instance, that everyone understands

9   what they're doing.

10          MR. LINDEMAN:  Thomas Lindeman, for defendants.

11          Understood, your Honor.  I do want to clarify.  Do you

12  want it submitted as a proposed order or as a proposed judgment

13  or as an attachment?  I think either way would be fine.  I just

14  want to make sure that we're on the same page.

15          THE COURT:  It would be a proposed —— well, again, it

16  sounds like the complaint is much broader than this issue.

17          MR. LINDEMAN:  Yes.

18          THE COURT:  So it's a proposed order denying the

19  request for temporary restraining order on the basis of no

20  irreparable harm.

21          MR. LINDEMAN:  Understood.

22          THE COURT:  Mr. Bellantoni, do you understand what

23  your objection or response can be?

24          MR. BELLANTONI:  Your Honor, can you go over it one

25  more time for me?

O7HHRamC

1          THE COURT:  Sure.

2          I have ruled and my ruling is that the TRO's denied on

3  the basis that I find that you haven't sustained your burden of

4  showing irreparable harm, and I've asked for a proposed form of

5  order with findings from the DOE.  I'm going to ask that you

6  file it, and then I will give you several days to propose any

7  corrections/revisions, but with the understanding that you're

8  not — I'm not going to change the order.  So, in other words,

9  I'm not going to change the result.  It's still going to be a

10  denial of the TRO.  But if you want to propose edits or changes

11  that you think more accurately state, for example, your

12  position or the record or something like that, you may do that.

13          MR. BELLANTONI:  So the issue or the request for any

14  relief related to the meetings is decided with the ruling that

15  we haven't shown irreparable harm?

16          THE COURT:  Correct.  And that is for preliminary

17  injunctive relief.  It's not a final finding on the merits.

18  It's a finding on your request for a TRO.

19          MR. BELLANTONI:  Yes, Judge.

20          THE COURT:  Understood?

21          MR. BELLANTONI:  Yes, your Honor.

22          THE COURT:  OK.  So what I'm going to do is I'm going

23  to ask for Mr. Lindeman to give me a proposed form of order —

24  let's get off this breakneck schedule — by Tuesday, the 23rd.

25          Does that work?

O7HHRamC

1          MR. LINDEMAN:  This is Thomas Lindeman.

2          That's fine with defendants, your Honor.

3          THE COURT:  OK.

4          And Mr. Bellantoni, your response by the 26th.

5          MR. BELLANTONI:  Yes, Judge.

6          THE COURT:  Thank you.

7          Unless there's anything else we need to discuss ——

8    well, let me ask one last question.

9          Mr. Bellantoni, do you have any interest in having a

10   discussion with the DOE about trying to agree on the

11   appropriate personnel who might attend a resolution meeting

12   between now and the end of the month?

13         MR. BELLANTONI:  I would always have an interest, your

14   Honor.  I don't know if that conversation starts with

15   Mr. Lindeman and myself.  There's always an interest in trying

16   to resolve an issue that can be resolved.

17         THE COURT:  OK.  Well, then I invite you both to do

18   that, and I invite you to do it by the end of this week.  So,

19   in other words, by the 19th, in case somehow the issue is

20   resolved and we don't need judicial finding denying the request

21   for injunctive relief.  OK?

22         MR. BELLANTONI:  Yes, Judge.

23         THE COURT:  All right.  Thank you.  We're adjourned.

24         (Adjourned)

25