# EXHIBIT 2

THE CITY OF NEW YORK

OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS

_____

In the matter of:

NEW YORK CITY DEPARTMENT OF EDUCATION,

                Petitioner,

                                                  Case No. 277268

                                                  IHO Sabrina Styza

v.

PARENT OF A█████ M███████████

                Respondent.

_____

**MOTION TO DISMISS FOR PARENT'S FAILURE**

**TO PARTICIPATE IN RESOLUTION MEETING**

The New York City Department of Education ("DOE") submits this motion to dismiss the Due Process Complaint ("DPC") numbered 277268, which the Parent of ▮▮▮▮▮▮▮▮▮▮▮▮ (the "Student") filed on July 2, 2024. The Student's parent failed to participate in a resolution meeting despite the Committee for Special Education's ("CSE") reasonable efforts to hold one.

## Legal Standard

The IDEA specifically obligates parents who have filed a DPC to participate in a resolution session with the school district "where the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint, unless the parents and the local educational agency agree in writing to waive such meeting, or agree to use the mediation process." 20 U.S.C. § 1415(f)(1)(B)(i)(IV). The inclusion of a mandatory resolution session clearly reflects Congress' intention that parents and school districts continue to work toward the resolution of disputes and the provision of appropriate educational services even after a DPC is filed. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005) ("The core of the [IDEA] ... is the cooperative process that it establishes between parents and schools."). The resolution session must be convened within fifteen days of the Local Educational Agency ("LEA") receiving notice of the DPC. *See* 34 CFR § 300.510(a)(1). The session must include the parent and "the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the due process complaint" including "a representative of the public agency who has decision-making authority on behalf of the agency." *Id* at § 300.510(a)(1)(i).

Regarding the Parent's obligation to attend the resolution meeting, the governing statutes are clear: "[i]f the school district is unable to obtain the participation of the parent in the resolution meeting after reasonable efforts have been made (and documented), the school district may, at the

conclusion of the 30-day period, request that an impartial hearing officer dismiss the parents' due process complaint." 8 NYCRR § 200.5(j)(2)(vi)(a); *see also* 34 CFR 300.510(b)(4). Accordingly, DOE submits this motion to dismiss the Parent's DPC for failure to participate in a resolution meeting with the CSE despite reasonable efforts to hold one.

**Facts**

On Tuesday, July 2, 2023, the Parent filed, and the DOE received notice of DPC 277268. On Thursday, July 11, 2024, nine days after the DPC's filing, Kelly Agnello, the Resolution Case Manager ("RCM") for CSE 9, emailed the Parent to schedule a resolution meeting for Friday, July 12, 2024 at 1:00 pm, or the tenth day after the filing of the DPC. This email also asked if the resolution meeting's date and time worked for them. (DOE Ex 1-3). Shortly thereafter, the Parent's Counsel, Peter Albert of the Liberty and Freedom Legal Group, Ltd. ("LFLG"), sent an email to Ms. Agnello stating, "I would like to inform you that we will be attending the Resolution Meeting and will notify you of the Parent's attendance as well." (DOE Ex. 1-3) Mr. Albert further asked Ms. Agnello to "provide the names and titles of the participants from the DOE and the authorization they have to settle the various issues listed in the Due Process Complaint." (Id.) At 10:44 AM on the morning of Friday, July 12, 2024, Edward Lent, of the Brain Injury Rights Group emailed Ms. Agnello and Mariama Sandi, CSE 9 Chairperson, paradoxically claiming that the proposed resolution meeting "was not a mutually agreed date/time with the Parents" despite Mr. Albert's email *the day before* informing them that they would attend the proposed resolution meeting. (DOE Ex. 1-2) Mr. Lent also claimed that "the participants do not have decision making authority to resolve ALL of the issues raised in the Parent's Due Process Complaint, including entering into a Pendency Agreement, a Stipulation Agreement for the DOE to cover the costs of tuition at iBRAIN along with related services such as special transportation and nursing services,

where applicable." (Id.) Ms. Agnello emailed the Parent and parent's counsel on July 17, 2024 at approximately 10:30 am offering to reschedule the resolution meeting for either Tuesday July 23, 2024 at 1:00 pm or Monday, July 29, 2024 at 11:30 am. (DOE Ex. 1-1 → 1-2) Ms. Agnello also asked that if those dates did not work, that the Parent suggest alternatives dates. Ms. Agnello confirmed that a representative with decision-making authority on behalf of the DOE would be present at the meeting. (Id.)

Rather than confirm a date or propose alternatives, the Parent, through their Counsel, Erik Seidel (also of LFLG) waited until Thursday, July 18, 2024 and asked this Impartial Hearing Officer ("IHO") to begin the due process hearing timeline because fifteen days had passed since the DPC's filing and no resolution meeting had been convened. Counsel accused the CSE of only pretending to schedule a resolution meeting. (DOE Ex. 4) That evening, Parent's Counsel, Mr. Albert, replied to Ms. Agnello's email by adding representatives from the DOE's Office of the General Counsel and the Office of the Comptroller. He wrote that Ms. Agnello confirmation that an appropriate DOE representative would be at the resolution meeting was "doubtful." (Exh. 1-2). According to Mr. Albert, the "decision-making authority" must include being able to enter into a Pendency Agreement and being able to offer funding for tuition at the Student's private school, as well as special transportation and nursing services. Without a representative capable of offering every point of relief the Parent requested in the DPC, the Parent, through their counsel, refused to proceed with any resolution meeting.

