# EXHIBIT B

**NYSED # 631752 - NYC #277155**

**FINDINGS OF FACT AND DECISION-Corrected**

| | |
|---|---|
| Case Number: | 277155 |
| Student's Name: | L█████ C█████ [1] |
| School District: | N.Y.C. Dept. of Ed., District #12 |
| | Service District #88 |
| Impartial Hearing Officer: | Kevin T. McGrath, Esq. |
| Date of Filing: | 07/02/2024 |
| Hearing Requested by: | Marlene Vasquez (Parent) |
| Dates of Hearing: | 09/05/2024 |
| | 09/18/2024 |
| Record Close Date: | 10/09/2024 |
| Date of Decision: | 10/09/2024 |

---

[1] Personally identifiable information is attached as Appendix A, "Redaction Identification Page," to this decision and must be removed prior to public distribution.

**Names and Titles of Persons Who Appeared on September 5, 2024**

### For the Student
Erik Seidel, Esq., Liberty & Freedom Legal Group
Caleb Asomugha, Deputy Director, International Academy for the Brain - witness

### For the New York City Department of Education
Augustus Balasubramaniam, Esq. Agency Attorney
Dorothy Pfieffer, School Psychologist - witness


**Names and Titles of Persons Who Appeared on September 18, 2024**

### For the Student
Erik Seidel, Esq., Liberty & Freedom Legal Group
Marlene Vasquez, parent - witness

### For the New York City Department of Education
Augustus Balasubramaniam, Esq. Agency Attorney

# BACKGROUND

On July 2, 2024, Parent filed a Due Process Complaint (DPC) alleging that the New York City Department of Education (DOE) failed to offer Student a free and appropriate public education (FAPE) for the 12-month extended 2024-2025 school year.[2] The DPC asserts the DOE failed to provide Student with a FAPE for the 2024-2025 school year when its Committee on Special Education (CSE) failed to create an Individualized Education Program (IEP) with an inappropriate class size recommendation, consider appropriate evaluative data; and the DOE failed to provide an appropriate school location.[3] Parent seeks an Order that the DOE reimburse/directly fund:

> (1) Student's tuition at a Private School, a program at a non-approved school within New York State for the education of students with disabilities, for the 12-month 2024-2025 school year along with the funding of related services of:
>> (a) Occupational Therapy (OT) - five (5) 60-minutes sessions per week,
>> (b) Physical Therapy (PT)-five (5) 60-minute sessions per week,
>> (c) Speech-Language Therapy (SLT)-four (4) 60-minute sessions per week in an individual setting and one (1) 60-minute session per week in a group setting,
>> (d) Vision Services (VES)-two (2) 60-minute sessions per week,
>> (e) Music Therapy (MT)-three 60-minute sessions per week in an individual setting and one (1) 60-minute session per week in a group setting, and
>> (f) Assistive Technology training (AT)-one 60-minute session per week;
>
> (2) transportation services from Transportation Agency; and
>
> (3) the following evaluations of Student, from providers selected by Parent, an independent psychological, neuropsychological, and education needs assessment.[4]

As detailed below, I find: (a) the DOE failed to meet its burden and failed to offer Student a FAPE for the 12-month 2024-2025 school year; (b) Private School offers Student specially designed instruction sufficient to meet Student's needs; and (c) the equities support Parent's requested relief.

# PROCEDURAL HISTORY

I was appointed the Impartial Hearing Officer (IHO) on July 12, 2024. The DOE did not hold a resolution meeting. A Due Process Response was served on July 23, 2024.[5] On July 18, 2024, Parent's Representative requested that the resolution period end after 15 days, pursuant to 34 CFR 300.510(b)(5) and 8 NYCRR 200.5(j)(2)(vi)(b), due to the DOE's alleged procedural defects in holding a resolution meeting.[6] The application was denied.[7] Additionally, on July 18, 2024 Parent's Representative requested a subpoena for DOE documents be issued.[8] After arguments on the subpoena, a decision was issued to clarify the scope and documents to be disclosed as part of the subpoena.[9] On July 30, 2024, the DOE filed a document titled "DOE

---

[2] Ex. A.
[3] *Id*.
[4] Ex. A.
[5] IHO Ex I.
[6] IHO Ex. II.
[7] IHO Ex. III.
[8] IHO Ex. II.
[9] IHO Ex. IV.

Opposition to Pendency."[10] A Prehearing Conference was held on August 2, 2024 and a Prehearing Conference Summary and Order was issued the same day.[11]

The DOE served a motion to dismiss the action on August 5, 2024.[12] A Pendency hearing was scheduled for August 6, 2024, but the Parent's Representative did not appear. As such, a decision on the Pendency request was reserved for further discussion at the due process hearing (DPH).[13]

On September 5, 2024, a DPH was conducted. The parties presented opening statements and arguments on the DOE motion to dismiss. The DOE presented 14 documents, and 12 were accepted into the record over the partial objection of Parent's Representative.[14] School Psychologist provided testimony evidence on behalf of the DOE. Parent's Representative presented 13 documents, which were accepted into the record without any objection from the DOE.[15] Private School Representative appeared to provide testimony evidence on behalf of Student.

The DPH continued on September 18, 2024 with Parent appearing to provide testimony evidence on Student's behalf and the DOE cross-examining the witness. The parties then presented closing arguments.

