# EXHIBIT F

CASE NUMBER: 631729 - NYC: 277132

## **FINDINGS OF FACT AND DECISION**

| | |
|---|---|
| Case Number: | 277132 |
| Student's Name[1]: | M⬛ B⬛ ("Student") |
| Date of Birth: | ⬛ 2009 |
| School District: | N.Y.C. Dept. of Ed., District # 02 |
| Hearing Requested by: | Marilyn Beckford ("Parent") |
| Request Date/Date Complaint Filed: | July 2, 2024 |
| Date(s) of Hearing: | August 22, 2024 |
| Actual Record Closed Date: | October 12, 2024 |
| Date of Decision: | October 14, 2024 |
| Time Sensitive | No |
| Hearing Officer: | Robin Levin, Esq. |

---

[1] Personally identifiable information is attached as Appendix B, "Redaction Identification Page," to this decision and must be removed prior to public distribution.

Hearing Officer's Findings of Fact and Decision
Case No. 277132

_____

**NAMES AND TITLES OF PERSONS WHO APPEARED ON AUGUST 22, 2024**

For the Student:
Lisa Eastwood, Esq. ("Parent's Attorney")
Marilyn Beckford ("Parent")
Caleb Asomugha ("Deputy Director of Special Education")

For the Department of Education:
Lance Shopowich, Esq. ("DOE Attorney")
Susan Cuthbert ("DOE Special Education Teacher")

Hearing Officer's Findings of Fact and Decision
Case No. 277132

## INTRODUCTION

      This is a decision rendered after a due process hearing ("DPH" or "hearing") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 *et seq.*, and its implementing regulations, 34 C.F.R. §300 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and the New York State Education Law, Educ. Law Article 89 §4404 *et seq.*, and its implementing regulations, 8 NYCRR §200.5 *et seq.*[2]

      This case concerns Student, a fourteen-year-old, who is classified by the New York City Department of Education ("DOE" or "District") as a student with a Traumatic Brain Injury.[3] On July 2, 2024, the Parent, through the Parent's Attorney, filed a Due Process Complaint ("DPC") against the DOE.[4] In the DPC, the Parent alleges that the DOE failed to offer the Student a Free Appropriate Public Education ("FAPE") for the 12-month 2024-2025 school year.[5] Therefore, the Parent unilaterally placed the Student in a private school ("Private School") for the 2024-2025 school year.[6] The Parent argues that the Private School is an appropriate placement for the Student.[7] By way of relief, the Parent seeks an award of direct tuition funding for the Student's attendance at the Private School for the 2024-2025 school year as well as funding for private specialized transportation services.[8] In addition, the Parent seeks funding for an independent neuropsychological evaluation for the Student.[9]

      As discussed below, I find that the DOE failed to provide the Student a FAPE for the 2024-2025 school year. I find that the Private School offered the Student specially designed instruction sufficient to meet the Student's needs, and the equities support the Parent's request for direct payment of the tuition to the Private School in full. In addition, I find that the Student is entitled to specialized transportation services and the DOE shall fund an independent neuropsychological evaluation of the Student.

## PROCEDURAL HISTORY AND POSITIONS OF THE PARTIES

      On July 9, 2024, I was appointed as the Impartial Hearing Officer ("IHO"). On July 30, 2024, the parties appeared virtually for a pendency hearing and a pre-hearing conference. On August, 2, 2024, the DOE filed a Motion to Dismiss alleging that the Parent's failed to participate in a resolution meeting.[10] On August 5, 2024, both parties sent proposed document subpoenas and

---

[2] Exhibits will be referred to as "Ex." followed by lettered designations for Parents' Exhibits, numbered designations for DOE's Exhibits, and uppercase roman numeral designations for Impartial Hearing Officer's Exhibits. Exhibit designations will be followed by the page numbers as needed and appropriate. For example, Parents' Exhibit A, page 1, will be referred to as (Ex. A-1). Transcripts will be referred to as "Tr." followed by the page number(s) within the transcript as needed.
[3] Ex. 1-1.
[4] Ex. A.
[5] *Id.* It is uncontested that the Student requires an extended school year, and therefore, any discussion of a "school year" refers to the 12-month school year herein.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] Ex. 11. The Parent's Attorney submitted Opposition to the DOE's Motion to Dismiss on August 20, 2024, which is in evidence as IHO Ex. I. The DOE's Motion to Dismiss is denied in its entirety. I find that the record lacks sufficient

the DOE Attorney also submitted a proposed witness subpoena for the Parent to appear at the hearing.[11] On August 9, 2024, I sent the parties an email denying their subpoena requests.[12] Subsequently, on August 20, 2024, I issued an Order on Pendency.[13]

A virtual hearing was held on August 22, 2024. It was a closed hearing. The Parent was present and represented by the Parent's Attorney. The DOE Attorney was also present. The DOE Attorney submitted 14 exhibits which were admitted into evidence.[14] The Parent's Attorney submitted 9 exhibits which were admitted into evidence.[15] Both parties gave opening statements. The DOE Attorney called one witness to testify, the DOE Special Education Teacher via affidavit and at the hearing.[16] The Parent's Attorney called two witnesses: the Deputy Director of Special Education at the Private School and the Parent. The Parent's witnesses testified via affidavit and at the hearing.[17] The case was adjourned to allow the parties to submit written closing briefs after receipt and review of the hearing transcript. The DOE and the Parent submitted written closing briefs which were admitted into evidence as IHO Exhibit III and IHO Exhibit IV respectively. The record was closed on October 12, 2024.

The DOE took the position that the DOE offered the Student a FAPE for the 2024-2025 school year by creating an appropriate IEP for the Student.[18] The DOE Attorney argued that the DOE cured the procedural violation of not sending the Parent Prior Written Notice and School Location Letter by sending the Parent those documents on July 1, 2024.[19] The DOE also argued that the Parent failed to meet her burden to show that the Private School is appropriate for the Student and the equities favor the DOE.[20] In the Parent's closing brief, the Parent took the position that the DOE failed to provide the Student a FAPE for the 2024-2025 school year.[21] The Parent's Attorney argued that the unilateral placement at the Private School is appropriate for the Student, and that the equities support an award of direct tuition funding including the cost of private specialized transportation.[22]

## FINDINGS OF FACT

After a full review of the hearing record, I make the following findings of fact and determinations. I base the following on the record generated at the hearing.

---

evidence to demonstrate that the Parent failed to participate in a resolution meeting. On the contrary, the evidence shows that the Parent, through the Parent's Attorney, sought relief in federal court related to similar claims that the DOE was not complying with the statutory requirements related to holding a resolution meeting, (IHO Ex. I).
[11] IHO Ex. II-2-17.
[12] IHO Ex. II-1. All of the document subpoenas were overly broad and sought information beyond the scope of the issues pled in the Parent's DPC. In addition, there was no need for the witness subpoena since the Parent was already planning to testify in this matter.
[13] See Order on Pendency dated August 20, 2024.
[14] See DOE's Ex. 1 to 14. A detailed list of the admitted exhibits is attached as Appendix A, "Documentation Entered Into the Record," to this decision.
[15] See Parent's Exhibits A to I.
[16] Ex. 13; Tr. 62-92.
[17] Ex. H; Ex. I; Tr. 95-166.
[18] IHO Ex. III.
[19] Id.
[20] Id.
[21] IHO Ex. IV.
[22] Id.

