P1H4THOC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   MARTINE THOMAS, as Parent and
     Natural Guardian of A.T., et
 4   al.,

 5              Plaintiffs,

 6         v.                              24 Civ. 5138 (JLR)

 7   DAVID C. BANKS, NEW YORK CITY
     DEPARTMENT OF EDUCATION,
 8                                         Conference

 9              Defendants.

10   ------------------------------x
                                          New York, N.Y.
11                                        January 17, 2025
                                          10:40 a.m.
12
     Before:
13
                     HON. JENNIFER L. ROCHON,
14
                                          District Judge
15
                          APPEARANCES
16
     RORY BELLANTONI
17        Attorney for Plaintiffs

18   JAIMINI VYAS
     THOMAS LINDEMAN
19        Attorneys for Defendants

20

21   Also Present:
     Alexandra Martinesi
22

23

24

25
```

P1H4THOC

| | |
|---|---|
| 1 | (Case called) |
| 2 | MR. BELLANTONI:  Good morning, your Honor.  Rory |
| 3 | Bellantoni for the plaintiffs. |
| 4 | THE COURT:  Good morning, Mr. Bellantoni.  And you |
| 5 | have with you who? |
| 6 | MS. MARTINESI:  Alexandra Martinesi. |
| 7 | THE COURT:  Good morning. |
| 8 | MR. BELLANTONI:  Your Honor, Ms. Martinesi is not |
| 9 | admitted.  She is here to help me if that's okay with the |
| 10 | Court. |
| 11 | THE COURT:  Perfectly fine. |
| 12 | MR. VYAS:  Good morning, your Honor.  My name is |
| 13 | Jaimini Vyas. |
| 14 | THE COURT:  Good morning. |
| 15 | MR. LINDEMAN:  Thomas Lindeman for defendants. |
| 16 | THE COURT:  Good morning everyone. |
| 17 | Okay.  So I have information before me.  We are here |
| 18 | to discuss both the request for a preliminary injunction as |
| 19 | well as defendant's motion to dismiss.  I have information. |
| 20 | Everyone fully briefed both of those items.  And then I |
| 21 | received an additional letter last night, dated January 16.  I |
| 22 | think we got it around 11:00 p.m. or so.  It provides some |
| 23 | updates on the particular students and where they are |
| 24 | currently, so I have that as well.  I think that then gives me |
| 25 | everything that I need. |

P1H4THOC

```
 1              I think the best way to proceed here is, as I said I,

 2      have a PI motion and a motion to dismiss, but why don't we --

 3      I'm going to tackle them both together because they are a bit

 4      related, especially when I ask some questions about what's

 5      happening with the various individuals, and I do have some

 6      questions.

 7              So why don't we then start with the PI, and have you

 8      address me, Mr. Bellantoni, about the PI, and then you can

 9      respond to the motion to dismiss as well.  And if anything's

10      changed from your papers, you can let me know.  And certainly

11      if your papers cover it, that's fine too.  This is just an

12      opportunity for you to give me anything else.

13              MR. BELLANTONI:  Your Honor, I have to be candid with

14      the Court.  Although, I know an attorney shouldn't stand up and

15      say the matter is less urgent now than it was when I filed the

16      PI, but that is the reality.  That funding hadn't been made,

17      the school was in dire straits.  Money is coming in now in

18      other cases, some here.  I can't represent that if tuition or

19      transportation isn't paid within a certain timeframe, that the

20      school is going to close.  I have had no notice that any of the

21      consultants are going to be disenrolled.

22              If I can address the PI in a different way, your

23      Honor.

24              THE COURT:  Let me stop you there and thank you for

25      your candor to the Court.  I appreciate that.  Please continue.
```

P1H4THOC

1          MR. BELLANTONI:  When plaintiffs move for an order

2     under 1415(j) that would be the preferred language.  1415(j) is

3     treated like an automatic injunction without reference to

4     irreparable harm, likelihood of success, all of those factors.

5     I know we are going to talked about *Mendez*.  I'm not asking for

6     immediate funding.  If the DPC or the filing of the students'

7     due process complaints in July triggered pendency, it would

8     have been in July or August.  If pendency orders were issued in

9     September, it would have been September.  I know that language

10    is in lot of orders.  But in *Mendez* it followed the

11    administrative orders that were issued.  The ICO's ordered the

12    DOE to fund pendency immediately.  It just took that language

13    out of the orders.

14          Pendency is or was created, the statute exists to

15    ensure that the students stay put -- that's the other name for

16    the 1415(j) -- during the administrative and/or judicial

17    proceedings related to the due process complaint for the 24/25

18    school year.  And then, your Honor, when these students are

19    anywhere between 3 and 21, a new school year starts, a new IEP

20    is created.  If the students prevail, as they did here in a

21    prior year, a prior due process complaints, the private school

22    is their then current educational place when the DPC is filed.

23          When the DOE proposes an IEP it, in essence, a

24    proposal for a unilateral placement.  And that unilateral

25    placement it's precisely what pendency is created to protect

P1H4THOC

1    the children from.  Now, the DOE will say that you shouldn't

2    issue any kind of order because the students are staying at

3    iBrain and getting their education.  They are, Judge, but part

4    of a FAPE is it's free or paid at public expense.  So they are

5    not getting the FAPE they are entitled to if the funding isn't

6    there.

7            I understand *Mendez*, and there has to be no fast

8    tracking unless there is an emergency.  The DOE can pay in

9    their usual course, but we don't know what that is.  We tried

10   to have conversations with Mr. Lindeman.  When I say "try,"

11   it's not like we can't talk.  It's just that I don't know if we

12   are going to resolve this.

13           But you'll also hear, I was reading a transcript from

14   one of our prior proceedings last night, when the DOE feels

15   that these students get lawyers and want to go to the top of

16   the line and we want to cut in front of everybody.  I've been

17   saying this year in and year out, I just want to know where the

18   line is.  I want to know how to get in line.  Every July we

19   start to inquire about pendency placement and pendency funding.

20   Two years ago those pleas were ignored until August.  I don't

21   mean "ignored" as in I didn't hear from corporation counsel,

22   but there was no agreement as to pendency.

23           This most recent year pendency was actually challenged

24   in a proceeding below in a lot of these cases.  One basis was

25   that tuition in the school went up.  So the tuition goes up and

P1H4THOC

1    the DOE takes the position that they don't have to pay

2    increased tuition.  But what do they do?  They don't pay any

3    tuition.

4         We talk about their agreement to pay, or they'll talk

5    about their agreement to pay somehow moots the issues in this

6    case.  If that were the case -- if I miss a mortgage payment,

7    my bank is going to send me a notice and potentially foreclose

8    on my house.  If I call them up and tell them I'm going to make

9    payment that doesn't moot that action out.

10        THE COURT:  But Mr. Bellantoni, and I'm sure I will

11   hear from the DOE, they're not arguing in their motion to

12   dismiss, they are not bringing a mootness challenge to the

13   claims regarding the implementation of the funding obligations

14   for the DOE that are in the pendency orders.  They are simply

15   requesting that plaintiff's request for declaratory relief

16   regarding the students' pendency placements would be moot, not

17   the funding request.

18        MR. BELLANTONI:  Well, I don't see how you have one

19   without the other.  In other words, you have to say pendency

20   program is at iBrain consists of tuition, special education,

21   supplemental education, transportation and on-site nursing

22   because that is what an ISO order in a prior school year.

23   Because that program is the pendency program for the student,

24   the DOE must fund that program.  Nothing in *Mendez* would

25   preclude your Honor from saying you need to do that in a

P1H4THOC

