UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X
**MARTINE THOMAS** and **SCOTT THOMAS**, as
Parent and Natural Guardian of A.T., and
**MARTINE THOMAS**, and **SCOTT THOMAS**,
Individually *et al.*,

                    1:24-cv-05138 (JLR)

            Plaintiffs,

-against-

**DAVID C. BANKS**, in her official capacity as
Chancellor of the New York City Department
of Education, and the **NEW YORK CITY
DEPARTMENT OF EDUCATION**,

            Defendants.
———————————————————————X


### PLAINTIFFS' MEMORANDUM OF LAW IN
### <u>SUPPORT OF THEIR MOTION FOR A PRELIMINARY
### INJUNCTION</u>

Kenneth Willard
Liberty and Freedom Legal Group, Ltd.
*Attorneys for the Plaintiff(s)*
300 East 95th Street, Suite 130
New York, New York 10016
hearings@pabilaw.org

# **TABLE OF CONTENTS**

*Page(s)*

TABLE OF AUTHORITIES ........................................................................................ i

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

LEGAL BACKGROUND…………………………………………………………………6

TEMPORARY RESTRAINING ORDER/PRELIMINARY
INJUNCTION STANDARD ..………………………………………………………………7

ARGUMENT …………..……………………………………………………………………9

I.  PLAINTIFFS NEEDS NOT SHOW IRREPARABLE HARM................................. 9

II.  *MENDEZ* DOES NOT PRECLUDE INJUNCTIVE RELIEF
     BECAUSE DOE IS DISPUTING PENDENCY…………………………………….12

III.  DOE MUST FUND A.T.'S EDUCATIONAL PROGRAM/PLACEMENT
      DURING PLAINTIFFS' ADMINISTRATIVE AND/OR JUDICIAL
      PROCEEDINGS REGARDING THEIR DPC FOR THE
      2024-25 SY………………………………………………………………………..14

IV.  ALTERNATIVELY, PLAINTIFFS' CLAIMS SATISFY THE
     TRADITIONAL PRELIMINARY INJUNCTION STANDARD ............................. 17

     A.  Likelihood of Success on the Merits ……………………………………….. 18

     B.  Irreparable Harm ……………………………………………………………..18

     C.  The Balance of the Equities Favors Injunctive Relief …………………….. 18

     D.  Preliminary Injunctive Relief Is in the Public's Interest …………………….19

V.  DEFENDANTS HAVE NOT MOVED FOR A STAY OF THE PENDENCY
    RIGHTS .................................................................................................................. 19

VI.  DEFENDANTS ARE RESPONSIBLE FOR PENDENCY PLACEMENTS
     FOR ALL STUDENTS ........................................................................................... 21

CONCLUSION .........................................................................................................24

## Table of Authorities

**Cases**

*A.S. ex rel. P.B.S. v. Bd. of Educ. for Town of W. Hartford*,
 47 F. App'x 615, n.2 (2d Cir. 2002) ............................................................................ 7

*Ahmad v. Long Island Univ.*,
 18 F. Supp. 2d 245 (E.D.N.Y. 1998) ........................................................................... 8

*Ali v. Wuchte*,
 No. 22CV01532HGLGD, 2022 WL 3682303 (E.D.N.Y. Aug. 25, 2022) .................... 8

*Araujo v. N.Y.C. Dep't of Educ.*,
 2020 U.S. Dist. LEXIS 175767 (S.D.N.Y. Sep. 24, 2020) .................................... 10, 20

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*,
 290 F.3d 476 (2d Cir. 2002) ................................................................................. 15, 16

*Cochran v. D.C.*,
 660 F. Supp. 314, 319 (D.D.C. 1987) ......................................................................... 9

*Connecticut State Police Union v. Rovella*,
 36 F.4th 54 (2d Cir.) .................................................................................................. 8

*Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*,
 689 F. Supp. 197 (S.D.N.Y. 1988) .......................................................................... 8, 9

*D.C. v. Masucci*,
 13 F. Supp. 3d 33 (D.D.C. 2014) .............................................................................. 20

*Dubois v. Connecticut State Bd. of Educ.*,
 727 F.2d 44 (2d Cir. 1984) ........................................................................................ 19

*E. Z.-L. ex rel. R.L. v. New York City Dep't of Educ.*,
 763 F. Supp. 2d 584 (S.D.N.Y. 2011) ......................................................................... 3

*Forest Grove Sch. Dist. v. T.A.*,
 557 U.S. 230 (2009) .................................................................................................. 19

*Grayson v. Equifax Credit Info. Servs., No. 18-CV-6977*
 (MKB), 2019 WL 1862929 (E.D.N.Y. Apr. 24, 2019) ................................................ 8

*Greenwich Bd. of Educ. v. Torok, No. CIV.A.3:03-CV1407JCH*,
 2003 WL 22429016 (D. Conn. Oct. 22, 2003) ......................................................... 19

*LV v. New York City Dep't of Educ.*,
   2005 U.S. Dist. LEXIS 20672 (S.D.N.Y. Sep. 15, 2005) ............................................................. 6

*M.R. v. Ridley Sch. Dist.*,
   744 F.3d 112 (3d Cir. 2014) ....................................................................................................... 16

*Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*,
   112 F. App'x 89 (2d Cir. 2004) .................................................................................................. 15

*Mendez v. Banks*,
   65 F.4th 56 (2d Cir. 2023) ....................................................... 10, 11, 12, 13, 16, 17, 18

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
   297 F.3d 195 (2d Cir. 2002) ...................................................................................................... 2, 7

*Neske v. New York City Dep't of Educ.*,
   No. 19-CV-2933 (VEC), 2019 WL 3531959 (S.D.N.Y. Aug. 2, 2019) .................................... 14

*New York v. United States Dep't of Homeland Sec.*,
   969 F.3d 42 (2d Cir. 2020) ......................................................................................................... 8

*Soria v. New York City Dep't of Educ.*,
   397 F. Supp. 3d 397 (S.D.N.Y. 2019) ....................................................................................... 7

*Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*,
   96 F.3d 78 (3d Cir. 1996) ...................................................................................................... 16, 19

*Ventura de Paulino*,
   959 F.3d .................................................................................................... 10, 11, 14, 15, 16

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ...................................................................................................................... 18

**Statutes**

20 U.S.C. § 1400 ............................................................................................................................ 19

20 U.S.C. § 1415 ......................................................... 2, 3,  10, 11, 12, 14,  16, 17, 21

N.Y. Educ. Law § 4404 .................................................................................................................. 14

**Other**

34 C.F.R. § 300.518 ........................................................................................................................ 14

Fed. R. Civ. P. 65 .................................................................................................................... 1, 7, 8

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted in support of Plaintiffs' Motion for a Temporary Restraining Order ("TRO") and/or Preliminary Injunction under Fed. R. Civ. P. 65(b) and (a) respectively, ordering Defendants, DAVID C. BANKS, in his official capacity as Chancellor of New York City Department of Education and the NEW YORK CITY DEPARTMENT OF EDUCATION (collectively "DOE"), to implement the Student-Plaintiff's pendency placement/program at his current educational placement, including tuition and related services, and special transportation.

