24-cv-5138 (JLR)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTINE THOMAS individually and as Parent and
Natural Guardian of A.T. *et al.*,

Plaintiffs,

- against -

DAVID C. BANKS, in his official capacity as Chancellor
of the New York City Department of Education *et ano.*,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' FOURTH MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

**MURIEL GOODE-TRUFANT**
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel:*

Jaimini Vyas
Tel: (212) 356-2079
jvyas@law.nyc.gov

Thomas Lindeman, Esq.
(212) 356-0418
tlindema@law.nyc.gov

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ........................................................................ 1

LEGAL STANDARDS ..................................................................................... 3

ARGUMENT ..................................................................................................... 4

POINT I ...................................................................................................... 4

PLAINTIFFS CANNOT SHOW A CLEAR OR
SUBSTANTIAL LIKELIHOOD OF SUCCESS ON
THE MERITS. ............................................................................................4

POINT II ..................................................................................................... 6

PLAINTIFF CANNOT SHOW A LIKELIHOOD—
LET ALONE MAKE A STRONG SHOWING—OF
IRREPARABLE HARM. ............................................................................6

A.   PLAINTIFFS' CLAIM THAT THEY ARE
ENTITLED TO IMMEDIATE FUNDING
WITHOUT SHOWING IRREPARABLE HARM IS
WITHOUT COLOR. ................................................................................10

B.   PLAINTIFFS ARE NOT ENTITLED TO THE
INJUNCTIVE RELIEF OF "IMMEDIATE
FUNDING" BASED ON THEIR
DEMONSTRABLY FALSE CLAIM THAT "DOE
IS DISPUTING PENDENCY." ................................................................12

POINT III ................................................................................................... 14

GRANTING THE PRELIMINARY INJUNCTION
AND TRO SOUGHT BY PLAINTIFFS WILL NOT
SERVE THE PUBLIC INTEREST. ..........................................................14

POINT IV ................................................................................................... 16

THE BALANCE OF HARDSHIPS FAVORS
DEFENDANTS. .......................................................................................16

CONCLUSION ................................................................................................. 17

CERTIFICATE OF COMPLIANCE ................................................................ 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. Carranza*,
  No. 20-CV-5085 (JPO), 2020 U.S. Dist. LEXIS 189292 (S.D.N.Y. Oct. 13,
  2020) ...................................................................................................................................7

*Anderson v. Cameron*,
  568 F. App'x 67 (2d Cir. 2014) ............................................................................................3

*Archibald, et al. v. Banks, et al.*,
  24-cv-7550-KPF (S.D.N.Y.)................................................................................................15

*Bruckauf et al. v. Banks et al.*,
  24-cv-5136-LGS, 2025 U.S. Dist. LEXIS 96389 (S.D.N.Y. May 21, 2025) ....................9, 10

*Freedom Holdings, Inc. v. Spitzer*,
  408 F.3d 112 (2d Cir. 2005)..................................................................................................3

*in re Gorsoan Ltd.*,
  No. 17-cv-5912 (RJS), 2021 U.S. Dist. LEXIS 13402 (S.D.N.Y. Jan. 25,
  2021) .....................................................................................................................................11

*Grullon v. Banks*,
  2023 WL 6929542 (S.D.N.Y. Oct 19, 2023) .........................................................................11

*Loveridge v. Pendleton Woolen Mills, Inc.*,
  788 F.2d 914 (2d Cir. 1986).................................................................................................16

*Mendez v. Banks*,
  65 F.4th 56 (2d Cir. 2023) ................................................2, 3, 5, 7, 8, 9, 11, 12, 13, 14, 15, 16

*Moore v. Consol. Edison of N.Y., Inc.*,
  409 F.3d 506 (2d Cir. 2005)..................................................................................................3

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
  883 F.3d 32 (2d Cir. 2018)....................................................................................................4

*Neske v. New York City Dep't of Educ.*,
  No. 22-2962, 2023 WL 8888586, 2023 U.S. App. LEXIS 34126 (2d Cir. Dec.
  26, 2023) ...............................................................................................................................14

*Ramos v. Banks*,
  24-cv-5109-LGS, 2025 U.S. Dist. LEXIS 96389 (S.D.N.Y. May 21, 2025) ....................9, 10

**Page**

*New York ex rel. Schneiderman v. Actavis PLC*,
   787 F.3d 638 (2d Cir. 2015)...................................................................................4, 6

*Sterling v. Deutsche Bank*,
   368 F. Supp 3d 723 (S.D.N.Y. 2019) ....................................................................3, 7

*StreetEasy, Inc. v. Chertok*,
   651 F. App'x 37 (2d Cir. 2016) ..................................................................................11

*Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*,
   386 F.3d 158 (2d Cir. 2004)..........................................................................................12

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
   752 F.3d 145 (2d Cir. 2014)..........................................................................................13

*Tom Doherty Assocs. Inc. v Saban Entm't. Inc.*,
   60 F.3d 27 (2d Cir. 1995)..............................................................................................4

*Tucker Anthony Realty Corp. v. Schlesinger*,
   888 F.2d 969 (2d Cir. 1989).........................................................................................6

*Uppal v. N.Y. State Dep't of Health*,
   756 F. App'x 95 (2d Cir. 2019) ....................................................................................7

*Ventura de Paulino v. N.Y.C. Dep't of Educ.*,
   959 F.3d 519 (2d Cir. 2020)...........................................................................6, 14, 15, 16

*Zvi D. v. Ambach*,
   694, F.2d 904 (2d. Cir. 1982)......................................................................................12

**Statutes**

20 U.S.C. § 1415(i)(1)(B) ...............................................................................................13

20 U.S.C. § 1415(i)(2)(B) ...............................................................................................13

20 U.S.C. § 1415(j)....................................................................................................8, 10, 11

N.Y. Educ. Law § 4404(3)(a) ........................................................................................13

**Other Authorities**

34 C.F.R. § 300.514(a).....................................................................................................13

## PRELIMINARY STATEMENT

Defendants David C. Banks, in his official capacity[1] as Chancellor of the New York City Department of Education, and the New York City Department of Education (collectively, "DOE" or "Defendants") submit this Memorandum of Law in Opposition to Plaintiffs' fourth emergency motion for a preliminary injunction TRO in this case. ECF 84-85. Plaintiffs have filed this motion to "implement" Student-Plaintiff A.T.'s pendency placement and obtain in an expedited fashion the ultimate relief of payments that they seek in their Second Amended Complaint and their Motion for Summary Judgment. ECF 45 at 41; ECF 81 at 27.[2]

This is Plaintiffs' third emergency motion for a preliminary injunction and temporary restraining order (TRO) seeking expedited payments for tuition and related services in this case wherein Plaintiffs argue that (1) they need not show irreparable harm, and (2) provide no evidence demonstrating A.T.'s imminent risk of losing the educational placement, such as a specific determination or decision that, due to a failure to pay, A.T. will be disenrolled by a date certain from iBRAIN or the related transport service, Sisters Travel, Inc. because iBRAIN or Sisters Travel is shutting down. Plaintiffs have not demonstrated that any material facts have changed from those pled in their prior two motions, ECF 28-32, 49-50—which the Court *denied*, *see* ECF 42, 67—that would change the Court's ruling now. This motion should be similarly denied on the same grounds articulated in the Court's September 4, 2024 and January 17, 2025 orders denying the previous two TROs.

Fatal to Plaintiffs' motion, and consistent with cases brought and lost over the years by Liberty & Freedom Legal Group ("LFLG")—including while the firm was operating as "Brain Injury Rights Group" ("BIRG")—A.T. has provided no evidence demonstrating imminent risk of

---

[1] Defendant David C. Banks was the Chancellor of the New York City Department of Education when this action was initiated. Melissa Aviles-Ramos currently serves in that role.

[2] All pinpoint citations to documents on the docket are to page numbers assigned by the ECF filing system.

losing this educational placement, such as a specific determination or decision that, due to a failure to pay, A.T. will be disenrolled by a date certain from iBRAIN or the related transport service, Sisters Travel, Inc. *because* iBRAIN or Sisters Travel is shutting down. The Court has found that A.T. is currently receiving educational services. ECF 24 at 2. Thus, the placement has remained "implemented" throughout the litigation of this case. Plaintiffs also concede that A.T. is already at his current educational placement at iBRAIN and that "A.T.'s pendency placement here is automatic." ECF 85 at 5.

Blatantly disregarding the controlling law in *Mendez v. Banks,* 65 F.4th 56, 62-63 (2d. Cir. 2023), and this Court's explanation of it, Plaintiffs again argue without merit that they need not establish a likelihood of irreparable harm to seek immediate payments, ECF 85 at 12-16, despite this Court already ruling that they "are wrong as a matter of law as to the applicable legal standard" when arguing that "the traditional preliminary injunction standards do not apply" to their motion. Transcript of the January 17, 2025 decision denying Plaintiffs' third motion for an emergency preliminary injunction in *Thomas, et al v. Banks, et ano*, 24-cv-5138 (JLR), "Exhibit A" to the Declaration of Jaimini Vyas ("Vyas Decl."), at 32:7-8, 20-21. While Plaintiffs claim in the alternative that they meet the traditional irreparable harm standard, ECF 85 at 21-23, their argument lacks merit because A.T. has provided no evidence demonstrating imminent risk of losing this educational placement. Instead, Plaintiffs claim, falsely, that A.T. faces an imminent risk that he will be denied a FAPE because DOE is contesting A.T.'s pendency placement and has refused to make payments toward pendency. ECF 85 at 22. DOE has not appealed the administrative decision providing A.T.'s pendency, and it has not refused to make payments for pendency for A.T. or any other student.