Minutes later, Alexandra Shames, Deputy Director of the Special Education Litigation Unit, replied to Parent's Counsel explaining, "[n]owhere does law, regulation, or caselaw require the District to come to the meeting prepared to give parent everything parent seeks via the DPC." (DOE Ex. 2-1→2-2) Ms. Shames confirmed that the CSE representative at the resolution meeting

would have specific knowledge about the facts giving rise to the DPC and would have the resolution authority contemplated by statute to resolve the Parent's claims. (Id.) Ms. Shames reiterated that the DOE continued to be "prepared to meet with the parent to collaboratively address the parent's underlying concerns giving rise to the due process complaint in a resolution meeting." (Id.) The Parent's Counsel never responded to Ms. Agnello's request to provide any alternate dates or to confirm one of the two proffered dates.

Nevertheless, Ms. Agnello and Ms. Sandi appeared on Tuesday, July 23, 2024 and messaged the Parent, Mr. Albert, and a number of additional attorneys at Mr. Albert's firm, inviting them to please call in to the resolution meeting. Mr. Albert did so, along with Erik Seidel and Richa Raghute, all from Parent's Cousnel's firm. The CSE members asked the attorneys if the parents would be joining to discuss the underlying issues in the DPC. Mr. Albert responded that he "is the parent" and per his retainer with the parent, he has all decision-making rights for the student on parent's behalf. Mr. Seidel then informed the CSE members that absent any pendency discussions there were no other issues that were relevant to discuss. Mr. Albert then informed the CSE members that he was adjourning the meeting due to lack of pendency discussions/agreements. (DOE Ex. 3)

On July 29, 2024, the IHO scheduled a Pre-Hearing Conference ("PHC") for August 1, 2024 at 9:00 am. Prior to the August 1st, 2024 PHC, the DOE informed the parties of our anticipated motion to dismiss via email on August 24, 2024.

## Argument

Here, the CSE made reasonable efforts to have the Parent participate in a resolution meeting as envisioned by the IDEA and related statutes. The CSE sent emails in the Parent's native language offering a total of three dates and times to schedule a meeting. (DOE Exs. 1, 2). The DOE

also confirmed, in response to concerns from Parent's counsel, that its representative would have decision-making authority. (Id.)

Parent's Counsel erroneously claims that such authority must encompass authority to grant every point of relief the Parent seeks.. Nowhere in the law is there a requirement that the DOE representative must attend with a blank check to simply authorize funding for everything a Parent wants. Rather, the DOE representative must have specific knowledge of the facts giving rise to the DPC and the authority to resolve those claims. *See* 34 CFR § 300.510(a)(1)(i). The DOE confirmed that the representative at the meeting would have such knowledge and authority. (Exh. 1-1). Parent's Counsel argues that unless the DOE representative has the authority to agree to fund tuition, for example, to the Student's private school, they cannot resolve the Parent's claims. This position directly opposes the intent of the IDEA's resolution meeting requirement.

The IDEA "envisions the resolution period as a time for mediation and agreement, *not one-sided action." Bd. of Educ. of Yorktown Cent. School Dist. v. C.S.*, 990 F.3d 152, 155 (2d Cir. 2021). To that end, it "provides for a 'statutory 30-day resolution period once a due process complaint is filed' during which the DOE may remedy any alleged deficiencies in the IEP." *Polanco v. Porter*, 21-cv-10176 (JGK), 2023 WL 2242764, at *5 (S.D.N.Y. Feb. 27, 2023) (*quoting R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 187-88 (2d Cir. 2012)); *see Thomason v. Porter*, 21-cv-6713 (LJL), 2023 WL 1966207, at *8 (S.D.NY. Feb. 13, 2023). Additionally, "the 30-day resolution period is intended specifically to allow the school district to cure any defects identified with its proposed placement." *Polanco*, 2023 WL 2242764, at *6. The Second Circuit has opined that: "[t]he IDEA thus presents the resolution period as an interlude during which school district representatives may talk with the parents, and possibly satisfy the parents' concerns, all the while going to great lengths to protect parents' rights and their authority to proceed to a due process

hearing if they so choose." *Bd. of Educ. of Yorktown Cent. School Dist. v. C.S.*, 990 F.3d 152, 170

(2d Cir. 2021). Even so, the LEA may not unilaterally amend the IEP. *Id.*, at 173. The Second

Circuit has never framed, nor required, the resolution meeting to mandate the LEA

"unconditionally surrender" to the Parent and provide a Parent with everything sought in the DPC.

Rather, the resolution period is a window wherein the LEA may remedy and cure purported

deficiencies identified in the DPC; the failure thereof – from the Parent's vantage point – does not

render the resolution period insufficient.

In this matter, the DOE made clear that it is prepared to meet with the Parent for a resolution

meeting (Exh. 1-1), but the Parent, through their counsel, continues to refuse participation. The

DOE therefore requests that the IHO dismiss this DPC for Parent's failure to participate in a

resolution meeting despite reasonable efforts from the CSE to hold one. *See* 8 NYCRR §

200.5(j)(2)(vi)(a) *and* 34 CFR 300.510(b)(4).

Dated August 1, 2024

                                                            _/s/_____

                                                            Brian Gauthier

                                                            Agency Attorney
                                                            Special Education Unit
                                                            Office of the General Counsel
                                                            NYC Dept. of Education