One (1) Order of Extension was issued.[16]

## JURISDICTION

The due process hearing was held, and a decision in this matter is being rendered pursuant to the Individuals with Disabilities Education Act (hereinafter, "IDEA"), 20 U.S.C. § 1400 *et seq.*, and its implementing regulations, 34 C.F.R. § 300 *et seq.*, and the New York State Education Law, Educ. Law § 4404 *et seq.*, and its implementing regulations, 8 NYCRR § 200.5 *et seq.*

---

[10] IHO Ex. V.

[11] IHO Ex. VI.

[12] IHO Ex. VII.

[13] Tr. 26-27.

[14] *See* Appendix B. Parent's Representative objected to Exhibits 3, 11, 12 and 13. Exhibit 13 as lacking any authentication or foundation for where the document was published. After arguments, Exhibit 13 was Denied from being accepted into the record. Tr. 46-47. The DOE withdrew its presentation of Exhibit 11 for consideration. Tr. 43. Otherwise, after arguments, Exhibits 1-10, 12 and 14 were accepted into the record. Tr. 47.

[15] *See* Appendix B.

[16] IHO Ex. VIII.

# FINDINGS OF FACT

After thoroughly reviewing the record, I make the following findings of fact and determinations.

Student was seven years old at the start of the 2024-2025 school year and placed by Parents at Private School. Student's eligibility for special education support and services is not disputed and the CSE has classified Student with a "Traumatic Brain Injury."[17] Additionally, Student has been diagnosed with Lennox Gastaut Syndrome, cerebral palsy, infantile spasms, hyperopia, astigmatism, exotropia, and cortical visual impairment (CVI).[18] Student's conditions cause them to be non-verbal and non-ambulatory and have severe impairments in: cognition; language; memory; attention; reasoning; abstract thinking; judgment' problem-solving; sensory, perceptual, and motor abilities; psychosocial behavior; physical functions; information processing; and speech.[19]

School Psychologist testified to the CSE meeting on June 5, 2024 where an IEP was created for Student (2024 IEP).[20] They possess a Master's degree and are Certified School Psychologist, National Certified School Psychologist Board Certified Behavior Analysts and NYS Licensed Behavior Analysts.[21] They have been employed by the DOE for 18 years and worked with a CSE for six years.[22] School Psychologist participated in the 2024 IEP meeting as the school psychologist and DOE district representative.[23] As the district representative, they were responsible for sharing the meeting, making sure all information about the IEP and all components of the IEP was reviewed and completed, making sure each member of the team had the opportunity to participate, and share their concerns; and finalizing the creation of the IEP document after the meeting.[24]

Parent also attended the 2024 IEP.[25] School Psychologist was unaware of Parent being uncooperative with the CSE or preventing Student from being assessed.[26] The IEP recommended Student's placement in a District 75 school with a ratio of 12 students to one (1) teacher and four (4) assistants (12:1:4).[27] They argue that the 2024 IEP team was duly constituted, considered the student's strengths, weaknesses, present levels of performance, and academic, medical, and social-emotional needs, was based on appropriate evaluative materials, and created an IEP that was

---

[17] Ex. D; Ex. I at ¶17-18.

[18] Ex. F at ¶2.

[19] Ex. F at ¶3-4.

[20] Tr. 66-67; Ex. 5; Ex. D.

[21] Ex. 14 at ¶2-5.

[22] Tr. 63 and 68; Ex. 14 at ¶2-5. The witness's training and professional experience were detailed in their affidavit and not challenged by the DOE. As such, I find that the witness is sufficiently qualified to provide professional opinions regarding the prior special education Student received, as well as Student's learning needs and abilities.

[23] Tr. 67; Ex. 14 at ¶7; Ex. 5.

[24] Tr. 67.

[25] Ex. F at ¶10; Ex. D; Ex. 5.

[26] Tr. 88-89.

[27] Ex. F at ¶11; Ex. D.

appropriate for Student.[28] School Psychologist was unaware when the last evaluation of Student was completed.[29]

School Psychologist opined that a District 75 Specialized School would provide Student "with a highly specialized rigorous individualized instruction support" and that the 12:1:4 class would "support students with severe and multiple disabilities with a variety of obstacles that include: limited language, academic, and independent function skills."[30] They admit to not working at the school, having visited it, or having first-hand knowledge of public school.[31] The school Psychologist was unaware that Public Schools are wheelchair accessible.[32] Neither the School Psychologist nor the CSE team is responsible for recommending a school placement.[33] School Psychologist opined that the 2024 IEP recommendation of a 12:1:4 classroom at a specialized school was appropriate to meet Student's needs within the least restrictive program.[34]