The Student is currently fourteen years old and has been known to the District for many years. The Student is diagnosed with Pallister-Hall Syndrome and Cortical Visual Impairment.[23] He suffers from a brain injury resulting in severe impairments in the following areas: cognition, language, memory, attention, reasoning, abstract thinking, judgment, problem solving, sensory, perceptual and motor abilities, psychosocial behavior, physical functions, information processing and speech."[24] The Student is non-verbal, non-ambulatory, and has intensive management needs due to the severity of his brain injury.[25] On a daily basis, the Student "has difficulties with self-care tasks, grasping and manipulating objects, coordination and movement, and has decreased safety awareness and attention span. [The Student] requires assistance in all activities of daily living… [including] additional support and intervention from his individual nurse to maintain his active participation in his classroom or related service sessions, and maintain his safety."[26] In addition, the Student "requires a modified environment to minimize auditory and visual stimulation, as well as the use of assistive technology."[27]

The evidence shows that the Student has attended the Private School since 2019.[28] Prior to the commencement of the 2024-2025 school year, the Private School created an Education Plan for the Student on May 14, 2024.[29] Subsequently, on May 21, 2024, the CSE convened a meeting to develop an IEP for the Student.[30] The IEP recommended that the Student attend an 8:1+1 special class at a New York State Education Department ("NYSED") Non-Public School ("NPS") with an interim District 75 setting pending availability of an NPS.[31] In addition, the May 21, 2024 IEP mandates related services including occupational therapy, speech-language therapy, physical therapy, school nurse services, parent counseling and training, a 1:1 Health Paraprofessional, dynamic display speech generating device ("SGD"), AT Service, and a folding mounting wheelchair system.[32] The Student was found eligible for extended school year services on a 12-month basis.[33] In addition, the Student was mandated for specialized transportation from the closest safe curb location to school with 1:1 nursing services on a lift bus that can accommodate his wheelchair.[34]

Subsequently, on June 17, 2024, the Parent, through the Parent's Attorney, sent the DOE a letter ("Ten-Day Notice"), expressing the Parent's concerns with the May 21, 2024 IEP.[35] The Ten-Day Notice also informed the DOE about the Parent's concerns regarding the lack of a School Location Letter leaving the Student without a public school placement for the 2024-2025 school year.[36] In the letter, the Parent explained her intention to enroll the Student at the Private School

---

[23] Ex. I.
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] Ex. H.
[29] Ex. G.
[30] Ex. 1.
[31] Ex. 1-30.
[32] Ex. 1-30-31.
[33] Ex. 1-31.
[34] Ex. 1-35.
[35] Ex. B.
[36] *Id.*

and seek tuition funding for 2024-2025 school year if the DOE failed to address the Parent's concerns and offer the Student a FAPE.[37]

On July 1, 2024, the DOE sent the Parent Prior Written Notice and a School Location Letter providing the Parent with notice of its recommendations for the Student and providing the Student with a placement at the Public School for the 2024-2025 school year.[38] According to the Prior Written Notice, the only evaluative data relied on by the CSE when making its recommendation was an Assistive Technology Assessment.[39] However, the DOE Special Education Teacher testified that she was a member of the CSE for the Student's May 21, 2024 IEP and prior the meeting, the DOE conducted evaluations including the Vineland and a Social History Update.[40] The DOE Special Education Teacher also testified that the CSE relied on a Assistive Technology Assessment, the Private School's Education Plan, and the Student's Quarterly Progress Reports from the Private School when making its recommendations.[41] The DOE Special Education Teacher indicated that the CSE ultimately determined that a 8:1+1 special class in a NYSED NPS was appropriate for the Student with an interim placement in District 75 8:1+1 setting and related services and supports contained within the IEP.[42] The DOE Special Education Teacher testified that the CSE considered music therapy for the Student at the suggestion of the Private School and the Parent, but the CSE determined that "music can be incorporated as an instructional tool to enhance the [S]tudent's learning and participation in daily lessons with collaborations across all disciplines" instead of being mandated as a separate related service.[43] Furthermore, the DOE Special Education Teacher testified that the CSE could not recommend Vision Education Services for the Student on his May 21, 2024 IEP, despite his visual impairment, because the Parent did not send "in any sort of report or ophthalmological or physical report to substantiate if the [S]tudent needed any visions mandates place on" his IEP.[44] The DOE Special Education Teacher further explained that it is the DOE's "protocol" to have reports sent in for consideration prior to the meeting.[45] The DOE Special Education Teacher also testified that the Student must have had evaluations conducted in speech-language therapy, occupational therapy, physical therapy, and assistive technology since those services were already mandated in prior IEPs.[46] In addition, the IEP itself explains the last time the Student underwent a psychoeducational evaluation was on January 11, 2022.[47]

The Parent testified that she did not receive a School Location Letter or Prior Written Notice before the commencement of the 2024-2025 extended school year and therefore, she was unable to visit the Public School to see if it was appropriate for the Student.[48] The Parent was concerned about the physical building of the Public School, the peers that would be in the

---

[37] *Id.*
[38] Ex. 2; Ex. 3.
[39] Ex. 2-5.
[40] Tr. 76.
[41] Ex. 13-2.
[42] Ex. 13.
[43] Ex. 13-4-5.
[44] Tr. 65.
[45] *Id.*
[46] Tr. 70-72.
[47] Ex. 1-1.
[48] Ex. I-2. The Parent did receive the Prior Written Notice and School Location Letter on or after July 1, 2024.

classroom with the Student, and whether the Public School could meet the Student's needs considering that he is non-ambulatory, legally blind, lacks safety awareness, and has complex medical issues.[49] The Student does not eat by mouth, has respiratory issues, gastrointestinal issues, and "is possibly having seizures" so he requires a full-time 1:1 nurse in school.[50]

At the end of June, shortly before the start of the 2024-2025 school year and prior to receiving the School Location Letter from the DOE, the Parent entered into two contracts, one with the Private School and one with the Transportation Provider.[51] First, on June 17, 2024, the Parent executed a contract with the Transportation Provider for the Student to receive private specialized transportation services during the 2024-2025 school year.[52] The total cost of transportation services pursuant to the contract is $127,333.00.[53] The Parent testified that she chose the Transportation Provider because the Student "has an aversion for the yellow buses. One of the reasons why [the Parent] took [the Student] out of the last school was because there was… a passing of a fellow student on the bus… and [the Student] was on the bus when the student passed away… [which] affect[ed] him very adversely."[54] So, for a while, the Parent has to take the Student to the prior school in a taxi or Uber until the Parent decided to enroll the Student in the Private School and use the Transportation Provider.[55] Therefore, the Parent has used the Transportation Provider for the Student's specialized transportation services since the Student began at the Private School five years ago.[56] The Transportation Provider uses a wheelchair access vehicle and "they get the job done."[57]

The following week, on June 24, 2024, the Parent executed a contract reenrolling the Student at the Private School for the for the 2024-2025 school year, specifically from July 2, 2024 to June 27, 2025.[58] The total cost of the tuition for the 2024-2025 school year pursuant to the contract is $352,065.20 including base tuition and supplemental tuition, covering related services, paraprofessional services, nursing services, and assistive technology devices and equipment.[59] The entire balance is still owed to the Private School as the Parent testified that she has not made any payments since she was still going through the hearing process.[60]

The Private School "is a highly specialized education program in New York City, created for children who have acquired brain injuries or brain-based disabilities."[61] The Private School provides its students with a 12-month school year and extended school days from 8:30 AM to 5:00 PM.[62] The program at the Private School is interdisciplinary and many of the students who attend the Private School are similar to the Student in the instant case as they are non-verbal, non-

---

[49] Ex. I-2-3.
[50] Tr. 137-138.
[51] Ex. E; Ex. F.
[52] Ex. F.
[53] Ex. F-2.
[54] Tr. 154.
[55] Tr. 164.
[56] Tr. 154.
[57] Id; Tr. 156.
[58] Ex. E.
[59] Id.
[60] Tr. 151.
[61] Ex. H-1.
[62] Id.

ambulatory, and have a classification of traumatic brain injury.[63] Each student requires a 1:1 paraprofessional and many of the student also have a 1:1 nurse to manage their health needs throughout the school day.[64] The Private School has two campuses with eight 6:1:1 classrooms and three 8:1:1 classrooms, serving students ages 5 through 21 years old.[65] The Private School creates educational plans for each student "geared towards improving functional skills appropriate to their cognitive, physical and developmental levels, through a collaborative and multidisciplinary approach which incorporates the best practices from the medical, clinical and educational fields. Through this collaboration, students are instructed using the most effective strategies with evidence-based practices. These practices include, but are not limited to, direct instruction, cognitive strategies and compensatory education (using diagnostic-proscriptive practices), behavioral management, physical rehabilitation, therapeutic intervention, social interaction and transition services."[66]