```
1    reasonable time.  I submit nothing would prevent you from

2    saying you need to do that within 90 days and continue to do

3    that.  We are -- I'm horrible at math -- but six, seven months

4    into a 12-month year.  Funding to make sure the children stay

5    put at this school during this school year -- and it's really

6    not the school year.  I don't want to misspeak.  It's the due

7    process proceedings, the administrative proceedings relative to

8    the DPC.  They can with go beyond this school year, which is

9    why in a recent case, I think it's in our papers, Judge

10   Engelmayer granted a pendency order.  We asked him to declare

11   iBrain was the students' pendency placement program.  He said

12   you're entitled to that.  I'm not even looking at whether there

13   is an Article Three controversy because even in *Mendez* the

14   Second Circuit said with respect to the placement you are

15   entitled to an automatic injunction.  With respect to funding,

16   you are entitled to an order but not an order of fast tracking.

17   And what Judge Engelmayer did in that June 2024 *Moonsammy* case,

18   it was June 3rd, was to say you are responsible for pendency.

19   These are the programs that you have to pay for, consistent

20   with the last administrative order.  But I'm not going to order

21   you do it right away and then as the months go by if the

22   pendency isn't being paid, there is an avenue for the student

23   to come back to the court to enforce that pendency or tell the

24   DOE you are allowed to pay in the due course.  But it seems

25   like if we are not litigating these matters, there is no due
```

P1H4THOC

1    course.  I know they will say there is, but this is the

2    problem, from our perspective there isn't.  Some of these

3    claims get paid right away.  Others, 18 are still no pendency.

4        Now, 18 was denied or got an unfavorable pendency

5    order which we appealed.  But that doesn't mean there's not an

6    actual basis for pendency in the last administrative

7    proceeding.  By asking you to issue a pendency order you can

8    review that.  When it comes to pendency, we don't have to

9    exhaust administrative remedies.  We are not asking you to

10   decide whether or not a student's IEP is appropriate.  We are

11   asking you to look at the last agreed upon placement.  It's

12   really more of a legal decision than anything else.  And tell

13   the DOE, yes, iBrain is that placement.

14       I think what's missed, your Honor, not by you but by

15   me, the more cases I do the more I learn and understand, the

16   controversy exists here when the DPC is violated.  It must be

17   in an education setting that is appropriate.  A parent won

18   lawsuit with respect to that educational placement.  A parent

19   is allowed to keep the child there, and the DOE is not just

20   required to pay pendency.  The DOE -- the case law and the

21   language of case law is they must continue to fund that

22   placement until there is an adjudicated appropriate placement

23   or an agreement.  So when the DOE -- if the students are at

24   iBrain in 16-minute classes in a class ratio of 6:1:1, and the

25   IEP for the new school year is a 12:1:4 class structure with

P1H4THOC

1    30-minute classes in a different building type or setting then

2    the students are in, the DOE isn't taking that child and moving

3    him, but that is a unilateral placement, a proposed unilateral

4    placement, which -- there is a case in our papers *Spilsbury*

5    while not right on point, there the Court said a proposed

6    unilateral placement which triggers the parents of the

7    students' right to stay put.  However, the Second Circuit says

8    you don't actually get that order until you file a due process

9    complaint.

10           When we brought a number of actions in other states to

11    open the schools during COVID and to get orders from judges

12    that say if the schools close again, the students' pendency

13    program or placement is the last in-person placement they had

14    in the school.  We were told, and it makes sense, you haven't

15    filed due process complaints.  There the federal courts didn't

16    have jurisdiction over pendency because there wasn't that

17    adversarial proceeding going on below.  It's almost as if --

18    there is no case law that says it specifically, and if there

19    is, I haven't found it yet -- but you have concurrent

20    jurisdiction with the administrative office, the ISO and the

21    SO.  I'm sorry, Judge.

22           Some IHOs, when we start a federal action, will say

23    I'm not going to have a pendency hearing.  You want the federal

24    court, we don't have authority.  Of course, the federal court

25    wouldn't give up jurisdiction to the IHOs.  But there are times

P1H4THOC

1    if a hearing is coming up, you might say I'm going to just hold

2    the case in abeyance.  Judge Schofield did that in *Araujo*,

3    which I believe is still open four years later.  And what

4    happened in that case, well, she found the private educational

5    placement was pendency.  As the case comes to an end and the

6    school year ends, she asks that last question that has to be

7    asked, is there anything outstanding?  As a matter of fact,

8    yes.  The DPCs from last year aren't adjudicated yet.  And one

9    year becomes the next, becomes the next, and that case is still

10   on the docket.

11           With respect to *Mendez* when Judge Nathan said that

12   plaintiffs weren't entitled to an automatic injunction with

13   respect to funding the case is used at times as a basis for

14   moving cases out, finding they are not ripe.  The defendants at

15   times will ask for a dismissal.  But *Mendez* didn't dismiss

16   *Mendez*.  That was a preliminary injunction.  Judge Vyskocil --

17   the automatic standard said there's no irreparable harm, no

18   injunction.  The Second Circuit affirmed the Judge.  But we

19   wrote status letters to Magistrate Aaron every 30 days until

20   pendency was paid or the DPC was resolved.  I think the

21   decision came out in April, two years ago, whatever year it

22   was.  It was April.  And we had resolved that case on the

23   district court docket until November, October.  So there was no

24   finding that because the DOE agreed pendency lied at the

25   private school, there is no cause of action here.  Again,

P1H4THOC

1    because the ISOs and the SOs cannot enforce their own

2    decisions.  So there may be a pendency order but all that does

3    for our purposes here is, in my opinion, help you identify the

4    pendency placement and you can issue an order, a declaratory

5    judgment.  And if it's truly automatic, as Judge Nathan said in

6    *Mendez*, there was no test set up.  There was no question about

7    what the controversy, what's the injury.  All those conditions

8    precedent pertain to fast tracking funding.

9            But she said three questions or three issues the

10   plaintiff raised.  Are you entitled to an automatic injunction

11   with respect to pendency placement?  Are you entitled to