Plaintiffs here request an order directing Defendants to fully implement, fund the cost of, A.T.'s attendance at the International Academy for the Brain ("iBRAIN") in accordance with A.T.'s final administrative decision for his underlying due process proceedings for the 2024-2025 extended school year ("pendency placement"). A.T.'s pendency placement here is automatic, and Defendants have not sought or received a stay regarding Plaintiffs' pendency rights. Yet, since July 2, 2024, Defendants have failed to fund A.T.'s current educational program/placement at iBRAIN as pendency, which they must fund under the Individuals with Disabilities Education Act ("IDEA") and New York state Education Law.

While Plaintiffs have filed previous motions for preliminary injunction in this case, the landscape has changed since those prior motions were adjudicated. On April 9, 2025, SRO Justyn P. Bates issued SRO Decision No. 24-624, ordering DOE to fully fund, as pendency, all tuition, related services, and transportation expenses for the 2024-2025 school year, directly to the providers, in the amounts set forth in the respective contracts. Defendants are now refusing to implement that decision, arguing it is not enforceable until their four-month appeal period has concluded. (*See* ECF 82 at 9).

1

The urgency of this matter is apparent, as this Student with disabilities, and nearly forty others, are at risk of losing their administratively ordered educational placements. A.T. is at risk of losing his pendency placement at iBRAIN, as well as his special transportation services. A.T.'s ongoing placement at iBRAIN is at increasing risk the longer DOE avoids its pendency obligations, which would be an irreparable injury to him. *R.S. et al. v. NYC DOE et al.*, 21-cv-02257 (JPO) (Dkt. No. 22, June 17, 2021). The longer DOE goes without funding A.T.'s educational program/placement as pendency, the greater the chance he will lose his placement.[1]

As such, Plaintiffs ask this Court to issue an order directing Defendants to implement and fund A.T.'s pendency placement/program at iBRAIN without further delay, requiring DOE to directly pay A.T.'s tuition and related services, including special transportation, throughout all administrative and judicial proceedings relative to A.T.'s Due Process Complaint ("DPC") for the 2024-2025 school year ("SY") under 20 U.S.C. § 1415(j) ("Pendency Provision") of the IDEA.

Defendants' refusal to implement and fund A.T.'s pendency placement/program is the latest example of a continued pattern of DOE's failure to comply with IDEA requirements that span more than two decades. The injunctive relief Plaintiffs seek **has already been ordered in the underlying administrative proceedings**. Accordingly, Plaintiffs request that the Court grant their motion for a temporary restraining order and/or preliminary injunction in its entirety.

## STATEMENT OF FACTS

On June 17, 2024, Plaintiffs sent DOE a Ten-Day Notice ("TDN"), *inter alia*, rejecting A.T.'s proposed IEP for the 2024-2025 SY as inappropriate to meet his needs, notifying DOE of

---

[1] As A.T. uses a wheelchair, special transportation is essential to access his educational program/placement. A.T. travels to and from iBRAIN and home in a special van equipped with lifts, air conditioning, and other medical equipment to address emergencies. A.T. is accompanied during transportation by a paraprofessional and/or nurse to help get him on and off the van and monitor his particular medical needs while being transported.

2

their intention to maintain A.T.'s placement at iBRAIN for the upcoming 2024-2025 SY, and requesting that DOE continue funding his program/placement at iBRAIN pursuant to an unappealed, final administrative order establishing iBRAIN as A.T.'s last agreed-upon educational program/placement for pendency. On July 2, 2024, Plaintiffs filed a DPC stating, in pertinent part, that: (1) DOE did not offer A.T. a FAPE for the 2024-2025 extended SY; (2) the unilateral placement or continued placement of their child at iBRAIN was appropriate; and (3) equitable considerations favored an award of full tuition payment directly to the educational program/placement and the related service providers. In addition, Plaintiffs' DPC requested a proper resolution meeting and an order requiring DOE to fund A.T.'s educational program/placement during the pendency of the due process proceedings relative to the DPC for the 2024-2025 SY, as required by 20 U.S.C. § 1415(j).

The filing of the DPC on July 2, 2024, triggered Defendants' obligation to fund A.T.'s pendency placement from that date forward. *See E. Z.-L. ex rel. R.L. v. New York City Dep't of Educ.*, 763 F. Supp. 2d 584, 599 (S.D.N.Y. 2011), *aff'd sub nom. R.E. v. New York City Dep't of Educ.*, 694 F.3d 167 (2d Cir. 2012) ("If the student's 'current educational placement' is in private school, 'the responsibility for private school tuition "stays put" as well.' Thus, where, as here, the school district has been paying for a child's private school tuition, it must continue to do so until the moment the child's educational placement changes") (internal citations omitted).

At the time of the July 2, 2024, DPC, the basis for pendency was an August 2, 2023, FOFD relative to the 2022-2023 SY. (A true and accurate copy of the August 2, 2023, FOFD is attached as **Exhibit 1-1** to the Declaration of Rory Bellantoni ("Bellantoni Dec."), which is attached to Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment as **Exhibit 1**; *see also* ECF No. 45-1 at 16-29). This was the last agreed-upon placement because the

proceedings relative to the 2023-2024 SY had not yet been resolved. However, on July 5, 2024, SRO Steven Krolak issued Decision No. 24-175, relative to the 2023-2024 SY. In that decision, SRO Krolak found that DOE failed to offer A.T. a FAPE for the 2023-2024 SY, that iBRAIN was the appropriate unilateral placement, and that DOE was to fully fund the costs of A.T.'s tuition at iBRAIN and special transportation for the 2023-2024 SY. (A true and accurate copy of SRO Decision No. 24-175 is attached as **Exhibit 1-2** to the Bellantoni Dec.).