Defendants have maintained that "any remaining amounts owed under any applicable administrative order, upon ripening, will be funded by DOE in the ordinary course of business, consistent with the Second Circuit's holding in *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023)." ECF

82 at 3. The ordinary course of business includes evaluating whether to seek a stay or appeal of the April 9, 2025 SRO Decision No. 24-264. Yet, in direct contradiction to Defendants' representation, Plaintiffs falsely claim, without any evidentiary support, that Defendants "have stated they will not implement the binding SRO decision" and that "Defendants dispute pendency." ECF 85 at 17 n.3. As more fully detailed below, Defendant does not dispute A.T.'s pendency at iBRAIN. While the parties dispute specific elements of pendency, such as how A.T. should be transported to school and what amounts are owed in tuition costs, Defendant has never disputed A.T.'s entitlement to pendency or his placement at iBRAIN for the pendency of the underlying administrative proceeding.

Because Defendants do not dispute Plaintiffs' entitlement to pendency, and because Plaintiff cannot show a likelihood of irreparable harm, Plaintiff's duplicative request for emergency relief should be denied.

## LEGAL STANDARDS

To obtain a preliminary injunction, "plaintiffs must show a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiffs' favor, (2) that they are "likely to suffer irreparable injury in the absence of an injunction, (3) that the balance of hardships tips in their favor, and (4) that the public interest would not be disserved by the issuance of a preliminary injunction." *Mendez v. Banks*, 65 F.4th at 63–64 (internal quotation marks and alterations omitted).

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Sterling v. Deutsche Bank*, 368 F. Supp 3d 723, 727 (S.D.N.Y. 2019) (*citing Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)).

Moreover, "[P]reliminary injunctive relief 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Anderson v. Cameron*, 568 F. App'x 67, 68 (2d Cir. 2014) (quoting *Moore v. Consol. Edison of*

3

*N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005)). To satisfy this burden, a party "must show: (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (citation omitted).

Additionally, the Second Circuit has "held the movant to a heightened standard where: (i) an injunction is 'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Tom Doherty Assocs. Inc. v Saban Entm't. Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995)). "When either condition is met, the movant must show a 'clear' or 'substantial' likelihood of success on the merits and make a 'strong showing' of irreparable harm, in addition to showing that the preliminary injunction is in the public interest." *Id*. (internal citations omitted). This heightened standard is consistent with "[t]he purpose of a preliminary injunction, [which] is … to preserve the relative position of the parties." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37-38 (2d Cir. 2018) (citation omitted).

## ARGUMENT

### POINT I

### PLAINTIFFS CANNOT SHOW A CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

Plaintiffs cannot show a clear or substantial likelihood of success on the merits. Plaintiffs' demanded TRO and permanent injunction seek the identical relief of payment sought in their Second Amended Complaint ("SAC") and Motion for Summary Judgment. ECF 45 at 41; ECF 81 at 27. Plaintiffs seek fast-tracked funding for the Student-Plaintiffs' tuition, transport, and nursing claim that the DOE has failed to implement the various pendency and final orders that Plaintiffs

4

received through the administrative process. *See* Second Amend. Compl., ECF 45, ¶¶ 11, 17, 20, 294, 301-02, 308, 312-15, 317-18, 322.

Despite Plaintiffs' repeated claims, Defendants have been complying and will continue to comply with the administrative orders and disbursing the payments that Plaintiffs ultimately seek in their Second Amended Complaint ("SAC"). In DOE's ordinary course of business, DOE has fully processed the payments for tuition and related educational services for every other Student-Plaintiff in this case. Plaintiffs' Counsel concedes that "DOE has [] complied with its obligations to fund tuition, transportation, and/or nursing services for Plaintiffs Talley, Vasquez, Larach-Cohen, Beckford, and Donohue"—thus acknowledging that the claims of all the other Plaintiffs in this case are moot because DOE has made all payments for them according to their respective administrative orders. ECF 81 at 8 n.1. Defendants submit that any funding obligations to A.T. under any applicable administrative order, upon ripening, will similarly be resolved by DOE in the ordinary course of business, consistent with the Second Circuit's holding in *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023).