The 2024 IEP used Private School's evaluative data to create several sections of the IEP, including the present levels of performance and measurable annual goals.[35] Indeed, the 2024 IEP goals for Academics, SLT, OT, PT, VES, self-care and Paraprofessional are verbatim copied from the May 2, 2024 Private School "Report and Education Plan."[36] Parent disagreed with the 2024 IEP recommendations and argued Student should be placed in an 8:1:1 classroom.[37] Parent also objected to the DOE's failure to include music therapy from a certified provider as a required related service.[38] School Psychologist argues the 2024 IEP team considered Parent's request for an IEP recommendation for MT, but MT is not "part of the city's continuum of services."[39] School Psychologist opined that Student does not require therapy from a licensed music therapist to attain appropriate education progress and that special education, SLT, or OT therapy addresses the same deficits as MT.[40] The CSE did not recommend an Assistive technology device, because of comments that Student "prefers vocal language as [their] primary method of communication." School Psychologist believed it was "more appropriate to continue to develop vocal language for the student."[41] Despite Parent's request for Student to use an AT device, School Psychologist did not explain why an evaluation was not conducted beyond their inability to recall if a "form" was submitted for an AT evaluation.[42]

---

[28] Tr. 76-78; Ex. 14 at ¶12-13.
[29] Tr. 75-76.
[30] Ex. 14 at ¶11.
[31] Tr. 69-72.
[32] Tr. 71.
[33] Tr. 70-71.
[34] Ex. 14 at ¶23.
[35] Ex. D.
[36] Tr. 78-79; Compare Ex. B-54 to B-70 with Ex. D-23 to D-42.
[37] Tr. 132; Ex. F at ¶7.
[38] Tr. 134-135; Ex. F at ¶7.
[39] Tr. 84.
[40] Tr. 86-88; Ex. 14 at ¶21.
[41] Tr. 94.
[42] Tr. 94-95.

Regarding transportation services, the CSE is not involved in making recommendations, but the DOE has medical forms to be completed regarding transportation accommodations before the DOE reviews them.[43] The CSE only included transportation recommendations after a DOE physician had reviewed the request and consulted with a student's physician.[44]

On June 14, 2024, the DOE recommended Student's placement at Public School.[45] Parent received an email identifying Public School containing a phone number to contact.[46] Parent spoke with a DOE employee at Public School, who could not confirm the school had information about Student.[47] Additionally, the DOE employee reported the school was undergoing construction work and "half the school was closed, and they were splitting the school with another location."[48] Parent was given the name and number of another DOE employee to contact.[49]

On August 23, 2023 Parents sent the DOE a "Ten-Day Notice" objecting to the DOE's IEP recommendations and school placement designation and stating their intent to place Student at Private School.[50] Student was then enrolled at Private School for the 2024-2025 school year with Transportation Agency providing transportation for the school year.[51]

Private School

Private School Representative[52] testified to the curriculum and Student's progress at Private School. Private School Representative is the "Deputy Director" at Private School.[53] They possess a master's in divinity and education, with experience teaching mathematics, science, social studies, and as a special education teacher.[54] Private School Representative's responsibilities include "ensuring the implementation of students' IEPs, assisting and developing curriculum and academic programs, and supervising teachers and teacher assistants."[55]

Private School is a "private and highly specialized special education program" created for children who "suffer from acquired brain injuries or brain-based disorders."[56] Private School has an extended 12-month school year calendar and offers an extended school day from 8:30 am to 5:00 pm. Private School can accommodate students aged 5 to 21 and currently enrolls seven 6:1:1 classes and three 8:1:1 classes over two campuses.[57] Private School accepts students with Traumatic Brain Injury,

---

[43] Tr. 92.

[44] Tr. 92.

[45] Tr. 135-136; Ex. 10.

[46] Tr. 135-141.

[47] Tr. 136.

[48] Tr. 140-141.

[49] Tr. 141.

[50] Ex. F at ¶13; Ex. A-A.

[51] Ex. F at ¶12; Ex. A-E; Ex. A-F.

[52] The submitted documents and affidavits detail the academic and work experiences of Private School Representative. Given the extensive academic training and experiences of the witness in the field of special education, I find they qualify as an expert witness in the area.

[53] Tr. 101; Ex. G at ¶1.

[54] Ex. G at ¶2-3.

[55] Tr. 105-106; Ex. G at ¶1.

[56] Ex. G at ¶5.

[57] Ex. G at ¶5-6.

and all students require a 1:1 paraprofessional, with many also requiring a 1:1 nurse to address health needs.[58] Private School offers related services, including push-in and pull-out sessions, usually 60-minute sessions.[59] Student's teacher has a master's degree in education and the related service providers are NYS certified in their instruction areas.[60]

Private School Representative is familiar with Student from observing Student at the school.[61] Private School created an internal IEP for Student that is finalized by Private School Representative and based on the clinical recommendations of the providers.[62] Private School Representative meets with providers and staff to review the services offered by Private School.[63] They have a "Tuesday Huddle" to discuss students with the providers and at a meeting on Wednesday with teachers and assistants.[64] Private Schools also have "Grand rounds," which are panel conversations between teachers and providers to discuss students' progress.[65] Private School Representative's testimony clearly established that they understood Student's learning needs and that Private School developed instructions to address Student's individual needs.[66] They opined that Student requires a "small 8:1:1 class, which minimized distractions."[67] Private School provides Student with an 8:1:1 class, with students of similar needs and abilities and related services of five (5) sessions per week of OT, five (5) sessions per week of PT, four (4) sessions per week of SLT, two (2) sessions per week of VES, one (1) sessions per week of AT and three (3) sessions per week of MT.[68] Private School Representative disagreed with School Psychologist's opinions and argued that a District 75 school placement and a 12:1:4 classroom was inappropriate for Student because "D75 schools tend to have a class composition made up of students who are not similarly disabled as [Student]."[69]