In the instant matter, prior to the commencement of the 2024-2025 school year, the Private School assessed the Student using the Brigance Assessment, which was administered on March 27, 2024.[67] During the assessment, the Student "used physical manipulatives and picture images" and he "also benefited from wait time and the use of his personal AAC device to communicate."[68] The results from the Brigance Assessment helped the Private School identify his present levels of performance heading into the 2024-2025 school year and allowed the Private School to develop an extensive educational plan for the Student on May 14, 2024.[69] All of the Student's instructors and providers contributed to creating the educational plan.[70] The Private School's education plan for the Student details the Student's strengths and weaknesses including the Student's cognitive skills, activities of daily living skills, fine motor skills, gross motor skills, academic skills, auditory comprehension skills, speech and language skills, assistive technology needs, etc., and the Private School developed numerous goals for the Student for the 2024-2025 school year.[71] The Private School placed the Student in a small 8:1+1 classroom with a 1:1 paraprofessional, a 1:1 nurse, occupational therapy, physical therapy, speech-language therapy, vision education services, and music therapy.[72] Although the Student was placed in an 8:1+1 classroom, he currently has 6 students total in his class and his program at the Private School is designed "to allow for repetition, rest, transitioning, and reinforcement of skills" and enables the Student "to generalize skills across environments."[73]

The Private School assesses the Student quarterly and provides progress reports on a quarterly basis which detail the Student's annual goals, any progress made toward meeting his goals, and any modifications needed to help the Student.[74] The progress reports in evidence also

---

[63] Ex. H-2.
[64] Id.
[65] Id.
[66] Id.
[67] Ex. G-2.
[68] Id.
[69] Ex. G.
[70] Ex. G-71-72.
[71] Id.
[72] Ex. H-4.
[73] Id; Tr.
[74] Ex. 4; Ex. 5; Ex. 6; Tr. 113-114.

show that the instructors at the Private School use verbal, visual, and tactile cues as well as objects and manipulatives to help the Student acquire new skills.[75] The Deputy Director of Special Education at the Private School testified that the Student is making a lot of progress.[76] Primarily, related to his academics, the Student is working on three main goals including identifying numbers in sequence, identifying common signs in the community, and improving his communication skills with his communication device.[77] In math, the Student is now able to identify numbers in sequence with minimal support and he can identify a missing number in a sequence as well.[78] In literacy, the Student is  now "able to identify common signs" such as a stop sign or a walk sign.[79] In addition, the Student's ability to socialize using his communication device with his peers and providers has significant improved.[80] Furthermore, the Student has made significant progress with physical therapy services and now he is "able to ambulate for 200 feet without needing a break."[81] He is "also able to ascend and descend stairs with minimal support" using a hand rail and a contact guard.[82] Moreover, the Student is making progress with his occupational therapy services as he has "shown a lot of progress in using his posterior walker, handling academic supplies such as markers and following one step or two step directions.[83]

Furthermore, the Parent testified that the Student is making progress at the Private School.[84] The Parent testified that the Student has "progressed leaps and bounds" and he is now able to ambulate with his walker.[85] He is also communicating differently now and using his assistive device to communicate his wants and needs, and he is a lot more aware of his surroundings.[86]

## CONCLUSIONS OF LAW AND ANALYSIS

This case concerns the DOE's alleged failure to provide the Student with a FAPE for the 2024-2025 school year.[87] Specifically, the Parent alleges that the DOE: (1) failed to conduct updated evaluations of the Student, (2) failed to send the Parent a timely Prior Written Notice, (3) failed to provide the Parent with a School Location Letter prior to the start of the 2024-2025 school year, (4) failed to mandate Vision Education Services, and (5) failed to mandate Music Therapy.[88] By way of relief, the Parent seeks tuition funding for the unilateral placement at the Private School for 2024-2025 school year. When a parent believes that a school district has failed to provide a student with a FAPE, a parent may unilaterally enroll the child in a private school and seek tuition

---

[75] Id.
[76] Tr. 96.
[77] Id.
[78] Id.
[79] Id.
[80] Tr. 96-97.
[81] Tr. 97.
[82] Id.
[83] Tr. 97-98.
[84] Tr. 139- 141.
[85] Tr. 139-140.
[86] Tr. 140.
[87] Ex. A.
[88] Id.

payment from the school district by filing a due process complaint.[89] The due process complaint may address "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education."[90] A district must pay for the cost of a student's tuition at a private school if the three "prongs" of the *Burlington/Carter* test are met: (1) the district denied the student a FAPE; (2) the private school unilateral placement is appropriate; and (3) the equities favor an order of tuition reimbursement or funding.[91]

*Prong 1*

The IDEA and the New York Education Law require school districts to offer a FAPE to each child with a disability residing in their district who requires special education programs or services.[92] A FAPE consists of specialized education and related services designed to meet a student's unique needs, provided in conformity with a comprehensive written IEP.[93] A school district has offered a student a FAPE when it complies with the procedural requirements set forth in the IDEA, and the IEP is reasonably calculated to enable the student to receive educational benefits.[94] Under the IDEA, students with disabilities are entitled to be educated in the least restrictive environment that meets their unique needs.[95]

Parents may allege procedural and/or substantive FAPE violations. For procedural violations, a denial of a FAPE only occurs "if the procedural inadequacies- (I) impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a [FAPE] to the parents' child; or (III) caused a deprivation of educational benefits."[96] To meet its substantive FAPE obligations, a district must offer a student an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."[97] The District must offer "an IEP that is 'likely to produce progress, not regression,' and ... affords the student with an opportunity greater than mere 'trivial advancement.'"[98] A school district must be able to "offer a cogent and responsive explanation for their decisions" in creating the IEP.[99] The IEP must be reviewed at least annually, and a district must have an IEP in place for each student with a disability within its jurisdiction at the beginning of each school year.[100] The IEP should: (1) accurately reflect the results of evaluations to identify the student's needs,[101] (2) provide for the utilization of sufficient special education programs or

[89] *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 376 (2d Cir. 2014) (quoting *Reyes ex rel. R.P. v. New York City Dep't of Educ.*, 760 F.3d 211, 215 (2d Cir. 2014)).

[90] 20 U.S.C. § 1415(b)(6)(A).

[91] *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 367 (1985); *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 12-15 (1993).

[92] 20 U.S.C. § 1412 (a)(1)(A); 34 C.F.R. §104.33(a); Education Law §§ 4402(2)(a), (b)(2).

[93] 34 C.F.R. §300.13.

[94] *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982).

[95] *Oberti v. Board of Educ.,* 995 F.2d 1204 (3rd Cir. 1993).

[96] 20 U.S.C. §1415 (f)(3)(E)(ii); 34 C.F.R. §300.513(a)(2).

[97] *Endrew F. v. Douglas County Sch. Dist. RE-1*, 137 S.Ct. 988, 999 (2017).

[98] *Cerra,* 427 F.3d at 195, *quoting Walczak v. Florida Union Free Sch. Dist.,* 142 F.3d 119, 130 (2d Cir. 1998).

[99] *Endrew F.,*137 S.Ct. 988, 999.

[100] 34 C.F.R. §300.324(b)(1)(i); 8 N.Y.C.R.R. §200.4(e)(1)(ii); *Davis v. Wappingers Cent. Sch. Dist.*, 772 F. Supp. 2d 500, 508 (S.D.N.Y. 2010).