12   automatic injunction with respect to funding?  Are you entitled

13   to expedited payment?  The answer to the first two questions is

14   yes.  The third one a resounding no.

15           So there is nothing in *Mendez* that says because the

16   DOE agrees that pendency lies at iBrain, because they say they

17   are going to make payments next month that this case is mooted

18   out.  The parents still have an obligation, a real one.  Much

19   like these cases in the early days where standing was an issue,

20   if the parent didn't pay for the tuition and then seek

21   reimbursement, the parent didn't have an injury, the parent

22   couldn't ask for reimbursement.  I think is Judge Koeltl, some

23   decisions early on, *SW*, talked about if not payments.  In other

24   words, if the parent hasn't made payments to the school, a

25   contract or an obligation to pay would also give the parents

P1H4THOC

1    standing.

2         In *Hildago*, one of our cases, the year went by and

3    there was an issue I think about the contract for services at

4    the school, and Judge Koeltl said, listen, I think the contract

5    is fine but even if it's not the student went to the school,

6    the student got the services, almost like a quantum merit

7    argument, I guess.  So the DOE has to pay for those services.

8    Here, the parent has to pay tuition pursuant to their contract

9    in July, September, and January.  So the student is at iBrain,

10   yes.  But their obligation to pay that tuition is very real and

11   it hasn't been satisfied.

12        Again, I would argue that a request for an order

13   rather than this compliance, this voluntary compliance is

14   appropriate.  And there is nothing in any of the case law that

15   specifically says you are not entitled to an order.  Immediate

16   funding, yes.  But again with respect to placement and funding

17   generally, and what gets funded?

18        You'll see as we dig into some of these cases there

19   becomes an issue whether the DOE has to fund transportation, or

20   the DOE can provide transportation through their own

21   transportation department.  But it's eight months into the

22   school year.  If they hadn't done that that when are they going

23   to do that?  And I know because we've done enough of these

24   cases, you'll hear that maybe they sent a bus to the school,

25   the student didn't get on, the parent never returned calls.

P1H4THOC

1    That may all be true, but that's why we are in a courtroom to

2    decide what is the program and placement?  And when I say

3    "placement" I don't mean just the building.  Is it

4    transportation?  Is it transportation to and from the home?  Is

5    it transportation when the rides are actually used?  Is it to

6    and from the school?  Is it every day?  If the student is in

7    the hospital, who pays?  We are supposed to be able to resolve

8    these issues between us.

9         The IDEA is a cooperative statute.  I mean, this is

10   not like typical litigation where people are and should be

11   adversarial.  The school has an obligation to provide the

12   students with an education.  The parents are trying to get the

13   best education they can for the students, even if they don't

14   take them out of the public school.  The DOE pays federal funds

15   and agrees to the procedural safeguards that were discussed in

16   here, pendency, agrees that if a parent wins in a prior year,

17   and we are recommend an IEP that is something other than that

18   placement, we'll pay pendency.

19        I mean, one of the ways to really moot all of these

20   pendency case out is to come to an agreement with the parent.

21   I don't think in any of these cases in the four and a half

22   years that I've been here, not one had the parent and the DOE

23   agreed to the student's placement at the private school.  I

24   don't know if that's unusual.  I know there are agreements

25   reached in other cases.  Some of the students at our school

P1H4THOC

1    came from iHOPE or other schools where there was an agreement.

2    Sometimes the agreements are, we'll pay for the private school,

3    but we are not going to agree that this becomes a pendency

4    placement because there wasn't a decision.  And that's okay.

5    The parents know what they're getting into.  My point is there

6    are resolution sessions, and they don't yield to any results.

7    We fight over whether the parent has to be there, who from the

8    DOE has to there, whether somebody is there that can resolve

9    all of the issues.  And ultimately the IHO or SRO gives nothing

10   more than an advisory opinion because the orders can't be

11   enforced.  There are many orders where the ISO will order the

12   DOE to pay within 45 days, pendency --

13            THE COURT:  All right.  Thank you, Mr. Bellantoni.

14            Quick question then, MB has been fully paid?

15            MR. BELLANTONI:  Yes, your Honor.

16            THE COURT:  Okay.  And all of them have pendency at

17   iBrain and are continuing to be served at iBrain?

18            MR. BELLANTONI:  When you say "all of them," all of

19   them are at iBrain.  It's our position that they all have prior

20   orders for pendency.  I don't know that the district will agree

21   that each one has pendency, but yes, they are at iBrain.

22            THE COURT:  And I see in your summary letter that you

23   sent on January 16th that you didn't mention LC.  So there is

24   no update with respect to LC.  It's the same status that

25   existed in your prior papers; is that correct?

P1H4THOC

1              MR. BELLANTONI:  I think LC is completely paid off,

2       your Honor.

3              THE COURT:  LC is paid off too?

4              MR. BELLANTONI:  Yes.

5              THE COURT:  So MB and LC are completely paid?

6              MR. BELLANTONI:  Yes.

7              THE COURT:  Thank you.

8              Mr. Vyas or Mr. Lindeman?

9              MR. LINDEMAN:  Your Honor, I want to briefly address a

10      few of the cases cited by Mr. Bellantoni.  I have some personal

11      knowledge on some of those points.  I'm going to rely on

12      Mr. Vyas to discuss the specifics of these students where

13      appropriate.

14             Plaintiffs contend, I think, that an order is

15      necessary for the students to receive pendency, placements or

16      pendency funding.  We contest that.  But I think the issue

17      here, compared to what some of these other cases reference, is

18      that at the lower level the parties agree on what the basis of

19      pendency is.  The parties agree that an FOFD was issued in a

20      prior school year, sometimes several school years back.  But at

21      some point a student received a federal decision placing them

22      at iBrain.

23             What the parties have disagreed on this year is the

24      total cost to be paid under pendency and whether or not a

25      student is entitled to receive transportation services through

P1H4THOC

1    their chosen transportation provider or whether or not the

2    parent is allowed to receive those transportation services

3    through the Office of Transportation.  This has come up in a