On December 12, 2024, the IHO issued an interim Order on Pendency, which acknowledged SRO Decision No. 24-175 as the basis for pendency. The IHO issued an Amended Order on December 20, 2024, and a Corrected Amended Order on Pendency on December 23, 2024. The latter order corrected a typographical error. (A true and accurate copy of the December 23, 2024, Corrected Amended Order on Pendency is attached to the Bellantoni Dec. as **Exhibit 1-3**). However, the IHO ordered pendency to be funded at the 2023-2024 rates, and transportation to be funded on a pro rata basis. After Parents appealed this Pendency Order, SRO Justyn P. Bates issued SRO Decision No. 24-624 on April 9, 2025. (A true and accurate copy of SRO Decision No. 24-624 is attached to the Bellantoni Dec. as **Exhibit 1-4**). In that Decision, SRO Bates affirmed that SRO Decision No. 24-175 was the basis for pendency, but reversed the IHO's order that pendency be paid at the previous year's rates, and that transportation be funded on a pro rata basis. (*See* **Exhibit 1-4** at 8).

Since the first day of the 2024-2025 SY was July 2, 2024, the August 2, 2023, FOFD was the basis for pendency from July 2, 2024, to July 5, 2024. SRO Decision No. 24-175 was the basis for pendency from July 5, 2024, through the resolution of the proceedings relative to the 2024-2025 SY. To date, DOE has not paid **any** amounts for the pendency placement—in the "usual course" of business or otherwise—despite knowing the payments are due, despite being ordered

to fund A.T.'s pendency program/placement, and despite the knowledge that A.T. is at risk of losing his pendency program/placement.

Pursuant to the binding administrative order, the DOE is required to fund the full amount of A.T.'s placement at iBRAIN, including special transportation. The amounts owed are set by contract. Pursuant to the Annual Enrollment Contract between Parents and iBRAIN for the 2024-2025 SY (the "iBRAIN contract"), the total amount of full tuition owed for the 2024-2025 SY, including base tuition, supplemental tuition, and late fees, is $383,081.50. (A true and correct copy of the iBRAIN contract is attached to the Bellantoni Dec. as **Exhibit 1-5**). Pursuant to the School Transportation Annual Service Agreement between Parents and Sisters Travel and Transportation Services, LLC for the 2024-2025 SY (the "Sisters contract"), the amount owed for special transportation for the 2024-2025 SY is $147,403.00, plus accrued late payment penalties. (A true and accurate copy of the Sisters contract is attached to the Bellantoni Dec. as **Exhibit 1-6**). Notably, the iBRAIN contract requires quarterly tuition payments, the final payment being due on January 2, 2025. (*See* **Exhibit 1-5** at 2). Similarly, the Sisters contract provides for triennial payments, the final payment being due on January 1, 2025. (*See* **Exhibit 1-6** at 2). Thus, all pendency payments owed by DOE are currently nearly four months overdue. Thus, to date, DOE owes, and has refused to pay, $385,000.00 for full tuition and more than $147,000.00 for special transportation, for a total of $532,000.00. *See* Declaration of Arthur Mielnik, a true and accurate copy of which is attached hereto as **Exhibit 1** ("Mielnik Dec.") at ¶¶ 13, 14. It must be noted that, the longer DOE refuses to pay, the more these amounts increase as late fees and late payment penalties continue to accrue pursuant to the binding contracts.

Plaintiffs are the prevailing party in the underlying administrative proceedings. To date, DOE has not fully complied with SRO Bates' SRO Decision No. 25-624. DOE has not funded the

total cost of A.T.'s tuition, expenses, related services, and transportation services at iBRAIN for the 2024-2025 SY. DOE's failure to implement SRO Decision No. 25-624 in a timely manner has caused Plaintiffs to incur late fees, which DOE is liable to pay. DOE has not appealed the SRO Decision, rendering it a final and binding administrative order.

DOE's non-compliance is not an isolated delay but a systemic failure that has directly harmed Plaintiffs. This Court has recognized DOE's long history of failing to fulfill its obligations under the IDEA. *See LV v. New York City Dep't of Educ.*, 2005 U.S. Dist. LEXIS 20672 (S.D.N.Y. Sep. 15, 2005).

## LEGAL BACKGROUND

Though this matter involves the implementation and enforcement of Plaintiffs' pendency program/placement, a review of DOE's history shows it has an over two-decade–long, unfortunate history of both failing to provide to students with disabilities the individualized, specialized educational services they need and deserve, and failing to implement final orders to remedy the same. In 2003, a civil action was brought against DOE in *L.V. et al., v. New York City Department of Education, et al.*, (03-cv-09917) (S.D.N.Y) (LAP) for its systemic failure to implement final administrative orders promptly–the class action remains open to date. The IDEA's pendency provision prevents precisely this kind of disruption, ensuring that students continue to receive services without interruption. By refusing to release tuition and transportation payments, DOE has undermined the purpose of the IDEA and forced unnecessary litigation to secure already established rights.

At this point, it is almost as if one of the nation's largest public schools, which receives hundreds of millions, if not billions of dollars from the federal government to educate ALL students in the City of New York, with and without disabilities, is intentionally withholding A.T.'s

pendency funding, and the funding owed to nearly forty other students with disabilities whose educational programs/placements are at iBRAIN, to destroy the students' programs.

Pendency is a procedural right in which "access to immediate interim relief is essential." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 200 (2d Cir. 2002); *see also A.S. ex rel. P.B.S. v. Bd. of Educ. for Town of W. Hartford*, 47 F. App'x 615, 616, n.2 (2d Cir. 2002) ("Under the IDEA, a 'stay-put' is a procedural right."). Notwithstanding the appointment of a Special Master to oversee and facilitate the implementation of administrative orders in IDEA matters,[2] DOE has failed and refused to fund A.T.'s tuition and related services at iBRAIN for the 2024-2025 SY, despite his entitlement to such funding at iBRAIN throughout Plaintiffs' administrative and judicial proceedings relative to their DPC for the 2024-2025 SY. *See, e.g.*, *Soria v. New York City Dep't of Educ.*, 397 F. Supp. 3d 397, 400 (S.D.N.Y. 2019), *vacated and remanded*, 831 F. App'x 16 (2d Cir. 2020) ("If the student's 'current educational placement' is in private school, the responsibility for private school tuition 'stays put' as well"). To date, Defendants have failed to implement and to fully fund A.T.'s pendency placement at iBRAIN for the 2024-2025 SY.

## TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION STANDARD

Federal Rule of Civil Procedure 65 provides:

**(b)  Temporary Restraining Order.**

    **(1)**   ***Issuing Without Notice.*** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

        **(A)**    specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

        **(B)**    the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

---

[2] *See L.V.*, 03-cv-09917 [Order at ECF No. 285, November 4, 2021].

Fed. R. Civ. P. 65(b).

    **(a)  Preliminary Injunction.**

        **(1)**    *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.

Fed. R. Civ. P. 65(a).

The decision to grant or deny a TRO is within this Court's sound discretion. *Ahmad v. Long Island Univ.*, 18 F. Supp. 2d 245, 247 (E.D.N.Y. 1998). A plaintiff seeking a temporary restraining order or a preliminary injunction must generally prove that the same elements are satisfied. *Ali v. Wuchte*, No. 22CV01532HGLGD, 2022 WL 3682303, at *1 (E.D.N.Y. Aug. 25, 2022); *Grayson v. Equifax Credit Info. Servs.*, No. 18-CV-6977 (MKB), 2019 WL 1862929, at *1 (E.D.N.Y. Apr. 24, 2019); *Ahmad*, 18 F. Supp. 2d at 247. Those elements require a plaintiff to: "establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of [his] claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *Ali*, 2022 WL 3682303, at *1; *see Connecticut State Police Union v. Rovella*, 36 F.4th 54, 62 (2d Cir.), *cert. denied*, 143 S. Ct. 215 (2022) (internal quotation marks omitted).

The most important factor is irreparable harm. *Ahmad*, 18 F. Supp. 2d at 247. "A moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *Id.* (quoting *N.A.A.C.P., Inc. v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995)); *see also New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020).

That said, traditional preliminary injunction standards do not apply to enforcement of pendency under the Individuals with Disabilities Education Act ("IDEA"). *Cronin v. Bd. of Educ.*

*of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 202 (S.D.N.Y. 1988) (citing *Cochran v. D.C.*, 660 F. Supp. 314, 319 (D.D.C. 1987)). The stay-put provision, as explained by the Second Circuit in *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982), serves as an operative mechanism, which "is, in effect, an automatic preliminary injunction."

## ARGUMENT

### POINT I:      PLAINTIFFS NEED NOT SHOW IRREPARABLE HARM

Children with disabilities face many challenges each day attending their educational program/placement. Along with these daily challenges, Plaintiffs are now faced with more dire and grim circumstances: they must be concerned with the disruption of their Student's educational program/placement because DOE refuses to implement A.T.'s pendency per its long history of systemic failures to fund pendency at private educational programs/placements.

This case exemplifies the critical need for a court order requiring DOE to take timely action. Though, as discussed below, evidence of irreparable harm is not a prerequisite for an automatic injunction in IDEA cases regarding pendency, A.T., in fact, faces genuine irreparable harm. The requirement, or lack thereof, of "irreparable harm" and its significance within the IDEA's framework is discussed below. In *Cronin*, the Court clarified that traditional preliminary injunction standards do not apply to enforcement of pendency under the IDEA. 689 F. Supp. at 202; s*ee also Cochran*, 660 F. Supp. at 319. A.T.'s ongoing placement at iBRAIN is at increasing risk the longer DOE avoids its uncontroverted obligations, which would be an irreparable injury to him. *R.S. et al. v. NYC DOE et al.*, 21-cv-02257 (JPO), at 5 (Dkt. No. 22, June 17, 2021)(holding that the student's "ongoing placement at [the private placement] is at increasing risk the longer DOE avoids its uncontested obligations, which would be an irreparable injury to him. . . . Parents will have to make monthly $12,650 payments to the [private placement] indefinitely until the DOE

meets its responsibility to make those payments"), attached as Exhibit 2.

The stay-put provision, as explained by the Second Circuit in *Zvi D. by Shirley D.*, serves as an operative mechanism that " . . . is, in effect, an automatic preliminary injunction." 694 F.2d at 906. This assertion is not standalone; it is reinforced by the observation that this provision "seeks to maintain the educational status quo while the parties' dispute is being resolved." *Mendez v. Banks*, 65 F.4th 56, 62 (2d Cir. 2023); *see also T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014); *see also Ventura de Paulino*, 959 F.3d at 531 ("We have interpreted this provision to require a school district to continue funding whatever educational placement was last agreed-upon for the child until the relevant administrative and judicial proceedings are complete")(internal quotation marks and citation omitted).

IDEA substitutes an absolute rule in favor of the status quo " … for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." *Zvi D. by Shirley D.*, 694 F.2d at 906. Case law has established that the pendency provision's "'automatic injunction takes effect only after the pendency placement determination is made.'" *Araujo v. N.Y.C. Dep't of Educ.*, 2020 U.S. Dist. LEXIS 175767, at *8 (S.D.N.Y. Sep. 24, 2020) (quoting *Cruz*, 2020 WL 1322511, at *8 (quoting *Angamarca v. New York City Dep't of Educ.*, No. 19 CIV. 2930 (PGG), 2019 WL 3034912, at *6 (S.D.N.Y. July 11, 2019))). Here, A.T. has a final administrative order establishing pendency. A.T.'s pendency program/placement is and remains at iBRAIN.

The Second Circuit has further characterized § 1415(j) as an essential protective measure for students. Section 1415(j) is, "in effect, an automatic preliminary injunction" that not only safeguards students but also "substitutes an absolute rule in favor of the status quo"—that is, the maintenance of a student's then-current educational placement—for the standard preliminary

injunction analysis involving irreparable harm, the likelihood of success on the merits, and the balance of hardships. *Mendez*, 65 F.4th at 62; *Zvi D. by Shirley D.*, 694 F.2d at 906.

The rights of parents or guardians in this context are also unambiguous—they have a right to redress if they can establish that a delay or failure in payment is jeopardizing their child's educational placement, a principle grounded in *Mendez*, 65 F.4th at 63. Here, there is a very tangible risk concerning A.T.'s placement and/or the receipt of his essential services. DOE's delayed pendency payments have caused an imminent risk to A.T.'s educational placement, further denying him a FAPE. *Mendez*, 65 F.4th at 64.