Plaintiffs' repeated demands for prioritized payments under the applicable administrative orders effectively undermine the Second Circuit's admonitions to the same plaintiffs' counsel that they are improperly attempting to circumvent the DOE's ordinary payment procedures described in *Mendez*. *See* 65 F.4th at 63 ("Our determination that the statute does not require circumvention of ordinary payment procedures here comports with the practical realities of bureaucratic administration. The DOE receives thousands of funding requests under the IDEA at the start of each school year and spends hundreds of millions of dollars annually to fund placements.").

While Plaintiffs argue that amounts remain outstanding for students other than A.T., ECF No. 85 p.26., Plaintiff acknowledges that those amounts have been calculated exclusively based on "late fees" considered in the contracts between Plaintiffs and iBRAIN. As an initial matter, Defendant is not a party to those contracts. Defendant's only payment obligations arise from the

underlying pendency orders and final orders issued by IHOs and SROs, none of which require the payment of "late fees." Further, Plaintiffs' suggestion that their placement at iBRAIN is at immediate risk because of a failure to pay additional fees, which are not earmarked for any educational benefit or related services, is telling.

### POINT II

### PLAINTIFF CANNOT SHOW A LIKELIHOOD—LET ALONE MAKE A STRONG SHOWING—OF IRREPARABLE HARM.

Plaintiffs do not and cannot show a likelihood of irreparable harm, let alone make the required strong showing of irreparable harm to obtain through this motion for a preliminary motion and TRO, substantially the ultimate relief of payments that they seek in their Second Amended Complaint and their Motion for Summary Judgment. ECF 45 at 41; ECF 81 at 27. The Second Circuit has "held the movant to a heightened standard where … the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015). And public funding for pendency services cannot be recouped. *See Ventura De Paulino*, 959 F.3d 519 at 535 (2d Cir. 2020).

An irreparable harm must be an injury "neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). iBRAIN and Sisters Travel have not provided A.T. with a specific determination or decision that A.T. will be disenrolled by a date certain from iBRAIN or the related transport service, Sisters Travel, Inc., *because* iBRAIN or Sisters Travel is shutting down due to a failure to pay fees. In Plaintiffs' fourth motion for a preliminary injunction, they have failed to show that an actual and imminent—rather than merely speculative—harm will befall A.T.'s educational placement at iBRAIN unless DOE funds iBRAIN *immediately*.

6

Plaintiffs' failure to show that A.T.'s schooling or services are at risk is fatal to their application. *See Uppal v. N.Y. State Dep't of Health*, 756 F. App'x 95, 96 (2d Cir. 2019) ("Irreparable harm is the single most important prerequisite for injunctive relief, and in the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied."); *Sterling v. Deutsche Bank*, 368 F. Supp 3d 723, 727 (S.D.N.Y. 2019) ("Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.").

A.T. is currently attending iBRAIN and will continue to receive educational services there. ECF 24 at 2; ECF 85 at 5. Plaintiffs proffer no evidence that iBRAIN intends to remove A.T. from the school. As such, A.T.'s placement is not at risk, and no irreparable harm can be shown. *See Abrams v. Carranza*, No. 20-CV-5085 (JPO), 2020 U.S. Dist. LEXIS 189292, at \*4-5 (S.D.N.Y. Oct. 13, 2020). Instead, through this and similar litigation, Plaintiff has adopted a pattern and practice of attempting to "frustrate [DOE's] fiscal policies" and claim "entitlement to immediate payment or reimbursement." *Mendez*, 65 F.4th at 63.

Plaintiffs' demand for expedited payments and funding is not predicated on a risk of harm to A.T.'s educational placement. Instead, Plaintiffs' claim of irreparable harm rests solely on their contention that iBRAIN is facing financial difficulties and has a "cash flow" problem. *See generally* Declaration of Arthur Mielnik, ECF 85-1, alleging that some payments are outstanding. Plaintiffs fail to provide any evidence to support their claim that A.T.'s placement at iBRAIN is at risk due to iBRAIN's alleged financial difficulties.

Crucially, any alleged financial issues at iBRAIN—a nonparty to this action and the administrative proceedings below—are not relevant to irreparable harm to the actual Student-Plaintiff A.T. It is not DOE's obligation to avert a closure of the iBRAIN school by expediting payments to mitigate its alleged financial hardships, as the court has previously informed Plaintiffs' Counsel:

> THE COURT: I don't think it's DOE's obligation to avert a close
> down of the school.

7

> MR. BELLANTONI: Well, when they have an obligation to pay pendency for those kids-
>
> THE COURT: The children can be educated elsewhere, sir.