Private School conducts quarterly evaluations of students.[70] Further, the testimony from Private School Representative and Parents clearly established Student made academic Progress as a result of Private School's instruction.[71]

---

[58] Ex. G at ¶5-6.
[59] Ex. G at ¶8.
[60] Tr. 115-116.
[61] Tr. 104.
[62] Tr. 106-107 and 113-114; Ex B; Ex. C.
[63] Tr. 106-107.
[64] Tr. 106-107.
[65] Tr. 107.
[66] Ex. G at page 3 ¶1-4; Ex. B; Ex. C. The affidavit contained a typo where the paragraph numbering restarted at 1 on page 3.
[67] Ex. G at page 4 ¶5.
[68] Ex. G at page 4 ¶5.
[69] Ex. G at page 4 ¶8.
[70] Tr. 107.
[71] Tr. 150-152; Ex. B; Ex. C.

Parent executed an enrollment contract with Private School for the 2024-2025 school year.[72] Tuition at Private School has a base tuition of $213,000.00 and a charge of $113,779.40 for Supplemental Tuition, which includes the related services provided to Student.[73] Parent paid a $100 deposit towards the 2024-2025 school year tuition.[74] The enrollment contract contains a provision allowing for the release from the agreement if Parent accepts an appropriate public school placement.[75] Parent remains financially responsible for Private School tuition regardless of the outcome of a filing for due process.[76]

Parent also executed a contract with Transportation Agency for transportation between Student's home and Private School. Transportation Agency charges $220,993.00[77] and supplies air conditioning and a regular-size wheelchair-accessible vehicle with a trip of no more than 90 minutes each way.[78] Parent is financially responsible for transportation fees, even on days where Student is not transported to school.[79] The contract contains a provision allowing for the release from the agreement if Parent accepts transportation from the DOE.[80] Parent remains financially responsible for the Transportation Agency's fees regardless of the outcome of a filing for due process.[81]

Credibility

I determine the following upon considering the evidence, including all admitted documents and witness testimony. In accepting the documents, I found them all relevant and represented the facts for which they were offered. The weight I afforded them will be reflected in the analysis. As for the witnesses, I found no reason to doubt the statement's veracity or the relevant opinion's earnestness, and therefore, I find all the witnesses and their testimonies credible. The relative weight I afford them will likewise be reflected in the analysis.

## CONCLUSIONS OF LAW AND ANALYSIS

I hold that (1) the DOE motion to dismiss is DENIED; (2) Parent's request for Pendency is GRANTED; and (3) the DOE denied Student a FAPE for the 2024-2025 school year and is ordered to fund Student's tuition at Private School, as detailed below.

---

[72] Ex. F at ¶12; Ex. A-E.
[73] Ex. A-E at ¶4-7.
[74] Tr. 146-147; Ex. A-E at ¶4-7.
[75] Ex. A-E at ¶10-11.
[76] Ex. A-E at ¶8-9.
[77] Ex. A-E at ¶6.
[78] Ex. A-F at ¶3-4.
[79] Ex. A-F at ¶6.
[80] Ex. A-F at ¶6.
[81] Ex. A-F at ¶6.

1. DOE Motion to Dismiss

	The DOE seeks dismissal of the action, pursuant to 8 NYCRR §200.5(j)(2)(vi)(a) and 34 CFR §300.510(b)(34), due to Parent's alleged failure to participate in a resolution meeting.[82] The DOE asserts that the resolution meeting is "mandatory" and that the failure of Parent to attend the resolution meeting allows for DOE to seek dismissal of the DPC.[83] In support of the motion, DOE Representative submitted various emails attempting to schedule a meeting, and Parent's Representative refused to attend unless the DOE had a representative present with "decision-making authority" to agree to funding requests.[84] In opposition, Parent's Representative argues that they did not intentionally refuse to appear at a resolution meeting but rather cite 34 CFR §300.510(a)(4) to argue they were not objected to attending the meeting because the DOE did not designate a representative with adequate settlement authority.[85]

	The DOE has failed to demonstrate Parent willfully and intentionally refused to appear at a resolution meeting. The submitted emails indicate that the parties disagreed with the intent and obligations of the FAPE. The parties engaged in a series of email discussions on their arguments. Accordingly, There was no willful or initial refusal from Parent to attend the resolution matter. Therefore, the DOE's motion to dismiss is denied.

2. Request for Pendency

	Parent's request for an order granting Pendency is GRANTED.

	It is uncontested that the District is required to furnish educational services to students attending non-public schools. The District must also provide education related services to these same students which are recommended in its Individualized Education Program ("IEP") or Individualized Education Service Program ("IESP").[86] When a claim is filed on behalf of Student, they are entitled to pendency services.[87]

	A pendency inquiry focuses on identifying the student's then-current educational placement.[88] To identify the "then current educational placement", a court typically looks at the placement described in the student's most recently implemented IEP.[89]

	Parent's representative asserted the pendency claim in the action is based on a Finding of Fact and Decision, dated July 3, 2023 (2023 FOFD), that directs the DOE directly fund the costs of "Full Tuition for the 22/23 SY, starting in November 2022, in addition to the costs of related services, 1:1 private duty nursing services, and a 1:1 paraprofessional, as needed;" and for the DOE directly fund special education transportation."[90]

---

[82] IHO Ex. VII.