[101] 34 C.F.R. § 300.320(a)(1); 8 N.Y.C.R.R. 200.4(d)(2)(i); *Tarlowe v. Dep't of Educ.*, 2008 WL 2736027, at 6 (S.D.N.Y. July 3, 2008).

services,[102] and then (3) the IEP must be properly and timely implemented.[103]    Failure to implement substantial or significant provisions of an IEP is a denial of a FAPE.[104]

In due process hearings under the IDEA in New York, school districts have the burden of proof, including the burden of production and burden of persuasion. However, there is an exception in that a parent seeking tuition reimbursement or funding for a unilateral parental placement has the burden of persuasion and burden of production regarding the appropriateness of such placement.[105] In this case, the Parent is seeking tuition funding, transportation, the cost of meals, and compensatory services.[106] As this case does involve a parental unilateral placement, the burden regarding whether the unilateral placement is appropriate is on the Parent, and the burden regarding all other elements of the case is on the DOE.[107]

Here, I find that the DOE failed to meet its burden at the hearing under Prong 1 of the *Burlington/Carter* standard to show that the Student was provided a FAPE for 2024-2025 school year. The DOE Attorney called one witness and provided documentary evidence, which was admitted into the hearing record. However, I find that there were both procedural and substantive violations. Here, I find that the DOE failed to send the Parent a Prior Written Notice and a School Location Letter until July 1, 2024 which prevented the Parent from having a meaningful opportunity to visit the Public School.[108] I find that the notices were untimely and left the Student without a placement as the 12-month 2024-2025 school year commenced.

In addition, the evidence presented by the DOE does not a "offer a cogent and responsive explanation for their decisions" in not reevaluating the Student in all areas of disability. The hearing record contains contradictory evidence regarding what evaluations, if any, the DOE conducted of the Student and what evaluative data was considered by the CSE. While the DOE Special Education Teacher testified that prior to the May 21, 2024 CSE meeting, the DOE conducted evaluations including the Vineland and a Social History Update.[109] However, I do not find any corroborating evidence in the hearing record to support this as these evaluations are not in evidence. Moreover, according to the Prior Written Notice, the only evaluative data relied on by the CSE when making its recommendation was an Assistive Technology Assessment, but that assessment is also not in evidence.[110] The DOE Special Education Teacher also testified that the Student must have had evaluations conducted in speech-language therapy, occupational therapy, physical therapy, and assistive technology since those services were already mandated in prior

---

[102] 34 C.F.R. § 300.320(a)(4); 8 N.Y.C.R.R. 200.4(d)(2)(v).

[103] *See* 8 N.Y.C.R.R. 200.4(e)(7); *Application of a Child with a Disability*, Appeal No. 08-087.

[104]  *J.L. v. New York City Dep't of Educ.,* 324 F. Supp. 3d 455, 467 (S.D.N.Y. 2018); *Houston Indep. Sch. Dist. v. Bobby R.,* 200 F.3d 341, 349 (5th Cir. 2000); *Davis v. Wappingers Cent. Sch. Dist.,* 431 Fed. App. 12, 14 (2d Cir. 2011).

[105] NY Educ. Law § 4404(1)(c); *M.P.G. v. New York City Dep't of Educ.,* 2010 WL 3398256, at *7 (S.D.N.Y. Aug. 27, 2010).

[106] Ex. A.

[107] NY Educ. Law § 4404(1)(c).

[108] Ex. 2; Ex. 3; Ex. I.

[109] Tr. 76.

[110] Ex. 2-5.

Hearing Officer's Findings of Fact and Decision
Case No. 277132

IEPs but there is no evidence in the hearing record showing the last time the Student was comprehensively evaluated by the DOE.[111]

In addition, the evidence in the hearing record does not adequately explain why the CSE did not mandate Vision Education Services or music therapy or evaluate the Student's need for Vision Education Services or music therapy. It is "through the IEP that '[t]he 'free appropriate public education' required by the Act is tailored to the unique needs of" a particular child."[112] Here, the Student's quarterly progress reports and educational plan from the Private School in evidence, which the CSE had, all demonstrate that the Student has a vision impairment and would benefit from Vision Education Services.[113]  At the hearing, the DOE Special Education Teacher testified that the CSE could not recommend Vision Education Services for the Student on his May 21, 2024 IEP, despite his visual impairment, because the Parent did not send "in any sort of report or ophthalmological or physical report to substantiate if the [S]tudent needed any visions mandates place on" his IEP.[114] The DOE Special Education Teacher further explained that it is the DOE's "protocol" to have reports sent in for consideration prior to the meeting.[115] However, the IEP itself explains that the Student "is legally blind due to Cortical Visual Impairment" so clearly the CSE had the information about the Student's visual impairment.[116] It is the DOE's obligation to fully evaluate the Student in all areas of suspected disability and here, the DOE was aware that the Student is legally blind and therefore, the DOE should have evaluated the Student's need for Vision Education Services instead of shifting the burden to the Parent.

In addition, I find that the evidence failed to offer a cogent and responsive explanation for why the Student was not mandated for music therapy. Here, the DOE Special Education Teacher testified that the CSE considered music therapy for the Student at the suggestion of the Private School and the Parent, but the CSE determined that "music can be incorporated as an instructional tool to enhance the [S]tudent's learning and participation in daily lessons with collaborations across all disciplines" instead of being mandated as a separate related service.[117] I find this response to be inadequate. The record supports a finding that the Student benefits from music therapy.[118] At the Private School, the Student has been receiving three 60-minute sessions per week of music therapy, including one session in a group, by a Board-Certified Music Therapist where he has learned to "copy, improvise, and create rhythmic patterns on various instruments, like the drum, tambourine, and others."[119] Music therapy has also helped the Student when he becomes dysregulated or upset since he has learned "to follow the therapist's cues to breathe more slowly, express his emotions through vocalizations or instrument play, and find a calmer mood state."[120] Therefore, I find that the evaluative data the CSE had supported a determination that the Student requires both Vision Education Services and music therapy during the 2024-2025 school year.

---

[111] Tr. 70-72.
[112] *Id.*
[113] Ex. 4; Ex. 5; Ex. 6; Ex. 7.
[114] Tr. 65.
[115] *Id.*
[116] Ex. 1-2.
[117] Ex. 13-4-5.
[118] Ex. 1; Ex. 4; Ex. 5; Ex. 6; Ex. 7.
[119] Ex. G-38-39.
[120] Ex. G-39.

Hearing Officer's Findings of Fact and Decision
Case No. 277132

___

Overall, the evidence in the hearing record shows that the DOE failed to send the Parent Prior Written Notice or a School Location Letter in a timely fashion prior to the start of the 2024-2025 school year. I also find that the CSE failed to properly evaluate the Student in all areas of disability prior to the May 21, 2024 CSE meeting and the CSE failed to mandate Vision Education Services and music therapy. Therefore, I find that the DOE failed to offer the Student a FAPE for the 2024-2025 school year.

*Prong 2*

Moreover, I now must consider whether the Private School is an appropriate unilateral placement for the Student. A unilateral private school placement is appropriate if it is "reasonably calculated to enable the child to receive educational benefits."[121] Parents need not show that the unilateral placement is perfect or that it meets all state educational standards.[122] Instead, parents must "demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction."[123] In addition, parents seeking reimbursement or tuition funding "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate."[124] While there are some exceptions, "'the same considerations and criteria that apply in determining whether the [DOE's] placement is appropriate should be considered in determining the appropriateness of the parents' placement.'"[125]

A unilateral placement is appropriate if it provides instruction specially designed to meet the unique needs of a student.[126] The determination of whether the unilateral placement serves a student's individual needs and is reasonable calculated to enable a student to receive educational benefits does not depend only on one factor. Instead, courts assessing the appropriateness of a unilateral placement must consider the totality of the circumstances, including but not only, academic progress demonstrated through grades, test scores, progress reports, and regular advancement.[127] A private school placement must be "proper under the Act."[128] This means that the Private School must offer an educational program which meets the student's special education needs.[129]

Here, I find that the Private School meets the *Frank G.* standard and provides the Student educational instruction that is designed to meet the Student's unique needs and enable the Student to make progress. Primarily, the Private School is appropriate because it provides the Student with

___

[121] *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006); *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007).