4    few of these cases, including, I believe, for AT, who received

5    a pendency decision and the plaintiffs have appealed on that

6    point.

7         But in the *Moonsammy* case, for example, the

8    disagreement there was whether or not the student had pendency

9    at all.  These students had only been attaining iBrain for one

10   year prior, had received a decision that was partially

11   favorable but appealed that decision.  The disagreement the

12   parties had is whether or not the unappealed portions of that

13   SRO decision that Judge Engelmayer was considering created

14   pendency while the appeal was outstanding.  He decided it did.

15        In other cases, including I believe a case in front of

16   your Honor last year, as well as cases in front of Judge

17   Clarke, Judge Crotty, Judge Caproni and others, the

18   determination were made where parties agree on pendency or

19   where an IHO has issued a decision on pendency that was not

20   appealed by either party, the case is moot.  For all of these

21   students except for AT I believe that's the case.  As

22   previously discussed, students MB and LC have had final orders

23   issued and had their final orders fully implemented.  So

24   regardless what pendency was, those cases are fully moot.  The

25   student marked as ACT in this case, parties agree on what the

P1H4THOC

 1    pendency order requires and the Department of Education is

 2    current on those payments through March.  If pendency continues

 3    past March, further payments will come through, is my

 4    understanding.

 5         Students AT, SUD, and I believe also MC had all

 6    received final orders at this point.  I think those are all

 7    being appealed.  But those cases could end at any time.  Two of

 8    those decisions I think were adverse to plaintiffs.  So

 9    defendants have a very real interest in limiting the scope of

10    pendency payments when appropriate.  That's not money that's

11    going to be clawed back at any point.  If a payment is made

12    that's the end.

13         All of these students have pendency orders except for

14    AT who as an order that is currently being appealed at the

15    administrative level.  Whatever that final decision is, the

16    Department of Education will adhere to that decision and will

17    make pendency payments as appropriate.

18         THE COURT:  So all have pendency orders except for AT?

19         MR. LINDEMAN:  Yes, who received a pendency order but

20    that pendency order has been appealed.

21         THE COURT:  With respect to AT, it's your position

22    that it is unripe?

23         MR. LINDEMAN:  Yes, your Honor.  Because plaintiffs

24    have appealed that decision through the Office of State Review,

25    while it is true in certain circumstances exhaustion is not

P1H4THOC

1    necessary for pendency where there is a risk the student is

2    going to be moved, where there is some challenge that could

3    impact the student's placement.  Here, I don't believe that's

4    the case.  The student is at iBrain.  The student is receiving

5    services.  I believe the scope of the pendency appeal is

6    somewhat limited.  My notes may be incorrect on this point, but

7    I understand that this is only about specific services and

8    specific amounts.  Those amounts will be paid when that order

9    is final.  But given that the IHOs found that -- again, AT was

10    not entitled to relief for the 24/25 school year in the final

11    order, which I've been informed by plaintiff's counsel will be

12    appealed, but is not currently appealed, that case, at least

13    for now, is sort of in the nebulous state of procedural

14    happenings done, currently AT does not have pendency iBrain.

15    He may have pendency retroactively for this time period, but at

16    this exact moment AT does not have pendency.

17         THE COURT:  But it is currently being served at

18    iBrain.

19         MR. LINDEMAN:  But is currently receiving those

20    services.  And assuming that appeal is timely filed, and

21    assuming that the separate appeal of the pendency decision is

22    also decided in a similarly timely fashion, will receive

23    pendency funding in accordance with that order.

24         THE COURT:  And you're only moving with respect to

25    mootness and ripeness regarding the request for a declaratory

P1H4THOC

1    relief on the student's pendency placement, not on

2    implementation of funding obligations or other things; correct?

3           MR. LINDEMAN:  That's correct, your Honor.  When we

4    first were briefing this there were still payments outstanding.

5    I think because so many decisions have been issued and so many

6    payments have been made in the last few months, I would argue

7    today that at least for two of these students, their claims are

8    wholly moot, and it is arguable that the claims of several of

9    these students are also moot or in the case of at least ACT,

10   unripe.  But that wasn't part of our initial motion.  If the

11   Court wants to consider that separately, we're certainly

12   willing to provide more argument on the spot for that, but that

13   was not what we initially moved for.

14          THE COURT:  And maybe there can be agreement between

15   the parties, and there doesn't need to be a motion as to

16   certain individuals who may be mooted out in this case because

17   they have pendency, and they are also being paid.

18          MR. LINDEMAN:  Certainly hopeful.  I understand that

19   for at least one of these students who has a final order, there

20   is also a separate case for the final order which would seem to

21   obviate the need for any further litigation in this case for

22   that student, but I don't know if that's true for all of these

23   students.

24          THE COURT:  All right.  So you have your declaratory

25   judgment motion to dismiss, mootness and ripeness grounds.  And

P1H4THOC

1  then you would have your opposition to the PI.  Why don't you

2  speak to that, please.

3        MR. LINDEMAN:  Your Honor, I think Mr. Bellantoni said

4  today there is no emergency here.  I don't believe there was an

5  emergency when the PI was filed.  I guess that's the core of

6  our disagreement.  But certainly today there is no emergency.

7  These students have received payments pursuant to pendency.

8  Most of these students have final orders, for every single one

9  of these students, except for AT whose obligation we contest,

10 the defendant made payments through December 31st for three of

11 these students payments are current through March 31st.  The

12 only one -- I'm sorry.  The only student -- I believe Student

13 SJD received a favorable FOFD in December.  That final amount

14 is owed pursuant to the FOFD, which is not at issue here, but

15 those payments will be made.  I've been told that the goal is

16 to make all of these payments by the end of the month.

17       Mr. Bellantoni and I have appeared in various other

18 cases and filed various other letters in the last few weeks.

19 So I can say with some confidence that a lot of payments for a