This is exemplified by the sheer numbers involved in this case. For student A.T., the DOE still owes $385,000.00 in tuition payments, inclusive of late fees. *See* Mielnik Decl., ⁋ 9. The DOE further owes transportation fees of $147,000.00, inclusive of late fees under the relevant contract, for student A.T. as well. *Id.* at ⁋ 10. These amounts total $532,000 in outstanding tuition and reimbursement payments for student A.T. alone.

With nearly three-quarters of a million dollars at stake for all student's concerned, and over half a million dollars for student A.T., *R.S.*'s warning becomes even more prescient, *to wit*, that the student's "ongoing placement at [the private placement] is at increasing risk the longer DOE avoids its uncontested obligations, which would be an irreparable injury to him." *R.S.*, 21-cv-02257 (JPO) at 5. As the Second Circuit recognized, "We have interpreted [§ 1415(j)] to require a school district to continue funding whatever educational placement was last agreed-upon for the child until the relevant administrative and judicial proceedings are complete." *Ventura de Paulino*, 959 F.3d at 531. Clearly, by denying payment of any tuition or transportation payments at all to A.T., the DOE has deprived the student of exactly the sort of continuous funding that is contemplated under § 1415(j). The same is no less true for the rest of the students in this case,

11

who, although the DOE has made contributions toward tuition, are still owed outstanding payments, inclusive of attorneys' fees, while the end of the school year is fast approaching.

**POINT II:**    ***MENDEZ* DOES NOT PRECLUDE INJUNCTIVE RELIEF BECAUSE DOE IS DISPUTING PENDENCY**

As set forth above, the Second Circuit has characterized § 1415(j) as "an automatic preliminary injunction . . . ." *Mendez*, 65 F.4th at 62; *Zvi D. by Shirley D.*, 694 F.2d at 906. Recently, the Second Circuit clarified that the IDEA's stay-put provision entitles families to automatic relief regarding educational placement and funding, but not expedited payment. *Mendez*, 65 F.4th at 59. DOE frequently relies upon *Mendez* to avoid making pendency payments. Here, however, Plaintiffs are not simply seeking funding of A.T.'s uncontested pendency, as was the case in *Mendez*. Here, DOE is contesting pendency.  A natural corollary to that challenge is the fact that the DOE has refused to pay pendency, resulting in a denial of automatic placement that the Second Circuit reiterated in *Mendez*.

In *Mendez*, the Court held that where a student's pendency is at a private program/placement, a student is not entitled to automatic relief in the form of pendency funding. *Id.* The Court reasoned that its finding that § 1415(j) does not require circumvention of ordinary payment procedures reflects the practical realities of bureaucratic administration. *Mendez*, 65 F.4th at 63. Noting that DOE receives thousands of funding requests under the IDEA at the start of each school year and spends hundreds of millions of dollars annually to fund placements, the Court reasoned that any agency would need some time to process and pay submitted invoices. *Id.* The Court concluded that if each pendency order entitled parents or guardians to immediate payment, school districts could not implement basic budgetary oversight measures, such as requiring receipts before reimbursement. *Id.* Finally, the Court noted that "[n]othing in the statutory text or the legislative history of the IDEA . . . implies a legislative intent to permit [parents or guardians] to utilize the

12

stay-put provision's automatic injunctive procedure to frustrate the fiscal policies of participating states." *Id.* (citation omitted).

Clearly, the focus of *Mendez* was the timing of funding. Entitlement to pendency was not at issue and therefore the Circuit Court was not presented with the situation that is present here, that is, that the DOE has refused to make any payments at all, in violation of student A.T.'s pendency rights, on the pretext that an instant dispute continues regarding what constitutes pendency. The Court noted that DOE had indicated "that it [was] committed to making the requisite payments and will do so voluntarily in the ordinary course of business, without the need for Court intervention . . . ." *Id.* at 60 (internal citation and quotation marks omitted) (alteration in original). The point of the ruling in *Mendez* was that, when DOE does not contest pendency, parents are not entitled to "fast-track" payments; DOE may make payments in its "ordinary course of business." In such cases, the only way a parent is entitled to a preliminary injunction directing immediate payment is when they can establish that Defendants' delay or failure to pay has jeopardized their child's educational placement. *Id.* at 63.

Here, there is no question of "fast-tracking" payment, or "frustrating" DOE's "fiscal policies"; DOE disputes pendency and has used that dispute as an excuse to withhold funding entirely.[3] No payments are forthcoming, in the "ordinary course of business" or otherwise. There are no payments to fast-track. Unlike in *Mendez*, here, without judicial intervention, Plaintiffs will receive no pendency payments. Such a situation involves, *a priori*, irreparable harm. The Second

---

[3] While Defendants have argued that Plaintiffs are not entitled to declaratory relief because they obtained the relief sought in SRO Decision No. 24-264 (ECF 82 at 8), they then turn around and claim that very decision is not enforceable because they have four months to appeal (*Id.* at 9). Thus, they are not claiming they will pay in the "ordinary course of business"; they have stated they will not implement the binding SRO decision, which awarded Plaintiffs pendency. Thus, Defendants dispute pendency.

Circuit did not abandon its long-standing view that § 1415(j) functions as an "automatic injunction" without regard to traditional preliminary injunction factors, such as irreparable harm and the likelihood of success on the merits. *See Neske v. New York City Dep't of Educ.*, No. 19-CV-2933 (VEC), 2019 WL 3531959, at *2 (S.D.N.Y. Aug. 2, 2019). *Mendez* added a condition precedent to receiving an automatic injunction under § 1415(j) for immediate pendency funding when the school district does not dispute the student's entitlement to pendency—a situation not present here.

By contrast, here, the DOE has used the excuse of a pendency dispute to refuse to implement Plaintiff's pendency rights under § 1415(j), and the payments that naturally flow therefrom. As noted above, school districts are required "to continue funding whatever educational placement was last agreed-upon for the child until the relevant administrative and judicial proceedings are complete." *See Ventura de Paulino*, 959 F.3d at 531. By refusing to fund pendency at all while the dispute around what constitutes pendency continues, the DOE is in violation of this Second Circuit precedent.