*Grullon et al v. Banks*, et al, 23-cv-10388 (KPF), Tr. of Jan. 5, 2024 Hrg., ECF 39-3, at 58:7-12. *See also id.* at 62:4-15:

> THE COURT: I'm also not saying that students at iBRAIN, if not iBRAIN itself, should not advocate for prompt payment, and I actually have no horse in the race as to iBRAIN's continuing vitality or viability as a provider of its services to students. It is not my place to keep them afloat. It is not my place to shut them down. All of that said, I am troubled, because with each of these three waves of litigation, iBRAIN has suggested that somehow its students and by extension it is entitled to payment ahead of everybody he would [*sic*]. There are many schools and many students, and I am troubled by these aggressive litigation positions to basically short circuit the line that every other school's students waits on.

Accordingly, it is beyond the scope of DOE's obligations to avert a shuttering of iBRAIN, and such a shuttering does not meet the standard of irreparable harm. Even setting aside Defendants' lack of obligation to iBRAIN's fiscal health, Plaintiffs fail to establish that expedited funding to iBRAIN would eliminate any of the alleged risks to A.T.'s placement stemming from iBRAIN's purported financial difficulties or even that the payments would resolve iBRAIN's purported financial difficulties.

Other judges in this District have also instructed Plaintiffs' Counsel that their "argument was rejected in *Mendez*. 65 F.4th at 63":

> Plaintiffs argue that the automatic injunction standard under the IDEA's stay-put provision applies, and thus, no irreparable harm is required. This argument was rejected in *Mendez*. 65 F.4th at 63. The stay-put provision imposes an obligation on Defendants to ensure that the student stays in the current placement pending their administrative and judicial proceedings. 20 U.S.C. § 1415(j). If the lack of expedited payment "has jeopardized [the student's] educational placement," such as when the student is disenrolled from the school, and expedited payment would have restored the

> student's education access, the stay-put provision may grant the
> student an automatic injunction to obtain expedited payment.
> *Mendez*, 65 F.4th at 63. Here, without imminent disenrollment, the
> automatic injunction standard does not apply.

*Ramos v. Banks*, 24-cv-5109-LGS and *Bruckauf et al. v. Banks et al.*, 24-cv-5136-LGS,

2025 U.S. Dist. LEXIS 96389, at *22-23 (S.D.N.Y. May 21, 2025) (denying two similar motions

for preliminary injunctions for expedited payments for failure to show irreparable harm). The Court

found that Plaintiffs' alleged injuries "are neither imminent nor irreparable without the relief

requested":

> Plaintiffs' alleged injuries are neither imminent nor irreparable
> without the relief requested. The difficult financial situation of
> iBRAIN does not necessitate closing the school or displacing the
> Student-Plaintiffs. In support of Plaintiffs' PI Motions, Plaintiffs
> filed declarations of Arthur Mielnik, an iBRAIN employee. The first
> declaration, dated August 16, 2024, states that iBRAIN is over a
> million dollars behind in rent payments across its two locations and
> received a rent demand letter threatening eviction by August 28,
> 2024, but the attached demand letter shows a balance of
> $146,511.13. The declaration also states that iBRAIN incurs
> monthly payroll expenses over $1 million, and it "will not be able to
> fully cover its payroll obligations as of September 1, 2024," but that
> iBRAIN continues to operate as DOE payments are made. Between
> July and November, according to Plaintiffs' own calculations, DOE
> has paid $1.6 million. The second declaration, dated November 13,
> 2024, drops the eviction and payroll reference. It instead states that
> DOE's inconsistent payment practices "have created significant
> financial challenges for iBRAIN and [the] students' other
> providers," and absent "immediate relief," "iBRAIN faces closure,
> which would displace over sixty students with disabilities."

*Id.* at *21-22. The Court also found that Plaintiffs' claims of iBRAIN's financial difficulties "are

undercut by the fact that the Student-Plaintiffs have continued to attend iBRAIN" that no "evidence

supplied by Plaintiffs demonstrate[s] how DOE's payment of balances due on students' justiciable

claims would ameliorate iBRAIN's financial difficulties":

> These conclusory statements are undercut by the fact that the
> Student-Plaintiffs have continued to attend iBRAIN, as evinced by

9

the parties' March 28, 2025, update and Plaintiffs' May 7, 2025, letter. Plaintiffs' letter complains only that they "are at risk of not being paid the majority of the claimed reimbursements due for the 2024-25 school year" -- during which they attend iBRAIN -- "until after the school year has closed." Nor do Mielnik's statements or any other evidence supplied by Plaintiffs demonstrate how DOE's payment of balances due on students' justiciable claims would ameliorate iBRAIN's financial difficulties.

*Id.* at *22. Here, Plaintiffs have similarly failed to meet their burden of showing that their circumstances require DOE to make expedited payments to Plaintiffs' school, iBRAIN, and the related Sisters Travel transport service outside its ordinary course of business. Because Plaintiff cannot show even a possibility of irreparable harm in the instant action, their instant motion must be denied.