[83] IHO Ex. VII. It is noted that the DOE does not reconcile their claimed right to dismiss the complaint for a parent's failure to appear at a meeting that Congress intended to be "mandatory," with the DOE's failure to conduct the resolution meeting in the majority of cases filed against the DOE.

[84] IHO Ex. VII.

[85] Tr. 53-54.

[86] *NYS Educ Law* §3602(c)(2).

[87] *Id.*, *NYS Educ Law* §4400.

[88] *Mackey v. Bd. Of Educ.*, 386 F.3d 158, 163 (2d Cir. 2004), *citing Zivi D.* 694 F.2nd at 906.

[89] *Mackey, supra* at 163, *citing Johnson v. Special Education Hearing Office*, 287 F.3d 1176, 1180 (9th Cir. 2002).

[90] Ex. A.

The DOE submitted arguments against the award of Pendency by claiming that Parent needs to demonstrate student is receiving the same level of services as in the 2023 FOFD, that the costs have increased exponentially; and that the DOE is willing to provide transportation services.[91] There is no dispute that Private Schools and Transportation Agency were the current education placement for Students. While the DOE realized objections, there was no evidence present at the DPH to establish facts to support the DOE's claims. Firstly, the testimony from Private School Representative and Private School does not show any change in the level of services being provided to Student. Further, no evidence was presented to show a change in cost from the prior school year to what was requested by Parent. Finally, the DOE did not present any evidence to show that transportation services were offered at the start of the school year. The DOE transpiration letter was sent on July 11, 2024, after the start of the 12-month 2024-2025 school year. Therefore, the DOE has not met its burden of proof or persuasive on this issue or demonstrated a change in the Pendency placement to support a denial of pendency.

Accordingly, Parent's request for an order of Pendency is GRANTED with services contained in the 2023 FOFD.

3.  <u>FAPE for the 2024-2025 school year</u>

I hold that the DOE failed to establish Student was provided a FAPE; Private School was an appropriate placement for Student; and the equities in the action favor Parent.

A school district must pay for the cost of a student's tuition at a private school if the *Burlington/Carter's* three-prong test is satisfied, in that: (1) the DOE denied the student a FAPE; (2) the private placement is appropriate; and (3) the equities favor an order of tuition.[92] In New York, school districts have the burden of proof, including the burden of persuasion and burden of production, in IDEA due process hearings, except that a parent or person in a parental relationship seeking tuition reimbursement for a unilateral parental placement has the burden of persuasion and burden of production on the appropriateness of such placement.[93]

A FAPE consists of specialized education and related services designed to meet a student's unique needs, provided in conformity with a comprehensive written IEP.[94] When the local education district complies with the procedural requirements outlined in the IDEA, and when the IEP developed through those procedures is reasonably calculated to enable the student to receive educational benefits, a FAPE has been established.[95] To meet its substantive FAPE obligations, a school district must offer a student an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."[96] The due process complaint may address "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education."[97]

---

[91] IHO Ex. V.

[92] *See Sch. Comm. of Burlington v. Dept. of Educ.*, 471 U.S. 359, 367 (1985); *Florence County Sch. Dist. Four v. Carter*, 510 US 7, 12-15 (1993).

[93] NY Educ. Law § 4404(1)(c).

[94] *See* 34 C.F.R. § 300.13.

[95] *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 US 176, 206-207 (1982).

[96] *Endrew F. v. Douglas County Sch. Dist. RE-1*, 580 US 386 (2017).

[97] 20 U.S.C. § 1415(b)(6)(A).

Prong I

As detailed herein, the DOE did not establish that a FAPE was provided, under the Prong I standard, to Student for the 2023-2024 school year.

The DOE argues that Student was provided a FAPE for the 2023-2024 school year because the IEP was properly constituted, that they had sufficient evaluative data and made an appropriate placement recommendation for Student. The DOE failed to offer Student an educational program reasonably calculated to offer FAPE for the 2024-2025 school year. The DOE has failed to show that the placement at Public School and in a 12:1:1 special education class at a District 75 school was appropriate for Student.

The DOE is not required to show that it attempted to "maximize" the potential of students with disabilities under Prong 1.[98] However, the IEP, among other requirements, must establish annual goals designed to meet the student's needs, resulting from the student's disability, and must provide appropriate special education and services.[99] "Appropriateness" means that the IEP accurately reflects the results of evaluations to identify the student's needs,[100] offers sufficient special education services,[101] and is properly implemented.[102] To demonstrate a FAPE, the DOE must offer "an IEP that is 'likely to produce progress, not regression,' and ... affords the student an opportunity greater than mere 'trivial advancement.'"[103] In addition, the IEP must be "reasonably calculated to provide some 'meaningful' benefit."[104]

The DOE failed to establish that the 2024 IEP was designed to meet Student's individual needs as they impacted Student's learning ability. The DOE proposes placing Student in a 12:1:4 setting for instruction in academic subjects. However, Student is currently placed at Private School in an 8:1:1 classroom with significant individual support. The record fails to establish that this student could maintain academic progress in the larger group setting. Given the increase in the number of students, teachers and support professionals in the larger class at Public School, the DOE fails to show Student would remain "focused" so they could meaningfully participate in their academic growth. Private School Representative's testimony shows how Student requires direct support and a small class size because of their individual learning challenges.