[122] *Frank G.*, 459 F.3d at 364-65; *T.K. v. New York City Dept. of Educ.*, 810 F.3d 869, 878 (2d Cir. 2016); *M.S. v. Yonkers Bd. of Educ.*, 231 F.3d 96, 105 (2d Cir. 2000).

[123] *Frank G.,* 459 F.3d 356, 364; *Gagliardo*, 489 F.3d 105, 112.

[124] *Gagliardo*, 489 F.3d at 112.

[125] *Gagliardo*, 489 F.3d at 112, quoting *Frank G.,* 459 F.3d 356, 364.

[126] 20 U.S.C. § 1401(29); Educ. Law § 4401(1); 34 C.F.R 300.39(a)(1); 8 N.Y.C.R.R. 200.1(ww); *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 386 (2d Cir. 2014).

[127] *Frank G.*, 459 F.3d at 364; *See Gagliardo*, 489 F.3d at 112.

[128] *Carter*, 510 U.S. at 12, 15; *Burlington*, 471 U.S. at 370.

[129] *Gagliardo,* 489 F.3d 105, 112,115; *Walczak*142 F.3d 119.

Hearing Officer's Findings of Fact and Decision
Case No. 277132

individualized attention and instruction with similarly functioning peers. This "comes within the IDEA definition of 'special education,' namely, 'specially designed instruction . . . to meet the unique needs of a child.'" [130] The Private School "is a highly specialized education program in New York City, created for children who have acquired brain injuries or brain-based disabilities."[131] The program at the Private School is interdisciplinary and many of the students who attend the Private School are similar to the Student in the instant case as they are non-verbal, non-ambulatory, and have a classification of traumatic brain injury.[132] Each student requires a 1:1 paraprofessional and many of the student also have a 1:1 nurse to manage their health needs throughout the school day.[133] Thus, the Private School provides exactly the type of program the Student requires.

Prior to the commencement of the 2024-2025 school year, the Private School assessed the Student using the Brigance Assessment, which was administered on March 27, 2024.[134] The results from the Brigance Assessment helped the Private School identify his present levels of performance heading into the 2024-2025 school year and allowed the Private School to develop an extensive educational plan for the Student on May 14, 2024.[135] The Private School's education plan for the Student details the Student's strengths and weaknesses including the Student's cognitive skills, activities of daily living skills, fine motor skills, gross motor skills, academic skills, auditory comprehension skills, speech and language skills, assistive technology needs, etc., and the Private School developed numerous goals for the Student for the 2024-2025 school year.[136] The Private School placed the Student in a small 8:1+1 classroom with a 1:1 paraprofessional, a 1:1 nurse, occupational therapy, physical therapy, speech-language therapy, vision education services, and music therapy.[137] Although the Student was placed in an 8:1+1 classroom, he currently has 6 students total in his class and his program at the Private School is designed "to allow for repetition, rest, transitioning, and reinforcement of skills" and enables the Student "to generalize skills across environments."[138] The Student's education plan at the Private School also includes a 1:1 paraprofessional, 1:1 nurse, and related services, including music therapy and Vision Education Services in order to meet the Student's needs.[139]

Moreover, all of the Student's instructors and providers contributed to creating the Student's educational plan.[140] While the law in this circuit is that "a private placement need not provide certified special education teachers…for the disabled student," the Private School nevertheless ensures that its teachers have the training and specialization necessary to teach the Student based on his needs.[141] Therefore, the teachers have sufficient training to teach the Student based on his unique needs and learning profile.

---

[130] *Frank G.*, 459 F.3d at 365 (citing 20 U.S.C. § 1401(29)).
[131] Ex. H-1.
[132] Ex. H-2.
[133] *Id.*
[134] Ex. G-2.
[135] Ex. G.
[136] *Id.*
[137] Ex. H-4.
[138] *Id;* Tr.
[139] Ex. G.
[140] Ex. G-71-72.
[141] *Frank G.*, 459 F.3d at 364.

In addition, the Private School creates goals for the Student and assesses the Student on a quarterly basis, tracking the Student's progress and documenting any modifications needed.[142] The progress reports in evidence also show that the instructors at the Private School use verbal, visual, and tactile cues as well as objects and manipulatives to help the Student acquire new skills.[143] Moreover, the record shows that the Student is making progress at the Private School. Significant progress can be a factor weighing in favor of the appropriateness of the parent's unilateral placement.[144] While a student's progress at the private placement is not by itself sufficient to determine whether a placement is appropriate, that progress is a relevant factor in assessing the appropriateness of the placement.[145] Here, the Deputy Director of Special Education at the Private School testified that the Student is making a lot of progress.[146] Related to his academics, the Student is working on three main goals including identifying numbers in sequence, identifying common signs in the community, and improving his communication skills with his communication device.[147] In math, the Student is now able to identify numbers in sequence with minimal support and he can identify a missing number in a sequence as well.[148] In literacy, the Student is  now "able to identify common signs" such as a stop sign or a walk sign.[149] In addition, the Student's ability to socialize using his communication device with his peers and providers has significant improved.[150] Furthermore, the Student has made significant progress with physical therapy services and now he is "able to ambulate for 200 feet without needing a break."[151] He is "also able to ascend and descend stairs with minimal support" using a hand rail and a contact guard.[152] Moreover, the Student is making progress with his occupational therapy services as he has "shown a lot of progress in using his posterior walker, handling academic supplies such as markers and following one step or two step directions.[153] Furthermore, the Parent testified that the Student is making progress at the Private School.[154] The Parent testified that the Student has "progressed leaps and bounds" and he is now able to ambulate with his walker.[155] He is also communicating differently now and using his assistive device to communicate his wants and needs, and he is a lot more aware of his surroundings.[156]

Overall, the hearing record establishes that the Student's unique special education needs are being met by the Private School. The instruction offered at the Private School is "reasonably calculated to enable the child to receive educational benefits."[157]  I find that the Parent has met her

---

[142] Ex. 4; Ex. 5; Ex. 6; Tr. 113-114.
[143] *Id.*
[144] *Frank G.*, 459 F.3d at 365 (citing *Knable*, 238 F.3d at 768).
[145] *Weaver v. Millbrook Cent. Sch. Dist.*, 812 F. Supp. 2d 514, 523 (S.D.N.Y. 2011).
[146] Tr. 96.
[147] *Id.*
[148] *Id.*
[149] *Id.*
[150] Tr. 96-97.
[151] Tr. 97.
[152] *Id.*
[153] Tr. 97-98.
[154] Tr. 139- 141.
[155] Tr. 139-140.
[156] Tr. 140.
[157] *Frank G.*, 459 F.3d at 364.

burden in proving that the Private School offered an educational program which is meeting the Student's needs under Prong 2 of the *Burlington/Carter* standard.
*Prong 3*

Under *Burlington/Carter*, if the parents are financially obligated to pay for the contracted tuition costs and have met their prong 2 burden, the contract must be fully reimbursed or directly funded by the district unless, as a matter of equitable considerations, the costs are excessive or should otherwise be reduced.[158] The courts have "broad discretion to consider the range of all relevant facts in determining whether and to what extent awarding relief is equitable."[159] Even if a parent establishes a right to reimbursement under the IDEA, "courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant."[160] "[A] major consideration in deciding whether the third factor is satisfied is whether the parents have cooperated with the [DOE] throughout the process to ensure their child receive[s] a FAPE."[161] Specifically, equitable considerations include the parents' participation in IEP meetings, visits to the proposed school placements, and notification of their unilateral placement decision to the District.[162] In addition, a hearing officer may consider many additional factors, including whether a parent's unilateral withdrawal of the child from the public school was justified, whether the parent should have sought need-based scholarships or other financial aid from the private school, whether there was any fraud or collusion in generating, or inflating, the tuition to be charged to the school district, and whether the arrangement with the school was fraudulent or collusive in any other respect.[163]

I find that the equities favor the Parent's claims. Here, not only did the Parent fully cooperate with the CSE, but the evidence also shows that the Parent fully participated in the IEP process.[164] The Parent's cooperation and participation weighs in favor of the Parent's request for direct tuition funding under Prong 3 of the *Burlington/Carter* standard.[165] Moreover, on June 17, 2024, the Parent, through the Parent's Attorney, provided the DOE with a Ten-Day Notice, expressing the Parent's concerns with the May 21, 2024 IEP.[166] The Ten-Day Notice informed the DOE about the Parent's concerns regarding the lack of a School Location Letter leaving the Student without a public school placement for the 2024-2025 school year.[167] In the letter, the Parent explained her intention to enroll the Student at the Private School and seek tuition funding for 2024-2025 school year if the DOE failed to address the Parent's concerns and offer the Student a FAPE.[168] Overall and after considering the hearing record, I find that the equities support the Parent's claim for tuition funding.