20 lot of students attending iBrain have been made in the last two

21 to three weeks.

22       We've had moments where we were disagreeing on the

23 status of a payment on Friday and that the payment was in the

24 payee information portal by Monday.  That doesn't mean this

25 will happen by Monday, but I believe by February, I believe

P1H4THOC

1    very strongly that these will be done, again except for perhaps

2    AT who we are waiting on two connected but separate state

3    review proceedings to finish.

4            THE COURT:  Thank you.  All right.  I am going to give

5    you my decision now from the bench.  And I ask for your

6    patience and indulgence as I read it into the record because it

7    is a bit lengthy and includes some standards that I'm sure you

8    are aware of.  But I just want to make clear that I'm applying

9    the right standards so I'm articulating them here.

10           Plaintiffs are parents are natural guardians of six

11   student plaintiffs who each suffer from a brain injury or

12   brain-based disorder that adversely affects their educational

13   abilities and performance, Docket No. 45, Second Amended

14   Complaint at Paragraphs 9 and 32.

15           Defendants are the New York City Department of

16   Education, the DOE and the Chancellor of the DOE.

17           On October 8, 2024, plaintiffs filed a proposed order

18   to show cause for preliminary injunction, the third such

19   request as to why an order should not be issued, one directing

20   the defendants to fund each student plaintiffs pendency

21   placement program at iBrain for the 2024/2025 school year.  And

22   two, for the 2023 and 2024 school year for LC only.  That's at

23   Docket No. 50, plaintiff's brief at 34.

24           On November 4, 2024, defendants filed a partial motion

25   to dismiss the second amended complaint in an opposition to

P1H4THOC

plaintiff's request for a preliminary injunction.  Defendant's

brief, which is Docket No. 54 and 55.  There is also submission

of a declaration by Mr. Vyas at Docket No. 56.

On November 19, 2024, plaintiffs filed their

opposition to the partial motion to dismiss, Docket No. 59, as

well as filed a declaration by Mr. Bellantoni, at Docket No. 60

and a reply in further support of their request for preliminary

injunction at Docket No. 61, that's the plaintiff's reply.

On December 5, 2024, defendants filed their reply in

further support of their partial motion to dismiss at Docket

No. 62 defendant's reply.

I've also received an updated letter from plaintiffs

on January 16, 2025.

For the following reasons plaintiff's motion for a

preliminary injunction is denied and defendant's partial motion

to dismiss plaintiff's claims for declaratory relief is

granted.

Under the IDEA, states receiving federal special

education funding are required to provide a Free Appropriate

Public Education, a FAPE, to children with disabilities, 20

U.S.C. Section 1400(d)(1)(a), see *T.M. exro A.M. v. Cornwall*

*Central School District* 752 F.3d 145, 151 (2d Cir 2014)  To

provide a FAPE to each student with a disability a school

district must develop an individualized education program, IEP,

that is "reasonably calculated to enable the child to receive

P1H4THOC

educational benefits." *Ventura de Paulino v. New York City Department of Education*, 959 F.3d 519 525 (2d Cir. 2020).

"The IDEA also requires states to provide an administrative procedure for parents to challenge the adequacy of their children's IEPs." *Mendez v. Banks* 65 F.4th 56 59 (2d Cir. 2023).  New York has implemented a two-tier system of administrative review, New York Education Law, Section 4404, see *Ventura de Paulino*, 959 F.3d at 526.

In the first year a parent can file an administrative due process compliant, a DPC, challenging the IEP and requesting a hearing before an impartial hearing officer, an IHO, *Ventura de Paulino*, 959 F.3d at 526.

In the second tier parties aggrieved by the IHO's decision can appeal the case to a state review officer, an SRO, *id*. see also *RE v NYC Department of Education*, 694 F.3d 167, 175 (2d Cir. 2012).  "Once the state review officer makes a final decision the aggrieved party may seek judicial review of that decision in a state or federal trial court." *Ventura de Paulino*, 959, F.3d at 526.

Section 1415(j) of the IDEA also known as the "stay put" or "pendency" provision provides that "while the administrative and judicial proceedings are pending and unless the school district and parents agree otherwise, a child must remain, at public expense, in his or her then current educational placement." *id*. "to the purpose of this provision

is to maintain the child's educational status quo while the party's dispute is being resolved." *Abrams v. Porter*, 2021 WL 5829762 at *1 (2d Cir. December 9, 2021).  "A school district is required to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Doe v. East Lyme Board of Education*, 952 F.3d 649, 659 (2d Cir. 2020).

The stay put provision however "does not guarantee a disabled child the right to remain in the exact same school with the exact same service providers while its administrative and judicial proceedings are pending.  Instead it guarantees only that the same general level and type of services that the disabled child was receiving." *TM* 752 F.3d at 171.

Although parents "dissatisfied with their child's education can unilaterally change their child's placement duration the pendency of review proceedings." *Ventura de Paulino*, 959 F.3d at 526, they cannot unilaterally require the school district to pay for that new school.  See *id.* at 533. Unless the parents can "persuade the school district to pay for the program's new services on a pendency basis" their only recourse is "to enroll the child in a new school and then seek retroactive reimbursement from the school district after the IEP dispute is resolved." *id.* at 534.

"Although the IDEA stay put provision generally does not require the state to pay the cost of a new educational

P1H4THOC

placement during the pendency of proceedings, parents can
obtain funding for a new placement if an IHO/SRO finds it to be
appropriate and issues a pendency order and the school district
does not appeal the decision." *Mendez* 65 F.4th at 59.  For
children with a pendency order "the IDEA stay put provision
does not create an entitlement to immediate payment or
reimbursement." But "parents or guardians may still be able to
obtain such relief if they establish that a delay or failure to
pay has jeopardized their child's educational placement." *Id*.
at 63.

          The Court generally assumes familiarity with the facts
and background of this case and recounts now only the key
details to the disposition of this motion.  There are six
student plaintiffs in this.  Case each filed a due process
complaint against the DOE on or around July 2, 2024, second
Amended Complaint, Paragraph 10.

          The six student plaintiffs here seem to fall into
three categories.  First, three students MB, LC, and SJD have
received final pendency orders placing them at iBrain for the
2024/2025 school year.

          Second, two students AT and MC received an FOFD at the
administrative level from an impartial hearing officer denying