**POINT III:    DOE MUST FUND A.T.'S EDUCATIONAL PROGRAM/ PLACEMENT DURING PLAINTIFFS' ADMINISTRATIVE AND/OR JUDICIAL PROCEEDINGS REGARDING THEIR DPC FOR THE 2024-2025 SY**

The IDEA's "stay-put" provision under 20 U.S.C. § 1415(j) provides, *inter alia*, that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local education agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child." *See also* 34 C.F.R. § 300.518(a); N.Y. Educ. Law § 4404(a) (McKinney). The pendency inquiry focuses on identifying a Student's then-current educational program/placement when a DPC is filed and determining who should pay for it. Implicit in maintaining a Student's educational status quo is the requirement that a school district **continue to finance** the Student's educational program/placement that was in place when the parents filed a

DPC and requested a due process hearing.

Cutting off public funds effectively amounts to a unilateral change in a student's placement (or educational program), which the IDEA prohibits. *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004) (citing *Zvi D. by Shirley D.*, 694 F.2d at 906). *See also T.M. ex rel. A.M.*, 752 F.3d at 171 ("Under our precedent, the term 'educational placement' refers only to the general type of educational program in which the child is placed") (quoting *Concerned Parents & Citizens for the Continuing Ed. at Malcolm X (PS 79) v. New York City Bd. of Ed.*, 629 F.2d 751, 753 (2d Cir. 1980)).

Placement necessarily includes funding, especially where pendency lies in a private program or a private placement. Without funding, there is no placement. Put differently, funding goes hand-in-hand with placement. As the Second Circuit noted in *Zvi D. by Shirley D.*:

> Implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act.

694 F.2d at 906; *see also Ventura de Paulino*, 959 F.3d at 531 ("We have interpreted [§ 1415(j)] to require a school district to continue funding whatever educational placement was last agreed-upon for the child until the relevant administrative and judicial proceedings are complete."). The facts here underscore this concept

In *M.R. v. Ridley Sch. Dist.*, the Third Circuit relied on Second Circuit precedent, specifically *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476 (2d Cir. 2002), and *Mackey ex rel. Thomas M.*, 386 F.3d at 163, to reach the same conclusion. In *M.R.*, the Third Circuit noted: "[W]e have expressly held that financing goes hand-in-hand with pendent private school placement:

> It is undisputed that once there is a state agreement with respect to pendent placement, *a fortiori*, financial responsibility on the part of the local school district follows. Thus, from the point of the state administrative decision forward . . . the Student's pendent placement, by agreement of the state, is the private school, and the school district is obligated to pay for that placement. *Susquenita School Dist.*, 96 F.3d at 84; *see also Board of Educ. of Pawling Central School Dist.*, 290 F.3d at 484 (holding that "once the parents' challenge [to a proposed IEP] succeed . . . , consent to the private placement is implied by law, and the requirements of § 1415(j) become the responsibility of the school district.").

744 F.3d 112, 123 (3d Cir. 2014) (internal citations omitted).

While the Second Circuit in *Mendez* found that "[n]othing in the text" of § 1415(j) compels DOE to immediately fund educational placements, as set forth above, DOE here is disputing pendency. In *Mendez*, DOE had agreed to fund pendency, albeit in its "ordinary course of business." Here, DOE refuses to fund A.T.'s pendency altogether. While § 1415(j) does not explicitly mandate an "automatic fast- track" for funding, it emphasizes that a child's then-current educational placement when a DPC is filed is to be maintained throughout all administrative and judicial proceedings regarding the DPC. *See Ventura de Paulino*, 959 F.3d at 531. This emphasis acknowledges the significance of consistent, uninterrupted education—intrinsically tied to timely funding. The Second Circuit has opened the door for plaintiffs to seek an order directing expedited payment or funding when DOE's delay or failure to pay has jeopardized their child's educational placement. *Mendez*, 65 F.4th at 63. If *Mendez* acknowledges the right to immediate funding when a placement is at risk, all the more here Plaintiffs are entitled to relief, where DOE outright refuses to fund at all. Since A.T. faces losing his educational program/placement, including his special transportation, he is entitled to an order protecting his current educational program/placement at iBRAIN—as pendency.

Here, SRO Krolak found, in SRO Decision 24-264, that DOE must pay the full amount of tuition as set forth in the iBRAIN contract for the 2024-2025 SY, notwithstanding the increase in tuition. SRO Krolak specifically found that the IHO had erred in only ordering payment at the 2023-

2024 rates. (ECF 81-6 at 7). Moreover, the iBRAIN contract includes a provision for late fees. (*See* **Exhibit 1-5**). Because of DOE's refusal to pay for A.T.'s placement at iBRAIN, these late fees have now accrued, and are owed pursuant to the terms of the contract.

Plaintiffs seek enforcement of A.T.'s pendency rights because DOE's administrative processes have put his placement at risk. To reiterate, the Second Circuit has held that parents and guardians are entitled to obtain automatic, injunctive relief under 20 U.S.C. § 1415(j), directing DOE to pay or reimburse their disabled child's educational expenses at their pendency program/placement if they establish that DOE's delay or failure to fund such pendency program/placement has jeopardized their child's educational program/placement. *Mendez*, 65 F.4th at 63. That additional requirement, a showing that the student's placement is in jeopardy, does not apply here, where the issue is not delay – it is outright refusal to pay.

A.T. is entitled to an automatic preliminary injunction requiring DOE to implement and fund his pendency program/placement—without regard to the traditional preliminary injunction factors. As Judge Oetken noted in *R.S.*, "[T]he enforcement of the pendency provision is automatic and should occur without regard to such factors as irreparable harm likelihood of success on the merits and balancing of the hardships." *R.S. et al. v. NYC DOE et al.*, 21-cv-02257 (JPO), at 5 (Dkt. No. 22, June 17, 2021) (citation omitted), attached as Exhibit 2.