### A.    Plaintiffs' claim that they are entitled to immediate funding without showing irreparable harm is without color.

This Court has already ruled that Plaintiffs "are wrong as a matter of law as to the applicable legal standard" in asserting that "the traditional preliminary injunction standards do not apply" to their motion, January 17, 2025 Decision Tr., at 32:7-8, 20-21, Ex. A to Vyas Decl., and Plaintiffs' frivolous and meritless argument to seek immediate payments without showing irreparable harm is without color. *See* ECF 85 at 12-16, 21 ("A.T. is entitled to an automatic preliminary injunction requiring DOE to implement and fund his pendency program/placement—without regard to the traditional preliminary injunction factors. … Plaintiffs maintain that the traditional preliminary injunction standards do not apply when assessing pendency claims under the IDEA (20 U.S.C. § 1415(j))"). Plaintiffs' argument is without color because it lacks any legal basis and any factual and evidentiary basis demonstrating A.T. is at risk of being disenrolled from iBRAIN on a date certain because the school is shutting down due to a lack of funding. *See Jiangsu Huari*, 2024 U.S. Dist. LEXIS 1371, at *14.

10

Plaintiffs presented the very same argument (that they need not show irreparable harm) in their previous emergency motions for expedited payments. *See* ECF 29 at 19-27, ECF 50 at 18-25. And the Court rejected this claim on the merits, explaining, like the Second Circuit, that Plaintiffs are wrong as a matter of law. January 17, 2025 Decision Tr., at 32:20-33:10, Ex. A to Vyas Decl.; Transcript of the September 4, 2024 decision denying Plaintiffs' second motion for a preliminary injunction and TRO attached as "Exhibit B" to the Vyas Decl., 37:14-38:23.

Plaintiffs' repeated assertion violates the law of this case[3] and the controlling law in *Mendez v. Banks,* 65 F.4th 56, 62-63 (2d. Cir. 2023):

> plaintiffs are wrong as a matter of law as to the applicable legal standard for this case. The "automatic injunctive effect of Section 1415(j) is the student's ability to automatically remain in their current educational placement during the pendency of their underlying administrative proceedings." *Grullon v. Banks*, 2023 WL 6929542 at *5, (S.D.N.Y. Oct 19, 2023). It is not, as plaintiff suggests, "a mechanism to which plaintiffs can seek a court order requiring DOE to acknowledge a pendency determination." *Id. see Mendez* 65 F.4th at 62 to 63 that stated that plaintiffs were "wrong as a matter of law" when they argued that "there is no requirement to show irreparable harm in order to obtain an order requiring the DOE to immediately fund the educational placements for the 2022 to 2023 school year." Accordingly, the Court will proceed with the traditional preliminary injunction factors and concludes that the plaintiffs have not met their burden.

January 17, 2025 Decision Tr., at 32:20-33:10, Ex. A to Vyas Decl. Plaintiffs have not presented evidence requisite to make a strong showing of irreparable harm, and they have no such evidence

---

[3] "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *In re in re Gorsoan Ltd.*, No. 17-cv-5912 (RJS), 2021 U.S. Dist. LEXIS 13402, at *7-8 (S.D.N.Y. Jan. 25, 2021); "The law of the case doctrine requires that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, unless cogent and compelling reasons militate otherwise." *StreetEasy, Inc. v. Chertok*, 651 F. App'x 37, 40 (2d Cir. 2016) (cleaned up).

to present. This Court should therefore deny the preliminary injunction and TRO that Plaintiffs seek.

**B.    Plaintiffs are not entitled to the injunctive relief of "immediate funding" based on their demonstrably false claim that "DOE is disputing pendency."**

Plaintiffs state without supporting authority that they are entitled to the injunctive relief of "immediate funding" based on their demonstrably false claim that "DOE is disputing pendency." ECF 85 at 16. This is incorrect.

Plaintiffs initially do acknowledge that Defendants have not disputed A.T.'s pendency placement at iBRAIN: "Defendants have not sought or received a stay regarding Plaintiffs' pendency rights," ECF 85 at 5. Then, in an about-turn, Plaintiffs claim without evidentiary support that "DOE is contesting pendency." ECF 85 at 16; *see also* ECF 85 at 17 n.3, 18, 20 ("DOE here is disputing pendency. … Here, DOE refuses to fund A.T.'s pendency altogether," "Plaintiffs are entitled to [immediate funding], where DOE outright refuses to fund at all").