---

[98] *Rowley*, 458 US at 189, 199; *Grim v Rhinebeck Cent.l Sch. Dist.*, 346 F3d at 377, 379; *Walczak v. Florida Union Free Sch. Dist.*, 142 F3d 119, 132 (2d Cir. 1998) (an "appropriate" education is "not one that provides everything that might be thought desirable by loving parents").

[99] *See generally*, 34 CFR § 300.320(a) and 8 NYCRR § 200.4(d)(2).

[100] *See* 34 C.F.R. § 300.320(a)(1); 8 NYCRR 200.4(d)(2)(i); *Tarlowe v. Dept. of Educ.*, 2008 WL 2736027, at 6 (SDNY July 3, 2008), establishes annual goals related to those needs.

[101] *See* 34 C.F.R. § 300.320(a)(4); 8 NYCRR 200.4(d)(2)(v); *see Application of the Dept. of Educ.,* Appeal No. 07-018; *Application of a Child with a Disability*, Appeal No. 06-059; *Application of the Dept. of Educ.*, Appeal No. 06-029; *Application of a Child with a Disability*, Appeal No. 04-046; *Application of a Child with a Disability*, Appeal No. 02-014; *Application of a Child with a Disability*, Appeal No. 01-095; *Application of a Child Suspected of Having a Disability*, Appeal No. 93-9.

[102] *See* 8 NYCRR 200.4(e)(7); *Application of a Child with a Disability*, Appeal No. 08-087.

[103] *Cerra v. Pawling Cent. Sch. Dist.*, 427 F3d 186, 195 (2d Cir. 2005), quoting *Walczak*, 142 F3d at 130.

[104] *Mrs. B. v. Milford Bd. of Educ.*, 103 F3d 1114, 1120 (2d Cir. 1997); *see Rowley*, 458 US at 192.

The DOE failed to demonstrate they provided a placement capable of implementing the 2024 IEP. The U.S. Court of Appeals, Second Circuit, has held that a parent can challenge the placement location if the placement school is "facially deficient" and "cannot satisfy the IEP's requirements."[105] Moreover, the testimony of Parent demonstrates that Public School did not have any information about Student, was aware of Student's needs, or if it could provide Student with a placement in light of construction work closing "half" the school. The DOE failed to present any evidence to refute these allegations. School Psychologist could not provide any evidence or details regarding Public School, the services that would be offered, or even confirm if the school was wheelchair accessible. The DOE offered no other evidence regarding their proposed placement. Accordingly, the DOE failed to meet its burden of proof on this issue or demonstrate Public School could implement the 2024 IEP.

Regarding Transportation services, the DOE failed to demonstrate that they provide appropriate transportation for Student. The DOE does not challenge that it is required to provide transpiration and argues it offered proper transportation.[106] The DOE also objects to the Transportation Agency contract requiring payment on days when Student does not use the services. The DOE only sent a notice regarding transpiration on July 11, 2024, after the start of the school year. As such, without transportation arranged before the school year, it was reasonable for Parent to unilaterally make transportation arrangements. Moreover, despite the DOE objections, they do not show equitable grounds to reduce the requested award for transportation services.

As detailed above, the evidence demonstrates that Student was denied a FAPE for the 2023-2024 school year.

Prong II

As detailed herein, Parent sufficiently established that Private School was a proper placement for Student.

A private school placement must be "proper under the Act."[107] This means the Private School must offer an educational program that meets students' special education needs.[108] A parent seeking tuition reimbursement has the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate.[109] When determining whether a unilateral placement is appropriate, the issue turns to whether the placement is "reasonably calculated to enable the child to receive educational benefits."[110] A private placement is appropriate if it provides instruction designed to meet a student's unique needs.[111] The parent must also demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a

---

[105] *See M.O. v. N.Y.C. Dept. of Educ.*, 793 F.3d 236, 244 (2d Cir 2015); *see also E.B. v NY City Dept. of Educ.*, 2016 US Dist LEXIS 90311, at 17 (SDNY 2016).
[106] Ex. 12.
[107] *Carter*, 510 US at 12, 15; *Burlington*, 471 US at 370.
[108] *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F3d 105, 112, 115 (2d Cir. 2007); *Walczak*, 142 F3d at 129 (2d Cir. 1998).
[109] *Gagliardo*, 489 F3d at 112 ("Subject to certain limited exceptions, 'the same considerations and criteria that apply in determining whether the [s]chool [d]istrict's placement is appropriate should be considered in determining the appropriateness of the parents' placement."; *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F3d 356, 364 (2d Cir. 2006).
[110] *Frank G.*, 459 F3d at 364; *see Gagliardo*, 489 F3d at 115.
[111] 20 U.S.C. § 1401(29); Educ. Law § 4401(1); 34 C.F.R. § 300.39(a)(1); 8 NYCRR § 200.1(ww); *Hardison v. Bd. Of Educ. of the Oneonta City Sch. Dist.*, 773 F3d 372, 386 (2d Cir. 2014).

student with a disability, supported by such services as are necessary to permit the child to benefit from instruction.[112]

Taken as a whole, the testimony and documentary evidence show the Private School meets the *Frank G.* standard and "provides educational instruction specially designed to meet the unique needs" to Student that will enable them to make progress. The evidence demonstrates the Private School is an appropriate placement because they: (1) have hired specially trained teachers to educate students with special education needs; (2) provide Student with small classroom instruction with 1:1 intervention to support Student; (3) individualizes instruction for Student in education instruction; and (4) have shown Student is making objectively established progress.