---

[158] *See Carter*, 510 U.S. at 16.
[159] *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F.Supp.2d 635, 671 (S.D.N.Y. 2011).
[160] *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246-47 (2009).
[161] *Bettinger v. New York City Bd. Of Educ.*, 2007 WL 4208560, at *6 (S.D.N.Y. Nov. 20, 2007).
[162] *D.A. v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403, 419-20 (S.D.N.Y. 2011).
[163] *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014).
[164] Ex. 1; Ex. I.
[165] *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 254 (2d Cir. 2012).
[166] Ex. B.
[167] *Id*.
[168] *Id*.

Hearing Officer's Findings of Fact and Decision
Case No. 277132

By way of relief, the Parent seeks direct tuition funding for the cost of the Student's tuition at the Private School for the 2024-2025 school year.[169] Direct tuition funding is relief encompassed by the equitable remedial powers inherent in IDEA and parents do not need to show that they are financially unable to front the costs of tuition to request direct tuition funding.[170] The total cost of the tuition for the 2024-2025 school year on a 12-month basis pursuant to the contract is $352,065.20 including base tuition and supplemental tuition, covering related services, paraprofessional services, nursing services, and assistive technology devices and equipment.[171] As I have found that the *Burlington/Carter* test has been met, and I find that there is no evidence that the tuition amount sought is unreasonable, I am granting the request for direct tuition payment to the Private School for the entire cost of the Student's tuition for the 2024-2025 school year in full.

**Additional Relief Requested**

*Funding for a Neuropsychological Evaluation*

Next, I must determine whether the Parent is entitled to funding for an independent neuropsychological evaluation as requested in the Parent's DPC.[172] Under the law, the DOE must conduct an evaluation of a student where the educational or related services needs of a student warrant a reevaluation or if the student's parent or teacher requests a reevaluation.[173] Reevaluation must occur once every three years unless the DOE and the Parent agree in writing that it is unnecessary to do so, and the DOE does not need to conduct a reevaluation more frequently than once per year unless the parent and the district otherwise agree.[174] The DOE must ensure that a student is appropriately evaluated in all areas of suspected disability, and an evaluation of a student must be sufficiently comprehensive to identify all of the student's special education needs.[175]

Here, there is no evidence in the hearing record showing that the DOE ever conducted evaluations of the Student in all areas of suspected disability. Here, the DOE failed to present any evidence of evaluations conducted by the DOE and the only DOE-conducted evaluation mentioned in the IEP is a psychoeducational evaluation completed on January 11, 2022.[176] While the DOE Special Education Teacher indicated that a Vineland and a Social History Update was completed prior to the May 21, 2024 CSE meeting, those evaluations are not in evidence.[177] Moreover, the Prior Written Notice mentions an Assistive Technology Assessment, but that Assessment is also not in evidence.[178] Therefore, it is unclear when the Student was last evaluated by the DOE in all areas of suspected disability.

---

[169] Ex. A.
[170] *Cohen v. N.Y. City Dep't of Educ.,* 2023 U.S. Dist. LEXIS 171815 (S.D.N.Y. September 26, 2023); See also *Ferreira v. New York City Dep't of Educ.,* 2023 WL 2499261 (S.D.N.Y. March 14, 2023).
[171] Ex. E.
[172] Ex. A.
[173] 34 CFR 300.303(a)(2); 8 NYCRR 200.4(b)(4).
[174] *Id*; 34 CFR 300.303(b)(1)-(2).
[175] 20 U.S.C. § 1414(b)(3)(B); 34 CFR 300.304(c)(4); 8 NYCRR 200.4(b)(6)(vii); 34 CFR 300.304(c)(6); 8 NYCRR 200.4(b)(6)(ix).
[176] Ex. 1-1.
[177] Tr. 76.
[178] Ex. 2-5.

Here, the Parent specifically requested an Independent Educational Evaluation ("IEE") of the Student to be conducted at public expense in the Ten-Day Notice sent to the District on June 17, 2024.[179] While the DOE Attorney argues in his closing brief that the "State Review Office ("SRO") has recently taken up the trend of not granting requests for IEEs that are initially presented in the DPC," here, I find that the Parent's request for an IEE was not first presented in her DPC but prior to that in her Ten-Day Notice.[180] Nonetheless, the Southern District recently held that parents may be entitled to an IEE at public expense even if the first time they are requesting it is in the DPC.[181]

An IEE is "an individual evaluation of a student with a disability or a student thought to have a disability, conducted by a qualified examiner who is not employed by the public agency responsible for the education of the student."[182] The IDEA and state and federal regulations allow a parent to request an IEE at public expense if the parent disagrees with a school district's evaluation.[183] In *Shaffer v. Weast*, the Supreme Court explained the role an IEE plays in parental participation and the IDEA's regulatory scheme as follows: "[an IEE] ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion. They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition."[184]

If a parent requests an IEE, the school district must provide the parent with information about where they can obtain an IEE.[185] A school district can set criteria regarding the IEE, including the qualifications of the examiner, but the district's criteria must be the same as the criteria it uses for its own evaluations, and the district cannot impose additional conditions or timelines related to the IEE.[186] For example, a school district may not compel the use of a particular evaluator or its own chosen evaluator for an IEE,[187] nor can it deny an IEE at public expense based solely on financial cost.[188] A parent's right to an IEE at public expense may not be conditioned on the school district's ability to first conduct its own assessment before granting the parent's request for an independent IEE.[189] Finally, while the school district may "ask for the parent's reason why he or she objects to the public evaluation," the district cannot require an explanation or delay providing the IEE until the parent provides an explanation.[190] When a parent disagrees with a school district's evaluation and requests an IEE at public expense, the school district "must, without unnecessary delay," either (1) ensure that an IEE is provided at public expense, or (2)

---

[179] Ex. B-2.
[180] Ex. III-15; Ex. B.
[181] *Moonsammy v. Banks.,* 2024 U.S. Dist. LEXIS 173688 (S.D.N.Y. September 23, 2024).
[182] 8 NYCRR § 200.1(z).
[183] 20 U.S.C. § 1415 (b)(1); 34 C.F.R. § 300.502(b); 8 NYCRR § 200.5(g)(1); *D.S. by M.S. and R.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 158 (2d Cir. 2020) ("[a] parent is entitled to a publicly funded IEE if the parent disagrees with an evaluation obtained by the public agency") (internal quotation marks and citations omitted).
[184] *Shaffer v. Weast*, 546 U.S. 49, 60-61 (2005).
[185] 8 NYCRR § 200.5(g)(1)(i).
[186] 34 C.F.R. § 300.502(e)(1); 8 NYCRR § 200.5(g)(1)(ii); *Letter to Kirby*, 213 IDELR 233 (OSERS 1989).
[187] *Board of Education of the County of Nicholas v. H.A.*, 445 F. App'x 660 (4th Cir. 2011).
[188] *Letter of OSERS*, 2002.
[189] *Letter to Carroll*, 68 IDELR 279 (OSEP 2016).
[190] 8 NYCRR § 200.5(g)(1)(iii).

initiate an impartial hearing to establish that its evaluation is appropriate or that the evaluation obtained by the parent does not meet the school district criteria.[191]

In this case, I find that the Parent properly expressed her disagreement with the District's evaluations first in the Ten-Day Notice sent on June 17, 2024 and in the DPC filed on July 2, 2024. Although the Parent is not required to provide an explanation, the Parent explains both in the Ten-Day Notice and the DPC that the Parent disagreed with the lack of comprehensive assessments in all areas of suspected disability.[192] The District did not respond to the Parent's concerns. The District did not initiate an impartial hearing to establish that its recent evaluations were appropriate, nor did it take the necessary action to ensure that the Parents' requested IEE was provided at public expense.