pendency placement at iBrain for the 2024/2025 school year but
will remain placed at iBrain for the duration of their
administrative appeal.

P1H4THOC

1    Third, one student, ACT, has invoked pendency but has

2    not yet received an FOFD from an IHO.

3    Let me ask you, Mr. Bellantoni, before I continue, is

4    that a correct summary of the six individuals or is that

5    outdated now?

6    MR. BELLANTONI:  It's correct, your Honor.

7    THE COURT:  It's correct.  Okay.  Mr. Lindeman, do you

8    agree?

9    MR. LINDEMAN:  Your Honor, I believe at this point MB,

10    MC, SJD, LC, and AT have all received final orders.

11    THE COURT:  Okay.

12    MR. LINDEMAN:  I believe that AT and MC are appealing

13    those.

14    THE COURT:  Okay.  So we have final orders for

15    everyone other than AT and MC; is that correct?

16    MR. LINDEMAN:  And still ACT, yeah.  Your third

17    category I think is still correct.

18    THE COURT:  Okay.  Thank you very much.

19    The Court first addresses the motion to dismiss for

20    lack of subject matter jurisdiction.  Under Federal Rules of

21    Civil Procedure 12(b)(1) a Court must dismiss a case for lack

22    of subject matter jurisdiction when it "lacks the statutory or

23    constitutional power to adjudicate it."  *Makarova v. United*

24    *States*, 201 F.3d 110, 113 (2d Cir. 2020).

25    "In resolving a motion to dismiss for lack of subject

P1H4THOC

matter jurisdiction Rule 12(b)(1) a district court may refer to

evidence outside the pleadings." And the plaintiff asserting

subject matter jurisdiction has the burden of proving by a

preponderance of the evidence that it exists. *id.*

A challenge raising the issue of mootness is analyzed

under Rule 12(b)(1). A case becomes moot if "one, it cannot be

said with assurance that there is no reasonable expectation

that the alleged violation will recur, and two, interim relief

or events have completely and irrevocably eradicated the

effects of the alleged violation." *American Freedom DEF.*

*Initiative v. Metro Transportation Authority*, 815 F.3d 105, 109

(2d Cir. 2016).

Likewise, "ripeness is jurisdictional in nature and

therefore properly considered on a motion to dismiss for lack

of subject matter jurisdiction pursuant to Rule 12(b)(1)."

*Duane Reade Inc. v. Saint Paul Fire and Marine Insurance*

*Company*, 261 F. Supp. 2d 293 294 (S.D.N.Y. 2003)

The standard for ripeness in a declaratory judgment

action is "whether there is substantial controversy between

parties having adverse legal interests of sufficient immediacy

and reality toward the issuance of a declaratory judgment."

*Id*.

In its 12(b)(1) motion to dismiss, defendants argue

that "plaintiffs request for declaratory relief regarding the

students' pendency placements are moot." Defendant's Brief at

P1H4THOC

1   8, as well as certain are unripe.  The Court agrees and thus

2   dismisses the student plaintiffs' claims for declaratory

3   relief.

4          Turning first to mootness, defendants argue that the

5   student plaintiffs receipt of pendency orders moots their

6   request for declaratory relief.  In response, plaintiffs argue

7   that even though "each student has a valid pendency order"

8   placing them at iBrain, plaintiffs brief at 4, those orders

9   have not been properly implemented because defendants have not

10  "fully and timely funded" those placements, *id.* at 5.  However,

11  as defendants state in their motion and further reiterate in

12  their rely and here today, they are "not presently moving to

13  dismiss plaintiff's claims regarding the implementation of

14  DOE's funding obligations set forth in the applicable pendency

15  orders and FOFDs."  Defendants brief at 3 and defendant's reply

16  at 4.

17         In addition, MB and LC seem to be wholly moot given

18  that their funding has been paid.  Although, I leave that to

19  the parties to finally resolve whether they should be dismissed

20  from this case.  I leave that to the parties because that has

21  not been fully briefed, and I just received that information

22  today.

23         The Court agrees with defendants that plaintiff's

24  request for declaratory relief is moot as to the students who

25  have already received pendency orders at iBrain.  Although

P1H4THOC

1    plaintiffs dispute whether the orders have been fully

2    implemented, that issue is distinct from their request for

3    declaratory relief.  Here, all student plaintiffs that have

4    pendency orders at iBrain create an entitlement to both

5    pendency and funding under the IDEA which is exactly what

6    plaintiffs seek in their request for declaratory relief

7    regardless of whether the DOE's funding obligation pursuant to

8    that entitlement have been fulfilled."  See *Mendez v. Banks*, 65

9    F.4th at 56, 63 to 65 (2d Cir. 2023).

10           In that case the Court agreed with the iBrain

11   plaintiffs that the IDEA stay put provision functions as an

12   "automatic injunction" that "entitles children with

13   disabilities to remain in their then current education

14   placement at public expense during the pendency of any

15   proceeding."

16           Accordingly, the students who have received pendency

17   orders that entitle them to pendency placement at iBrain -- as

18   to all the students who have received pendency orders that

19   entitle them to pendency placement at iBrain, the Court

20   dismisses as moot the claims for declaratory relief.

21           Mr. Lindeman, the only other individual with whom you

22   are arguing is unripe is AT; is that correct?

23           MR. LINDEMAN:  That's correct, your Honor.

24           THE COURT:  Thank you.

25           In terms of AT, the defendants argue that AT's

P1H4THOC

1   declaratory judgment claims are unripe because they have not

2   received a pendency determination placing them at iBrain

3   because the pendency order was appealed and the appeal has not

4   yet been decided; is that correct, Mr. Lindeman?  Is that the

5   grounds for unripeness?

6           MR. LINDEMAN:  That's correct, your Honor.

7           THE COURT:  Thank you.

8           As *Mendez* instructs, a Court cannot "conclude that the

9   DOE has a legal obligation to fund" a child's "placement for a

10  given period" before knowing whether the "DOE's legal

11  obligation will continue through the remainder of the school

12  year." *Mendez* 65 F.3d at 61.

13          In other words "the DOE must first withhold payments

14  that have actually accrued before plaintiffs can seek those

15  payments in court." *id*.

16          In AT's case those payments not yet accrued because AT

17  not yet received a pendency order that creates an entitlement

18  to placement at iBrain for the entire 24/25 school year.

19  Because AT's "entitlement tuition for the remainder of the

20  school year depends on contingent future events that may not

21  occur as anticipated or indeed may not occur at all" that is,

22  the receipt of the a pendency order for the remainder of the

23  school year, AT's claims are unripe.  See *id*.  Also, *Grullon*

24  2023 WL 6929542 at *4 to 5.

25          Although plaintiffs point out that a pendency decision

P1H4THOC