## POINT IV:   ALTERNATIVELY,   PLAINTIFFS'   CLAIMS   SATISFY   THE <u>TRADITIONAL PRELIMINARY INJUNCTION STANDARD</u>

While Plaintiffs maintain that the traditional preliminary injunction standards do not apply when assessing pendency claims under the IDEA (20 U.S.C. § 1415(j)), Plaintiffs assert that even under the traditional standard they satisfy the required burden to obtain injunctive relief. Generally, when seeking injunctive relief, a plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

the equities tips in his favor, and that the injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### A.    Likelihood of Success on the Merits

Plaintiffs can show a likelihood of success on the merits because **every** special education student is entitled to pendency as a matter of law. *T.M. ex rel. A.M.*, 752 F.3d at 152; *Mackey ex rel. Thomas M.*, 386 F.3d at 163; *Gabel ex rel. L.G.*, 368 F. Supp. 2d at 325. Moreover, A.T.'s educational program at iBRAIN fulfills the baseline pendency program requirements. Moreover, on April 9, 2025, SRO Bates issued SRO Decision No. 24-624, affirming Plaintiffs' entitlement to the entirety of the pendency relief they seek. Thus, Plaintiffs are likely to prevail because they already have.

### B.    Irreparable Harm

As outlined above, Plaintiffs need not show irreparable harm to obtain injunctive relief here. Irreparable harm is presumed in pendency-related cases as a matter of law. *Honig*, 484 U.S. at 328 n.10. If Defendants are not ordered to implement Plaintiffs' pendency placement without further delay, A.T.'s placement will be at risk. As the Second Circuit noted in *Mendez*, 65 F.4th 56, parents or guardians may obtain injunctive relief if they establish that a delay or failure to pay has jeopardized their child's educational placement. 65 F.4th at 63. Here, DOE has not simply delayed payment; they have refused to pay, contesting A.T.'s entitlement to pendency. This has created an imminent risk that he will be denied a FAPE. *Mendez*, 65 F.4th at 64.

### C.    The Balance of Equities Favors Injunctive Relief

The equities favor injunctive relief here. As set forth above, absent injunctive relief, Plaintiffs are at risk of losing their educational placement altogether. On the other hand, an injunction directing DOE to fund A.T.'s pendency placement will in no way prejudice DOE; it is required to do so by a

binding administrative order. Thus, the balance of the equities favors Plaintiffs.

    **D.**    <u>**Preliminary Injunctive Relief is in the Public's Interest**</u>

In this case, a preliminary injunction is both appropriate and in the public interest. The Congressional purpose in adopting the Education for All Handicapped Children Act (20 U.S.C. § 1400, *et seq.*), the precursor to the IDEA, was to remedy the condition of handicapped children who are not receiving education appropriate to their needs. To that end, Congress provided federal funding to state and local school systems for special education purposes and conditioned the grant of funds on compliance with federal standards. *Dubois v. Connecticut State Bd. of Educ.*, 727 F.2d 44 (2d Cir. 1984). The federal law also seeks to ensure that the rights of students with disabilities, and their parents/guardians, are protected. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009); *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206–07 (1982). Thus, a preliminary injunction is warranted and appropriate to protect the rights of the Plaintiffs.

**POINT V:**    **DEFENDANTS HAVE NOT MOVED FOR A STAY OF THE PENDENCY RIGHTS**

An SRO decision agreeing with a child's parents that a change of placement is appropriate is final and enforceable unless the losing party obtains a stay of the decision. *Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78 (3d Cir. 1996); *Greenwich Bd. of Educ. v. Torok*, No. CIV.A.3:03-CV1407JCH, 2003 WL 22429016, at *1 (D. Conn. Oct. 22, 2003). Here, SRO Krolak's Decision No. 24-264, directing DOE to fully and directly fund A.T.'s placement at iBRAIN and transportation with Sisters, is final and enforceable. Defendants' claim that it is not enforceable until their four-month appeal period expires is unsupported by statute, regulation, or case law, as set forth above.

If Defendants believed they were not required to comply with the administrative pendency

ruling here, the appropriate action would have been to seek a stay in state or federal court of Plaintiffs' pendency rights. Defendants did not seek an order staying their pendency requirement here. Courts have consistently held that school districts are not entitled to an automatic stay of an IHO's or SRO's decision but must request a stay and "must meet the established standards for granting a stay." *Draper v. Atlanta Independent School System*, Civil Action No. 1:06-CV487-MHS, at *12 (N.D. Ga. June 19, 2006) (denying the district's motion to stay the enforcement of an administrative hearing officer's decision because the school district did not meet the burden of proof standards for preliminary injunctive relief); *See also D.C. v. Masucci*, 13 F. Supp. 3d 33, 42-43 (D.D.C. 2014) (rejecting the school district's argument that it was entitled to an automatic stay under the "stay-put" provision and finding that no provision within the IDEA grants a district an automatic stay of a hearing officer's decision); *Tamalpais Union High Sch. Dist D.W.*, Case No. 16-cv-04350-HSG, at *13 (N.D. Cal. October 4, 2016) (same); *Bd. of Educ. of the Cnty. of Boone v. K.M.*, Civil Action No. 2:14 CV 10563, at *5 (S.D.W. Va. March 31, 2015). Thus, if Defendants believed that they did not have to make pendency payments to iBRAIN, they should have moved to stay Plaintiffs' pendency rights and met the requisite burden of proof. Defendants here have not moved to stay the pendency placement, and they cannot grant themselves an automatic stay, thereby relieving them of their obligation to fund A.T.'s pendency placement.

DOE's unlawful withholding of A.T.'s pendency payments for tuition and related services effectively constitutes an unjust denial of his pendency program/placement. Defendants' unwarranted act of withholding such funds shows bad faith, which DOE has consistently exhibited concerning the rights of students with disabilities in New York City. *See, e.g.*, *Abrams, et al. v. Carranza, et al.*, 20-cv-5085 (JPO) [ECF No. 22, Point III(B)] (S.D.N.Y. 2020); *Araujo*, 2020 U.S. Dist. LEXIS 175767; *L.V.*, 03-cv-09917 [Order, ECF No. 285]; *R.S. v. New York City Department*

*of Education*, 1:21-cv-02257 (JPO) (S.D.N.Y. 2021). Pendency has the effect of an automatic injunction, which here requires DOE to implement and fund A.T.'s pendency program/placement at iBRAIN and his related services, without undue delay. DOE's failure to implement and fund the same has now put A.T.'s placements at risk. As a result, Plaintiffs are entitled to the injunctive relief requested here under 20 U.S.C. § 1415(j). *See Zvi D. by Shirley D.*, 694 F.2d at 906.