Contrary to Plaintiffs' demonstrably false claim, Defendants have maintained that "any remaining amounts owed under any applicable administrative order, upon ripening, will be funded by DOE in the ordinary course of business, consistent with the Second Circuit's holding in *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023)." ECF 82 at 3. The ordinary course of business includes evaluating whether to seek a stay or appeal of the April 9, 2025 SRO Decision No. 24-264. Based on that decision, Defendant will either contest pendency or remit payment as appropriate. Until Defendant has the opportunity to reach that timely determination, Plaintiffs' contention that DOE has denied A.T. funding is clearly incorrect.[4]

---

[4] Even assuming *arguendo* that Defendant had contested A.T.'s entitlement to pendency, the decision to contest a student's appropriate placement is not a denial of funding. Plaintiff's citation to *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004) is unavailing. In *Mackey,* the Circuit ruled that an uncontested SRO Decision issued after the end of a school year could effect a change in pendency where the decision was issued late "because the SRO was derelict." Plaintiffs' reliance on *Zvi D. v. Ambach,* 694, F.2d 904 (2d Cir.

Based on Plaintiffs' false claim that Defendants "outright refus[e] to pay," Plaintiffs further make the false statement of law that they are thus exempt from "establish[ing] that DOE's delay or failure to fund such pendency program/placement has jeopardized their child's educational program/placement. *Mendez*, 65 F.4th at 63." ECF 85 at 21; RPC 3.3. Plaintiffs are not entitled to the injunctive relief of "immediate funding" without showing irreparable harm and must satisfy the traditional preliminary injunction standard even if their demonstrably false claim that "DOE is disputing pendency" were true.

The Court should not vitiate DOE's right to evaluate and appeal the April 9, 2025 SRO Decision as Plaintiffs desire by ordering DOE to make payments pursuant to it before DOE's time to appeal has expired. DOE has until August 11, 2025, i.e., four months from April 9, 2025, the date of the SRO Decision No. 24-624, to file any appeal of that decision in this Court. 20 U.S.C. § 1415(i)(2)(B); N.Y. Educ. Law § 4404(3)(a). Appealed SRO Decisions are not final as a matter of law. *See* 20 U.S.C. § 1415(i)(1)(B) ("A decision made under subsection (g) shall be final, except that any party may bring an action under paragraph (2)"); 34 C.F.R. § 300.514(a). Plaintiffs' demand to "implement" DOE's funding obligation under the SRO Decision and immediately obtain payments for tuition and transportation is unripe and a transparent impermissible tactic to circumvent DOE's ordinary budgetary oversight measures and payment procedures. Thus, the Court should deny Plaintiffs' demand for immediate payments.

---

1982) and *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.,* 752 F.3d 145, 152 (2d Cir. 2014) are similarly inapposite.

**POINT III**

**GRANTING THE PRELIMINARY INJUNCTION AND TRO SOUGHT BY PLAINTIFFS WILL NOT SERVE THE PUBLIC INTEREST.**

The preliminary injunction and TRO sought by the Plaintiffs are against the public interest. Plaintiffs yet again seek to jump the line to their unfair advantage and to the detriment of other special needs students in line to receive public funds. LFLG's tactics employed here are identical to the unsuccessful tactics used by BIRG in previous school years, during which they have brought at least twenty unsuccessful motions for preliminary injunction to force DOE to expedite payments and to use the IDEA "to frustrate the fiscal policies of participating states." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 535 (2d Cir. 2020). *See also Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023); *Neske v. New York City Dep't of Educ.*, No. 22-2962, 2023 WL 8888586, 2023 U.S. App. LEXIS 34126 (2d Cir. Dec. 26, 2023). Judicial endorsement of these tactics stands only to harm the public interest.

As the Second Circuit has stated, such an order granting Plaintiffs' and iBRAIN's attempt to circumvent Defendants' basic budgetary oversight measures, ordinary payment procedures, and administrative processes would be inappropriate. *See Mendez*, 65 F.4th at 63 ("Our determination that the statute does not require circumvention of ordinary payment procedures here comports with the practical realities of bureaucratic administration. Any agency will need some amount of time to process and pay submitted invoices. If each pendency order entitled parents or guardians to immediate payment, school districts would be unable to implement basic budgetary oversight measures, such as requiring receipts before reimbursement."); *Ventura De Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519 (2d. Cir 2020). ("Nothing in the statutory text or the legislative history of the IDEA … implies a legislative intent to permit [parents or guardians] to utilize the stay-put provision's automatic injunctive procedure to frustrate the fiscal policies of participating states.").