Private School provides education services to address the individual needs of Student. Specifically, Private School Representative and Parent have demonstrated that Student is progressing academically. Further, the DOE did not establish any evidence to dispute the claims that Student was making progress.

Accordingly, I hold that Parent has met their burden in proving that Private School offered an educational program that met Student's needs under the *Burlington/Carter* Prong II standard.

Prong III

As detailed herein, the equities favor Parent under the third *Burlington/Carter* standard.

Under the third *Burlington/Carter* prong, courts consider "equitable factors" relevant to an order of tuition.[113] "[A] major consideration in deciding whether the third factor is satisfied is whether the parents have cooperated with the [DOE] throughout the process to ensure their child receive[s] a FAPE."[114] Specifically, equitable considerations include a parent's participation in IEP meetings, visits to the proposed school placements, and notifying the DOE about the unilateral placement decision.[115]

In this matter, Parent attended the 2024 IEP meetings. They discussed Student's education plan, their concerns about the school placement, and objections to Public School.[116] Parent timely provided the DOE with their concerns about the DOE's failure to offer Student a FAPE in the Ten-Day Notice.[117] Furthermore, the DOE was timely notified of Parent's intention to place Student at Private School unilaterally.[118]

---

[112] *Gagliardo*, 489 F3d at 112, citing *Frank G.*, 459 F3d at 364-65.
[113] *Gagliardo*, 489 F3d at 112.
[114] *Bettinger v. N.Y.C Bd. Of Educ.*, 2007 WL 4208560, at 6 (SDNY 2007).
[115] *See D.A. v. N.Y.C. Dept. of Educ.*, 769 F Supp 2d 403, 419-20 (SDNY 2011).
[116] Ex. J at ¶5; Ex. B.
[117] Ex. J at ¶5; Ex. B.
[118] *Id*.

Parent seeks reimbursement and direct funding for their private school tuition costs. This is an available remedy under the IDEA[119] and permitted without showing financial hardship.[120] Parent signed a contract with Private School for the 2024-2025 school year.[121] Parent remains liable for all tuition and related services if a claim under the IDEA is unsuccessful.[122] The record supports the DOE's direct funding of the unpaid portion of Private School's tuition. I find the costs associated with Private School, including tuition, are reasonable. Moreover, I hold that the evidence establishes that Parent cooperated with the DOE's efforts to develop IEPs and recommendations.[123]

Regarding transportation services, the DOE did not present any equitable grounds to support a reduction of the fees charged by the Transportation Agency.

Accordingly, the equities favor Parent, without any grounds to reduce any award.

**ORDER**

NOW, THEREFORE, BASED ON THE ABOVE FINDINGS OF FACT, IT IS HEREBY **ORDERED THAT**:

(1) The DOE motion to dismiss the DPC is DENIED; and

**IT IS FURTHER ORDERED THAT:**

(2) Parent's request for an Order of Pendency is GRANTED. The DOE shall fund Student's tuition at Private School and transportation from Transportation Agency commencing from the date the DPC was filed.

**IT IS FURTHER ORDERED THAT:**

(3) Parent's request for tuition reimbursement/direct funding for Student's unilateral placement at Private School is GRANTED for the 12-month extended 2024-2025 school year. The DOE shall reimburse Parent for any out-of-pocket expenses paid to Private School for tuition and supplemental tuition. The DOE shall also directly pay to Private School the full cost of tuition and related services for any outstanding balance owed for the

---

[119] *See Mr. and Mrs. A. v. New York City Dept. of Educ.*, 769 F Supp 2d 403, 406 (SDNY 2011) (Parents may seek direct funding in the instance in which, "due to a lack of financial resources, [parents of a student with a disability] have not made tuition payments but are legally obligated to do so").

[120] *See Cohen v. N.Y. City Dept of Educ*, 2023 U.S. Dist. LEXIS 171815 (SDNY Sept. 26, 2023).("Plaintiffs were not required to establish financial hardship to seek direct retrospective payment—after the district failed to provide M.C. with a FAPE for the 2018-2019 school year—because such a burden would contradict the IDEA's core purpose of "ensur[ing] that all children with disabilities have available to them a free appropriate public education[.]" 20 U.S.C. § 1400(d)(1)(A). To require parents to fund their children's education in the first instance, unless they demonstrate an inability to pay—as the SRO did here—skews the equities underlying the IDEA and cases applying that law. Direct payment to the school simply requires the DOE to belatedly fund expenses that it was obligated to pay all along. *E.M.*, 758 F.3d at 453. Thus, where, as here, a private school is willing to enroll the student and the risk that it will take years to obtain payment, parents who satisfy the Burlington factors have a right to retroactive direct tuition payment. *See Mr. & Mrs. A.*, 769 F Supp 2d at 428.").

[121] Ex. J at ¶7-9; Ex. D.