A parent is entitled to an IEE when the district does not conduct a sufficiently comprehensive evaluation or fails to test the student in an area of need.[193] In *D.S.*, the court stated that, "[n]othing in the statute or regulations suggests that a parent cannot challenge an evaluation on the ground that it was too limited. To the contrary, because the IDEA requires an evaluation to be comprehensive, one would expect that a parent is free to disagree with an evaluation based on its deficient scope."[194] The U.S. Department of Education's Office of Special Education Programs ("OSEP"), has similarly stated that when a parent disagrees with an evaluation because a child was not assessed in a particular area, "the parent has the right to request an IEE to assess the child in that area to determine whether the child has a disability and the nature and extent of the special education and related services that child needs."[195] Once the Parent expressed her disagreement with the scope of the evaluations conducted, the District should have either initiated an impartial hearing to establish that its evaluation was appropriate or take the necessary action to ensure that the Parent's request for an IEE was provided at public expense. The District did neither. The Parent is therefore entitled to have the requested IEE conducted at public expense by a duly qualified evaluator selected by Parent.

*Transportation*

Lastly, I must decide whether the Student is entitled to private specialized transportation for the 2024-2025 school year. The IDEA requires that a school district must provide transportation for a child with a disability "if that service is necessary for a disabled child 'to benefit from special education,' even if that child has no ambulatory impairment that directly causes a 'unique need' for some form of specialized transport."[196] Transportation may be deemed necessary "if in its absence a disabled child in private school would be denied 'a genuine opportunity for equitable participation in [a special education program]', . . . or special education program benefits "comparable in quality, scope, and opportunity for participation . . . [to those provided for] students enrolled in public schools.'"[197]

---

[191] 34 C.F.R. § 300.502(b)(2)(i)-(ii); 8 NYCRR § 200.5(g)(1)(iv).

[192] Ex. A; Ex. B.

[193] *D.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 165 (2d Cir. 2020).

[194] *Id.*

[195] *Letter to Baus*, 65 IDELR 81 (OSEP 2015); see also *Letter to Carroll*, 68 IDELR 279 (OSEP 2016).

[196] *Donald B. by Christine B. v. Board of Sch. Commissioners of Mobile County, Ala.*, 117 F.3d 1371, 1374 (11th Cir 1997) (citations omitted).

[197] *Id.* at 1375 (internal citations omitted).

Hearing Officer's Findings of Fact and Decision
Case No. 277132

In addition, New York State Education Law defines special education as "specially designed instruction . . . and transportation, provided at no cost to the parents to meet the unique needs of a child with a disability," and requires school districts to provide disabled students with "suitable transportation to and from special classes or programs."[198] The requested transportation must also be "reasonable when all of the facts are considered."[199] In a guidance document, the State Education Department has indicated that the CSE should consider *and document* a student's mobility, behavior, communication, physical, and health needs when determining whether or not a student requires transportation as a related service, that the IEP "must include specific transportation recommendations to address each of the student's needs, as appropriate," and that when determining a student's special transportation needs, such as the need for door-to-door transportation, it must document them.[200] Other relevant considerations may include the student's age, ability to follow directions, ability to function without special transportation, the distance to be traveled, the nature of the area, and the availability of private or public assistance.[201]

The Parents have requested an Order directing the DOE to fund appropriate door-to-door special education transportation services for the Student to and from the Private School.[202] I find that private transportation services are appropriate and that the Student is entitled to such. I find that Student is entitled to specialized transportation to access and benefit from his special education program at the Private School. The evidence shows that on June 17, 2024, the Parent executed a contract with the Transportation Provider for the Student to receive private specialized transportation services during the 2024-2025 school year.[203] The total cost of transportation services pursuant to the contract is $127,333.00.[204] The Parent testified that she chose the Transportation Provider because the Student "has an aversion for the yellow buses. One of the reasons why [the Parent] took [the Student] out of the last school was because there was… a passing of a fellow student on the bus… and [the Student] was on the bus when the student passed away… [which] affect[ed] him very adversely."[205] So, for a while, the Parent had to take the Student to the prior school in a taxi or Uber until the Parent decided to enroll the Student in the Private School and use the Transportation Provider.[206] Therefore, the Parent has used the Transportation Provider for the Student's specialized transportation services since the Student began at the Private School five years ago.[207] The Transportation Provider uses a wheelchair access vehicle and "they get the job done."[208] Therefore, I am ordering the DOE to fund the private specialized transportation services pursuant to the contract with the Transportation Provider.

---

[198] NYS Educ. Law §§ 4401(1); 4402(4)(a); *See also* NYS Educ. Law § 4401(2); 8 NYCRR § 200.1(ww).
[199] *Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F.2d 1153, 1160 (5th Cir. 1986).
[200] "*Special Transportation for Students with Disabilities*," VESID Mem. [Mar. 2005], available at http://www.p12.nysed.gov/specialed/publications/policy/specialtrans.pdf).
[201] *See Donald B.*, 117 F.3d at 1375.
[202] Ex. A.
[203] Ex. F.
[204] Ex. F-2.
[205] Tr. 154.
[206] Tr. 164.
[207] Tr. 154.
[208] *Id;* Tr. 156.

Hearing Officer's Findings of Fact and Decision
Case No. 277132

## ORDER

Based upon the above Findings of Fact and Conclusions of Law, it is hereby:

1.  **ORDERED** that the New York City Department of Education failed to provide the Student a Free Appropriate Public Education (FAPE) for the 12-month 2024-2025 school year.

2.  **ORDERED** that the Parent's claim for direct tuition funding for the student's unilateral placement at the Private School is GRANTED in full for the 12-month 2024-2025 school year. The New York City Department of Education shall directly pay the Private School pursuant to the terms of the tuition agreement within 35 days of the date of this Order.

3.  **ORDERED** that the New York City Department of Education shall directly fund the cost of specialized transportation services for the Student for the 12-month 2024-2025 school year pursuant to the terms of the transportation agreement with the Transportation Provider within 35 days of the date of this Order.

4.  **ORDERED** that the New York City Department of Education shall directly fund the cost of an independent neuropsychological evaluation to be conducted by a qualified provider of the Parent's choosing at a reasonable market rate.