```
1    for AT is overdue, this does not change the fact that DOE's
2    funding obligations have not accrued in the absence of an order
3    placing AT at iBrain for the remainder of the school year and
4    therefore the claim for declaratory relief with respect to AT
5    is unripe.
6            The Court now turns to the plaintiff's request for a
7    preliminary injunction.  Plaintiffs seek a preliminary
8    injunction directing the defendants to pay all outstanding
9    balances related to the student's pendency programs and
10   placements at iBrain including tuition and related expenses and
11   to continue to fund each student's pendency program or
12   placement throughout the administrative judicial period
13   proceedings relative to each student DPC for the 24/25 extended
14   school year."  Plaintiff's brief at 24.
15           The Court first addresses the applicable legal
16   standard.  Traditionally a party seeking preliminary injunctive
17   relief "must demonstrate, one, a likelihood of success on the
18   merits or sufficiently serious questions going to the merits to
19   make them a fair ground for litigation and a balance of
20   hardships tipping decidedly in the plaintiff's favor.  Two, a
21   likelihood of irreparable injury in the absence of an
22   injunction.  Three, that the balance of hardships tips in the
23   plaintiff's favor.  And four, that the public interest would
24   not be disturbed by the issuance of an injunction." *Benihana*
25   *Inc. v. Benihana of Tokyo*, 784 F.3d at 887, 895 (2d Cir. 2015).
```

P1H4THOC

1    Preliminary injunctive relief "is an extraordinary and

2    drastic remedy, one that should not be granted unless the

3    movement, by clear showing, carries the burden of persuasion."

4    *Moore v. Consolidated Edison Co. of New York*, 409 F.3d 506, 510

5    (2d Cir. 2005).  Defendants ask the Court to apply these

6    traditional factors, whereas plaintiffs argue that because they

7    ask the Court to "assess pendency claims under 20 U.C.C.

8    1415(j) the traditional preliminary injunction standards do not

9    apply."  Brief at 22.

10    Plaintiffs instead assert that they are entitled to an

11    automatic pendency injunction and that the Court should not

12    consider the factors of irreparable harm and either likelihood

13    of success on the merits are fair grounds for litigation and a

14    balance of hardships.  Brief at 12 to 13.

15    Plaintiffs are correct that the second circuit has

16    characterized Section 1415(j) of the IDEA as an "automatic

17    injunction designed to maintain the child's educational status

18    quo while the parties IEP disputes are being resolved."

19    *Ventura de Paulino*, 959 F.3d at 529.

20    However, plaintiffs are wrong as a matter of law as to

21    the applicable legal standard for this case.  The "automatic

22    injunctive effect of Section 1415(j) is the student's ability

23    to automatically remain in their current educational placement

24    during the pendency of their underlying administrative

25    proceedings."  *Grullon v. Banks*, 2023 WL 6929542 at *5,

P1H4THOC

1    (S.D.N.Y. Oct 19, 2023).  It is not, as plaintiff suggests, "a

2    mechanism to which plaintiffs can seek a court order requiring

3    DOE to acknowledge a pendency determination."  *Id.* see *Mendez*

4    65 F.4th at 62 to 63 that stated that plaintiffs were "wrong as

5    a matter of law" when they argued that "there is no requirement

6    to show irreparable harm in order to obtain an order requiring

7    the DOE to immediately fund the educational placements for the

8    2022 to 2023 school year."  Accordingly, the Court will proceed

9    with the traditional preliminary injunction factors and

10   concludes that the plaintiffs have not met their burden.

11            "Irreparable harm is the single most important

12   prerequisite for the issuance of a preliminary injunction."

13   *Sterling v. Deutsche Bank*, 368 F. Supp 3d 723, 727 (S.D.N.Y.

14   2019).

15            Plaintiff requests an order directing the DOE to

16   expeditiously fund their pendency program replacement.

17   However, as with the last request for preliminary relief,

18   plaintiffs have failed to show a likelihood of irreparable harm

19   in the absence of such an order.  All six students are

20   currently enrolled at iBrain.

21            As to plaintiffs request for expedited funding to

22   accompany their pendency placements, as plaintiff acknowledges

23   in their brief, the Second Circuit has explained that Section

24   1415(j) does not create a procedural right to immediate

25   payment, at least not absent a showing that child's placement

P1H4THOC

will be placed at risk.  *Mendez* 65 F.4th at 64.

Despite plaintiffs assertions in their brief that the "students placements are at risk," Plaintiffs brief at 21, based on the evidence that's placed before this Court, the Court does not conclude that the placements are at risk without expedited funding at this time.

Indeed, at the hearing here today, Mr. Bellantoni, counsel for the plaintiffs, relayed that there is less of an urgency now that the money is coming in for the students at iBrain.  That he cannot say that the school will close or that the students will not be served at iBrain.  That is the current state of affairs.  Therefore, there is no risk that necessitates this expedited funding.

The Court will take these representations as the more current state of affairs.  Even if the Court was to look back at some of the other items that were submitted at the time of this lawsuit, including declarations of Arthur Mielnik, the director of strategy planning for iBrain, that declaration talks funding for other students, not the funding here.

In fact, in addition to the representations that were made by plaintiff's counsel here regarding the lack of urgency at this point, the Court also observes that two of the students now have full payments made, MB and LC.  Demonstrating that, again, for purposes of them, certainly, there is no risk at all.

P1H4THOC

1          Again, the Court does not, given current

2    representations here, does not find that Mr. Mielnik's

3    assertion in his declaration that iBrain faces closure is still

4    relevant at this point.

5          Given all of this, the student plaintiffs have not

6    shown irreparable harm of an injury that needs to be remedied

7    at this point, an imminent threat to their educational services

8    for the students.  And the Court relies on certain cases such

9    as *Abrams v. Carranza* 2020 WL 604 8785 at *2 (S.D.N.Y.

10   October 13, 2020) and others.

11         I will also note that one of the student plaintiffs

12   here, SJD, is the daughter of the iBrain founder who is married

13   to the owner of the transportation company that provides

14   transportation to and from iBrain for at least some of the

15   student plaintiffs in this case.  And it is implausible, at

16   least to the Court, that SJD is at risk of losing her placement

17   at iBrain which is run by other father or the transportation

18   company which is owned by her mother will refuse to provide her

19   transportation to and from iBrain.

20         The plaintiffs cite to Judge Oetken's order granting a

21   preliminary injunction in *RS v. New York City DOE*.  But in that

22   case, the parent plaintiffs have been making monthly tuition

23   payments out of their own savings and faced potential tax

24   penalties for having to access their retirement accounts to

25   continue to pay for their child's tuition.  Here there is no

P1H4THOC

1   evidence before the Court showing that there exists a similar

2   risk or significant financial hardship to any of the instant

3   plaintiff parents or that iBrain will remove from the student

4   plaintiffs from their placements if the parent plaintiffs fail

5   to make significant out-of-pocket placement payments to the

6   school.  Because there is no risk of irreparable harm, the

7   Court does not need to address the remaining elements for a

8   preliminary injunction.

9        And so therefore, the Court will deny the motion for

10  preliminary injunction and grant the motion to dismiss certain

11  claims for declaratory relief, as stated.

12       Now, where we are in terms of next steps here, I

13  believe that the parties should have a discussion about MB and

14  LC, given they have pendency plus full funding and whether they

15  still belong here.  And that leaves four other students.

16       I presume that the case will then proceed in the

17  normal course.  I wonder, is there discovery that need to be

18  turned over or what's our next step here?  Let me start with

19  defendants and then I'll move to plaintiffs.

20       Mr. Lindeman, what is the next step with respect to

21  other four?

22       MR. LINDEMAN:  Your Honor, I do think the parties

23  should discuss as to whether several of the students have any

24  further place in this case.

25       As to discovery, I don't think it will be necessary.

P1H4THOC

1    In most of these cases it is not.  There have been rare

2    instance where we found it helpful, but I don't think here that

3    will come up.

4          I think the only active question at this time from

5    defendant's perspective, the only real disagreement the parties

6    have, I think is as to AT's entitlement to the specific amounts

7    alleged in plaintiffs most recent filing.  Hopefully, decisions

8    will be rendered soon that will resolve those disagreements or

9    at least codify them in such a way that it can be presented to

10   this Court in a narrow scope.

11         I would propose, I think, that the Court set a date

12   for some sort of status letter detailing the specifics of what

13   remains in the case and what both parties agree can be removed

14   in 30 or 45 days as well as I suppose a date for defendants to

15   respond to the remaining allegations in the complaint.

16         THE COURT:  Thank you.

17         Mr. Bellantoni, do you agree?  Let me take it in

18   steps.  I think it makes sense to have discussions with

19   defendant about MB and LC at this point.  Do you agree with

20   that?

21         MR. BELLANTONI:  Yes, your Honor.

22         THE COURT:  In terms of next steps, is any discovery

23   necessary or what is your view on a status letter in 45 days as

24   well as requiring defendant to respond to the remaining issues?

25         MR. BELLANTONI:  Your Honor, as far as discovery, if I

P1H4THOC

1  could be given an opportunity to review a written decision.

2  One of the things I would like to discover is what the DOE due

3  course is when the DPC is filed and someone is claiming

4  pendency because in almost every case it's different.  If there

5  is any discovery to be had here, I don't think it will be a

6  lot, but I think it willing along those lines.

7        I'm fine with the status letter if your Honor is fine.

8  In all likelihood, there may not be discovery.

9        THE COURT:  You'll have discussions.  Okay.

10        MR. BELLANTONI:  If I may, two other issues.  Your

11  Honor, with respect to SJD, I don't know that I represented,

12  and if I did, I don't think I ever said she would be

13  disenrolled, that would never happen.  But if the school

14  closes, she would be one of the students that can't go to the

15  school regardless of whether her father owns it.

16        THE COURT:  I see.

17        MR. BELLANTONI:  I could tell you right now, he would

18  never disenroll any student, which is part of the problem here.

19  In other cases students get a letter saying if funding isn't

20  paid next week, you're out.  This is a guy who won't do that.

21  I guess these are collective urgencies that are very difficult

22  to litigate.

23        THE COURT:  Understood.  Thank you.

24        MR. BELLANTONI:  And lastly, your Honor, I'm not sure

25  I understand with respect to AT, when we are talking about

P1H4THOC