**POINT VI:   DEFENDANTS ARE RESPONSIBLE FOR PENDENCY PLACEMENTS FOR ALL STUDENTS**

While Plaintiffs have represented that DOE has now funded tuition, transportation, and/or nursing services for Plaintiffs Talley, Vasquez, Larach-Cohen, Beckford, and Donohue (ECF 81 at 1 n.1), the payments for each Student are only partial. DOE has not funded the full amount owed per the contracts relative to each Student. The payments made do not include tuition late fees or late payment penalties associated with the special transportation services. There is still a dispute between the Plaintiffs and the DOE of what each student's pendency placement is: the Plaintiffs position is the placement is based upon the terms of the contracts for tuition, special transportation and nursing, where relevant. As noted with student A.T., the DOE's position is they can dictate the financial terms of "maintaining" the students' pendency placements and have refused to issue the payments as per the contracts.  Hence, these tuition late fees and transportation late payment penalties continue to accrue.

All Plaintiffs in this action have contracts with iBRAIN and Sisters that are similar, if not identical, to the contracts for the Thomases. All include provisions for tuition late fees (iBRAIN) and late payment penalties (Sisters). For the same reasons SRO Krolak held, in SRO Decision No. 25-264, that DOE owes pendency for A.T.'s placement at iBRAIN **per the binding contracts**, DOE necessarily is responsible for the same pendency placements of all Students in this action, **per the binding contracts**. As with A.T., DOE has refused to implement these Students' pendency

placements, thus disputing pendency. Without the injunctive relief sought here, DOE will not meet its financial obligations to these Students, thus jeopardizing their placements.

As set forth in the Mielnik Dec., the amounts outstanding for each Student's full tuition (other than A.T., which are set forth *supra*) are as follows:

| | |
|------|------------|
| A.C. | $20,000.00 |
| S.J.D. | $7,000.00 |
| M.C. | $23,000.00 |
| M.B. | $51,000.00 |
| L.C. | $46,000.00 |

Mielnik Decl., ¶¶ 15-19.

Together, these amounts total $147,000.00. Mielnik Decl., ¶¶ 15-19. The students' placement is *a priori* at risk because they risk not even being paid at all for tuition reimbursements until *after* the school year has ended.

In addition, each of these Students has amounts outstanding for transportation services pursuant to their respective Sisters contracts. Thus, as pendency, DOE currently owes, and is refusing to pay, $532,000.00 **just for tuition** for the Students in this action, not including amounts owed for transportation. Mielnik Decl., ¶ 20. Again, without injunctive relief from this Court, DOE will not fulfill its obligations, and these amounts will remain unpaid.

In furtherance of the Plaintiffs' position that the terms of the Pendency Placement are based on the actual contracts, IHO Liese is his unappealed Pendency Order for A.C., specifically stated,

> Accordingly, the Parent's request for an order directing the DOE to fund the Student's placement at the Private School in accordance with the terms of the enrollment agreement entered into between the Parent and the Private School, to fund the Student's special education transportation services in accordance with the terms of the transportation agreement entered into between the Parent and Sisters Transportation, and to fund the Student's 1:1 nursing services in   accordance with the terms of the nursing service

agreement entered into between the Parent and the Nursing Service Provider, is granted. *See* ECF No. 45-3, at 8.

Therefore, the DOE's position that pendency can be paid by anything other than the terms of the contract for A.C. is patently meritless.  This includes the payment of late fees in accordance with the terms of the relevant contracts.

Similarly, IHO Levin in her unappealed Pendency Order for M.B., specifically ordered,

> During the pendency of this matter and retroactive to July 2, 2024, the filing date of the DPC, the New York City Department of Education shall fund the following pursuant to the Findings of Fact and Decision issued by IHO Weiss on August 9, 2023:
> 1) The District shall pay the for the Student's placement at the Unilateral Placement pursuant to the Enrollment Contract. The Unilateral Placement shall provide an itemization of Supplemental Tuition pursuant to the Enrollment Contract;
> 2) The District shall pay for the Student's transportation services pursuant to the Transportation Contract. The Transportation Company shall provide an itemization of transportation services provided pursuant to the Transportation Contract.

*See* ECF No. 39-2, at 5-6.

Similar to A.C. then, IHO Levin confirmed that pendency for M.B. must be paid in accordance with the terms of the relevant contracts, and any other position by the DOE is patently without merit.  M.B. is therefore owed late fees under the terms of the relevant agreements.

In IHO McGrath's FOFD which also addressed Pendency and the DOE's meritless attempts to actually deny student L.C. pendency rights, he wrote,

> The DOE submitted arguments against the award of Pendency by claiming that Parent needs to demonstrate student is receiving the same level of services as in the 2023 FOFD, that the costs have increased exponentially; and that the DOE is willing to provide transportation services. There is no dispute that Private Schools and Transportation Agency were the current education placement for Students. While the DOE realized objections, there was no evidence present at the DPH to establish facts to support the DOE's claims. Firstly, the testimony from Private School representative and Private School does not show any change in the level of services being provided to Student. Further, no evidence was presented to show a change in cost from the prior school year to what was requested by Parent. Finally, the DOE did not present any evidence to show that transportation services were offered at the start of the school year. The DOE transpiration letter was sent on July 11, 2024, after the start of the 12-month 2024-2025 school year. Therefore, the DOE has

23

not met its burden of proof or persuasive on this issue or demonstrated a change in the
Pendency placement to support a denial of pendency.

*See* ECF No. 56-2, at 12.

Therefore, as with A.C. and M.B., the DOE's challenge to payments of L.C.'s pendency on

the basis of the relevant agreements is patently without merit.

## **CONCLUSION**

For the reasons stated above, Plaintiffs request that this Court grant the relief requested

here and enter an automatic injunction. Plaintiffs ask the Court to order Defendants to implement

A.T.'s pendency placement at iBRAIN, pay all outstanding balances related to A.T.'s pendency

program/placement at iBRAIN, including tuition and special transportation, and further order

Defendants to continue funding A.T.'s pendency program/placement throughout the administrative

and judicial proceedings relative to Plaintiffs' DPC for the 2024-2025 extended school year.

Plaintiffs request that the Court grant such other, further, and different relief as the Court

deems just, proper, and equitable.

Dated:  May 22, 2025
        New York, New York

Respectfully submitted,
Liberty & Freedom Legal Group
*Attorneys for Plaintiffs*

By:  */S/ Kenneth Willard*
Kenneth Willard, Esq.
300 East 95th Street, Suite 130
New York, New York 10128
(646) 850-5035
ken@pabilaw.org