14

Just as in *Mendez*, the Plaintiffs here, represented by the same law firm, seek to use this Court's resources to circumvent the DOE's ordinary course of business and administrative processes and force immediate payments for tuition and transport even though A.T.'s placement on ongoing education is not at risk. DOE "implement[s] basic budgetary oversight measures," *Mendez*, 65 F.4th at 63, to ensure that taxpayer funds are properly spent and cared for and that the students at schools receiving those funds are actually provided adequate services because public funding for pendency services can never be recouped. *See Ventura De Paulino*, 959 F.3d 519 at 535 (2d Cir. 2020). Defendants respectfully submit that they are duty-bound to follow their basic budgetary oversight measures, and the Court should not indulge Plaintiffs' pattern and practice of attempting to "frustrate [DOE's] fiscal policies" and claim "entitlement to immediate payment or reimbursement." *Mendez*, 65 F.4th at 63.

DOE's oversight function becomes all the more important because iBRAIN dramatically raised the cost of tuition for ESY 2024-2025 by $35,618.60 while it remains "unclear from the contracts as to why there was such a significant increase to the cost of tuition, as the only difference between the 2023-24 and 2024-25 contracts is the increase in the price of tuition." ECF 81-6 at 8. Plaintiff is repeatedly attempting to frustrate these policies in the service of securing expedited payments to iBRAIN, Sisters Travel, and B&H Nursing Services. *See Archibald, et al. v. Banks, et al.,* 24-cv-7550-KPF (S.D.N.Y.). However, iBRAIN and the Plaintiffs are not entitled to immediate enforcement in the form of fast-tracked payments. Such an outcome would be inappropriate even if A.T.'s placement was at risk, which it is not.

The instant action, like the dozens of similar actions brought by Plaintiffs' Counsel on behalf of students attending iBRAIN in the last few years, does not even benefit Plaintiffs because they are not obligated to pay any amount to any provider under the contracts they are required to sign. Nor does this action benefit the public because the public interest squarely rests in ensuring that taxpayer funds are properly spent. Instead, Plaintiffs' instant motion for a preliminary

injunction and TRO serves only to ensure that (1) expedited payments are made to iBRAIN and its related transportation service Sisters Travel; and (2) Defendants are additionally burdened over and above their responsibilities to ensure that the thousands of students seeking payment under FOFDs, SRO decisions, and pendency orders are receiving appropriate services and being reimbursed for the same.

As such, the Plaintiff has not shown, and cannot show, that granting the instant motion would serve the public interest. The Court should therefore deny the preliminary injunction and TRO Plaintiffs aggressively seek.

**POINT IV**

**THE BALANCE OF HARDSHIPS FAVORS DEFENDANTS.**

Finally, the balance of hardships does not favor Plaintiffs. Plaintiffs have failed to show that A.T.'s educational placement is at risk, and the only issue is the timing of the monetary payments. Waiting for DOE to comply with its "basic budgetary oversight measures" and follow its "ordinary payment procedures[,] [which] comports with the practical realities of bureaucratic administration," *Mendez*, 65 F.4th at 63, will not create the type of injury cognizable for emergency injunctive relief in the absence of any irreparable harm to A.T. continuing to receive education at iBRAIN. After all, the only relief sought in Plaintiffs' preliminary injunction motion is monetary. *See Loveridge v. Pendleton Woolen Mills, Inc.,* 788 F.2d 914, 918 (2d Cir. 1986) ("[W]here money damages are adequate compensation, a preliminary injunction will not issue since equity should not intervene where there is an adequate remedy at law."). Therefore, the DOE is entitled to mindfully consider whether the administrative decision ordering payments should be appealed in any part, more so because public funding for pendency services can never be recouped. *See Ventura De Paulino*, 959 F.3d 519 at 535 (2d Cir. 2020).

16

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court deny in its entirety Plaintiffs' fourth motion for a preliminary injunction and TRO seeking immediate funding, and grant Defendants such other and further relief that the Court deems just and proper.

Dated:       June 2, 2025
             New York, New York


**MURIEL GOODE-TRUFANT**
Corporation Counsel of the
City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007


By:

_____
Jaimini A. Vyas
*Assistant Corporation Counsel*
(212) 356-2079
jvyas@law.nyc.gov


   */s/ Thomas Lindeman*
Thomas Lindeman, Esq.
*Assistant Corporation Counsel*
(212) 356-1652
tlindema@law.nyc.gov

17

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel of Record hereby certifies pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York that the enclosed Memorandum of Law contains approximately 5,433 words including footnotes and endnotes and excluding the cover page, captions, table of authorities, table of contents, signature block, and this certificate, which is less than the 8,750 words permitted for this motion by Rule 7.1(c). Counsel relies on the word count function of the computer program used to prepare this brief.

Dated:        New York, New York
              June 2, 2025


                                        _____
                                        Jaimini A. Vyas
                                        *Assistant Corporation Counsel*