[122] Ex. J at ¶7-9; Ex. D.

[123] *See M.H. v. N.Y.C. Dept. of Educ.*, 685 F3d 217, 254 (2d Cir. 2012); *see also C.F. ex rel. R.F. v. N.Y.C. Dept. of Educ.*, 746 F3d 68, 82 (2d Cir. 2014).

12-month extended 2024-2025 school year in a combined amount not to exceed $213,000.00 for tuition and $113,779.40 for "supplemental tuition." Payment shall be made within 35 days of receipt of the invoice from Private School or Parents; and

(4) Parent's request for reimbursement/direct funding for Student's unilateral placement with Transportation Agency is GRANTED for the 12-month extended 2024-2025 school year. The DOE shall reimburse Parent for any out-of-pocket expenses paid to Transportation Agency for services provided to Student. The DOE shall also directly pay Transporation Agency the full cost of transportation services for any outstanding balance owed for the 12-month extended 2024-2025 school year in a combined amount not to exceed $220,993.00. Payment shall be made within 35 days of receipt of the invoice from Transportation Agency or Parent.

**So Ordered.**

*Kevin T. McGrath*                                                    Dated: October 9, 2024

Kevin T. McGrath, Esq. (signed electronically)
Impartial Hearing Officer

Findings of Facts and Decision
Case # 277155                                                                                                                                 15

# NOTICE OF RIGHT TO APPEAL

Within 40 days of the date of this decision, the Parents and/or the Public School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

## APPENDIX A – REDACTION IDENTIFICATION PAGE

| Redacted Information | Term Used In FOFD |
|---|---|
| L▆▆ C▆ | Student |
| ▆▆/2017 | Date of Birth |
| ▆▆▆519 | Student's I.D. Number (OSIS) |
| Marlene Vasquez | Parent #1 |
| Augustus K Balasubramaniam | DOE Representative |
| Erik Siedel | Parent's Representative |
| International Academy for the Brain (iBRAIN) | Private School |
| Sisters Travel and Transportation Services, LLC | Transportation Agency |
| Caleb Asomugha | Private School Representative |
| Dorothy Pfieffer | School Psychologist |
| X186 at 10x306: P.S. 306 | Public School |

## APPENDIX B – DOCUMENTATION ENTERED INTO THE RECORD

### District Exhibits

| Exhibit | Title | Date | Pages |
|---|---|---|---|
| 1 | Due Process Complaint | 07/02/2024 | 50 |
| 2 | Prior Written Notice | 06/14/2024 | 6 |
| 3 | School Placement Letter | 06/13/2024 | 2 |
| 4 | Individualized Education Program | 06/05/2024 | 53 |
| 5 | Attendance Page | 06/05/2024 | 1 |
| 6 | iBrain IEP | 05/02/2024 | 77 |
| 7 | Quarterly Progress Report | 04/02/2024 | 24 |
| 8 | Quarterly Progress Report | 01/05/2024 | 24 |
| 9 | Quarterly Progress Report | 10/06/2023 | 28 |
| 10 | School Location Letter (SLL) | 06/14/2024 | 3 |
| 11 | ~~Skilled Nursing Referral Form~~ Withdrawn | 06/04/2024 | 2 |
| 12 | Office of Pupil Transportation Letter | 07/11/2024 | 1 |
| 13 | ~~IBrain about Us~~ – Denied admission | Undated | 11 |
| 14 | Affidavit of Dorothy Pfieffer | Undated | 6 |

### Parents' Exhibits

| Exhibit | Title | Date | Pages |
|---|---|---|---|
| A | Due Process Complaint | 07/02/2024 | 49 |
| A-A | Ten Day Notice | 06/14/2024 | 2 |
| A-B | Pendency Implementation Form | 07/02/2024 | 1 |
| A-C | FOFD IH#244571 | 07/03/2023 | 15 |
| A-D | Order of Pendency | Undated | 2 |
| A-E | iBrain Enrollment Contract | 06/21/2024 | 6 |
| A-F | School Transportation Agreement | 06/21/2024 | 6 |
| B | iBrain Education Plan | 05/02/2024 | 76 |
| C | iBrain Education Plan | 06/13/2024 | 76 |
| D | Individualized Education Program for L█████ C█████ 2024-25 | 06/05/2024 | 53 |
| E | Medication Administration form | 07/30/2024 | 21 |
| F | Affidavit of Marlene Vasquez – Parent | Undated | 3 |
| G | Affidavit of Caleb Asomugha – Deputy Director of Special Education at iBrain | Undated | 5 |

### IHO Exhibits

| Exhibit | Title | Date | Pages |
|---|---|---|---|
| I | Due Process Response | 07/23/2024 | 17 |
| II | Parent email request to end resolution and for subpoena | 07/18/2024 | 89 |
| III | IHO order re: denying end of resolution period | 07/26/2024 | 11 |
| IV | IHO order re: subpoena request from Parent | 08/07/2024 | 3 |
| V | DOE Statement in Opposition to Pendency | 07/30/2024 | 11 |
| VI | Prehearing Conference Summary and Order | 08/02/2024 | 4 |
| VII | DOE Motion to Dismiss | 08/05/2024 | 25 |
| VIII | Order of Extension | 09/05/2024 | 1 |