**SO ORDERED.**

DATED: October 14, 2024

Robin Levin, Esq.
Impartial Hearing Officer

Hearing Officer's Findings of Fact and Decision
Case No. 277132

_____

## NOTICE OF RIGHT TO APPEAL

Within 40 days of the date of this decision, the parent and/or the Public-School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

Hearing Officer's Findings of Fact and Decision
Case No. 277132

## APPENDIX A – EXHIBITS ENTERED INTO THE RECORD

**PARENT EXHIBITS**

| Parent Exhibit | Description | Date | Number of Pages |
|---|---|---|---|
| A | Due Process Complaint IH # 277132 | 07/02/2024 | 8 |
| B | Ten Day Notice | 06/17/2024 | 2 |
| C | Pendency Implementation Form | 07/02/2024 | 1 |
| D | FOFD IH#228803 | 08/09/2023 | 23 |
| E | iBRAIN Enrollment Contract | 06/24/2024 | 6 |
| F | School Transportation Agreement | 06/17/2024 | 7 |
| G | International Academy for the Brain (iBrain) Education Plan 2024-25 School Year | 05/14/2024 | 72 |
| H | Affidavit of Caleb Asomugha – Deputy Director of Special Education at iBrain | 08/12/2024 | 5 |
| I | Affidavit of Marilyn Beckford- Parent | 08/21/2024 | 3 |

**DOE EXHIBITS**

| | Document | Date | Pages |
|---|---|---|---|
| 1 | DOE IEP | May 21, 2024 | 39 |
| 2 | Prior Written Notice | July 1, 2024 | 8 |
| 3 | School Location Letter | July 1, 2024 | 2 |
| 4 | iBrain Quarterly Progress Report | October 6, 2023 | 27 |
| 5 | iBrain Quarterly Progress Report | January 5, 2024 | 23 |
| 6 | iBrain Quarterly Progress Report | April 12, 2024 | 24 |
| 7 | iBrain IEP | May 14, 2024 | 72 |
| 8 | Office of Pupil Transportation Letter | July 11, 2024 | 1 |
| 9 | Email from Alicia Holmes to Parent containing School Location Letter | July 1, 2024 | 1 |
| 10 | Chain between CSE, DOE, and Parent Counsel | VARIOUS | 6 |
| 11 | Motion to Dismiss | August 2, 2024 | 6 |
| 12 | Order by Judge Rochon denying Parent's Preliminary Injunction Motion | August 8, 2024 | 2 |
| 13 | Affidavit of Susan Cuthbert | UNDATED | 6 |
| 14 | iBrain – About Us | August 6, 2024 | 11 |

Hearing Officer's Findings of Fact and Decision
Case No. 277132

**IHO EXHIBITS**

| Exhibit | Document | Date | Pages |
|---------|----------|------|-------|
| I. | Parent's Opposition to DOE's Motion to Dismiss | 8/20/2024 | 255 |
| II. | Subpoena Requests Denied | 8/09/2024 | 17 |
| III. | DOE's Closing Brief | 9/13/2024 | 16 |
| IV. | Parent's Closing Brief | 9/13/2024 | 6 |

Hearing Officer's Findings of Fact and Decision
Case No. 277132

## APPENDIX B – REDACTION IDENTIFICATION PAGE

| Term Used In FOFD | Redacted Information |
| --- | --- |
| Student | M▮▮ B▮▮▮▮ |
| Parent | Marilyn Beckford |
| Parent's Attorney | Lisa Eastwood, Esq. |
| DOE Attorney | Lance Shopowich, Esq. |
| Public School | K753 at 19K660: W. H. Maxwell Career and Technical Education High School |
| DOE Special Education Teacher | Susan Cuthbert |
| Private School | International Academy for the Brain (iBrain) |
| Deputy Director of Special Education at the Private School | Caleb Asomugha |
| Transportation Provider | Sisters Travel and Transportation Services, LLC |

## L.V. v. NYC Department of Education, 03 Civ. 9917 (SDNY)

Parents of children with Individualized Education Programs who received or who may receive an order at the conclusion of an impartial hearing should read the attached notice about possible disclosure of information and documents about their children as part of a federal court litigation.

Translations in Spanish, Arabic, Bengali, Chinese, French, Haitian Creole, Korean, Russian, and Urdu are available on the DOE webpage at https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings

**Notice of Potential Disclosure of Student Education Records**

**Please read this notice carefully**. This is a message about possible disclosure of documents or data that might contain information about your child, if your child has been classified as a student with a disability and has been or may be the subject of a final Impartial Hearing Order.

## I.    Nature of the Lawsuit

This lawsuit challenged the failure of the Department of Education ("DOE") of the City of New York to timely implement orders issued by impartial hearing officers in connection with impartial hearings held pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. and N.Y. Education Law § 4401, *et seq.* In 2007, the parties entered into a Stipulation of Settlement (the "Stipulation") in which the DOE agreed to timely implement these orders.

In January 2021, the Court granted plaintiffs' motion for the appointment of a special master. On April 14, 2021, the Court entered an Order appointing David Irwin of Thru-Ed as the Special Master.  On May 14, 2021, the Court entered an Order detailing the duties and authority of the Special Master which include, among other things, the authority to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders a. Pursuant to this Order, the Special Master may have access to education records of students, upon DOE's compliance with the Family Education Rights and Privacy Act (20 U.S.C. § 1232g; 34 C.F.R. Part 99) ("FERPA").

## II.    Data Ordered to Be Disclosed

In order for the Special Master to perform his duties, the Court has directed the DOE to provide the Special Master (and employees and consultants at Thru-Ed) with access to records containing confidential student record information, including, but not limited to, documents submitted in the impartial hearing process, impartial hearing orders, data about compliance, and students' special education documents, such as individualized education programs, evaluations, authorizations, invoices, etc. The Special Master is required to keep any student documents and information confidential. No student-specific information will be shared with plaintiffs' counsel unless the student's parent specifically consents. If there is any student-specific information in the Special Master's reports to the Court, that information would not be made public.

The Special Master will use this information only for his work to review DOE's processes for implementing impartial hearing orders and to recommend to the Court improvements to enable DOE to timely implement orders.  The disclosure of this information <u>does not</u> affect any of your rights as a parent to seek special education services for your child.

## IV.    Objections to Disclosure

If you agree to the disclosure of this information to the Special Master, you do not need to do anything more.

If you do not want your child's information shared with the Special Master, you must object to this disclosure by submitting an objection to DOE's attorney, addressed to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York  NY  10007

or via email at LVObjection@law.nyc.gov.  Please reference the *LV v. DOE* lawsuit (Case No. 03-9917) when writing.  An Objection Form accompanies this Notice, though no written objection will be rejected if it is not submitted on this form.  If you object, no records containing you and your child's personally identifiable information or other FERPA-protected information will be provided to the Special Master, although nominal and incidental disclosure of your child's name may occur.  **Any objections must be received by December 3, 2021 or for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order**.

**If you would like more information about this notice, please contact the attorneys for plaintiffs**, **Rebecca Shore, of Advocates for Children of New York, Inc. at 646-532-6078.**

2

**OBJECTION TO DISCLOSURE OF RECORDS**
**LV v. DOE, 03 Civ. 9917 (SDNY)**

If you agree to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, you do not need to complete this form.

If you object to the release of information about your child to the Special Master appointed in *L.V. v. DOE*, please compete and return this form to:

> Jeffrey S. Dantowitz
> NYC Law Department
> 100 Church Street, Room 2-121
> New York, NY 10007

or via email at LVObjection@law.nyc.gov

Child's name: _____

Name: _____

Address: _____

Impartial Hearing Order Case # (if known): _____

Date of Order (if known): _____

> If you object to the release of your confidential information, please check the line below:
>
> _____    I do not agree to have my confidential records disclosed to the Special Master in *L.V. v. DOE*.

_____                          _____
Date                                                            Please sign here

If you object to the release of information, your objection must be received by December 3, 2021 or, for impartial hearing orders issued after November 12, 2021, within 3 weeks of the issuance of the impartial hearing order.

      *   *   *   If you do not notify the DOE of your objections to the documents being released, you child's information will be provided to the Special Master appointed in *LV v. DOE*, 99 Civ. 9917 (SDNY) and/or consultants and employees of Thru-Ed. The information will remain confidential and the disclosure of this information will not affect any of your rights to seek special education services for your child.

| |
|---|
| للاطلاع على هذا المستند باللغة العربية، قُم بزيارة الموقع الإلكتروني [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| YgǺsǺ̀t Ǻt ǺǺ ná^l á [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) ná^ṕ |
| 若要以中文查看，請上網到 [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| Pour consulter ce texte en français, allez sur [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| Pou wè tèks sa a an kreyòl ayisyen, ale sou [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| 본 문서를 한국어로 보시려면 다음 웹사이트를 이용하십시오: [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| Для просмотра документа на русском языке посетите [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| Para ver este contenido en español, visite [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) |
| اس کو اردو میں دیکھنے کے لیے [https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings](https://www.schools.nyc.gov/learning/special-education/help/impartial-hearings) پر جائں |