```
 1   pendency -- Mr. Lindeman, we could talk with this afterwards --
 2   I think you mentioned waiting to see what the upcoming decision
 3   says before we talk about whether or not there is pendency.
 4   But it would be the plaintiff's position that pendency exists
 5   while those decisions are pending.  So I don't know that the
 6   case law is clear that pendency continues whether or not the
 7   parents claim is meritorious.  They are two separate things.  I
 8   don't know if he is talking about appealing the final order or
 9   the pendency order.  We can talk about that.  I'm not sure that
10   clarified anything, but I just wanted to address it, Judge.
11           THE COURT:  That's fine.  Yes, please do talk about
12   that.
13           And she is -- well, I don't know if AT "he" or "she"
14   is currently being served at iBrain during the pendency of
15   these administrative proceedings.  Is that correct,
16   Mr. Lindeman?
17           MR. LINDEMAN:  That's my understanding.
18           THE COURT:  Good.
19           Why don't we set down a status letter to come from the
20   parties in 45 days.  Let's say, why don't we go with
21   February 28th.  In that letter I would like the parties to
22   address whether there are any plaintiffs that should no longer
23   be part of this case and any additional status with respect to
24   the four that perhaps still should remain in this case and
25   appropriate next steps.  I presume defendant will be responding
```

P1H4THOC

1  to what it needs to respond to at this point.  And if there are

2  any issues about AT, the two of you will work that through

3  during this time period as well and talk about that.

4         What I'd like to make sure, I've certainly taken care

5  of the preliminary injunction, but I still have an active case

6  here.  So I need to know what our next steps need to be in

7  terms of bringing this case to closure, but you will tell me in

8  your 45-day letter where we are at that point.

9         Anything further Mr. Bellantoni?

10        MR. BELLANTONI:  No, your Honor.

11        THE COURT:  Thank you.

12        Anything further Mr. Lindeman?

13        MR. LINDEMAN:  Nothing from defendants, your Honor.

14  Thank you.

15        THE COURT:  All right.  Thank you very much, and court

16  is adjourned for the day.  Have a nice weekend.

17        (Adjourned)

18

19

20

21

22

23

24

25